PETITION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

AO 243 (Rev. 2/95)

**1:05 CV 050**

| UNITED STATES DISTRICT COURT | District Southern District of Ohio - Cincinnati | |
|---|---|---|
| Name of Movant STEVE RENNICK, SR. | Prisoner No. 04050-032 | Case No. 1:02-CR-00157 |
| Place of Confinement Federal Medical Center, P.O. Box 14500, Lexington, KY 40512-4500 **DLOTT** | | |

UNITED STATES OF AMERICA      V.      STEVE RENNICK SR.

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack United States District Court, Southern District of OHIO, Western Division Cincinnati

2. Date of judgment of conviction January 28, 2004

3. Length of sentence 63 months

4. Nature of offense involved (all counts) Count One: Conspiracy to distribute in excess of 100 Kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and § 846. All remaining counts dismissed

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:
   Pled to Count One by virtue of Plea Agreement under which remaining counts were dismissed.

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐   N/A

7. Did you testify at the trial?
   Yes ☐      No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☐      No ☒   Clerk failed to file timely notice as ordered

(1)

AO 243 (Rev. 2/95)

9. If you did appeal, answer the following:

(a) Name of court ___N|A_____

(b) Result _____

(c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

Yes ☐        No ☒

11. If your answer to 10 was "yes," give the following information: N|A

(a) (1) Name of court _____

    (2) Nature of proceeding _____

    _____

    (3) Grounds raised _____

    _____

    _____

    _____

    _____

    (4) Did you receive an evidentiary hearing on your petition, application or motion?

        Yes ☐        No ☐

    (5) Result _____

    (6) Date of result _____

(b) As to any second petition, application or motion give the same information:

    (1) Name of court _____

    (2) Nature of proceeding _____

    _____

    (3) Grounds raised _____

    _____

    _____

    _____

    _____

AO 243 (Rev. 2/95)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐        No ☐

(5) Result _____

(6) Date of result _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐        No ☐
(2) Second petition, etc.       Yes ☐        No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

Caution:    If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.

A.   Ground one: Plea Neither Knowing or voluntary but Acquired by Prosecutorial Misconduct, manipulation, + coercion

Supporting FACTS (state *briefly* without citing cases or law)

See Memorandum

B.   Ground two: Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law)

See Memorandum

C.   Ground three: Government Breached Plea Agreement

Supporting FACTS (state *briefly* without citing cases or law)

See Memorandum

AO 243 (Rev. 2/95)

D.   Ground four: DUE PROCESS by failing to grant down ward departure, motion for Reconsideration, motion to withdraw plea

Supporting FACTS (state *briefly* without citing cases or law) _____ SEE Memorandum

E.   GROUND FIVE: Denied direct Appeal by court clerk's failure to file notice of Appeal.

SEE Memorandum

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

These matters were to be raised on appeal but the court failed to file timely notice

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐          No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a) At preliminary hearing William Gallagher, Esq. 114 East Eighth St, Cincinnati Ohio 45202

(b) At arraignment and plea ___ Same

(c) At trial ___ Same

(d) At sentencing ___ Same

(e) On appeal _Kenneth L. Lawson, Esq, The Kroger Building, Suite 1575,_
_Cincinnati, Ohio 45202_

(f) In any post-conviction proceeding _John Paul Rion, Rion, Rion, Rion, LPA, clve._
_P.O. Box 10126, Dayton, Ohio 45462_

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐        No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐        No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____

_____

(b) Give date and length of the above sentence: _____

_____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐        No ☐

Wherefore, movant prays that the Court grant petitioner relief to which he or she may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_Jan. 20, 2005_
(Date)

_Steve M Kennedy Sr_
Signature of Movant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION CINCINNATI

|  |  |
|---|---|
| STEVE RENNICK, SR. | ) |
| Movant/Defendant | ) Case No.: 1:02-CR-00157 |
| vs | ) Hon. Susan J. Dlott |
| UNITED STATES OF AMERICA | ) U.S. District Judge |
| Respondent | ) |

MEMORANDUM IN SUPPORT OF

DEFENDANT'S MOTION TO VACATE, SET ASIDE OR AMEND

SENTENCE PURSUANT TO 28 USC § 2255

Comes the defendant, Steve Rennick, Sr., pro se, and moves this court for an Order Vacating and Setting Aside defendant's plea, conviction, and sentence to the extent that defendant's plea was coerced, not voluntary or knowing, and the express result of ineffective assistance of counsel and violative of defendant's 5th & 6th Amendment rights as set forth herein; and defendant further seeks to be tried on the merits of his case and assured the full force and effect of his constitutional rights and in support thereof the defendant states as follows:

As a preliminary matter, the defendant avers that he is not an attorney; has no legal or professional training pertaining to the preparation and filing of legal motions or memorandums. The

-1-

defendant seeks notice of such limitations and prays this court
to construe his pleadings liberally in light of the Supreme Court
holding in <u>Haines v Kernes</u>, 404 U.S. 519, 30 L.Ed.2d 652 (1972);
<u>Cruz v Beto</u>, 405 U.S. 319, (1972); <u>Lawler v Marshall</u>, 898 F.2d
1196 (6th Cir. 1990); <u>Hill v U.S.</u>, 268 U.S. 424, 430 (1984).  The
allegations and averments in a pro se pleading must be taken as
true and construed in favor of the defendant.  See <u>Malone v Colyer</u>,
710 F.2d 258, 260 (6th Cir. 1983).

    The defendant further advises the court that there are several
elements of style and format needing explanation:

    1.    The movant, Steve Rennick, Sr., is referred to through-
out as the defendant.

    2.    There are two types of exhibit referrals.  Items and
documents contained in the record of the court are referred to by
their "Docket Entry Number" and appear in text as [DE #].  Docu-
ments not part of the record are referred to as sequentially numb-
ered exhibits and are referred to as [Ex #].  In addition, there
are several composite exhibits referred to as [Comp Ex - # A.B.C..].

    3.    Docket Entry exhibits are not included in attachments as
they are readily available to all parties.  Other exhibits are sub-
mitted herewith.  All exhibits are made a part hereof by reference.

## STATEMENT OF THE CASE

    Defendant was originally arrested on October 28, 2002, pursu-
ant to a Complaint and Arrest Warrant [DE-1].  On november 6, 2002,

defendant was named, along with five other defendants in a five
count indictment charging, inter alia; Count One: Conspiracy to
distribute in excess of 100 kilograms of marijuana in violation
of 21 USC §§ 841(a)(1) and (b)(1)(B) and § 846; Count Two:  Dis-
tribution of approximately 50 pounds of marijuana in violation
of 21 USC §§ 841 (A)(1) and (b)(1)(D) and 18 USC § 2; Count Four:
Possession with intent to distribute 450 pounds of marijuana in
violation of 21 USC §§ 841(a)(1) and (b)(1)(B) and 18 USC § 2.
[DE - 8].

On March 5, 2003, defendant was named in an eight count su-
perceding indictment charging essentially the same conduct, but
adding a charge of engaging in monetary transactions in violation
of 18 USC §§ 1957 & 2 [DE - 59].

Defendant's son, Steve Rennick, Jr., was named in the initial
indictment, but was dismissed prior to the Superseding Indictment.
The government, in its attempt to persuade defendant to plea, gave
notice of its intent to force defendant's son to testify against
the defendant.  The court issued an order on August 15, 2003, com-
pelling defendant's son to testify at the upcoming trial [DE - 102].

On August 19, 2003, defendant arrived at court for the com-
mencement of his jury trial.  On arrival defendant was first con-
fronted by his counsel who advised him the government was claiming
they had evidence where the defendant had paid several witnesses
to give false testimony (Rule 404(b) evidence) [DE - 94].  The
defendant knew this accusation to be false and cotninued to

-3-

adamantly desire a jury trial.

Defendant was then approached by co-defendant Matthew Elliot who asked if he could get the defendant to consider entering a guilty plea.  Elliot made several arguments including, inter alia, (i) that if everyone pled it would be good for everyone; (ii) that all defendants had to plead in order for everyone to get a good deal; (iii) that if the defendant would not plead it could "mess up" Elliot's future and "ruin his life"; (iv) that the defendant would be able to "cooperate" with the government and would never do much time and might get probation.

Defendant's counsel, William Gallagher, echoed much of what Elliot said and encouraged defendant to plead guilty.  Defendant was moved by Elliot's expressed desire that he enter a plea and was further confused and threby moved by counsel's encouragement. The defendant agreed to entertain a discussion about a plea even though he knew he was innocent of any wrongdoing.

Defendant was ultimately manipulated into entering into a plea agreement to Count One [DE - 104].  Co-defendant Elliot entered into a similar agreement [DE - 106] and co-defendant Benjamin also entered into a similar agreement [DE - 111].  On the same day all three defendants entered their pleas pursuant to their plea agreements.  [DE - 145].

On December 2, 2003, defendant caused an eight page letter to be transmitted to the judge and the government categorically denying any guilt in the matters charged.  [Ex - 1].

On January 26, 2004, defendant's counsel filed a Motion for Downward Departure based on substantial assistance to the government and medical issues [DE - 147].

On January 28, 2004, defendant's sentencing was held.  The defendant's motion for downward departure was denied.  [DE - 188]. Defendant was sentenced on Count One to 63 months in prison; four years supervised release; a $10,000.00 fine and a $100.00 assessment.  [DE - 188, 157].  Co-defendant Elliot was sentenced to 14 months in prison, followed by 2 years supervised release, a $1,000.00 fine and a $100.00 assessment [DE - 190].  Co-defendant Benjamin was sentenced to three years probation, a $1,000.00 fine and a $100.00 assessment.  [DE - 189].

On January 29, 2004, defendant retained Kenneth L. Lawson, II, as new counsel [DE - 148].  On the same date counsel Lawson filed a Motion for Reconsideration [DE - 149].

On February 10, 2004, Counsel Lawson filed a Motion to Withdraw Plea of Guilty.  [DE - 162].  On March 1, 2004, the court denied Motion to Reconsider and Motion to Withdraw Plea of Guilty. [DE - 168].

## STATEMENT OF FACTS

The PreSentence Investigation Report (PSR) set forth the following facts in the Offense Conduct section of the report.

The investigation with respect to this case involved agents of the Regional Enforcement Narcotics Unit (RENU) and officers from area police departments.

On October 15, 2002, RENU agents, acting on a tip from a confidential informant, executed a search warrant at the residence of Eddie Moore in Norwood, Ohio.  Agents recovered 30 pounds of marijuana and arrested Moore.

Moore claimed to be storing marijuana for Matthew Elliot, his close friend.  Elliot paid Moore small amounts of marijuana for personal use.  Agents learned that Kareem Cole and David Jones A/K/A Phillip Davidson obtained marijuana through a source in Arizona and brought it into Cincinnati for distribution.  The marijuana was typically stored in a rented portion of a warehouse owned by Phyllis Rennick, the defendant's wife.

Defendant ran a garage on North Bend Road for 30 years.  Approximately eight years ago the defendant leased a separate portion of the warehouse building to Dennis Morrison.  After several years of being a model tenant, Morrison had no further need for the space and asked defendant if he would switch the lease to his uncle, Kareem Cole, and Cole's friend Phillip Davidson, A/K/A David Jones.  The defendant agreed.

On October 16, 2002, surveillance was set up on the warehouse.  Agents observed Steve Rennick, Jr., defendant's son, and Matthew Elliot arrive at the warehouse.  Later the defendant also arrived.  Shortly thereafter the defendant and Elliot left in one vehicle and Steve Rennick, Jr., left in another.  Agents stopped and detained all three.

A search of the warehouse revealed 450 pounds of marijuana

inside a separate locked area of the rented warehouse.  The defendant was found to have a key to the locked area.

The defendant's family owns the entire warehouse and real property.  The warehouse is divided into separate leasable areas. The defendant's son operates the family trucking business in part of the building and the family rents the remaining space.  The area in which the marijuana was found was in an areas leased under a lawful lease agreement to Kareem Cole.  The defendant had keys to all areas of the building, as would any landlord.

According to the government's version of the crime, the defendant made three trips to Arizona to transport marijuana back to Cincinnati.  The first two trips were allegedly made in a motor home and the third trip in a Freightliner Tractor.  (Notably there is never any assertion about a trailer being used with the semi-tractor).  The first trip allegedly involved 100 pounds, the second, 150 pounds and the third, 550 pounds for a total of 800 pounds.

On July 23, 2002, the defendant purchased a Freightlienr Semi-tractor in Arizona.  The purchase price was $93,000.00.  The defendant paid $5,000.00 by business Visa, the balance was paid by Provident Bank cashiers check for $88,000.00 ($46,000.00 was loan proceeds).

RENU agents were able to locate the residence of Cole and established surveillance.  On October 16, 2002, Cole and Jones left the residence in a rented vehicle.  Agents stopped the car

-7-

and detained both men.  Cole's apartment and a vehicle were
searched.  Agents recovered scales, balance sheets showing money
owed, marijuana and $50,000.00 cash in the apartment.  The ve-
hicle contained a box that had 25 pounds of marijuana in it.  It
was also found that Cole had a key to the locked portion of the
warehouse where the 450 pounds of marijuana was stored, and a key
that fit the door lock at the warehouse.

From the period of June 24, 2002, through October 9, 2002,
the defendant deposited $74,000.00 into the Earth Management Ac-
count and $80,000.00 into the S&S Racing account.  All of these
deposits were in cash.  Both accounts were maintained at Provident
Bank.

On December 2, 2003, defendant wrote an eight page letter to
the judge denying any role in the offense whatsoever.  Defendant
also met with the probation department and supplied the following
written statement:

> "I, Steve Rennick, involved myself with Kareem
> Cole and another man whom I now know to be David Jones.
> I drove the trips to Arizona as alleged in the indict-
> ment.  I regret my involvement in this case, the harm
> it has caused my family, and the embarrassment that has
> resulted to me.  I entered my plea before trial in this
> case and believe my plea prompted the pleas of the two
> remaining co-defendants in this case.  I believe my plea
> resulted in there being no trial in this case."
> [DE - 107 pg 8].

This statement deliberately fails to mention anything about
the possession or sale of marijuana.  It also admits no criminal
conduct.  This was the only way the defendant would give a state-
ment because he was not guilty.

-8-

## SENTENCING FACTORS

Defendant was sentenced in accordance with the United States
Sentencing Guidelines (USSG), November 1, 2002 edition. Defend-
ant's base offense level for a violation of 21 USC §§ 846 and 841
(a)(1) and (b)(1)(B) is located at U.S.S.G. § 201.1. The sentence
is based on the allegation that defendant's crime involved 800
pounds of marijuana or an equivalent of 362.88 kilograms. The
appropriate range for the quantity is found at U.S.S.G. § 2D1.1(a)
(3)(c)(7), the base offense level is 26. Defendant further re-
ceived a three level reduction for acceptance of responsibility
pursuant to §§ 3E1.1(a) and (b). This resulted in a Total Offense
Level of 23.

Defendant had a total of three criminal history points and,
therefore, is in Category II. The guideline sentencing range is
51 to 63 months. However, pursuant to U.S.S.G. § 5G1.1(c)(2) the
range is 60-63 months. Defendant was sentenced to 63 months.
[DE - 107, pp 20, 188, 157].

### ISSUE I

#### DEFENDANT'S PLEA WAS NEITHER KNOWING
#### OR VOLUNTARY AS IT WAS ADDUCED
#### BY PROSECUTORIAL MISCONDUCT,
#### MANIPULATION AND COERCION.

A.  DEFENDANT HAD NO DESIRE, MOTIVE OR NEED TO CONSIDER TAKING A
PLEA.

-9-

The defendant never desired to enter a plea to the government's allegations and remained at all times adamant about going to trial, because the defendant was not and is not guilty of the crime charged.

The substance of the government's allegations were simple and circumstantial. Essentially the government alleged that RENU agents, acting on a tip from a confidential informant, found 30 pounds of marijuana at the residence of one Eddie Moore. Moore claimed to be storing marijuana for Matthew Elliot.

These facts led to a Kareem Cole and David Jones who, it was found were importing large quantities of marijuana from Arizona to Cincinnati and storing same in warehouse space leased from Phyllis Rennick, the defendant's wife. Agents found 450 pounds in this section of the warehouse.

The defendant had been hired by Cole to drive Cole and his associates from Cincinnati to Arizona and back on three occasions. The purpose of these trips  was to assist in the promotion of three Reggae shows that Cole produced. The first two trips were made in a motor home and the third in a Freightliner semi-tractor (with no trailer).

The government also discovered the defendant had made $154,000.00 in cash deposits to two business accounts. These facts comprised all of the government's basis in charging the defendant.

At the time of arrest, the defendant's son, Steve Rennick, Jr., was also arrested and similarly charged. Defendant initially

-10-

hired Attorney Richard Goldberg to represent his son and Attorney William Gallagher to represent himself. The defendant and his son were both freed on bond.

From the outset it was apparent that the government's case against the defendant was weak and purely circumstantial. The defendant was not found to possess any drugs or drug pariphernalia. The defendant was never observed in any drug transaction, nor was he a party to any recorded coynersations, controlled buys, or any direct or physical evidence of any kind. There were only two circumstantial links to the crime. The defendant did have keys to all parts of the warehouse which his family owns and he had made three trips to Arizona with Cole and associates.

Defendant's defense team set out to assemble a substantial defense including, inter alia: (i) evidence that the last and largest 550 pound load was not transported in the Freightliner semi-tractor driven by the defendant, verified by a physical inspection of the tractor to determine that no trailer, of any kind, had ever been hooked to such tractor; (ii) a video taped deposition by a New Mexico Department of Transportation Officer indicating that he had been inside the new tractor on its return trip to Cincinnati and it did not contain nor could it have held the 550 pounds of marijuana alleged. (AUSA Brichler participated in this deposition); (iii) the warehouse space where the marijuana was found was leased by a valid lease agreement to Kareem Cole and David Jones, who both had keys to said space; (iv) independent

-11-

forensic accounting records indicated that the source of all cash deposits in the superseding indictment were documented and had nothing to do with the purchase or sale of any narcotics, nor were they from any illegal activity. There was significant evidence to overcome all aspects of the government's allegations and there was never a consideration of entering a plea to a crime the defendant did not commit.

## B.    DEFENDANT'S PLEA WAS ADDUCED BY PROSECUTORIAL MISCONDUCT

On the morning of August 19, 2003, the defendant's trial was set to commence. AUSA Robert Brichler met with co-defendant Matthew Elliot, his counsel Kenneth Lawson, and defendant's counsel William Gallagher. This meeting was unknown to the defendant. The purpose of the meeting was to devise a scheme to convince the defendant to enter a plea of guilty and avoid a trial.

It was determined that as part of this scheme, co-defendant Elliot would use his friendship and closeness to the defendant to persuade him to plead. Elliot was told to, and did, represent the following to the defendant: (i) that a plea was the best thing for all parties because each person would get a low sentence; (ii) that each defendant could cooperate and get little time or maybe probation; (iii) that defendants Elliot and Benjamin could get a "plea deal" only if all three defendants pled; (iv) that if they lost at trial it would ruin Elliot's and Benjamin's lives.

It was further a part of the plan that attorneys Gallagher and Lawson would show the defendant a notice that the government

-12-

had evidence in the form of witnesses who would confirm that the defendant had paid witnesses to lie.  [DE - 94].

As consideration for his part in this scheme, co-defendant Elliot was promised a 5K1.1 downward departure of one third of his sentence for convincing the defendant to enter a guilty plea. This promise was made by AUSA Brichler.

In furtherance of this plan, defendant's counsel promised defendant would get no more than 36 motnhs and probably probation. AUSA Brichler represented the defendant could cooperate and "work off" his sentence; the government further agreed to not seek forfeiture on a motor home owned by the defendant.

At the time of this pressuring of the defendant, Elliot, Gallagher, and Brichler all knew the defendant suffered from PTSD, Post Traumatic Stress Disorder, and was on numerous medications. Defendant's medical records indicate the defendant was diagnosed with "severe and persistent mental illness including schizophrenia, bipolar disorder, major affective disorder and severe PTSD."  Records further indicate the defendant was taking Quetiapine Furomate, Sertraline HCL, Resperidone, Trazodone HCL, Lorazepam, and Oxycodone, all of which have mind altering effects.  Medical records further indicate the defendant's mental illness by the time of sentencing had become; "severe functional impairment [was] such that the Veteran is neither currently capable of successful and stable self-maintenance in a community living situation nor able to participate in necessary treatments without intensive  support."

-13-

Clearly the defendant was in no condition to enter a plea, let alone a manipulated and emotionally coerced plea. [Comp Ex - 2 A, B, & C].

The scheme was successful and defendant eventually gave in and agreed to a plea to a crime he did not commit. Defendant's counsel stressed that he would be required to answer the court's questions as instructed or the deal would fall through. The defendant had no knowledge that Elliot was rewarded for his part of the scheme.

The three plea agreements [DE - 104, 106, 111] are essentially the same. None provide any factual basis and Elliot's does not mention the 5K1.1 reduction for manipulating the defendant and emotionally coercing the defendant's plea.

At the plea hearing the government was finally asked to provide the factual basis for the plea. The government's basis included, inter alia, that the defendant conspired with co-defendants Cole, Jones, and Elliot to distribute marijuana; that defendant traveled to Arizona to bring back 500 pounds of marijuana in defendant's Freightliner tractor; that the defendant stored the drugs in his warehouse; that co-defendant Elliot received 50 pounds of said marijuana; that the defendant gave one pound of marijuana to co-defendant Benjamin.

Upon hearing these facts the defendant was stunned. He knew he was pleading to something he did not do, but now he was being asked to further admit details that simply never happened. When

-14-

the court inquired, "Mr. Rennick, we need something verbal," he was speechless and at the nudging of counsel said, "No, ma'am." There was simply no truth to the factual basis. [DE - 145].

As soon as the plea hearing was over the defendant gathered with attorneys Gallagher, Richard Goldberg, Lawson, and Cohen, the other co-defendants and several of defendant's friends and family. He was furious that he was forced to lie to the patently untrue factual basis. The lawyers attempted to calm him down by stating over and over that it was only a "fictional plea" and it would make no difference. The defendant has submitted an affidavit including the fact of the fictional plea. [Comp Ex - 3A, PARA pg 5].

In addition, defendant submits an affidavit from Demetrious A. Ball [Ex 38] who is a friend of the defendant and was present when these events occurred. He observed the defendant moving his head from side to side gesturing the factual basis was untrue, ID pg 2 para 7. He further observed other indications that the defendant was not in agreement with the factual basis, ID paras 8-11. Finally, he recounts the matters he heard relative to the "fictional pleas." ID paras 12 and 14.

The defendant submits an affidavit from co-defendant Wayne Benjamin, which directly supports the facts stated herein. [Comp Ex - 3C].

The entering into a deal with a co-defendant to manipulate an untruthful plea is an action in furtherance of deceiving the court and undermining the judicial system and it is, per se, gross

-15-

misconduct on the part of the prosecution.  The actions of AUSA
Brichler tainted the entire case and demand reversal.

    An Appellate Court reviews a claim of prosecutorial miscon-
duct for harmless error.  "[T]he touchstone of due process analy-
sis in cases of alleged prosecutorial misconduct is the fairness
of the trial, not the culpability of the prosecutor." Marshall v
Hendricks, 307 F.3d 36, 64 (3rd Cir. 2002).  In this proceeding a
defendant with known mental problems was subjected to emotional
coercion by a younger co-defendant who enjoys a son-like closeness
to the defendant for the purposes of extracting a false confession.
This is misconduct of the type considered in Mason v Mitchell, 320
F.3d 604, 635 (6th Cir. 2003) "this misconduct must be so pronoun-
ced and persistent that it permeates the entire atmosphere of the
[proceeding] or so gross as probably to prejudice the defendant."

    As shall be seen, this case is one where bad faith and conduct
begat more of the same.  The coerced plea led to defective sen-
tence, which set up a botched  cooperation, and ultimately the de-
fendant being shot and nearly killed by a rogue cop still on the
loose.

    Normally, a claim such as this would be reviewed de novo.
United States v Wells, 211 F.3d 988, 995 (6th Cir. 2000).  How-
ever, the defendant is only now raising the matter for the first
time.  The government may well argue that by not filing a previous
objection the defendant is limited to only a plain error and an-
alysis, United States v Carr, 170 F.3d 572, 577 (6th Cir. 1999).

The defendant maintains he only recently learned of the deal and the actions of the prosecutor when he obtained the transcripts of the sentencings [DE-188, 189, 190].  There has been no opportunity to object and as will be discussed, neither of the attorneys retained post conviction brought the matter to the defendant's attention.

While not consenting to a limitation of plain error, defendant understands that a reversal would require a finding that (1) there is an error; (2) it is plain; (3) which affected the defendant's substantial rights; and (4) that seriously affected the fairness, integrity or public reputation of the judicial proceeding.  United States v Carter, 236 F.3d 777, 783-784 (6th Cir. 2001).

The defendant the Court to the transcript of defendant Elliot's sentencing, [DE-190] and for contextual consistency, requests the Court to review the exchanges commencing at page 4 line 20 through and including page 12 line 15.

Co-defendant Elliot's counsel, Kenneth Lawson, described the "deal in the following manner:

> "In order to end up into these plea bargains, it was <u>presented to my</u> client, since he was closest to Mr. Rennick, that <u>if he was able to get Mr. Rennick to enter a plea</u>, voluntarily enter a plea and also provide sub -- and get Mr. Rennick provide substantial assistance, he would receive, he being Mr. Elliot, would receive a 5K1.  So Mr. Elliot's plea bargain and 5K1 is based on what Mr. Rennick was to do ...
> [O]ur understanding of his [Elliot's] responsibility was to do, which was to get in discussions with his

-17-

friend to enter the plea and also provide sub-
stantial assistance." [DE-190, p 4-5] emphasis
added.

Clearly the government set on a deliberate course of action

bent on getting the defendant to enter a plea. Lawson made a

forceful argument that Elliot was entitled to his 5K1 because he

upheld his end of the bargain.

Lawson further argued that he had only just learned that

the defendant had tape recordings of his attempts to cooperate,

including phone calls from bonafide drug dealers, as well as con-

versations with RENU Agent John Mercado. Lawson critized defen-

dant's counsel for not having a hearing on the extent of the de-

fendant's cooperation and how serious he felt it was that defen-

dant's shooting was not being recognized as a form of cooperation.

[DE-190, p 6-7].

Lawson also confirmed that defendant's counsel, Gallagher,

had full knowledge of the deal with Elliot.

"And Mr. Gallagher knows, [...], that that was
the offer that was made to my client, because we had
to come back out and let my client [Elliot] speak to
Mr. Gallagher's client [the defendant]." [DE-190,
p 10].

Mr. Lawson made it very clear he wanted to look into the

tapes or other matters to determine what, if any, cooperation

the defendant may have done. AUSA Brichler went off the re-

cord and spoke with Lawson. After the discussion the govern-

ment suddenly withdrew its objection and reluctantly asked that

Elliot receive his one third 5K1 reduction. AUSA Brichler

-18-

apparently not wanting to risk further complications stated:

> "I want to make it clear that this motion for
> reduction is based upon what happened that day and
> it's not based upon any conduct that Mr. Rennick
> subsequently engaged in." [id. p 12].

The government rewarded Mr. Elliot for using his trust and influence to betray a friend. He received a one third reduction in his guideline sentence. The actions of the government were done in bad faith. While subverting the system by using Elliot to coerce a plea is reprehensible, the involving of defendant's counsel in the scheme is unexcusable and perverts the entire system.

At an evidentiary hearing the defendant will show, by examination of Attorneys Goldberg, Gallagher, Cohen, and Lawson, the extent of the betrayal by defendant's counsel for deliberately participating in this scheme.

> "A decision to enter into a plea agreement cannot
> be knowing and voluntary when the plea agreement itself
> is the result of advice outside "the range of compe-
> tence demanded of attorneys in criminal cases." Deroo
> v United States, 223 F.3d 919 (8th Cir. 2000) citing
> Hill v Lockhart, 474 U.S. 52, 56 (1985).

When the government conceived a scheme to manipulate a defendant into entering a plea a line was crossed. This was not a case of rewarding a co-defendant for "truthful" testimony against another defendant, this was trickery, exploitation of the defendant's mental state and his trust. As bad as that is, when defendant's counsel became a willing partner in the scheme and kept the defendant in the dark, the entire adversarial process broke down.

All of this because AUSA wanted to "[m]ake the trial go away" [DE-190, p 11].

The defendant, Steve Rennick, Sr., served this country with honor in the Vietnam war. The honors of the war came home in the chronic replays caused by his Post Traumatic Stress Disorder. One of the common side effects for PTSD patients is their desire to accomodate or go along with persons close to them. In the defendant's case his medical records reflect he was in group treatment. The "purpose of this group is to increase assertiveness by recognizing certain situations in which it is difficult to say 'no'." [Comp Ex-2C].

The reality here is that using Elliott and his "closeness" to the defendant and telling the defendant a plea was best for all; was coercion, it was a situation the defendant could not refuse. On August 19, 2003, AUSA Brichler adduced a plea from the defendant by coercion; coercion no less serious and no less effective than had he threatened the defendant with mortal harm. The defendant's plea in this matter should be withdrawn, the conviction reversed, and the defendant should be tried by a jury on the merits.

## ISSUE II

### DEFENDANT'S PLEA WAS UNKNOWING AND INVOLUNTARY AS DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL

A criminal defendant's right to the assistance of counsel is

a necessity, not a luxury, <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344 (1963).  The defendant's attorney is a crucial component to the process because he is the vehicle through which the accused's other rights are preserved and effectuated, and without whom those other rights are practically meaningless <u>ID</u>.  As such this right to counsel has long been held to mean "the right to the <u>effective</u> assistance of counsel." [emphasis added].  <u>McMann v Richardson</u>, 397, U.S. 759, 771, n.14 (1970).

The attorney client relationship requires the relationship be shrouded in secrecy.  How does a judge know if an attorney fully and completely explained an offense, its elements and all possible penalties?  How can this court know how attorney Gallagher persuaded the defendant to lie by pleading guilty when he wasn't guilty?  The court doesn't know, and, therefore, an evidentiary hearing is required, and at that hearing the defendant will show the court the full extent of the lack of effective representation and the deliberate breach of the relationship's trust.

If the defendant does not receive proper assistance facing the complexities inherent in the law, then the defendant's rights have been violated.  <u>United States v Ash</u>, 413 U.S. 300, 309 (1973).

A.  <u>DEFENSE COUNSEL'S ASSISTANCE WAS INEFFECTIVE AND COMPROMISED WHEN HE PARTICIPATED IN GOVERNMENT'S SCHEME TO OBTAIN A GUILTY PLEA</u>

The record of the sentencing hearing of co-defendant Elliot

-21-

makes it very clear that at the time Elliot was manipulating the defendant into entering a plea, defendant's counsel, William Gallagher, then well knew that the government had "hired" Elliot to manipulate the defendant. From the moment Gallagher became aware of the Elliot scheme and payoff of a one-third sentence reduction, and allowed same to continue, he ceased to represent the interests of the defendant.

The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v Washington, 466 U.S. 668 (1984) at 686.

The court announced a two-part inquiry for making the determination: first, "the defendant must show that counsel's performance fell below an objective standard of reasonableness" as compared with "prevailing professional norms." ID 688. Second, the defendant must show he was prejudiced by his attorney's deficient conduct, by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." ID, 694.

In guilty plea cases the Strickland test is refined: the defendant must show that his counsel's performance was deficient and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v Lockhart, 474 U.S. 52, 59 (1985).

It is regretably evident that when attorney Gallagher became aware of the scheme to get co-defendant Elliot to use his "closeness" with the defendant, and thereby manipulate a plea of guilty; then, at that moment, attorney Gallagher ceased to represent the interests of the defendant.

There is no question that defendant's counsel witnessed and subsequently participated in the betrayal of his innocent client. In addition to going along with the "Brichler scheme;" Mr. Gallagher also participated proactively when he told his client that he would get a low sentence, maybe probation, when all along counsel knew the defendant faced a mandatory minimum of five years.  He further sabotaged the defendant by ignoring the evidence of defendant's innocence and encouraged the plea.

> "The fact remains that [the defendant] was entitled to effective assistance of counsel when he entered his plea, and this he did not receive.  Had he received it, the decision to plead guilty would have been his own depending upon his informed appraisal of the attractiveness of the government's offer."  Tolliver v United States, 563 F.2d 117 (4th Cir. 1977).

Tolliver suggests that a defendant is automatically prejudiced whenever his plea agreement is the product of ineffective assistance of counsel, by virtue of the fact that such an agreement cannot be truly voluntary.

In the instant matter the ineffectiveness manifested in a single action, the agreement to participate in the scheme to get the defendant to plead.  This is similar to the event in Murray v Carrier, 477 U.S. 478, 496 (1986):

"[T]he right to effective assistance of counsel
may in a particular case be violated by even an iso-
lated error of counsel if that error is sufficiently
egregious and prejudicial."

In interpreting the prejudice prong, the Supreme Court
has identified a narrow category of cases in which prejudice is
presumed. Strickland supra 692. The three categories of pre-
sumed prejudiced cases are: (1) denial of counsel; (2) State
interference, and; (3) where counsel is burdened by an actual
conflict of interest.

The defendant asserts the government interfered when it made
defendant's counsel a party to the plea scheme and by doing so
the defendant was denied counsel as he was compromised. Inasmuch
as counsel hid the deal from the defendant and thereby assisted
co-defendant Elliot it further appears to be a conflict of inter-
est.

As discussed previously the defendant had assembled a mean-
ingful defense with evidence and testimony and yet counsel scrap-
ped the defense at the last minute for an ill conceived plea. If
counsel "entirely fails to subject the prosecutions's case to
meaningful adversarial testing" the adversarial process itself
becomes presumptively unreliable. United States v Cronic, 466
U.S. 648, at 659 (1984). In this instance, counsel surpassed de-
ficient conduct; he instructed his client to perjure himself by
admitting crimes he did not commit. As the Affidavit in Composite
Exhibit 2 A, B, C shows, his attorney told him to enter a "fic-
tional plea" because he would supposedly receive a lesser

-24-

sentence.  This act fell below an objective standard of reason-
ableness and acted to subvert the normal functioning of the ad-
versarial process.  Had defendant not entered the plea, he would
not be in a federal prison today.

Finally, defendant expressed his desire to appeal his case
[DE-156A at 20].  Counsel failed to file a timely notice of appeal
or failed to determine whether the Clerk had so filed as requested.
Prejudice is presumed when alleged ineffective assistance of coun-
sel includes a basis of "unexcused failure to bring a direct ap-
peal from a criminal conviction upon the defendant's direction to
do so.  Hernandez v United States, 202 F.3d 486, 489 (2nd Cir.
2000).

B.    THE ACTIONS OF DEFENSE COUNSEL INDICATE A CONFLICT OF
      INTEREST

When defense counsel Gallagher willingly knew and participated
in government's scheme to use Elliot and further secreted same from
the defendant his actions served the interests of others apart from
the defendant.

Whenever defense counsel operates under a conflict of interest,
the defendant's right to effective assistance of counsel is impair-
ed because; "counsel breaches the duty of loyalty, perhaps the most
basic of counsel's duties."  Strickland, supra at 692.

In Cuyler v Sullivan, 446 U.S. 335, 350 (1980) the Supreme
Court ruled that a defendant can demonstrate a 6th Amendment

-25-

violation by showing that defense counsel was actively represent-
ing conflicting interests.

Defense counsel only represented the defendant. The defen-
dant was clearly entitled to representation only concerned with
his outcome and not that of anyone else. AUSA Brichler presented
his plan to use Elliot to Elliot and his counsel, Lawson, but the
deal required Gallagher to allow Elliot and Lawson access to the
defendant and to subsequently endorse the plan. Indeed, when
Lawson was forced to reveal the plan in court he made specific
references to the court that Gallagher knew about the deal and
verified the events in the face of the government's momentary
"memory loss."

The record is clear, all parties knew of the scheme except
the defendant. Gallagher's role in the scheme continued after the
pleas were entered when all defendants were upset over the factual
basis the government gave the court. The representations that the
defendant sold or gave drugs to co-defendants Elliot and Benjamin
were patently false and troubling. When all three co-defendants
angrily inquired of all counsels as to what just happened; attor-
neys Gallagher, Lawson, and Cohen all supported the claim that
they were "fictional pleas" and nothing would happen as long as
they "went along."

Obviously the pleas weren't fictional and neither were the
sentences. When three lawyers join in harmony to lie and conceal
matters from their clients, the result is a conflict of interest.

There is a similarity to <u>United States v Hall</u>, 200 F.3d 962, 966 (6th Cir. 2000) in that a conflict of interest because counsel failed to forego a plea in client's best interest in order to protect a second defendant.

For reasons unknown, attorney Gallagher involved himself in a scheme of the government's design and interest and in doing so he became conflicted in his interests, and brought harm upon the defendant.

ISSUE III

<u>THE GOVERNMENT BREACHED THE SPECIFIC</u>

<u>TERMS OF DEFENDANT'S PLEA AGREEMENT</u>

As previously stated, defendant never desired a plea. The government, as part of defendant's inducement, was promised he could "work off" the sentence by cooperation. As inducement, the government and defendant's counsel placed great emphasis on the fact that the defendant could "cooperate" with the government and receive a substantial sentence reduction pursuant to U.S.S.G. § 5K1.1. The plea agreement provided:

> "5." The government <u>agrees to file</u>, upon the defendant's substantial assistance, a motion with the court for a downward departure from the guideline sentence, stating that the defendant <u>has made a good faith effort to provide substantial assistance in the investigation and prosecution of other persons who have committed offenses</u>. The filing of such motion shall be the sole discretion of the U.S. Attorney for the Southern District of Ohio. If such a motion is filed, the defendant understands that it is not binding on the Court. Such a motion is authorized by § 5K1.1 of the Sentencing

-27-

Guidelines and 18 USC § 3553(e).  If such a motion is
filed it will be in reliance on the defendant's con-
tinued cooperation.  If the defendant should later re-
fuse to testify the government may, at the government's
option, petition the court to set aside the defendant's
sentence and sentence him without a downward departure
or seek to set aside the defendant's plea and reinstate
the Indictment."  [DE-104, p 5] [emphasis added].

"Plea agreements are contractual in nature.  In interpreting
and enforcing them, we are to use traditional principles of con-
tract law."  United States v Robinson, 924 F.2d 612, 613 (6th
Cir. 1991); see also United States v Wells, 211 F.3d 988, 995 (6th
Cir. 2000) (quoting same).  A court should hold the government to
a greater degree of responsibility than the defendant for impreci-
sions or ambiguities in plea agreements ID at 995 (citing United
States v Johnson, 979 F.2d 396, 399 (6th Cir. 1992)).

Although plea agreements are governed by contract principles,
Due Process Clause requires these principles be supplemented with
concerns that bargaining processes not violate defendant's right
to fundamental fairness.  United States v Schilling, 142 F.3d 388,
394 (7th Cir. 1998).

In the instant matter the plea agreement states; "the govern-
ment agrees to file a motion, upon the defendant's substantial as-
sistance [ ] for a downward departure ...."  The defendant avers
that terms "agrees to file" implies an obligation to file the mo-
tion which has, in fact, bargained away the government's reserva-
tion of "sole discretion."

In the plea agreement the government's language states it
would file the downward departure stating the defendant "has made

-28-

a good faith effort to provide substantial assistance in the investigation and prosecution of other persons who have committed offenses." There is no requirement of a successful arrest or a conviction. The government's own wording defines defendant's performance to being, "a good faith effort to provide substantial assistance," and nothing more.

This court has recognized, that "in order to induce a defendant to enter the plea agreement, the government may bargain away its discretion and simply promise to make the substantial assistance motion." United States v Benjamin, 138 F.3d 1069, 1074 (6th Cir. 1993). In such cases as this, the government is obligated to make the § 5K1.1 motion, unless it can be shown by a preponderance of the evidence that the defendant breached this agreement by not making the "good faith effort." ID.

In the instant matter defendant's counsel argued at sentencing that the defendant had attempted to cooperate with the government and that as a consequence of that cooperation the defendant was shot twice. [DE-188, p 8]. In addition, the court was further provided with a detailed account from the defendant as to several "deals" that were set up and ultimately fouled up by agents of the government.

The records in this case include transcripts of multiple conversations between the defendant and several drug dealers and the defendant and RENU case agent John Mercado. [Comp Ex-4]. These are in addition to numerous references in the court's file

documenting the defendant's shooting, including medical records.

The defendant raised the issue of the downward departure at sentencing including the shooting to which the government responded:

> "I became convinced that whatever happened to Mr. Rennick was basically caused by his inability to follow the requests and the guidance of the agents who were attempting to work with him." [DE-188, p 11].

The government went on to say it did not intend to make said motion.  Defendant contends that the government bargained away its "sole discretion" when it decided to induce the defendant's plea by promising a substantial reduction in sentence with a § 5K1.1 departure.  Defendant further contends that the government only refused to credit the defendant because doing so may have left the government with liability stemming from a registered confidential informant being shot while working with the government and its agent.

The plea agreement further argued that if the defendant subsequently refused to continue to cooperate by testifying, then the government could reverse the departure.  This language further suggests the government's obligation to make the motion.

The plea agreement is very ambiguous.  The inclusion of the "agrees to file;" "good faith effort to provide;" and "option to withdraw departure" clauses in this agreement distinguishes the instant agreement from the agreement in <u>United States v Head</u>, 927 F.2d 1361 (6th Cir.), cert denied, 502 U.S. 846, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991), in which the court determined the

government retained its discretion.  In this case the inclusion of
such mandatory language is inconsistent with the statement that the
U.S. Attorney has the sole discretion.

The "sole discretion" language is not entirely clear.  It
would be clearer, for example, to state that the government retains
the exclusive right to determine whether the defendant has "made
a good faith effort to provide substantial assistance."  As it is
currently phrased, the "sole discretion" language may be read as a
restatement of the fact that § 5K1.1 motions must originate with
the government, whether or not the government waives its discretion
to deny such motions.  There is ambiguity in the agreement as to
whether the government retained its discretion or bargained it
away.

The rules of construction of plea agreements dictate that the
agreement be interpreted to impose a binding obligation on the
government.  <u>Johnson</u> supra at 399 (holding  that ambiguities in
plea agreements are construed against the government); see also
<u>UNITED STATES v Houston</u>, 40 Fed. Appx. 139 (6th Cir. 2002)(unpub-
lished) holding that the government did not reserve discretion to
make 5K1.1 motions based on the use of discretionary and nondis-
cretionary language in the plea agreement creating an ambiguity.

While the government offered to have the court examine the
case agent, the court ultimately made no inquiry as to whether
the defendant had made "a good faith effort to provide substantial
assistance."

-31-

This is a case outside the mainstream in many ways.  The defendant is coerced and manipulated into pleading guilty to a crime he did not commit; as part of his inducement he is promised a downward 5K1.1 departure for nothing more than a good faith effort to provide substantial assistance; he establishes tape recorded conversations for drug purchases only to be thwarted by his case agent; he was shot twice while working for the same agent and then is denied the departure.  All of this then is combined with evidence suggesting the case agent, John Mercado, was involved in the shooting and the government contracting with a co-defendant to talk the defendant into pleading guilty (as set forth herein) and it leaves no doubt that something is vastly wrong.

This court has recognized that "fundamental fairness" requires the court to enforce promises made in a plea agreement that induces the defendant to plead guilty.  "Where a defendant fulfills his promise in entering a guilty plea, the prosecution is bound to fulfill any promise made in exchange."  Robinson, supra 613.

The defendant first raised these issues at sentencing when the defendant argued for a Downward Departure [DE-147] they were further raised in defendant's Motion to Reconsider [DE-149] and again his Motion to Withdraw Plea of Guilty [DE-162].  The 10th Circuit has adopted a general rule that the defendant need not raise his claim of breach at trial.  See United States v Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000).

The defendant was at the very least entitled to an evidentiary

-32-

hearing to determine the nature of the promises made and the extent
of the good faith effort to cooperate.  See <u>Pearcy v United States</u>,
31 F.3d 1341, 1345-46 (6th Cir. 1994); <u>United States v Watson</u>,
988 F.2d 544, 551-52 (5th Cir. 1993), see also <u>Blackledge v Allison</u>
431 U.S. 63, 76, 80-82 (1977) "allegation of breach entitles de-
fendant to an evidentiary hearing unless defendant's allegations
are "palpably incredible" or "patently frivolous or false."

The government at sentencing attempted to state the reason
they refused to move for the 5K1.1 reduction was because of fail-
ures on the defendant's part.  The government may now decide to
claim a breach by the defendant.  However, before the government
can decline to fulfill its own obligations under the plea agree-
ment, it must first prove by a preponderance of evidence that de-
fendant breached the agreement.  <u>United States v Lukse</u>, 286 F.3d
906, 913 (6th Cir. 2002).

In the instant matter the defendant entered into an agreement
to plead guilty. He did this not because he was guilty, but be-
cause he was manipulated into the plea by the government.  A major
part of his decision to plead was the government's promise to sub-
stantially reduce any sentence in return for his good faith effort
to help the government.  The defendant put forth that good faith
effort, got shot and nearly killed and the government ignored its
obligation.  AUSA Brichler honored an illegal deal with co-defen-
dant Elliot and refused to honor a lawful obligation to the defen-
dant.

Inasmuch as the government breached its written plea agreement with the defendant, the defendant should be relieved of his obligation and be allowed to withdraw his plea and be tried by a jury on the merits of the case.

### ISSUE IV

### DEFENDANT WAS DENIED HIS SUBSTANTIAL RIGHTS OF DUE PROCESS WHEN THE COURT ERRED BY DENYING HIS MOTION FOR DOWNWARD DEPARTURE, MOTION FOR RECONSIDERATION, AND MOTION TO WITHDRAW PLEA WITHOUT AN EVIDENTIARY HEARING ON THE FACTS, CIRCUMSTANCES, AND POINTS OF LAW

A.    DEFENDANT MADE A GOOD FAITH EFFORT TO COOPERATE.

Attached hereto is the defendant's Sworn Declaration concerning his good faith effort to cooperate with the government.  Defendant incorporates the statements in said Declaration as though they were set out herein.  [Exhibit 3D    ]. See also AFFIDAVIT of Anthony Battle [Ex 3E]

It is clear from defendant's declaration that this instant matter is far removed from the heartland of cases considered by the U.S. Sentencing Commission or Congress' intent in creating downward departures for providing substantial assistance to law enforcement.  In the case at bar, the defendant established verifiable contact with two separate drug dealers.  In both cases the deals collapsed through no fault of the defendant.  Most important are the tape recordings which fully support defendant's position

and claims.  [Comp Ex-4] .

The use of confidential informants is the mainstay of today's
law enforcement, and to some large degree is responsible for most
successful prosecutions, but this one fell apart and in the end
nearly killed the defendant.  No one wants to address this issue
and that is understandable since publicity that an informant got
shot would impede many from agreeing to participate and when one
adds the factor of the case agent being involved in the shooting
it quickly becomes a prime candidate for cover-up.

The defendant agreed to cooperate and put forth much more ef-
fort than most.  Agent Mercado failed.  He didn't assist the defen-
dant in the least, he pulled the plug each time a close was in
sight, and an independent eye witness has now identified John
Mercado as one of the two men leaving the rear of defendant's ware-
house where the defendant laid shot and bleeding in the front par-
king lot.

The U.S. Sentencing Guidelines (USSG) list items to be con-
sidered when evaluating a 5K1.1 departure: "(4) any injury suf-
fered, or any danger or risk of injuries to the defendant or his
family resulting from his assistance."  U.S.S.G. § 5K1.1(a)(5).

In re Sealed Case No. 97-3112, 181 F.3d 128, 142 (DC 1999)
(en banc) "although court normally lacks the authority to depart
from Sentencing Guidelines on the basis of defendant's cooperation
absent prosecutorial motion, if cooperation was pursuant to plea
agreement and government's refusal to file a motion is attributed

-35-

bad faith or other breach of the agreement the court may grant re-
lief.  See <u>United States v Overstreet</u>, 51 Fed Appx 838, 841 (10th
Cir. 2002).  When the defendant contends that the government's
failure violates the plea agreement the court <u>must</u> determine whe-
ther the government came to the decision to not file the motion in
good faith <u>ID</u> at 842 (citing <u>United States v Cerrato-Reyes</u>, 176
F.3d 1253, 1264 (10th Cir. 1999)).

    This circuit has stated where a condition of the plea agree-
ment is that the government will file for downward departure if
the defendant provides substantial assistance and the filing of
that motion is, therefore, not solely within the government's dis-
cretion, the defendant is not limited solely to arguing unconsti-
tutional motives to challenge the failure to file such a motion.
<u>United States v Williams</u>, 176 F.3d 301 (6th Cir. 1999).  A defen-
dant is entitled to an evidentiary hearing on the issue of whether
the departure motion should have been filed and should be granted.
<u>United States v Wolf</u>, 270 F.3d 1188, 1190 (8th Cir. 2001)(citing
<u>Wade v United States</u>, 504 U.S. 181, 186 (1992)).

ISSUE V

<u>DEFENDANT WAS DENIED HIS RIGHT TO DIRECT</u>
<u>APPEAL WHEN THE COURT CLERK FAILED TO FILE</u>
<u>DEFENDANT'S NOTICE OF APPEAL AS DIRECTED</u>

    The record indicates the defendant expressed his desire to
appeal his sentence and his request that the court clerk file the

-36-

notice of appeal [DE-188 at 19-20]. The clerk failed to file said notice and ultimately appellate counsel also failed to do same. The defendant filed a motion seeking reinstatement of direct appeal right [DE-191]. The court denied said request to the extent it lacked the authority subject to Fed Rules of Criminal Procedure or Rule 4(b) of the Federal Rules of Appellate Procedure.

The court suggests that if defendant can demonstrate "that his constitutional rights were violated, then this court must vacate the judgement against Petitioner and reimpose his sentence so that Petitioner can file a timely appeal." <u>United States v Hirsch</u> 207 F.3d 928 (7th Cir. 2000) at 931.

The defendant submits that in order to use this method he was nevertheless required to bring forth all issues for relief to avoid foreclosure of same in the future. The defendant acknowledges that all matters desired to be appealed are set forth herein. In the event the court should deny relief on the matters herein, the defendant requests his sentence to be vacated and reimposed so that he may then have a direct appeal.

## CONCLUSION

This case is far removed from the heartland of most cases. An innocent defendant with certain mental problems is manipulated to enter a guilty plea. He then is commissioned as a Confidential Informant to work with drug enforcement agents in the purchase of large quantities of drugs. Defendant is allowed to get himself

-37-

into a transaction for over a million dollars only to find agents
unwilling to complete the deal, leaving the defendant on a limb
with no net.

If this were not enough the defendant is shot twice by some-
one connected to the deal. Defendant identifies the shooter's
voice as being the same voice on recorded threat calls, but there's
more; defendant recognizes the second voice at the shooting as De-
tective John Mercado. The very case agent on this case is seen by
a witness leaving the scene of the crime. More remarkably, this
same agent shows up at the emergency room less than twenty minutes
after the shooting with no explanation as to how he knew the defen-
dant was shot, let alone where he was taken.

The defendant contends his plea was neither willing nor know-
ing, and his sentence devoid of any mitigating consideration.
Steve Rennick is simply not guilty and never was. He had informed
the court prior to sentencing that he was not guilty and certainly
the court knew of his claims of innocence before the imposition of
the sentence and, perhaps, should have vacated the plea at that
time.

The defendant prays this court to vacate his sentence in this
matter and further to allow the defendant to withdraw his plea and
stand trial on the merits. Defendant Steve Rennick is an honored
veteran, businessman, father, and grandfather, who stands convic-
ted for matters he did not know about and did not do. The govern-
ment obtained this conviction by deceit and manipulation and the

-38-

defendant only seeks his right to be legally tried on these untrue allegations.

Further defendant saith naught.

Respectfully submitted,

Steve Rennick, Sr.
#04050-032  HCU
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

-39-

## CERTIFICATE OF SERVICE

I certify that the above true and correct Memorandum In
Support of Motion to Vacate pursuant to 28 USC Section 2255 was
provided to the Clerk of the Court at the address below.  I
further certify tht I sent one original with two true copies
pursuant to 28 foll. 2255 Rule 3(A) and I understand the Clerk
is to serve the United States pursuant to 28 USC Section 2255
Rule 3(B).  All copies deposited, postage prepaid, into the
prison mail service on this, the __20__ day of January 2005.

Clerk of the Court
U.S. District Court
Southern District of Ohio
100 East Fifth Street
Cincinnati, OH 45202

Steve Rennick, Sr.
#04050-032   HCU
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512