```
 1            Mercado.
 2                  (Witness sworn.)
 3               OFFICER JOHN MERCADO
 4   Having been first duly sworn, was examined and
 5   testified as follows:
 6               DIRECT EXAMINATION
 7   BY MR. ARNOLD:
 8        Q.    Good morning, sir.  Would you state
 9   your name and spell your last name for the record?
10        A.    John Mercado, last name spelled
11   M-e-r-c-a-d-o.
12        Q.    And you're a Cincinnati Police
13   officer?
14        A.    Yes.
15        Q.    How were you assigned on the 16th of
16   October, 2002?
17        A.    I was assigned to the Regional
18   Narcotics Unit.
19        Q.    Did you have occasion to be involved
20   in the search, execution of a search warrant at
21   1975 West North Bend Road?
22        A.    Yes.
23        Q.    And tell the Court what your role was
24   in obtaining this search warrant.
25        A.    I was assigned as a case agent on an
```

1 investigation. I was conducting that, led to
2 several arrests, and subsequently those arrests on
3 the -- October the 15th, I gained enough
4 information to fill out an affidavit requesting
5 the search of the location in question, and served
6 signed affidavit and search warrant on the 15th
7 from Judge Winkler.
8      Q.   Okay. On that execution did you get
9 the warrant on the 15th or 16th, if you recall?
10      A.   On the 16th.
11      Q.   Okay. Was that warrant subsequently
12 executed on North Bend Road?
13      A.   Yes, sir.
14      Q.   Did you participate in the search
15 that followed?
16      A.   I was present during most of the
17 search.
18      Q.   Can you describe the facility on
19 North Bend Road for us?
20      A.   It's a kind of large warehouse, has
21 several divided sections in it with garage bays.
22 Got a large entrance that faces north which has an
23 extra-large size door that would allow access for
24 a tractor-trailer.
25      Q.   I want to direct your attention to

1   the vehicle involved here; is that the vehicle
2   that you're referring to?
3       A.   Yes.
4       Q.   Okay, and what else was recovered
5   during the search execution of that warrant?
6       A.   Numerous boxes containing marijuana
7   that were within a small storage room within the
8   bay.
9            There was a also documentation and
10  other items that were taken of evidence.
11      Q.   Okay, and approximately how much
12  marijuana was recovered from the premises?
13      A.   Close to 500 pounds.
14      Q.   You testified that this was an
15  ongoing investigation, that you had interviewed
16  subjects the day before; is that correct?
17      A.   Yes.
18      Q.   Was one of those individuals Eddie
19  Moore?
20      A.   Yes.
21      Q.   Did Mr. Moore have any -- provide you
22  with any information concerning activities on
23  North Bend Road on the 15th?
24      A.   Yes.
25      Q.   And when did you interview him?

```
 1        A.    15th.
 2        Q.    Okay. When did he report to you that
 3   he saw certain things occur on the --
 4              MR. SIRKEN:  Objection.  It's
 5        hearsay.
 6              THE COURT:  Why isn't it hearsay, Mr.
 7        Arnold?
 8              MR. ARNOLD:  Your Honor, I haven't --
 9        I haven't asked him anything.  I'm just
10        asking if he made statements to him.
11        That's not hearsay yet.  We'll get to that.
12              THE COURT:  All right.
13        Q.    Did Mr. Moore make statements to you
14   concerning events which occurred on the 15th?
15        A.    Yes.
16        Q.    All right, and how relatively long
17   after he perceived them was this?
18              MR. SIRKEN:  Objection.
19              THE COURT:  I'll let him answer.
20        A.    Repeat, please.
21        Q.    How long after -- how long did you
22   wait from the time you interviewed him until the
23   time he actually saw the activity he reported to
24   you?
25        A.    It all happened within a day.
```

```
1         Q.    Okay.  What information did Mr. Moore
2    provide as to the activities on the 15th at 1975
3    --
4              MS. FARLEY:  Objection.
5              MR. SIRKEN:  Objection.
6         Q.    -- North Bend --
7              MR. ARNOLD:  Let me rephrase that.
8         Q.    What did Mr. Moore tell you that he
9    saw on the 15th --
10             MR. SIRKEN:  Objection.
11        Q.    -- on North Bend Road?
12             MS. FARLEY:  Objection.  The same
13   objection.
14             MR. ARNOLD:  I understand, Your
15   Honor, that under Rule 801 -- I'm sorry,
16   803017, Judge, it relates to conspiracy,
17   establishment of a conspiracy, precise
18   impression.
19             MR. SIRKEN:  We have no ability to
20   cross-examine Crawford.  We have no ability
21   to cross-examine this Mr. Moore.
22             MR. ARNOLD:  This is not a criminal
23   case, Your Honor.
24             MR. SIRKEN:  It doesn't make any
25   difference.  Rules of evidence apply in
```

1  both civil and criminal matters.
2  THE COURT: I know. Objection
3  sustained.
4  MR. ARNOLD: No further questions.
5  THE COURT: Cross-examine.
6  CROSS-EXAMINATION
7  BY MR. SIRKEN:
8  Q. Officer Mercado, how many trucks were
9  on the premises that day that you got there on
10 October 16?
11 A. Of this type? There were many
12 vehicles.
13 Q. How many trucks were there on that
14 day?
15 A. I did not count how many trucks there
16 were.
17 Q. There obviously was more than one?
18 A. Well, on the property, yes. Within
19 the building, no.
20 Q. Within the property that you entered
21 on that date, not in the warehouse, but in that
22 location, how many vehicles were there?
23 A. Once again, I don't know. I did not
24 count all of them.
25 Q. There was more than one?

1    A.    Yes, sir.
2    Q.    Did you ever observe that
3 Freight-liner that we're talking about, did you
4 ever observe that in transit?
5    A.    No, I did not.
6    Q.    Did you see it come onto the
7 premises?
8    A.    Again, I did not see it in transit,
9 so I did not see it come onto the premises.
10    Q.    So you have no personal knowledge,
11 you never saw anything that was on that or in that
12 -- in that particular Freight-liner; is that
13 correct? What was inside that Freight-liner, did
14 you observe any marijuana inside that
15 Freight-liner?
16    A.    No, I did not.
17    MR. SIRKEN:    I have no further
18    questions.
19    THE COURT:    Anything else?
20    MR. ARNOLD:    Nothing further, sir.
21    MR. COHEN:    I do have some questions.
22    CROSS-EXAMINATION
23 BY MR. COHEN:
24    Q.    Officer Mercado, during the course of
25 this investigation and search are you aware

```
 1   narcotics dogs were placed inside that
 2   Freight-liner to search for contraband?
 3        A.   I don't recall that specifically.
 4             THE COURT: I need to get a
 5   clarification. We're talking about a
 6   Freight-liner, which is actually the cab
 7   portion of a tractor trailer?
 8             MR. ARNOLD: That's correct.
 9             THE WITNESS: That's correct.
10             THE COURT: We're not talking about
11   the trailer part, talking about the cab
12   part?
13             MR. COHEN: It's the part the trailer
14   is attached to.
15             THE COURT: Okay. I just wanted to
16   find out. I didn't know. Okay, go ahead.
17        Q.   So, best of your knowledge, no
18   contraband was found within that trailer -- I
19   mean, within that Freight-liner; is that correct?
20        A.   That's correct.
21        Q.   And that trailer -- or that
22   Freight-liner is still out at the impound lot out
23   on Hamilton Avenue?
24        A.   My last knowledge of it, I mean, it's
25   still there. I do believe that's correct.
```

1   Q. Was there any evidence that a trailer
2   had been hooked up on that tractor?
3   A. Our investigation had nothing to do
4   with the trailer, nor did -- not that I know of,
5   no, not -- not as it involved our investigation.
6   Q. Your investigation and the indictment
7   and further discovery provided in that case, the
8   allegation was that Mr. Rennick, in the company of
9   others, transported a little over 500 pounds of
10  marijuana in that truck; correct?
11  A. In the truck, correct, having nothing
12  to do with the trailer.
13  Q. All right. And you've never been
14  able to discover, been able to provide any
15  evidence that indeed any type of contraband which
16  would relate to narcotic transportation was ever
17  discovered within that vehicle; correct?
18  A. We did not recover the marijuana from
19  the vehicle.
20  Q. Because there never was any marijuana
21  in that vehicle?
22          MR. ARNOLD: Objection.
23          THE COURT: Well --
24          MR. COHEN: Strike that.
25          THE COURT: Well, actually, you may

```
 1          answer.
 2          A.    According to what the -- the defense
 3    attorney said right now, it's incorrect.
 4                Our investigation shows that there
 5    was marijuana within that vehicle.
 6                MR. SIRKEN:  I object to that, unless
 7          that officer was the one that conducted
 8          that particular investigation.
 9                THE COURT:  Just ask the officer if
10          he has any knowledge that it was or wasn't
11          there, personal knowledge.
12                MR. ARNOLD:  Your Honor, he's opened
13          the door at this point by his own
14          questions.
15                THE COURT:  Well, I want this officer
16          to testify from his personal knowledge.  Do
17          you have any personal knowledge that there
18          was contraband in this tractor?
19                THE WITNESS:  If I may, Judge, I did
20          not personally see marijuana within the
21          vehicle, if that's the answer to Your
22          Honor's question.
23                And to answer the defense attorney's
24          question, as to whether there was ever
25          marijuana within that vehicle, my interview
```

```
 1           of numerous subjects of the investigation
 2           --
 3               MR. SIRKEN:  Objection to anything
 4           about interviews of other people.
 5               THE WITNESS:  I'm merely answering
 6           the defense attorney's question.
 7               MR. SIRKEN:  I object to interviews
 8           of separate parties.
 9               THE COURT:  Right, yes.  I want this
10           witness to testify from his own personal
11           knowledge and he's already answered the
12           question.
13               THE WITNESS:  Thank you, Your Honor.
14           Q.   Officer Mercado, did you ever search
15      that vehicle?
16           A.   I didn't conduct the initial search
17      of the vehicle.  I have been in it.
18           Q.   Inside of the vehicle?
19           A.   Yes.
20           Q.   Was there a strong smell of marijuana
21      within that vehicle when you searched it?
22           A.   At the time that I searched the
23      vehicle I did not smell marijuana.  But it was
24      later to the date that we seized it.
25               MR. COHEN:  Thank you.  I have no
```

1       further questions.
2               THE COURT:  Any questions, counselor?
3               MS. FARLEY:  Very briefly, Your
4       Honor.
5                       CROSS-EXAMINATION
6   BY MS. FARLEY:
7       Q.   You stated that the marijuana was
8   discovered in a storage room in the facility?
9       A.   Yes.
10      Q.   Okay.  Was that in Section A or
11  Section B of 1975?
12      A.   I -- I don't know how the sections
13  are categorized.
14      Q.   So you don't know whether it was in
15  the section of the building occupied and used by
16  Mr. Rennick or by the tenants?
17      A.   My personal experience with Mr.
18  Rennick, Mr. Rennick occupies and uses the entire
19  building.
20           Keys to the storage facility where
21  the marijuana was recovered where obtained from
22  Mr. Rennick.
23      Q.   He's the landlord?
24      A.   As far as I'm concerned, my
25  investigation showed him as the owner of the

```
 1    building and the property within the building.
 2              MS. FARLEY:  Okay.  Nothing further.
 3              THE COURT:  Anything else, Mr.
 4    Arnold?
 5              MR. ARNOLD:  Not at this time.
 6              THE COURT:  All right.  You may step
 7    down.
 8              MR. ARNOLD:  Call officer Conners.
 9              (Witness sworn.)
10              OFFICER CHRIS CONNERS
11    Having been first duly sworn, was examined and
12    testified as follows:
13              DIRECT EXAMINATION
14    BY MR. ARNOLD:
15         Q.   Sir, would you please state your name
16    and spell your last name, give us your duty
17    assignment for the record?
18         A.   Chris Conners, C-o-n-n-e-r-s,
19    Cincinnati Police Sergeant, assigned to District
20    One.
21         Q.   Okay.  And directing your attention
22    to on or about 16 October 2002, how were you
23    assigned?
24         A.   I was assigned as an investigator
25    with the Regional Narcotics Unit.
```