UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff/Respondent, | Case No. 1:02-CR-157 SJD |
| vs | Hon. Susan J. Dlott |
| STEVE RENNICK, SR., | U.S. District Judge |
| Defendant/Movant | |

MOTION FOR RELEASE ON BOND

PENDING APPEAL

Comes the defendant, Steve Rennick, Sr., pro se, and respectfully moves this court for an Order releasing defendant on bail or bond pending his appeal now filed and pending before the United States Court of Appeals for the Sixth Circuit (hereinafter "Sixth Circuit").

As a preliminary matter, the defendant avers that he is not an attorney; has no legal or professional training pertaining to the preparation and filing of legal motions or memorandums. The defendant seeks notice of such limitations and prays this court to construe his pleadings liberally in light of the Supreme Court holding in Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652 (1972); Cruz v. Beto, 405 U.S. 319 (1972); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Hill v. U.S., 368 U.S. 424, 430 (1962). The

allegations and averments in a pro se pleading must be taken as true and construed in favor of the defendant. See <u>Malone v. Colyer,</u> 710 F.2d 258, 260 (6th Cir. 1983).

RELEVANT HISTORY

On October 28, 2002, a federal arrest warrant was issued for the defendant's arrest for drug trafficking crimes. On November 1, 2002, a grand jury returned an indictment charging the defendant with multiple counts including, inter alia, Conspiracy to Distribute in excess of 100 kilograms of marijuana in violation of 21 USC § 846, 841(a)(1) and (b)(1)(B). Inasmuch as this count is the only one pled to, the remaining counts were dismissed.

On August 18, 2003, defendant entered a plea of guilty pursuant to a written plea agreement. (It is relevant to note that the date of the plea was to have been the first trial date, only as discussed, infra, the defendant was persuaded at the last minute to enter a plea).

On October 27, 2003, the PreSentence Report (PSR) was filed with the court and delivered to the defendant. On November 7, 2003, while working as a confidential informant, the defendant was shot twice; once in the shoulder and once in the leg. This crime remains unsolved. The defendant's sentencing was delayed many times in consideration of the defendant's medical condition and treatment.

The defendant was sentenced to a 63 month term of imprisonment on January 28, 2004. The defendant was allowed to remain

free on bond until self-surrender. The self-surrender to the Federal Medical Center in Lexington, Kentucky, on May 28, 2004.

The defendant was released from detention on October 28, 2002, on a $134,000 Property Bond and was under the supervision of the United States Pretrial Services Office and complied with all conditions of release.

At sentencing the defendant, by counsel, requested the Clerk of the Court to file a notice of appeal which was never done. On January 5, 2005, the defendant filed a motion pursuant to 28 USC § 2255, requesting the court to vacate present sentence and resentence the defendant to the same term so a timely notice of appeal might be filed. The government also concurred that the defendant was improperly denied appellate rights. On            the defendant was resentenced and on           a timely notice of appeal was filed.

The defendant, by his appeal, challenges his plea as being unknowing and in voluntary and being the product of the gross ineffectiveness and deliberate fraud and deception of his private trial counsel. The defendant steadfastly maintains his absolute, unconditional innocence and, but for the actions of defense counsel, no plea would have been entered by the defendant in this matter. The defendant further submits that the manner in which he was sentenced is violative of his 5th and 6th Amendment Rights under the U.S. Constitution.

## STANDARD FOR ISSUANCE OF
## BOND PENDING APPEAL

In deciding whether or not a defendant should be granted bail or bond pending appeal is found in 18 USC § 3143 (b)(1), which states:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal... be detained, unless the judicial officer finds:
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(h) [release on personal recognizance or unsecured appearance bond] or (c) [release on conditions] of this title; and
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in:
> > > (i) reversal
> > > (ii) an order for new trial
> > > (iii) a sentence that does not include a term of imprisonment, or,
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 USC § 3143(b)91)(A) and (B). Section 3143(b) was enacted primarily to reverse the presumption in favor of bail under the Bail Reform Act of 1966. See <u>United States v. Bilanzich</u>, 771 F.2d 292 (7th Cir. 1985); <u>United States v. Malquist</u>, 619 F.Supp. 875, 878 (D.Mont. 1985).

The defendant readily acknowledges that congress in particularly the Senate Judiciary stated; "i]t is this presumption [of

bail] that the Committee wishes to eliminate in Section 3143." S.Rep. No. 225, 9th Cong. 2d Sess. 26-27, reprinted in, 1984 U.S. Code Cong. & Admin. News 3182, 3209, 3210.

While Congress desired to switch the presumption from one of bail to one of detention; Congress did not attempt to eliminate the principles and procedures set out in § 3143. Whenever the government argues against a bond pending appeal they generally rely, at least somewhat, on Belanzich, supra, and this reliance is misplaced.

The first and most significant finding for any question of bond is the requirements of 18 USC § 3143(b)(1)(A) and deals with two traditional issues: (1) Will the defendant flee or appear as directed, and (2) does his release pose a danger to the safety of any other person or the community. Regardless of all other requirements, these are the most significant elements and, without a proper response to these issues, no one need address any others.

This court originally released the defendant on October 28, 2002, on a $134,000 property bond. The defendant complied with all conditions of the release; was signed up as a confidential informand; got shot while assisting the government and ultimately self-surrendered to the Federal Medical Center in Lexington, KY, on May 28, 2004. The defendant's 19 months on bond without incident speak affirmatively toward the defendant not being a flight risk, or a danger.

The defendant is a lifelong resident of the local community,

he has been married for 37 years, has four (4) children and four (4) grandchildren as well as his mother and three (3) sisters and brother, who are all within the local community. The defendant's son operates a local trucking company where the defendant sometimes assists and the defendant has a racing company which uses racing events to promote children and educational programs.

Additionally, the defendant is an active member of the local community. He has been a supporting member of the St. John Newman Church for over twenty years. He and his family's business donate the commercial facilities and manpower for the Child-Seat Program in conjunction with Children's Hospital. The defendant is an annual sponsor of St. Richard's Church Festival and provides trucks to transport children in the College Hill Day events.

In addition to this regular sponsorships the defendant also responds to crisis within our community. When the Cincinnati Zoo faced a dirt side collapse, the defendant and his associates donated $80,000 to $100,000 dollars in excavation and hauling services. The defendant's daughter is a teacher at Hamilton City School, and when a building burned there the defendant donated the destruction of the building and its removal, re-excavation, and left the school with an appropriate play and park area.

This defendant has very strong and deep ties to this community and these ties alone suggest this defendant is not a flight risk. Even while incarcerated the last fourteen months his closeness to family includes daily call and letters and the defendant

never fails to take advantage of all six allowed monthly visits, often with the maximum of five or six visitors at one time. It is certain that the love and support of his entire family would preclude even the remotest notion of the defendant being a flight risk or a danger to anyone.

The defendant has no history of violence or causing harm to anyone. While arguably the alleged crime of dealing with marijuana is a seriously negative impact upon society; the defendant steadfastly argues his innocence in his appeal and feels the totality of his personal history mitigates in favor of bond.

The defendant in his appeal presents several substantial questions of law as discussed infra. This appeal is clearly not for the purpose of delay nor intended to harrass or prejudice any party. The substantial questions of law or fact are likely to result in reversal; an order for a new trial; a sentence that does not include a term of imprisonment; or a reduced sentence to a term of imprisonment less than the total of the time served plus the expected duration of the appeal process.

On the appeal the defendant argues, inter alia: (1) that he is in fact actually innocent of the crimes with which he is now charged. He will show not only actual innocence, but factual innocence as well; (2) he will demonstrate that his plea was <u>not</u> entered knowingly or voluntarily and that he was coerced and mentally and emotionally manipulated into entering a plea that was in fact not true and that illegal and improper tactics were used

to cause the defendant to answer questions falsely during the plea colloquy; (3) that the plea was a product of the ineffectiveness of trial counsel and a complete breakdown of counsel's obligations and ethics concerning the defendant's representation; (4) that certain methods in determining drug quantities and mandatory minimums were violative of the defendant's 5th and 6th Amendment Rights set forth in Blakely v. Washington, 124 S.ct. 2531 (2004) and applied to federal defendant's in United States v. Booker, 125 S.Ct. 738 (2005) and, further, that said new holdings could produce a sentence of less time than the defendant has already served.

The seminal decision of this court concerning bail pending appeal is United States v. Handy, 761 F.2d 1279 (9th Cir. 1985), in which it was held that a "substantial question of law or fact" is one that is "fairly debatable," D'Aquino v. United States, 180 F.2d at 272; accord Barefoot v. Estelle, 103 S.Ct. at 3394 n.4, or "fairly doubtful," United States v. Miller, 753 F.2d at 23. In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous." United States v. Giancola, 754 F.2d at 901; accord Barefoot, supra, at 3394; Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977).

The defendant submits his arguments, including those based on the Supreme Court decisions in Blakely/Booker, supra, set forth a substantial question that is fairly debatable and is not frivolous. In addition, the defendant argues on direct appeal that the 5th Amendment violation of determining drug quantity by a

preponderance of the evidence is structural error and as such is per se reversible.

Reasonable jurists now debate whether the failure to find the errors brought forth were structural errors requiring reversal were correct and, therefore, result in a different outcome.

The Sixth Circuit recently held in U.S. v. Barnett, 398 F.3d 516, 531 (6th Cir. 2005) that a Booker violation was plain error. The court wisely identified a "structural error" analysis and approach to the issue, thus presuming prejudice. See; U.S. v. Segines, 17 F.3d 847 (6th Cir. 1994) and; Manning v. Huffman, 269 F.3d 720 (6th Cir. 2001). The Sixth Circuit, along with the Seventh (U.S. v. Paladino, No. 03-2296 (7th Cir. 2-25-05)) and the Fourth Circuit in U.S. v. Hughes, No. 03-4172 (4th Cir. 3-16-05) (en banc) have held that sentencing under the pre-Booker mandatory guideline scheme affected the substantial rights of defendants and was plain error regardless of whether the defendant raised the objection previously at trial. Further, the concensus of these courts is that the defendant does not have to show prejudice, thus clearly implicating the structural nature of the constitutional error and as justice dictates, the sentence must be vacated.

The defendant will fully brief structural error in his brief. While reasonable jurists in the Sixth Circuit have found these errors to be "structural errors," other jurists disagree. The 11th Circuit is in total conflict, not only with the Sixth Circuit, but within its own appellate jurists. This deep rift between the

11th Circuit judges is evident in United States v. Rodriguez, No. 04-12676 (11th Cir. April 19, 2005) (en banc denied).

In this in-depth opinion Judge Carnes and Judge Tjoflat (both reasonable jurists) do agree on one factor; that the last case declared "structural error" by the Supreme Court was Sullivan v. Louisiana, 508 U.S. 275 (1993) in which the issue was the Fifth Amendment violation of a lesser standard of the "beyond a reasonable doubt" being utilized in jury instructions to convict a defendant. Similarly, as well explained by Judge Tjoflat, it is as much structural error to sentence a defendant on facts not found by a jury under the mere preponderance standard of proof.

Judge Carnes attempts to strengthen his opinion by citing the dissent in Barnett, supra, of Chief Judge Boggs against the structural error in which the minority in that opinion had clearly held to have occurred. What is truly shocking is Judge Carnes statement that; "[O]ur legal system does not simply require that the government comply with the constitution." This thought shocks the conscience.

Judge Tjoflat's opinion, however, did not address the Fifth Amendment violations beyond stating the Booker violation (mandatory versus advisory guidelines) in conjunction with the jury trial violation. Simply put, no court has adequately analyzed the lower standard of proof used by judges in the pre-Booker scheme. It is neatly summed up in this stinging dissent opinion by Judge Tjoflat in holding that "our rule will condemn some unknown

fraction of criminal defendants to serve an illegal sentence" (quoting United States v. Paladino, 401 F.3d 471, 484 (7th Cir. 2005)) and further that, "[A]t a minimum, we know that his sentence was imposed in an unconstitutional manner." Rodriguez Op at 80.  There can be no doubt whatsoever that the defendant in this case was given an illegal sentence which was determined in an unconstitutional manner, violating his Fifth and Sixth Amendment rights.

The defendant raises a number of substantial claims on appeal and clearly many of them meet the criteria to satisfy USC § 3143.  The defendant is not required to prove the outcome of the appeal, but only demonstrate the existence of a substantial and non-frivolous claim, which clearly applies to defendant's claims.

Steve Rennick, Sr. has some serious medical issues that are not being treated or managed properly.  These problems are well documented and include both mental and physical conditions.  The defendant continues to experience effects from the two gunshot wounds received while assisting the government as a registered informant.  In addition to pain and difficulty in some mobility, he is also experiencing some effects from a bullet becomes released from the bone and moving toward the skin's surface.  The shoulder bullet is now a fully defined lump just below the skin that provides pain and irritation.

The defendant further suffers from a blood coagulation problem requiring the constant use and monitoring of coumadin based

blood thinners. The prison fails to conduct the recommended weekly testing and the defendant sufferes from a constant cycle of too much and then too little medication. This is a life threatening problem.

As this court is fully aware, the defendant suffers from a variety of mental problems including post-traumatic stress disorder resulting from his service to his country in Vietnam. During the period of time of the proceedings in this matter the defendant was under regular in and out patient care of the Veterans Administration, where he met all of the criteria for the "mental health Intensive Care Management" (MHICM). Defendant's diagnosis included "Diagnosis of severe and persistent mental illness <u>includes</u>, but is not limited to: schizophrenia, bipolar disorder, major affective disorder or severe post-traumatic stress disorder." [VA medical records p. 76].

The defendant's medical needs are not properly addressed by the Bureau of Prisons. The defendant's physical health is woefully under managed and, despite the fact that there is ample documentation concerning his mental emotional problems and the intensive treatment he was undergoign at the time of his incarceration, the defendant is receiving no care for his most serious problems.

If the defendant was placed on bond, pending appeal, he would be able to obtain proper care at his own expense and proceed further in developing some resolution to the significant problems.

On appeal the defendant also raises a substantial matter of

fact in that his attorney failed to explore a credible defense of diminished capacity. While the defendant is in fact actually innocent of the crime with which he is charged; he nevertheless also was, and is, in a state of diminished capacity and was not effectively able to assist in his own defense. The defendant's diminished capacity contributed to the fact that others were able to persuade him to forego a trial and enter what he was told was a "fictional plea" to matters he knew were untrue. There is established case law that states that a counsel's failure to investigate diminished capacity is not a discretionary tactical decision when it is likely an appropriate issue. Beavers v. Balkcom, 636 F.2d 114 (5th Cir. 1981).

> "to do no investigation at all on an issue that not only implicates the accused's defense, but also his present competency, is not a tactical decision. Tactical decisions must be made in context of a reasonable amount of investigation, not in a vacuum.... It must be a very rare circumstance indeed where a decision not to investigate would be reasonable after [as in this case] counsel has notice of his client's history of mental problems."

Bouchillon v. Collins, 907 F.2d 589 (5th Cir. 1990), counsel who fails to investigate [diminished capacity] may be guilty of an appalling lack of professionalism and has rendered ineffective assistance. Id.

In this matter not only was counsel aware of the defendant's problems, but so was the court and counsel for the government. The defendant's severe PTSD has caused many issues, including that of leaving the defendant where he seeks approval and acceptance to

such a degree that nearly precludes him from saying no. Simply put, he is easy to manipulate and talk into decisions, often to his own detriment. This is precisely how he was pled into an untrue plea.

This issue alone will very likely result in reversing his conviction and remanding back for further proceedings. It bears repeating that defendant bears the burden only to show a likelihood of success on appeal, not a certainty, and the defendant has clearly so met that burden herein.

## SUPPLEMENTAL HARDSHIP ADDENDUM

Since the original preparation of this Appeal Bond Motion, our country was devasted by the damage from Hurricane Katrina on our Gulf Coast. Talks arose between the Rennick family business, Earth Management, Inc., and the Federal Emergency Management Agency (FEMA). It seems FEMA is needing trucks and heavy equipment and manpower to provide services in the devasted areas in Mississippi, Alabama, and Louisiana. Earth Management is willing to assist, but could only do so if the defendant were released on bond and available to supervise a small contingent of employees left here in Cincinnati who could fulfill the companies local obligations.

The defendant is the person who built the family business and is more than capable of filling this role in order to assist in the initiatives that Presiden Bush called the greatest challenge

to our country.

The defendant admits this is not a normal type of hardship request, but does feel the circumstances of his case are such that could warrant some special considerations. Allowing the defendant to be free on bond will allow his son's business to assist without rendering employees here unemployed. It also allows the local business to continue to serve the community here.

Finally, this responsibility insures the defendant stay in the community and provides him stable employment. The defendant wants to be very clear, this supplemental reason for bond would never be adequate as the sole basis for the court's decision, but is only to be viewed as additional support for the granting of defendant's release on bond pending appeal.

## SUMMARY

Defendant Rennick was charged and arrested for allegedly hauling marijuana from Arizona to Ohio in his new Freightliner semi-tractor. He knew he had not done so, and recently a Hamilton County judge agreed that no evidence exists that marijuana was transported in said truck. Mr. Rennick had more proof of his innocence than the government ever had of his guilt. On the day of the trial, the defendant arrived believing a jury would be selected and a trial commenced. Instead, two lawyers, a co-defendant and a prosecutor convinced him to enter a plea to something he did not do. The pressure on the defendant allowed him to lie to the

court in his colloquy and by doing so justice was denied. Adding insult to injury, yet another attorney failed to preserve defendant's direct appeal rights and the defendant has spent months of incarceration while litigating just to regain his appeal.

The defendant is entitled, as a matter of law, to be released on bond pending the outcome of a most legitimate direct appeal. The defendant is neither a flight risk nor a danger to the community and there is more than a reasonable possibility that he will prevail on appeal. The defendant is amenable to any terms or conditions of release the court deems appropriate and he prays for his release on bond pending appeal at this court's earliest convenience.

Respectfully submitted,

*Steve Rennick Sr*
Steve Rennick, Sr.
#04050-032  HCU
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

## CERTIFICATE OF SERVICE

In hereby certify that a copy of the foregoing was served upon Robert C. Brichler, Assistant United States Attorney, by U.S. Mail, postage prepaid on October 25, 2005.

W. Kelly Johnson