FILED
JAMES BONINI
CLERK

05 DEC 12 AM 9:33

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| STEVEN M. RENNICK, SR., | ) |
| Petitioner/Defendant, | ) Case No. CR-1-02-157 |
| vs | ) Hon. Susan J. Dlott |
| UNITED STATES OF AMERICA, | ) U.S. District Judge |
| Respondent, | ) |

MOTION FOR CLARIFICATION OF STATUS

Comes now Steven M. Rennick, Sr., pro se, and does move this court for clarification of status of pending matters and in support thereof does state as follows:

PRELIMINARY STATEMENT

As a preliminary matter, the defendant avers that he is not an attorney; has no legal or professional training pertaining to the preparation and filing of legal motions or memorandums. The defendant seeks notice of such limitations and prays this court to construe his pleadings liberally in light of the Supreme Court holding in Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652 (1972); Cruz v. Beto, 405 U.S. 319 (1972); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Hill v. U.S. 368 U.S. 424, 430 (1962). The allegations and averments in a pro se pleading must be taken

as true and construed in favor of the defendant. See <u>Malone v. Colyer</u>, 710 F.2d 258, 260 (6th Cir. 1983).

## RELEVANT HISTORY

On August 19, 2003, the defendant entered into a plea pursuant to a plea agreement [DE-103] to Count 1 of a Superseding Indictment. As discussed, infra, defendant believed, based on representations by counsel, that he was entering a "fictional" plea" for the purpose of disposing of the case in exchange later on for a sentence of probation.

On January 28, 2004, defendant was sentenced to a term of imprisonment of 63 months [DE-156] and allowed to remain free pending a self-surrender. The defendant requested the Court Clerk to enter a notice of appeal at the time of sentencing, which notice was never entered.

On January 30, 2004, the court executed its judgment [DE-157] in this case and the criminal matter was closed and terminated at that time.

On January 29, 2004, Attorney Kenneth L. Lawson, II, entered his notice of appearance in the matter as appellate counsel [DE-148], but never filed any notice of appeal.

Almost immediately after entering the plea, and before sentencing, the defendant, acting on the advice of the probation officer, filed an eight page letter with the court in which he clearly maintained his innocence.

On February 10, 2004, defendant, through counsel, filed a

Motion to Withdraw Plea, and an affidavit contending defendant's innocence. [DE-162]. This court subsequently denied this motion, principally because it was brought after the defendant had been sentenced.

The cases were then again terminated on the docket on April 30, 2004. The defendant subsequently self-surrendered on May 28, 2004.

On January 26, 2005, defendant filed a motion pursuant to 28 USC § 2255 to vacate his sentence. Defendant claimed five (5) issues, including the unlawful deprivation of his appellate rights.

On October 13, 2005, the court granted, in part, the defendant's Motion to Vacate. The court agreed it would vacate defendant's sentence, and re-sentence the defendant to provide for a timely notice of appeal. The court dismissed the remaining four issues without prejudice [DE-210]. The criminal case was reopened on October 13, 2005 as a result of vacating the sentence. [DE-unnumbered]. As the criminal case was reopened the court appointed W. Kelly Johnson of the Federal Public Defender's Office to represent the defendant. [DE-209].

On October 26, 2005, appointed counsel Johnson filed defendant's Motion for Release on Bond Pending Appeal (this was filed prior to the resentencing on notice of appeal). [DE-212]. On October 27, 2005, defendant filed formal objections to the presentencing report (DE-213], also, on October 27, 2005, the government filed its objection to release on bond. [DE-214].

On October 28, 2005, the defendant's sentencing hearing was vacated until October 31, 2005. However, on the morning of the 31st, the hearing was again vacated with no new date set forth.

Finally, on October 31, 2005, defense counsel Johnson filed a Motion to Withdraw Guilty Plea [DE-216].

The defendant was subsequently returned to the Federal Medical Center at Lexington, Kentucky, with no knowledge as to when he will be resentenced or can commence the filing of his direct appeal. The defendant has been advised his judge; the Honorable Susan J. Dlott, is on leave for back surgery and may be absent three to six months from the bench.

## PRESENT STATUS

A fair read on the docket and relevant orders appears to indicate the defendant's Motion to Vacate Sentence was granted on October 13, 2005, at least to the extent that a sentencing hearing was scheduled and rescheduled several times. This would indicate the defendant is now in the same status or position as he was before his first sentencing. Defendant's counsel has filed a pre-sentencing Motion to Withdraw Plea and, on counsel's suggestion, defendant has filed objections to elements in the pre-sentence report prepared years ago, but only recently objected to. Every situation seems to mirror the defendant's first pre-sentencing, with the exception of not being released on bond.

This immediate situation begs several questions. Is defendant's previous sentence, though vacated by the partial granting

of defendant's motion on October 13, 2005, still in force?  Is the defendant presently considered as a non-sentenced (pre-trial type of inmate).  If the defendant is returned to his pre-sentenced condition, would he not then also be entitled to have his bond restored?

Finally, there is the motion of withdrawing his guilty plea. When prior counsel Lawson filed to withdraw defendant's plea, the court correctly stated it did not have jurisdiction because the defendant was already sentenced.  Now that said sentence is vacated and new counsel has filed a new motion to withdraw plea, is said motion now ripe for consideration?

## WITHDRAWAL OF PLEA

There has perhaps never been a situation more appropriate than the present for considering the withdrawal of a defendant's plea.

<u>Defendant has always maintained innocence.</u>  Almost immediately after entering the plea the defendant maintained the plea was not true, knowing or voluntary.  He did this in a meeting with his counsel and his co-defendant's counsel.  The defendant was livid with the government's "factual basis" namely because, (1) he never sold his co-defendant, Matt Elliot, or anyone any marijuana, (2) he never gave Wayne Benjamin or anyone else any marijuana, and (3) he never transported or stored any marijuana.

All attorneys told the defendant to calm down, it was just a "fictional plea."  They explained the government has to make up

-5-

facts to fit the various crimes they bargained to; for example, Elliot bargained to distribution so the factual basis said he "bought" drugs, while Benjamin bargained for only possession so his drugs were a "gift" from the defendant. The lawyers stressed; "we do these fictional pleas all the time, but don't tell anyone!"

The defendant told. He told the probation officer who advised him to write a letter to the judge - the defendant did and he adamantly maintained his innocence. The defendant has consistently maintained his innocence ever since then because he did not commit this crime.

<u>Defendant was coerced to enter plea</u>: The defendant has also been consistent in the claim that he was improperly coerced into entering his plea. From the very outset the defendant maintained his plea was the combined effect of misrepresentations made by his trial counsel and the improper influence of a co-defendant acting at the behest of the US. Attorney. In fact, co-defendant Elliot was rewarded by a downward departure solely for influencing the defendant's plea.

This case is a sterling example of the process breaking down to a conclusion that more suggests a miscarriage of justice than a reliable conviction. The defendant came to this case with serious and well documented mental ilnesses. He was disabled and his primary emphasis in life centered around his son's business and the family's race cars. He was not a drug dealer and he had no knowledge or involvement with the alleged marijuana found in a

portion of a commercial building the defendant's family owns and leases out, in this case leased to a co-defendant who was obviously in the drug business.

There is no doubt that on the morning trial was to begin, the prosecutor, co-defendants, and defendant's lawyer and other defendants' lawyers applied several simultaneous forms of coercion which burdened the defendant beyond the level his own will could resist.

During the plea hearing, as AUSA Brichler read the "factual basis," the defendant began shaking his head back and forth gesturing his objections to what was being said. His actions and countenance were noted by the court when the judge ordered the defendant to orally agree or disagree.

The defendant was a pitiful man placed in a wholly pathetic situation. He was told by Elliot if he didn't plea, Elliot and Benjamin's lives would be ruined. His lawyer told him he would get practically no time and most likely probation and never disclosed the five year minimum mandatory sentence. The situation that was created was more than this defendant could handle, it leterally overrode the defendant's own will. These deliberate manipulations successfully produced a plea of guilty, but they also eliminated any notion of a voluntary plea. Clearly, this is sufficient grounds to withdraw the plea and let the government attempt to convict the defendant in a fair trial and with real evidence and not just a pathetic manipulation indicative of a win

at all costs attitude devoid of the rules or moral considerations. There is no other way to produce a just result.

<u>The government breached their own plea agreement</u>. The defendant would direct the court to the § 2255 motion for the specific argument and would rather like to take this opportunity to summarize the defendant's claim.

The deal made called for the defendant to agree to cooperate with the government in an attempt to expose and capture other drug dealers. The defendant was to work with case agent officer John Mercado. The defendant was to get a reduction as low as probation just for helping the government.

The defendant, not ever having been in the drug business, had some trouble finding possible busts, but he did find some. Everything the defendant did is on tape recordings the defendant made. Even all conversations with Agent Mercado were taped and are available.

The defendant set up several deals, but Mercado was never able to place upfront cash for the drugs, as was originally agreed. This made the set up busts fail and created a very dangerous situation. Finally, the matters escalated to the point the defendant was shot twice while "working" for Agent Mercado.

While the following is extremely hard for many to accept, the defendant has always maintained that Agent Mercado was a participant in the shooting and the defendant recognized his voice. To further support this, a witness in the area of the shooting saw a man fitting Mercado's description leaving the scene of the

shooting.

Whether or not Mercado was part of the shooting, the grim reality is this defendant was seriously injured with a permanent disability while aiding the government and that same government determined defendant's efforts were worth no departure. Clearly, this is a precedent that could and should help stop the entire concept of becoming a Confidential Informant for a government that fails to meet its obligations, fails to protect those citizens and then denigrates their efforts by refusing any recognition of the efforts put forth.

## CONCLUSION

The defendant has no understanding of his status at this moment. It is certain the court agrees the defendant should have a direct appeal which has already been delayed for a year with no certain date in the future. This has severely prejudiced the defendant, especially considering the time required to get the appeal resolved once it is allowed to begin. This prejudice is of no fault by the defendant.

In the meantime the federal public defender filed, or renewed, defendant's request to withdraw the plea and dispose of this matter by trial. This is obviously the most expeditious and fair manner to proceed as it fairly eliminates the questions of coercion and breaches in the plea agreement. The defendant, therefore, requests this matter be brought to some immediate resolution rather than languishing in the courts for long periods of time. The defendant

earnestly suggests this court to grant the motion to withdraw the plea of guilt and restore the defendant to a position where he may prove his absolute innocence. The defendant prays this court to consider the manner in the most expeditious manner available.

Respectfully submitted,

*Steven M Rennick Sr*
Steven M. Rennick, Sr.
#04050-032   Antaeus
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

CERTIFICATE OF SERVICE

I, Steven M. Rennick, Sr., do hereby certify that the original of this document, Motion for Clarification of Status, was filed with the Court Clerk identified below and a true and correct copy was further sent to the other party or parties identified below by depositing same into the prison legal mail box, postage prepaid, on the 9th day of December 2005.

*Steven M. Rennick, Sr.*
Steven M. Rennick, Sr.
#04050-032  Antaeus
Federal Medial Center
P.O. Box 14500
Lexington, KY 40512

Clerk of the Court
U.S. District Court
100 East 5th Street
Cincinnati, OH 45202

Robert C. Brichler, AUSA
221 East 4th Street
Cincinnati, OH 45202