CRIMINAL NUMBER 1:02-CR-00157

CIVIL NUMBER_____

IN THE

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

STEVEN M. RENNICK, SR.

Defendant-Movant

VS

UNITED STATES OF AMERICA

Plaintiff-Respondent

MOTION TO VACATE, SET ASIDE

OR CORRECT A SENTENCE

BY A PERSON IN FEDERAL CUSTODY

PURSUANT TO 28 USC § 2255

APPENDIX

VOLUME ONE

SUBMITTED BY MOVANT

Steven M. Rennick, Sr.
Movant Pro Se
Reg. No.: 04050-032
Federal Medical Center
P.O. Box 14500
Lexington, Kentucky 40512-4500

APPENDIX FOR MOTION PURSUANT TO 28 USC § 2255

RENNICK vs. USA No.: CR 1-02-157

VOLUME ONE

TABLE OF CONTENTS

| DE-No. | DATE | DOCUMENT | JA Pg No. |
|---|---|---|---|
| 8 | 11-06-02 | Indictment No. CR1-02-157 | 1-6 |
| 59 | 03-05-03 | Superceding Indictment No. CR 1-02-157 | 7-18 |
| 94 | 08-05-03 | USA Notice to use 404(b) evidence | 19-20 |
| 102 | 08-15-03 | Order compelling S. Rennick, Jr., to testify | 21-22 |
| 104 | 08-19-03 | Rennick Sr. Plea Agreement | 23-26 ✓ |
| 106 | 08-19-03 | Elliot Plea Agreement | 27-30 |
| 111 | 08-20-03 | Benjamin Plea Agreement | 31-34 |
| 145 | 12-23-03 | Transcript of Guilty Pleas for Rennick Sr., Elliot, Benjamin | 35-71 ✓ |
| 147 | 01-26-04 | Motion for Downward Departure | 72-78 |
| 148 | 01-29-04 | Notice of Appearance Lawson | 79 |
| 149 | 01-29-04 | Motion for Reconsideration | 80-81 |
| 157 | 01-30-04 | Judgment as to Rennick Sr. | 82-86 |
| 160 | 02-02-04 | USA Response Reconsideration [DE-149] | 87-89 |
| 162 | 02-10-04 | Motion to Withdraw Plea w/Rennick Sr. Affidavit | 90-95 |
| 163 | 02-12-04 | USA Response Withdraw Plea [DE-162] | 96-97 |
| 166 | 02-19-04 | Motion to Stay Sentence and Stay Away | 98-101 |
| 167 | 02-23-04 | USA Response Stay Away [DE-166] | 102-104 |
| 168 | 03-01-04 | Order Denying [DE-149, 162, 166] | 105-107 |
| 188 | 12-03-04 | Transcript Rennick Sr., Sentencing | 108-129 |
| 189 | 12-14-04 | Transcript Benjamin Sentencing | 130-142 |
| 190 | 12-14-04 | Transcript Elliot Sentencing | 143-165 |



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA : CRIMINAL NO.

: **CR 1 02 157**

:
v. : **I N D I C T M E N T**
: 18 U.S.C. § 2
: 21 U.S.C. § 841(a)(1)
: 21 U.S.C. § 841(b)(1)(B)&(D)
KAREEM COLE : 21 U.S.C. § 846
DAVID JONES : 21 U.S.C. § 853
 aka Paul Burke :
 aka Phillip Davidson :
STEVEN RENNICK, SR. :
STEVEN RENNICK, JR. :
MATTHEW ELLIOT : **DLOTT**
EDDIE MOORE :

- - - - - - - - - - - - - - - - - -

The Grand Jury charges that:

## COUNT 1

Beginning from in or about January 2002, the exact date being unknown to the grand jury, and continuing up to and including October 16, 2002, in the Southern District of Ohio, and elsewhere, **KAREEM COLE, DAVID JONES aka Paul Burke aka Phillip Davidson, STEVEN RENNICK, SR., STEVEN RENNICK, JR., MATTHEW ELLIOT and EDDIE MOORE**, the defendants herein, and others did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit:  to knowingly, willfully, intentionally and unlawfully distribute and possess with intent to distribute a Schedule I controlled substance, namely in excess of one hundred (100)

(DE-8 P1 JA-1)

kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

It was a part of the conspiracy that **KAREEM COLE** and **DAVID JONES aka Paul Burke aka Phillip Davidson** would arrange to purchase marijuana from outside the Southern District of Ohio for sale to **STEVEN RENNICK, SR.**, **STEVEN RENNICK, JR.**, **MATTHEW ELLIOT**, **EDDIE MOORE** and others in the Southern District of Ohio.

It was further a part of the conspiracy that **KAREEM COLE** and **DAVID JONES aka Paul Burke aka Phillip Davidson** would arrange to have marijuana transported by motor vehicle from Arizona to the Southern District of Ohio by **STEVEN RENNICK, SR.**

It was further a part of the conspiracy that its members would store large quantities of marijuana and U.S. currency, the proceeds of marijuana sales, in their homes and other locations.

In furtherance of the conspiracy and in order to accomplish its objectives, the defendants committed, among others, the following;

### OVERT ACTS

1.   On or about July 23, 2002, Steven Rennick, Sr. purchased a Freightliner tractor in Arizona for $88,000.00 to be used for the transportation of marijuana.

2.   On or about October 15, 2002, Kareem Cole, David Jones aka Paul Burke aka Phillip Davidson, Steven Rennick, Sr. and Steven Rennick, Jr. stored approximately 500 pounds of marijuana in a warehouse in Cincinnati, Ohio.

2

(DE-8 P2 JA-2)

 

3.  On or about October 15, 2002, Matthew Elliot and Eddie Moore obtained approximately 50 pounds of marijuana from the same warehouse in Cincinnati, Ohio.

4.  On or about October 15, 2002, Matthew Elliot and Eddie Moore stored approximately 30 pounds of marijuana in a residence in Norwood, Ohio.

5.  On or about October 16, 2002, Kareem Cole and David Jones aka Paul Burke aka Phillip Davidson possessed approximately 25 pounds of marijuana in the trunk of an automobile in Cincinnati, Ohio.

6.  On or about October 16, 2002, Kareem Cole and David Jones aka Paul Burke aka Phillip Davidson possessed approximately $50,000.00 in U.S. currency and scales to weigh marijuana at their residence in Cincinnati, Ohio.

All in violation of 21 U.S.C. § 846.

### COUNT 2

On or about October 15, 2002, in the Southern District of Ohio, **KAREEM COLE, DAVID JONES aka Paul Burke aka Phillip Davidson, STEVEN RENNICK, SR., and STEVEN RENNICK, JR.,** the defendants herein, did knowingly, wilfully, intentionally, and unlawfully distribute approximately 50 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

(DE-8 P3 JA 3)

## COUNT 3

On or about October 15, 2002, in the Southern District of Ohio, **MATTHEW ELLIOT** and **EDDIE MOORE**, the defendants herein, did knowingly, wilfully, intentionally, and unlawfully possess with intent to distribute approximately 30 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

## COUNT 4

On or about October 16, 2002, in the Southern District of Ohio, **KAREEM COLE, DAVID JONES aka Paul Burke aka Phillip Davidson** and **STEVEN RENNICK, SR.,** the defendants herein, did knowingly, wilfully, intentionally, and unlawfully possess with intent to distribute approximately 450 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

## COUNT 5

On or about October 16, 2002, in the Southern District of Ohio, **KAREEM COLE** and **DAVID JONES aka Paul Burke aka Phillip Davidson,** the defendants herein, did knowingly, wilfully, intentionally, and unlawfully possess with intent to distribute approximately 25 pounds of marijuana, a Schedule I Controlled Substance.

4

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

### FORFEITURE COUNT

#### (COUNT 1)

Pursuant to 21 U.S.C. § 853(a), as a result of the violation in Count 1, the defendants shall forfeit to the United States:

(1)  any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and

(2)  any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

#### Substitute Assets

Pursuant to 21 U.S.C. § 853(p), if any of the property that is forfeitable to the United States under 21 U.S.C. § 853(a) for violation of Count 1,

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to, or deposited with a third party;

(3)  has been placed beyond the jurisdiction of the court;

(4)  has been substantially diminished in value; or

(5)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any

5

GE-8 P5 JA-5)

other property of the defendants up to the value of any property described in paragraphs (1) through (5) immediately above.

A True Bill.

_Stacey J Morefield_
Grand Jury Foreperson

GREGORY G. LOCKHART
United States Attorney

RALPH W. KOHNEN
Deputy Criminal Chief

6

(DE-8 P6 JA-6)

FILED
KENNETH J. MURPHY
CLERK

2003 MAR -5 AM 10: 58

SOUTHERN DIST OHIO
WEST DIV CINCINNATI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA          :        CR-1-02-157
                                  :
                                  :
                                  :        **SUPERCEDING INDICTMENT**
                 v.               :        18 U.S.C. § 2
                                  :        18 U.S.C. § 1957
                                  :        21 U.S.C. § 841(a)(1)
                                  :        21 U.S.C. § 841(b)(1)(B)&(D)
STEVEN RENNICK, SR. (3)           :        21 U.S.C. § 846
MATTHEW ELLIOT (5)                :
WAYNE BENJAMIN (7)                :        J. Dlott

- - - - - - - - - - - - - - - - - - - - -

The Grand Jury charges that:

### COUNT 1

Beginning from in or about January 2002, the exact date
being unknown to the grand jury, and continuing up to and
including October 16, 2002, in the Southern District of Ohio, and
elsewhere, **STEVEN RENNICK, SR., MATTHEW ELLIOT,** and **WAYNE
BENJAMIN,** the defendants herein, and others did knowingly,
willfully, intentionally, and unlawfully combine, conspire,
confederate, and agree, and have a tacit understanding with each
other, to commit offenses against the United States, to wit:  to
knowingly, willfully, intentionally and unlawfully distribute and
possess with intent to distribute a Schedule I controlled
substance, namely in excess of one hundred (100) kilograms of
marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

(DE-59 P1 JA-7) 59

It was a part of the conspiracy that members of the conspiracy would arrange to purchase marijuana from outside the Southern District of Ohio for sale to **STEVEN RENNICK, SR., MATTHEW ELLIOT, WAYNE BENJAMIN,** and others in the Southern District of Ohio.

It was further a part of the conspiracy that **STEVEN RENNICK, SR., WAYNE BENJAMIN,** and others would transport marijuana by motor vehicle from Arizona to the Southern District of Ohio.

It was further a part of the conspiracy that its members would store large quantities of marijuana and U.S. currency, the proceeds of marijuana sales, in their homes and other locations.

It was further a part of the conspiracy that **STEVEN RENNICK, SR.** and **WAYNE BENJAMIN** would cause large amounts of U.S. currency generated by marijuana sales to be deposited into two business accounts controlled by **STEVEN RENNICK, SR.**; S&S Racing LLC and Earth Management Trucking, Inc.

It was further a part of the conspiracy that checks would be drawn on these business accounts to purchase a Freightliner tractor and real estate in Indiana to be occupied by **MATTHEW ELLIOT.**

In furtherance of the conspiracy and in order to accomplish its objectives, the defendants committed, among others, the following:

2

CoE-59 P2 JA-8)

## OVERT ACTS

1.  On or about June 24, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

2.  On or about July 12, 2002, Steven Rennick, Sr. caused Wayne Benjamin to deposit $30,000.00 in cash into the account of S&S Racing LLC.

3.  On or about July 15, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of S&S Racing LLC.

4.  On or about July 23, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

5.  On or about July 23, 2002, Steven Rennick, Sr. purchased a Freightliner tractor in Arizona for $88,000.00 to be used for the transportation of marijuana.

6.  On or about July 26, 2002, Steven Rennick, Sr. caused $17,000.00 in cash to be deposited into the account of S&S Racing LLC.

7.  On or about July 26, 2002, Steven Rennick, Sr. caused Wayne Benjamin to deposit $14,000.00 in cash into the account of Earth Management Trucking, Inc.

3

[DE-59 P3 JA-9]

8.  On or about July 30, 2002, Steven Rennick, Sr. caused $5,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

9.  On or about July 30, 2002, Steven Rennick, Sr. caused $5,000.00 in cash to be deposited into the account of S&S Racing LLC.

10.  On or about August 7, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

11.  On or about August 20, 2002, Steven Rennick, Sr. caused $8,000.00 in cash to be deposited into the account of S&S Racing LLC.

12.  On or about August 21, 2002, Steven Rennick, Sr. caused $5,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

13.  On or about September 20, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

14.  On or about September 27, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of Earth Management Trucking, Inc.

15.  On or about October 2, 2002, Steven Rennick, Sr. caused $10,000.00 in cash to be deposited into the account of S&S Racing LLC.

4

[DE-59 P4 JA-10]

16.  On or about October 9, 2002, Steven Rennick, Sr. and Matthew Elliot caused a parcel of real estate to be purchased in Indiana, the down payment of approximately $49,000.00 being made with funds generated by the sale of marihuana.

17.  On or about October 15, 2002, Steven Rennick, Sr. stored approximately 500 pounds of marijuana in a warehouse in Cincinnati, Ohio.

18.  On or about October 15, 2002, Matthew Elliot obtained approximately 50 pounds of marijuana from the same warehouse in Cincinnati, Ohio.

19.  On or about October 15, 2002, Matthew Elliot and a person known to the Grand Jury stored approximately 30 pounds of marijuana in a residence in Norwood, Ohio.

20.  On or about October 16, 2002, a person known to the grand jury possessed approximately 25 pounds of marijuana in the trunk of an automobile in Cincinnati, Ohio.

All in violation of 21 U.S.C. § 846.

## COUNT 2

On or about July 12, 2002, in the Southern District of Ohio, defendants **STEVEN RENNICK, SR.** and **WAYNE BENJAMIN** did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, in that they caused a deposit of U.S. currency in the amount of $30,000.00, such property having been derived from a specified unlawful activity, that is a conspiracy to possess with intent to distribute and to distribute marijuana and the distribution of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 & 841, to be made into account number 0373-506 in the name of S&S Racing, LLC at The Provident Bank.

All in violation of 18 U.S.C. §§ 1957 & 2.

6

] [DE-59 P6 JA-12]

## COUNT 3

On or about July 26, 2002, in the Southern District of Ohio, defendants **STEVEN RENNICK, SR.** and **WAYNE BENJAMIN** did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, in that they caused a deposit of U.S. currency in the amount of $14,000.00, such property having been derived from a specified unlawful activity, that is a conspiracy to possess with intent to distribute and to distribute marijuana and the distribution of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 & 841, to be made into account number 059-794 in the name of Earth Management Trucking Inc. at The Provident Bank.

All in violation of 18 U.S.C. §§ 1957 & 2.

7

## COUNT 4

On or about July 26, 2002, in the Southern District of Ohio, defendant **STEVEN RENNICK, SR.** did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000.00, in that he caused a deposit of U.S. currency in the amount of $17,000.00, such property having been derived from a specified unlawful activity, that is a conspiracy to possess with intent to distribute and to distribute marijuana and the distribution of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 & 841, to be made into account number 0373-506 in the name of S&S Racing, LLC at The Provident Bank.

All in violation of 18 U.S.C. §§ 1957 & 2.

8

[DE-59 P8 JA-14]

## COUNT 5

On or about October 9, 2002, in the Southern District of
Ohio and Southern District of Indiana, defendants **STEVEN RENNICK,
SR.** and **MATTHEW ELLIOT** did knowingly engage and attempt to engage
in a monetary transaction by, through, or to a financial
institution, affecting interstate or foreign commerce, in
criminally derived property of a value greater than $10,000.00,
that is, funds in the amount of $49,391.36 withdrawn by check
#5017 dated October 9, 2002 drawn on account #0959-794 of Earth
Management Trucking, Inc. at the Provident Bank made payable to
Steve Rennick, Jr., in the amount of $49,391.36, and exchanged
for Provident Bank check #194431181 dated October 9, 2002, made
payable to Steve Rennick, Jr., in the amount of $49,391.36, and
transferred by endorsement to Advanced Land Title Agency, LTD.
Escrow Account as the downpayment for the purchase of real estate
located at 5830 E. Laughery Creek Road, Aurora, Indiana, such
property ($49,391.36) having been derived from a specified
unlawful activity, that is, a conspiracy to distribute and to
possess with intent to distribute a Schedule I controlled
substance, marijuana, and the distribution of marijuana, in
violation of 21 U.S.C. §§ 846 and 841(a)(1).

In violation of 18 U.S.C. §§ 1957 and 2.

9

### COUNT 6

On or about October 15, 2002, in the Southern District of Ohio, **STEVEN RENNICK, SR.,** the defendant herein, did knowingly, wilfully, intentionally, and unlawfully distribute approximately 50 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

### COUNT 7

On or about October 15, 2002, in the Southern District of Ohio, **MATTHEW ELLIOT,** the defendant herein, did knowingly, wilfully, intentionally, and unlawfully possess with intent to distribute approximately 50 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

### COUNT 8

On or about October 16, 2002, in the Southern District of Ohio, **STEVEN RENNICK, SR.,** the defendant herein, did knowingly, wilfully, intentionally, and unlawfully possess with intent to distribute approximately 450 pounds of marijuana, a Schedule I Controlled Substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

 

## FORFEITURE
### (COUNT 1)

Pursuant to 21 U.S.C. § 853(a), as a result of the violation in Count 1, the defendants shall forfeit to the United States:

(1)  any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; and

(2)  any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

### Substitute Assets

Pursuant to 21 U.S.C. § 853(p), if any of the property that is forfeitable to the United States under 21 U.S.C. § 853(a) for violation of Count 1,

(1)  cannot be located upon the exercise of due diligence;

(2)  has been transferred or sold to, or deposited with a third party;

(3)  has been placed beyond the jurisdiction of the court;

(4)  has been substantially diminished in value; or

(5)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any

11

[DE-59 P11 JA-17]

other property of the defendants up to the value of any property
described in paragraphs (1) through (5) immediately above.

A True Bill.

Stacey J Morefield
Grand Jury Foreperson

GREGORY G. LOCKHART
United States Attorney

RALPH W. KOHNEN
Deputy Criminal Chief

12

[DE-59 P12 JA-18]



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**  03 AUG -5 PM 3: 12
**WESTERN DIVISION**

UNITED STATES OF AMERICA    :    CR-1-02-157

         :

         :    **NOTICE OF INTENTION TO**

   v.      :    **USE RULE 404(b) EVIDENCE**

         :

         :

STEVEN RENNICK, SR. ET AL.    :    J. Dlott

- - - - - - - - - - - - - - - - - -

   Now comes the United States of America, pursuant to Rule 404 of the Federal Rules of Evidence, and gives notice to Steven Rennick, Sr. that it intends to present evidence at trial in its case-in-chief that Steven Rennick, Sr. approached various individuals after his arrest and solicited them to give false testimony at his trial.  Said evidence tends to establish consciousness of guilt and is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence.  <u>United States v. Jorge Mendoza-Ortiz</u>, 810 F.2d 76 (6th Cir. 1986); <u>United States v. Maddox</u>, 944 F.2d 1223 (6th Cir. 1991) citing <u>Ortiz</u>, <u>supra</u>.

        Respectfully submitted,

        GREGORY G. LOCKHART
        United States Attorney

        ROBERT C. BRICHLER (0017745)
        Assistant United States Attorney
        221 East Fourth Street, Suite 400
        Cincinnati, Ohio  45202
        (513) 684-3711



## CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing was mailed on this __5th__ day of August, 2003, to:

> William R. Gallagher
> 114 East Eighth Street
> Cincinnati, Ohio  45202
>
> Kenneth L. Lawson
> 808 Elm St., Suite 100
> Cincinnati, Ohio  45202
>
> Gregory A. Cohen
> 114 East Eighth Street
> Cincinnati, Ohio 45202.

ROBERT C. BRICHLER (0017745)
Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA        :        CR-1-02-157
                                :
            v.                  :        O R D E R
                                :
KAREEM COLE, ET AL.             :        J. Dlott

- - - - - - - - - - - - - - - - - - - - - -

On motion of Gregory G. Lockhart, United States Attorney for

the Southern District of Ohio, filed in this matter on

_August  14_____, 2003,

And it appearing to the satisfaction of the Court:

1.  That **Steve Rennick, Jr.** has been called to testify or

provide other information at trial in United States District

Court; and

2.  That **Steve Rennick, Jr.** has refused to testify or

provide other information on the basis of his privilege against

self-incrimination; and

3.  That in the judgment of the said United States Attorney,

the testimony or other information from said **Steve Rennick, Jr.**

may be necessary to the public interest; and

4.  That the aforesaid Motion filed herein has been made

with the approval of the Assistant Attorney General in charge of

the Criminal Division of the Department of Justice, pursuant to

[DE-102 P1 JA-211]

the authority vested in him by 18 U.S.C. § 6003 and 28 C.F.R. § 0.175.

NOW, THEREFORE, IT IS ORDERED pursuant to 18 U.S.C. § 6002 that the said **Steve Rennick, Jr.** give testimony or provide other information which he refuses to give or to provide on the basis of his privilege against self-incrimination as to all matters about which he may be interrogated at said trial or in any further proceedings resulting therefrom or ancillary thereto. Such testimony compelled under this Order (or any information directly or indirectly derived from such testimony or other information) may not be used against **Steve Rennick, Jr.** in any criminal case in federal or state court, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order.

This Order shall become effective only if after the date of the Order the said **Steve Rennick, Jr.** refuses to testify or provide other information on the basis of his privilege against self-incrimination.

_August 15, 2003_
DATE

_Susan J. Dlott_
SUSAN J. DLOTT
UNITED STATES DISTRICT COURT JUDGE

 

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

C2...:3 19 F:1 4: 13

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR-1-02-157-3 |
| | : | |
| | : | |
| v. | : | **PLEA AGREEMENT** |
| | : | |
| | : | |
| STEVEN RENNICK, SR. | : | J. Dlott |

- - - - - - - - - - - - - - - - - -

It is hereby agreed between Steven Rennick, Sr., individually, and through his attorney, William R. Gallagher, and the United States of America, by and through Robert C. Brichler, Assistant United States Attorney for the Southern District of Ohio, as follows:

1.  The defendant shall enter a plea of guilty to Count 1 of the Indictment filed against him, charging him with conspiracy to distribute in excess of 100 kilograms of marihuana, in violation of 21 U.S.C. §§ 846 & 841(a)(1) and (b)(1)(B).

2.  The defendant understands that the punishment prescribed by law for the offense charged in Count 1 of the Indictment is a mandatory minimum of 5 to 40 years in prison, a fine of up to $2,000,000.00, a 4 year term of supervised release, and a $100.00 special assessment.

3.  In return for said plea of guilty and contingent upon the defendant's admission of guilt, the United States Attorney

104

[DE-10/ P1 IA 33]

for the Southern District of Ohio agrees to dismiss the remaining counts of the Indictment.

4. The government agrees to recommend to the Court that the base offense level for purposes of the federal sentencing guidelines is level 26. This recommendation is based upon the defendant's involvement with in excess of 100 kilograms of marihuana. By signing this plea agreement the defendant agrees and admits to said involvement. It is further recommended that the defendant be given a 3 point reduction for acceptance of responsibility.

5. The government agrees to file, upon the defendant's substantial assistance, a motion with the court for a downward departure from the guideline sentence, stating that the defendant has made a good faith effort to provide substantial assistance in the investigation and prosecution of other persons who have committed offenses. The filing of such motion shall be in the sole discretion of the United States Attorney for the Southern District of Ohio. If such a motion is filed, the defendant understands that it is not binding on the court. Such a motion is authorized by § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e). If such motion is filed it will be in reliance on the defendant's continued cooperation. If the defendant should later refuse to testify the government may, at the governments' option, petition the court to set aside the

2

defendant's sentence and sentence him without a downward departure or seek to set aside the defendant's plea and reinstate the Indictment.

6. The defendant understands that the Probation Department will conduct a pre-sentence investigation and will recommend to the Court a sentencing guideline range. The defendant understands that the Probation Department's recommendations are not binding on the Court and the terms of this Plea Agreement are not binding upon the Court or Probation Department. The defendant understands that if the Court does not follow the recommendations contained in this plea agreement, he does not have the right to withdraw his plea of guilty.

7. The defendant understands that there is no agreement concerning his ultimate sentence. The defendant could receive the maximum penalty provided by law.

8. Prior to or at the time of sentencing, the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100.00 as required by Title 18, United States Code, Section 3013.

3

9.  This is the entire Plea Agreement.  There are no other provisions or understandings.

GREGORY G. LOCKHART
United States Attorney

8-18-03
**DATE**

*[signature]*
ROBERT C. BRICHLER
Assistant U.S. Attorney

9|18|03
**DATE**

*[signature]*
STEVEN RENNICK, SR.
Defendant

8/18/03
**DATE**

*[signature]*
WILLIAM N. GALLAGHER
Attorney for Defendant

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA          :     CR-1-02-157-5
                                  :
                                  :
         v.                       :     **PLEA AGREEMENT**
                                  :
                                  :
MATTHEW ELLIOT                    :     J. Dlott

- - - - - - - - - - - - - - - - - - - - - -

It is hereby agreed between Matthew Elliot, individually,
and through his attorney, Kenneth L. Lawson, and the United
States of America, by and through Robert C. Brichler, Assistant
United States Attorney for the Southern District of Ohio, as
follows:

1.   The defendant shall enter a plea of guilty to Count 7 of
the Indictment filed against him, charging him with possession
with intent to distribute marihuana, in violation of 21 U.S.C. §§
846 & 841(a)(1) and (b)(1)(D).

2.   The defendant understands that the punishment prescribed
by law for the offense charged in Count 7 of the Indictment is 0
to 5 years in prison, a fine of up to $250,000.00, a 3 year term
of supervised release, and a $100.00 special assessment.

3.   In return for said plea of guilty and contingent upon
the defendant's admission of guilt, the United States Attorney
for the Southern District of Ohio agrees to dismiss the remaining
counts of the Indictment.

4.   The government agrees to recommend to the Court that the base offense level for purposes of the federal sentencing guidelines is level 18. This recommendation is based upon what the government believes the readily provable facts concerning the defendant's involvement with marihuana would be. By signing this plea agreement the defendant agrees and admits to said involvement. It is further recommended that the defendant be given a 3 point reduction for acceptance of responsibility.

5.   The government agrees to file, upon the defendant's substantial assistance, a motion with the court for a downward departure from the guideline sentence, stating that the defendant has made a good faith effort to provide substantial assistance in the investigation and prosecution of other persons who have committed offenses.  The filing of such motion shall be in the sole discretion of the United States Attorney for the Southern District of Ohio.  If such a motion is filed, the defendant understands that it is not binding on the court.  Such a motion is authorized by § 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e).  If such motion is filed it will be in reliance on the defendant's continued cooperation.  If the defendant should later refuse to testify the government may, at the governments' option, petition the court to set aside the defendant's sentence and sentence him without a downward

2

departure or seek to set aside the defendant's plea and reinstate the Indictment.

6.   The defendant understands that the Probation Department will conduct a pre-sentence investigation and will recommend to the Court a sentencing guideline range.  The defendant understands that the Probation Department's recommendations are not binding on the Court and the terms of this Plea Agreement are not binding upon the Court or Probation Department. The defendant understands that if the Court does not follow the recommendations contained in this plea agreement, he does not have the right to withdraw his plea of guilty.

7.   The defendant understands that there is no agreement concerning his ultimate sentence.  The defendant could receive the maximum penalty provided by law.

8.   Prior to or at the time of sentencing, the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100.00 as required by Title 18, United States Code, Section 3013.

3

9.    This is the entire Plea Agreement.    There are no other
provisions or understandings.

GREGORY G. LOCKHART
United States Attorney

8-15-03
DATE

ROBERT C. BRICHLER
Assistant U.S. Attorney

8/18/03
DATE

MATTHEW ELLIOT
Defendant

8/18/03
DATE

KENNETH L. LAWSON
Attorney for Defendant

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| UNITED STATES OF AMERICA | : | CR-1-02-157-7 |
| | : | |
| | : | |
| v. | : | **PLEA AGREEMENT** |
| | : | |
| | : | |
| WAYNE BENJAMIN | : | J. Dlott |

- - - - - - - - - - - - - - - - - - - -

It is hereby agreed between Wayne Benjamin, individually,
and through his attorney, Gregory A. Cohen, and the United States
of America, by and through Robert C. Brichler, Assistant United
States Attorney for the Southern District of Ohio, as follows:

1.  The defendant shall enter a plea of guilty to Count 1 of
the Superseding Bill of Information to be filed against him,
charging him with the distribution of marihuana, in violation of
21 U.S.C. §§ 846 & 841(a)(1) and (b)(1)(D).

2.  The defendant understands that the punishment prescribed
by law for the offense charged in Count 1 of the ~~Indictment~~ Information is 0
to 5 years in prison, a fine of up to $250,000.00, a 3 year term
of supervised release, and a $100.00 special assessment.

3.  In return for said plea of guilty and contingent upon
the defendant's admission of guilt, the United States Attorney
for the Southern District of Ohio agrees to dismiss the
Indictment previously filed against him.

4.  The government agrees to recommend to the Court that the
base offense level for purposes of the federal sentencing
guidelines is level 8. This recommendation is based upon what the
government believes the readily provable facts concerning the
defendant's involvement with marihuana would be. By signing this
plea agreement the defendant agrees and admits to said
involvement. It is further recommended that the defendant be
given a 2 point reduction for acceptance of responsibility.

5.  The government agrees to file, upon the defendant's
substantial assistance, a motion with the court for a downward
departure from the guideline sentence, stating that the defendant
has made a good faith effort to provide substantial assistance in
the investigation and prosecution of other persons who have
committed offenses.  The filing of such motion shall be in the
sole discretion of the United States Attorney for the Southern
District of Ohio.  If such a motion is filed, the defendant
understands that it is not binding on the court.  Such a motion
is authorized by § 5K1.1 of the Sentencing Guidelines and 18
U.S.C. § 3553(e).  If such motion is filed it will be in reliance
on the defendant's continued cooperation.  If the defendant
should later refuse to testify the government may, at the
governments' option, petition the court to set aside the
defendant's sentence and sentence him without a downward

2



departure or seek to set aside the defendant's plea and reinstate the Indictment.

6. The defendant understands that the Probation Department will conduct a pre-sentence investigation and will recommend to the Court a sentencing guideline range. The defendant understands that the Probation Department's recommendations are not binding on the Court and the terms of this Plea Agreement are not binding upon the Court or Probation Department. The defendant understands that if the Court does not follow the recommendations contained in this plea agreement, he does not have the right to withdraw his plea of guilty.

7. The defendant understands that there is no agreement concerning his ultimate sentence. The defendant could receive the maximum penalty provided by law.

8. Prior to or at the time of sentencing, the defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100.00 as required by Title 18, United States Code, Section 3013.

3



9.    This is the entire Plea Agreement.    There are no other provisions or understandings.


                            GREGORY G. LOCKHART
                            United States Attorney


$8-18-03$
DATE

                            _Robert C. Brichler_
                            ROBERT C. BRICHLER
                            Assistant U.S. Attorney


$8-18-03$
DATE

                            _Wayne Benjamin_
                            WAYNE BENJAMIN
                            Defendant


$8/18/03$
DATE

                            _Gregory A. Cohen_
                            GREGORY A. COHEN
                            Attorney for Defendant


4

1                    UNITED STATES DISTRICT COURT

2                    SOUTHERN DISTRICT OF OHIO

3                        WESTERN DIVISION
                           - - -

4

UNITED STATES OF AMERICA,    :  CRIMINAL ACTION CR-1-02-157

5                             :
              Plaintiff,      :  Cincinnati, Ohio

6                             :  Monday, August 18, 2003
        -vs-                  :

7                             :
STEVEN RENNICK, SR.; MATTHEW  :  Guilty Pleas

8   ELLIOT; and WAYNE BENJAMIN,  :
                              :

9           Defendants.       :  11:45 a.m.

10                          - - -

11                   TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE

12                          - - -

13

For the Plaintiff:     Robert Brichler, Esq.

14                     Anthony Springer, Esq.
                       Asst. U.S. Attorney

15                     Atrium II, Suite 400
                       221 East Fourth Street

16                     Cincinnati, Ohio  45202

17  For the Defendants:    William Gallagher, Esq.
      (Rennick)           Arenstein & Gallagher

18                       114 East Eighth Street
                         Cincinnati, Ohio  45202

19
      (Elliot)           Kenneth L. Lawson, Esq.

20                       Kenneth L. Lawson & Associates
                         The Kroger Building, Suite 1575

21                       Cincinnati, Ohio  45202

22    (Benjamin)         Gregory A. Cohen, Esq.
                         The Citadel

23                       114 East Eighth Street
                         Cincinnati, Ohio  45202

24

25  Courtroom Deputy:  Steve Snyder
    Court Reporter:  Betty Schwab

#/145

```
 1                        PROCEEDINGS
 2            THE COURTROOM DEPUTY:  Case is CR-1-02-157,
 3   defendant number three, United States of America v. Steven
 4   Rennick, Sr.; defendant number five, United States of
 5   America v. Matthew Elliot; and defendant number seven,
 6   United States of America v. Wayne Benjamin.
 7            Will the parties please step to the podium?
 8            MR. BRICHLER:  Are you going to go right to left?
 9            THE COURT:  I'm going to go left to right.
10            Mr. Gallagher, you have got -- Mr. Gallagher, you
11   have Mr. Rennick, Sr.?
12            MR. GALLAGHER:  Yes, Your Honor.
13            THE COURT:  All right.  And, Mr. Lawson, you have
14   got Mr. Elliot?
15            MR. LAWSON:  That is correct, Judge.
16            THE COURT:  And, Mr. Cohen, you have got
17   Mr. Benjamin?
18            MR. COHEN:  Yes, Your Honor.
19            THE COURT:  That's fine.  All right.  Will
20   counsel please enter their appearances for the record?
21            MR. GALLAGHER:  Your Honor, William Gallagher on
22   behalf of Steve Rennick, Sr.
23            MR. LAWSON:  Kenneth Lawson on behalf of Matthew
24   Elliot, Your Honor.
25            MR. COHEN:  Gregory Cohen on behalf of Wayne
```

1    Benjamin, Your Honor.

2              MR. BRICHLER:  Robert Brichler and Anthony

3    Springer for the United States.  Thank you for your

4    patience this morning.

5              THE COURT:  Thank you all for working together on

6    this.

7              Are you Steven Rennick, Sr., sir?

8              DEFENDANT RENNICK:  Yes, ma'am.

9              THE COURT:  And are you represented in this

10   proceeding by William Gallagher, an attorney who is present

11   here in court with you today?

12             DEFENDANT RENNICK:  Yes, ma'am.

13             THE COURT:  All right.  And, sir, are you Matthew

14   Elliot?

15             DEFENDANT ELLIOT:  Yes, ma'am.

16             THE COURT:  And are you represented in this

17   proceeding by Kenneth Lawson, an attorney who is present

18   here in court with you today?

19             DEFENDANT ELLIOT:  Yes, ma'am.

20             THE COURT:  All right.  And, sir, are you Wayne

21   Benjamin?

22             DEFENDANT BENJAMIN:  Yes, ma'am.

23             THE COURT:  And are you represented in this

24   proceeding by Gregory Cohen, an attorney who is present

25   here in court with you today?

4

1          DEFENDANT BENJAMIN:  Yes, ma'am.

2          THE COURT:  All right.  Mr. Brichler, what's the

3   charge in this proceeding?

4          MR. BRICHLER:  Your Honor --

5          THE COURT:  Or what are the charges, I guess?

6          MR. BRICHLER:  With respect to Mr. Rennick, Sr.,

7   Your Honor, it's my understanding that he is appearing here

8   this morning with his attorney and he wishes to seek leave

9   of this Court to withdraw his plea of not guilty to count

10  one of the indictment, conspiracy count, and enter a plea

11  of guilty.

12          With respect to Mr. Elliot, it's my understanding

13  that he and his attorney would seek leave of Court to

14  withdraw his plea of not guilty previously entered to count

15  seven and to enter a plea of guilty to count seven, which

16  charges him with possession with intent to distribute

17  marijuana.

18          And the United States proposes to file a bill of

19  information charging Mr. Wayne Benjamin in a superseding

20  bill of information charging him with one count of

21  distribution of marijuana in violation of federal law.

22          THE COURT:  Thank you, Mr. Brichler.

23          Mr. Snyder, would you please swear the

24  defendants?

25          (Defendants sworn by the courtroom deputy.)

```
1              THE COURT:  Mr. Rennick, did you say "I do"?
2              DEFENDANT RENNICK:  Yes, ma'am.
3              THE COURT:  Gentlemen, do you understand that
4     you're now under oath and that, if you give false answers
5     to any of my questions, you may be charged with purgery or
6     making a false statement?
7              DEFENDANT RENNICK:  Yes, ma'am.
8              DEFENDANT ELLIOT:  Yes, ma'am.
9              DEFENDANT BENJAMIN:  Yes, ma'am.
10             THE COURT:  All right.  Would you -- let's start
11    with -- we'll go left to right, my left.  Let's start with
12    Mr. Rennick, Sr.
13             Would you please state your full name, sir?
14             DEFENDANT RENNICK:  Steven Michael Rennick, Sr.
15             THE COURT:  And how old are you?
16             DEFENDANT RENNICK:  55.
17             THE COURT:  Okay.  And how far did you go in
18    school?
19             DEFENDANT RENNICK:  I finished the ninth grade,
20    and I finished my GED in the service, in the Army.
21             THE COURT:  Have you ever been treated for any
22    mental illness or addiction to narcotics of any kind?
23             DEFENDANT RENNICK:  Yes.
24             THE COURT:  Okay.  What?  When and what?
25             DEFENDANT RENNICK:  PTSD, flashbacks from
```

1    Vietnam.

2              THE COURT:  And are you still under treatment for

3    that?

4              DEFENDANT RENNICK:  Yes.

5              THE COURT:  You're taking some kind of

6    medication?

7              DEFENDANT RENNICK:  Yes, ma'am.

8              THE COURT:  Do you know what medication that is?

9              DEFENDANT RENNICK:  No.

10             THE COURT:  Is it an antidepressant?

11             DEFENDANT RENNICK:  Yes.

12             THE COURT:  Or antianxiety?  You have taken it

13   for a long time?

14             DEFENDANT RENNICK:  About two years.

15             THE COURT:  Have you taken any narcotic drugs or

16   other medicine or pills or consumed any alcoholic beverages

17   in the past 24 hours?

18             DEFENDANT RENNICK:  No, ma'am.

19             THE COURT:  Mr. Gallagher, do you have any doubt

20   as to the competency of Mr. Rennick, Sr. to answer to the

21   indictment at this time?

22             MR. GALLAGHER:  No, Your Honor.

23             THE COURT:  Am I correct, Mr. Brichler, that is

24   an indictment for the first two, right?

25             MR. BRICHLER:  That is correct, Your Honor.

1              THE COURT:  All right.  Then let me move on to

2      Mr. Elliot.  Would you please state your full name, sir?

3              DEFENDANT ELLIOT:  Matthew Alton Elliot.

4              THE COURT:  And how old are you?

5              DEFENDANT ELLIOT:  36.

6              THE COURT:  How far did you go in school?

7              DEFENDANT ELLIOT:  To the twelfth grade.

8              THE COURT:  Have you ever been treated for any

9      mental illness or addiction to narcotics of any kind?

10             DEFENDANT ELLIOT:  No, ma'am.

11             THE COURT:  Have you taken any narcotic drugs,

12     medicine, pills, or consumed any alcoholic beverages in the

13     past 24 hours?

14             DEFENDANT ELLIOT:  No.

15             THE COURT:  Okay.  Mr. Lawson, do you have any

16     doubt as to the competency of Mr. Elliot to answer to the

17     indictment at this time?

18             MR. LAWSON:  No, Your Honor, not at all.

19             THE COURT:  All right.  Then I'll move on to

20     Mr. Benjamin.  Would you please state your full name, sir?

21             DEFENDANT BENJAMIN:  Wayne Keith Benjamin.

22             THE COURT:  And how old are you?

23             DEFENDANT BENJAMIN:  37.

24             THE COURT:  How far did you go in school?

25             DEFENDANT BENJAMIN:  I graduated high school.

8

1           THE COURT:  Have you ever been treated for any

2   mental illness or addiction to narcotics of any kind?

3           DEFENDANT BENJAMIN:  No.

4           THE COURT:  Have you taken any narcotic drugs,

5   medicine, pills, or consumed any alcoholic beverages in the

6   past 24 hours?

7           DEFENDANT BENJAMIN:  Yes.

8           THE COURT:  Okay.  What have you had?

9           DEFENDANT BENJAMIN:  I'm on hydrocodone for my

10  back.

11          THE COURT:  Okay.  Is that some kind of a pain

12  killer?

13          DEFENDANT BENJAMIN:  Yes.

14          THE COURT:  How long have you been taking that?

15          DEFENDANT BENJAMIN:  Just when I need it, on and

16  off for about five months.

17          THE COURT:  And do you feel that it alters your

18  ability to think in any way?

19          DEFENDANT BENJAMIN:  No.  No.

20          THE COURT:  All right.  Mr. Cohen, do you have

21  any doubt as to the competency of the defendant to answer

22  to the superseding bill of information at this time?

23          MR. COHEN:  There are no doubts, Your Honor.  We

24  discussed this matter thoroughly.

25          THE COURT:  Then let me start, because we have

1    got an information with Mr. Benjamin, let me ask you a few

2    more questions.

3         First, I'll direct one question to all three of

4    you.  Have all of you been furnished with a copy of the

5    charges against you?

6         DEFENDANT RENNICK:  Yes, ma'am.

7         DEFENDANT ELLIOT:  Yes, ma'am.

8         DEFENDANT BENJAMIN:  Yes, ma'am.

9         THE COURT:  And have you read the charge which,

10   in the case of Mr. Rennick and Mr. Elliot, is called an

11   indictment and Mr. Benjamin's is called a bill of

12   information?

13        DEFENDANT BENJAMIN:  Yes, I have.

14        DEFENDANT RENNICK:  Yes, ma'am.

15        DEFENDANT BENJAMIN:  Yes, ma'am.

16        THE COURT:  Have you discussed these charges with

17   your lawyers?

18        DEFENDANT RENNICK:  Yes, ma'am.

19        DEFENDANT ELLIOT:  Yes, ma'am.

20        DEFENDANT BENJAMIN:  Yes, ma'am.

21        THE COURT:  Mr. Benjamin, you have a

22   constitutional right to be charged by an indictment of a

23   grand jury, but you can waive that right and consent to be

24   charged by the superseding information of the United States

25   attorney, which means that, instead of an indictment, this

1    felony charge against you has been brought by the United

2    States attorney by the filing of an information.  Unless

3    you waive indictment, you may not be charged with a felony

4    unless a grand jury finds by return of an indictment that

5    there is probable cause to believe that a crime has been

6    committed and that you committed it.  If you do not waive

7    indictment, the government may present the case to the

8    grand jury and request it to indict you.

9            A grand jury is composed at least 16 and not more

10   than 23 persons, at least 12 of whom must find that there

11   is probable cause to believe that a crime has been

12   committed and that you committed the crime in order to

13   return an indictment against you.  The grand jury might or

14   might not indict you.

15           If you waive indictment by the grand jury, this

16   case will proceed against you on the information just as

17   though you had been indicted.

18           Mr. Benjamin, do you understand your right to an

19   indictment by a grand jury?

20           DEFENDANT BENJAMIN:  Yes.

21           THE COURT:  Have any threats or promises been

22   made to induce you to waive indictment?

23           DEFENDANT BENJAMIN:  No.

24           THE COURT:  If you choose to be charged by

25   information, you do not give up at this time in the

1     proceeding any of your other constitutional rights.  You

2     still have a right to plead not guilty, be tried by a jury,

3     be represented by counsel through the trial, face the

4     prosecution witnesses and have the government prove the

5     charges against you beyond a reasonable doubt.

6             Do you understand that?

7             DEFENDANT BENJAMIN:  Yes.

8             THE COURT:  Mr. Cohen, have you explained to

9     Mr. Benjamin his right to have the facts of this case

10    presented to a grand jury?

11            MR. COHEN:  I have, Your Honor.

12            THE COURT:  And based on your discussion with

13    him, do you believe that Mr. Benjamin understands the

14    nature and meaning of an information as opposed to an

15    indictment?

16            MR. COHEN:  Judge, in this instance, it's an

17    information that supersedes the indictment in which he was

18    named.  He understands the entire process, having

19    experienced it during the course of this case.  So I

20    believe he has a full understanding.

21            THE COURT:  Mr. Benjamin, do you wish to waive

22    your right to indictment by a grand jury and choose to be

23    charged by the filing of a superseding information?

24            DEFENDANT BENJAMIN:  Yes.

25            THE COURT:  I believe Mr. Brichler is handing

1    Mr. Cohen the waiver.  And I'll ask Mr. Cohen and

2    Mr. Benjamin to examine it, and, Mr. Cohen, explain it to

3    the defendant and then have him sign it.

4        MR. COHEN:  Your Honor, we previously discussed

5    this document and have executed it as required and would

6    proffer it to the Court.

7        THE COURT:  Thank you.

8        Upon execution of the waiver, the Court

9    determines that the defendant Wayne Benjamin has

10   competently exercised his right to waive the presentation

11   of the facts of this case to a grand jury and has made the

12   necessary waiver in open court.  The Court finds that the

13   waiver of indictment is knowingly and voluntarily made, and

14   it is accepted.

15       The clerk will file the information and waiver.

16       Mr. Cohen and Mr. Benjamin, do you want the clerk

17   to read the information, or will you waive the reading of

18   the superseding information?

19       MR. COHEN:  We will waive that reading, Your

20   Honor.

21       THE COURT:  All right.  Then let me ask each of

22   you now how do you plead.

23       Mr. Rennick, I'll start with you.  How do you

24   plead to the offense charged in count one of the

25   indictment, guilty or not guilty?

1              DEFENDANT RENNICK:  Guilty.

2              THE COURT:  Mr. Elliot, how do you plead to the

3    offense charged in count seven of the indictment, guilty or

4    not guilty?

5              DEFENDANT ELLIOT:  Guilty.

6              THE COURT:  And, Mr. Benjamin, how do you plead

7    to the offense charged in count one of the superseding

8    information, guilty or not guilty?

9              DEFENDANT BENJAMIN:  Guilty.

10             THE COURT:  Before accepting your pleas of

11   guilty, gentlemen, the Court must determine that they're

12   made voluntarily with a full understanding of the nature of

13   the charges and the consequences of the plea, and, in order

14   to make that determination, I need to ask you several

15   questions.

16             First, this question is directed to all of you.

17   Do you believe that you understand the charges against you?

18             DEFENDANT RENNICK:  Yes, I do.

19             DEFENDANT ELLIOT:  Yes.

20             DEFENDANT BENJAMIN:  Yes.

21             THE COURT:  Do you believe that your lawyer is

22   fully informed about the facts and circumstances on which

23   these charges are based?

24             DEFENDANT RENNICK:  Yes, ma'am.

25             DEFENDANT ELLIOT:  Yes, ma'am.

1          DEFENDANT BENJAMIN:  Yes, ma'am.

2          THE COURT:  Are you satisfied with your lawyer's

3     advice and representation?

4          DEFENDANT RENNICK:  Yes, ma'am.

5          DEFENDANT ELLIOT:  Yes, ma'am.

6          DEFENDANT BENJAMIN:  Yes, ma'am.

7          THE COURT:  Then next let me discuss with you the

8     consequences of the plea.  Mr. Rennick, do you understand

9     that the maximum penalty under count one is a term of up to

10    40 years imprisonment, a fine of up to two million dollars,

11    a four-year term of supervised release and a mandatory

12    assessment of one hundred dollars?

13         DEFENDANT RENNICK:  Yes, ma'am.

14         THE COURT:  Mr. Brichler, is there any

15    restitution or forfeiture in this case?

16         MR. BRICHLER:  Your Honor, the only forfeiture

17    was a truck that was involved, and that's been taken care

18    of in the county system.  So we're not seeking anything

19    further.

20         THE COURT:  Thank you.

21         Mr. Rennick, do you understand that, if the Court

22    accepts your plea of guilty, it can impose the maximum

23    penalty?

24         DEFENDANT RENNICK:  Yes, ma'am.

25         THE COURT:  Do you have any other state or

```
 1   federal charges pending against you?

 2            DEFENDANT RENNICK:  No, ma'am.

 3            THE COURT:  Do you understand -- let me go on.

 4   I'm sorry.  Let me go on to Mr. Elliot.

 5            Mr. Elliot, do you understand that the maximum

 6   penalty under count seven is a term of up to five years

 7   imprisonment, a fine of up to $250,000, a one hundred

 8   dollar special assessment, and three years of supervised

 9   release?

10            DEFENDANT ELLIOT:  Yes, ma'am.

11            MR. LAWSON:  Judge, with respect to that, if you

12   look at count one and then look at -- I mean, if you look

13   at paragraph one and paragraph two, my copy shows in

14   paragraph two --

15            THE COURT:  Wait.  What document are you

16   referring to?

17            MR. LAWSON:  The plea agreement.

18            THE COURT:  I don't have that in front of me.

19            MR. LAWSON:  Okay.  I didn't know if you're

20   looking at that or not.

21            THE COURT:  No.  I'm just looking at the statute.

22            MR. LAWSON:  The plea agreement is going to be

23   corrected.  Okay.

24            THE COURT:  Am I incorrect on the maximum

25   penalty?
```

1          MR. LAWSON:  No, you're not.

2          MR. BRICHLER:  There was an error made on the

3   plea agreement, Your Honor.

4          THE COURT:  All right.  Do you want to correct it

5   now, Mr. Lawson?

6          MR. LAWSON:  No, Judge.  We can continue.

7          THE COURT:  Okay.  Let's see.  I'm not sure,

8   Mr. Elliot, did you answer that question?

9          DEFENDANT ELLIOT:  Yes, ma'am.

10          THE COURT:  All right.  Do you understand that,

11   if the Court accepts your plea of guilty, it can impose the

12   maximum penalty?

13          DEFENDANT ELLIOT:  Yes, ma'am.

14          THE COURT:  Do you have any other state or

15   federal charges pending against you?

16          DEFENDANT ELLIOT:  No, ma'am.

17          THE COURT:  Then let me move on to Mr. Benjamin.

18   Do you understand, Mr. Benjamin, that the maximum penalty

19   under count one of the superseding information is a term of

20   up to five years imprisonment, a fine of up to $250,000,

21   supervised release for up to three years, and a one hundred

22   dollars special assessment?

23          DEFENDANT BENJAMIN:  Yes, ma'am.

24          THE COURT:  Do you understand that, if the Court

25   accepts your plea of guilty, it can impose this maximum

1    penalty?

2              DEFENDANT BENJAMIN:  Yes, ma'am.

3              THE COURT:  Do you have any other state or

4    federal charges pending against you?

5              DEFENDANT BENJAMIN:  No, ma'am.

6              THE COURT:  All right.  Then, gentlemen, let me

7    ask all of you:  Do you understand that, if your plea of

8    guilty is accepted, the Court can impose the same penalty

9    as thought you pleaded not guilty, stood trial and were

10   convicted by a jury?

11             DEFENDANT RENNICK:  Yes, ma'am.

12             DEFENDANT ELLIOT:  Yes, ma'am.

13             DEFENDANT BENJAMIN:  Yes, ma'am.

14             THE COURT:  Do you understand that the offense to

15   which you're pleading guilty is a felony offense and that,

16   if your plea is accepted, you will be adjudged guilty of

17   that offense and that that adjudication may deprive you of

18   valuable civil rights, such as the right to vote, the right

19   to hold public office, the right to serve on a jury, and

20   the right to possess any kind of firearm?

21             DEFENDANT RENNICK:  Yes, ma'am.

22             DEFENDANT ELLIOT:  Yes, ma'am.

23             DEFENDANT BENJAMIN:  Yes, ma'am.

24             THE COURT:  Next then I want to talk with you

25   about what we called supervised release.  Supervised

1    release is a period of supervision by the United States

2    Probation Office that follows a period of imprisonment

3    under terms and conditions imposed by this Court.   A

4    violation of any of those terms and conditions may lead to

5    an additional period of imprisonment for a term up to the

6    full time of the period of supervised release without

7    credit for any time that you already served under

8    supervised release.

9            Do you understand that?

10           DEFENDANT RENNICK:  Yes, ma'am.

11           DEFENDANT ELLIOT:  Yes, ma'am.

12           DEFENDANT BENJAMIN:  Yes, ma'am.

13           THE COURT:  Do you understand that, if you

14    receive a sentence of imprisonment of more than one year,

15    you will also be sentenced to a term of supervised release

16    and that the Court may, in any event, order a term of

17    supervised release to follow any term of imprisonment?

18           DEFENDANT RENNICK:  Yes, ma'am.

19           DEFENDANT ELLIOT:  Yes, ma'am.

20           DEFENDANT BENJAMIN:  Yes, ma'am.

21           THE COURT:  Then next I want to talk with you

22    about what we call Guideline sentencing.   Under the

23    Sentencing Reform Act of 1984, the United States Sentencing

24    Commission has issued guidelines for judges to follow in

25    determining the sentence in a criminal case.   Have you and

1    your attorneys talked about how the Sentencing Commission

2    Guidelines might apply to your case?

3            DEFENDANT RENNICK:  Yes, ma'am.

4            DEFENDANT ELLIOT:  Yes, ma'am.

5            DEFENDANT BENJAMIN:  Yes, ma'am.

6            THE COURT:  Do you understand that the Court will

7    not be able to determine the Guideline sentence for your

8    case until after the presentence report has been completed

9    and you and the government have had an opportunity to

10   challenge the facts and conclusions reported by the

11   probation officer?

12           DEFENDANT RENNICK:  Yes, ma'am.

13           DEFENDANT ELLIOT:  Yes, ma'am.

14           DEFENDANT BENJAMIN:  Yes, ma'am.

15           THE COURT:  Mr. Snyder, do we have somebody from

16   Probation here?

17           THE COURTROOM DEPUTY:  No.  I'll get somebody

18   here.

19           THE COURT:  Okay.  And what about Pretrial as

20   well?

21           MR. BRICHLER:  I received reports this morning

22   from the Pretrial Services, Your Honor.

23           THE COURTROOM DEPUTY:  Katrina brought them by

24   late last week.

25           THE COURT:  Okay.  Yes.  I don't have them with

1    me.

2            We can proceed, gentlemen, if you're ready.

3            MR. LAWSON:  We were just noting, Judge, that two

4    of us did get the probation report, Pretrial Service

5    report.

6            THE COURT:  Okay.  Who didn't get it?

7    Mr. Gallagher?  Okay.  We'll make sure that you get a copy.

8            Do you understand that the Court is not bound by

9    any stipulation of facts between you and the government,

10   and the Court may, with the aid of the presentence report,

11   determine the facts relevant to sentencing?

12           DEFENDANT RENNICK:  Yes, ma'am.

13           DEFENDANT ELLIOT:  Yes, ma'am.

14           DEFENDANT BENJAMIN:  Yes, ma'am.

15           THE COURT:  Do you understand that, after it has

16   been determined what guidelines apply to a case, the judge

17   has the authority in some circumstances to impose a

18   sentence that is either more severe or less severe than the

19   sentence called for by the Guidelines?

20           DEFENDANT RENNICK:  Yes, ma'am.

21           DEFENDANT ELLIOT:  Yes, ma'am.

22           DEFENDANT BENJAMIN:  Yes, ma'am.

23           THE COURT:  Do you understand that you and the

24   government have the right to appeal any sentence that I

25   impose?

1                    DEFENDANT RENNICK:  Yes, ma'am.

2                    DEFENDANT ELLIOT:  Yes, ma'am.

3                    DEFENDANT BENJAMIN:  Yes, ma'am.

4                    THE COURT:  Do you understand that, if the

5          minimum Guideline sentence is more than six months, the

6          Court cannot place you on probation?

7                    DEFENDANT RENNICK:  Yes, ma'am.

8                    DEFENDANT ELLIOT:  Yes, ma'am.

9                    DEFENDANT BENJAMIN:  Yes, ma'am.

10                   THE COURT:  Do you understand that, even if the

11         Court can place you on probation, it may or may not do so?

12                   DEFENDANT RENNICK:  Yes, ma'am.

13                   DEFENDANT ELLIOT:  Yes, ma'am.

14                   DEFENDANT BENJAMIN:  Yes, ma'am.

15                   THE COURT:  Then next, gentlemen, let me discuss

16         with you your constitutional rights.  Under the

17         Constitution and laws of the United States, you have the

18         right to stand on a plea of not guilty and be tried by a

19         jury at a speedy and public trial.  At that trial, you

20         would have the right to the assistance of counsel and the

21         right to confront and cross-examine the witnesses who

22         testify against you.  At that trial, you would be entitled

23         to the issuance of subpoenas to compel the attendance of

24         witnesses on your behalf.  You would also have the right to

25         refuse to testify yourself unless you voluntarily chose to

1   do so in your own defense.  At that trial, you would be

2   presumed innocent until such time, if ever, as the

3   government established your guilt by competent evidence

4   beyond a reasonable doubt.

5           Do you understand that, if you plead guilty, you

6   give up all the rights I have just mentioned?

7           DEFENDANT RENNICK:  Yes, ma'am.

8           DEFENDANT ELLIOT:  Yes, ma'am.

9           DEFENDANT BENJAMIN:  Yes, ma'am.

10          THE COURT:  Do you understand that, if you plead

11  guilty, there will not be a further trial of any kind in

12  your case, so that by pleading guilty you are giving up the

13  right to a trial?

14          DEFENDANT RENNICK:  Yes, ma'am.

15          DEFENDANT ELLIOT:  Yes, ma'am.

16          DEFENDANT BENJAMIN:  Yes, ma'am.

17          THE COURT:  If you plead guilty, do you

18  understand that you will also have to waive your right not

19  to incriminate yourself since I will have to ask you

20  questions about what you did in order to satisfy myself

21  that you are guilty as charged, and you will have to

22  acknowledge your guilt?

23          DEFENDANT RENNICK:  Yes, ma'am.

24          DEFENDANT ELLIOT:  Yes, ma'am.

25          DEFENDANT BENJAMIN:  Yes, ma'am.

1          THE COURT:  Are you willing to waive and give up

2    your right to a trial and all the other rights I have just

3    discussed?

4          DEFENDANT RENNICK:  Yes, ma'am.

5          DEFENDANT ELLIOT:  Yes, ma'am.

6          DEFENDANT BENJAMIN:  Yes, ma'am.

7          THE COURT:  Then next let me inquire about a plea

8    agreement, and you should understand that proper plea

9    agreements are permissible and that you and all counsel

10   have a duty to disclose the existence and terms of any such

11   agreement.

12         Let me first ask the defendants and their

13   counsel:  Are there plea agreements in these cases?

14         MR. GALLAGHER:  Yes, Your Honor, there is.

15         MR. LAWSON:  Yes, Your Honor, on behalf of

16   Mr. Elliot.

17         MR. COHEN:  Yes, Your Honor.

18         THE COURT:  Then, Mr. Brichler, I'm going to ask

19   you to summarize the essential terms of the plea

20   agreements.

21         MR. BRICHLER:  Yes, Your Honor.  May I have one

22   moment?

23         THE COURT:  Certainly.  Take your time,

24   Mr. Brichler.

25         MR. BRICHLER:  Thank you, Your Honor.

1          THE COURT:  Thank you, Mr. Brichler.

2          MR. BRICHLER:  Your Honor, there are three plea

3    agreements.  They're all in writing, and I will summarize

4    them as follows.  All three defendants have agreed through

5    their attorneys to enter pleas of guilty in this matter,

6    Steve Rennick to count one of the indictment charging him

7    with conspiracy to distribute in excess of 100 kilograms of

8    marijuana; Mr. Elliot, with count seven of the indictment,

9    which charges him with possession with intent to distribute

10   marijuana; and with respect to Mr. Benjamin, to the

11   superseding bill of information charging him with

12   distribution of marijuana in violation of federal law.

13          Penalties are all outlined in the plea

14   agreements, as the Court just mentioned on the record.

15          In return for these pleas of guilty, the United

16   States attorney has agreed to dismiss the remaining counts

17   of the indictment as they pertain to each defendant.

18          The government agrees to recommend to the Court

19   that the base offense level for purposes of the Federal

20   Sentencing Guidelines for Mr. Rennick is level 26, and that

21   recommendation is based upon his involvement with in excess

22   100 kilograms of marijuana.  By signing the plea agreement,

23   he agrees and admits to said involvement, and the

24   government would further recommend that he be given a

25   three-point adjustment for acceptance of responsibility.

1          With respect to Mr. Elliot, the government has

2     agreed to recommend the base offense level for purposes of

3     the Guidelines is level 18.  That recommendation is based

4     upon what the government believes the readily provable

5     facts concerning his involvement with marijuana would be.

6     By signing this plea agreement, the defendant has agreed

7     and admitted to that involvement, and it is further to be

8     recommended that he be given a three-point adjustment for

9     acceptance of responsibility.

10          With respect to Mr. Benjamin, the government has

11    agreed to recommend that his base offense level for

12    purposes of the Guidelines is level eight.  That

13    recommendation is based upon what the government believes

14    the readily provable facts concerning his involvement with

15    marijuana would be.  By signing the agreement he agrees and

16    admits to that involvement, and in his case the

17    recommendation for acceptance of responsibility would be

18    two points since the base offense level is not greater than

19    16.

20          THE COURT:  Mr. Brichler, I take it with

21    Mr. Benjamin the previous indictment will be dismissed and

22    the superseding bill of information has been filed in its

23    place?

24          MR. BRICHLER:  That is correct, Your Honor.

25          THE COURT:  All right.

1        MR. BRICHLER:  With respect to each defendant,

2   the government has agreed to file, upon the substantial

3   assistance of any of the defendants, a motion with the

4   Court for a downward departure from the Guideline sentence

5   stating that they had made a good faith effort to provide

6   substantial assistance, should they do so.  They understand

7   that the filing of such motion shall be within the sole

8   discretion of United States attorney, and, if it is filed,

9   the defendants understand it is not binding on the Court.

10  The motion would be authorized by Section 5K1.1 of the

11  Guidelines and 18 United States Code Section 3553.

12        If the government does file a motion for a

13  downward departure, it would be in reliance on their

14  continued cooperation, and, should they later refuse to

15  testify, the government at it's option may petition the

16  Court to resentence them without the 5K motion or to

17  reinstate the indictment.

18        The defendants all understands the probation

19  department will conduct a presentence investigation and

20  will recommend to the Court a Sentencing Guideline range.

21  The defendants understand the probation department's

22  recommendations are not binding on the Court, and the terms

23  of the plea agreement are not binding on the Court or the

24  probation department.

25        The defendants understand that, if the Court does

1    not follow the recommendations in these plea agreements,

2    that the Court -- or that the defendant does not have the

3    right to withdraw his plea of guilty.

4        The defendants understand there is no agreement

5    concerning their ultimate sentence.  They could receive the

6    maximum penalty provided by law.

7        And they have all agreed to pay the one hundred

8    dollar special assessment.

9        This is the entire plea agreement with respect to

10   each defendant.  There are no other provisions or

11   understandings.

12       Mr. Rennick has signed the plea agreement,

13   Mr. Gallagher, his attorney, and myself on behalf of the

14   United States.  Mr. Elliot has signed his plea agreement.

15   His attorney, Kenneth Lawson, has signed for him, and again

16   I have signed on behalf of the United States.  And

17   Mr. Benjamin and Mr. Cohen, his attorney, have both signed

18   the plea agreement, and I have signed on behalf of the

19   United States.

20       THE COURT:  Thank you, Mr. Brichler.

21       Mr. Gallagher, let me ask you:  Is that your

22   understanding of the plea agreement regarding Mr. Rennick?

23       MR. GALLAGHER:  It is, Your Honor.

24       THE COURT:  And, Mr. Rennick, is that your

25   understanding of the plea agreement?

1          DEFENDANT RENNICK:  Yes, Your Honor.

2          THE COURT:  Has anyone made any other or

3    different promise or assurance of any kind that induced you

4    to plead guilty?

5          DEFENDANT RENNICK:  No, ma'am.

6          THE COURT:  Do you understand that any

7    recommendation of sentence agreed to by your counsel and

8    the government or any agreement by the government not to

9    oppose the sentence requested by your attorney is not

10   binding on the Court and that you might, on the basis of

11   your guilty plea, receive a more severe sentence than

12   requested or recommended?

13         DEFENDANT RENNICK:  Yes, ma'am.

14         THE COURT:  All right.  Then let me move on to

15   Mr. Lawson and Mr. Elliot.  Mr. Lawson, is that your

16   understanding of the plea agreement regarding Mr. Elliot?

17         MR. LAWSON:  That is correct, Your Honor.

18         THE COURT:  And, Mr. Elliot, is that your

19   understanding of the plea agreement?

20         DEFENDANT ELLIOT:  Yes, ma'am.

21         THE COURT:  Has anyone made any other or

22   different promise or assurance of any kind that induced you

23   to plead guilty?

24         DEFENDANT ELLIOT:  No, ma'am.

25         THE COURT:  Do you understand that any

1   recommendation of sentence agreed to by your counsel and

2   the government or any agreement by the government not to

3   oppose the sentence requested by your attorney is not

4   binding on the Court and that you might, on the basis of

5   your guilty plea, receive a severe sentence that requested

6   or recommended?

7           DEFENDANT ELLIOT:  Yes.

8           THE COURT:  All right.  Then I'm going to move on

9   to Mr. Cohen and Mr. Benjamin.  Mr. Cohen, is that your

10  understanding of the plea agreement regarding Mr. Benjamin?

11          MR. COHEN:  It is, Your Honor.

12          THE COURT:  Mr. Benjamin, is that your

13  understanding of the plea agreement?

14          DEFENDANT BENJAMIN:  Yes, ma'am.

15          THE COURT:  Has anyone made may other or

16  different promise or assurance of any kind that induced you

17  to plead guilty?

18          DEFENDANT BENJAMIN:  No, ma'am.

19          THE COURT:  Do you understand that any

20  recommendation of sentence agreed to by your counsel and

21  the government or any agreement by the government not to

22  oppose the sentence requested by your attorney is not

23  binding on the Court and that you might, on the basis of

24  your guilty plea, receive a more severe sentence than

25  requested or recommended?

```
 1              DEFENDANT BENJAMIN:  Yes, ma'am.
 2              THE COURT:  Gentlemen, aside from the plea
 3    agreement or the plea agreements we have just discussed,
 4    has any person, including an officer or agent of the
 5    government or any of the lawyers in this case, promised or
 6    even suggested that you will receive a lighter sentence or
 7    any other form of leniency if you plead guilty?
 8              DEFENDANT RENNICK:  No, ma'am.
 9              DEFENDANT ELLIOT:  No, ma'am.
10              DEFENDANT BENJAMIN:  No, ma'am.
11              THE COURT:  Is your decision to plead guilty your
12    own free and voluntary act?
13              DEFENDANT RENNICK:  Yes, ma'am.
14              DEFENDANT ELLIOT:  Yes, ma'am.
15              DEFENDANT BENJAMIN:  Yes, ma'am.
16              THE COURT:  Have you been subjected to any
17    threats or force of any kind which caused you to plead
18    guilty?
19              DEFENDANT RENNICK:  No, ma'am.
20              DEFENDANT ELLIOT:  No, ma'am.
21              DEFENDANT BENJAMIN:  No, ma'am.
22              THE COURT:  Mr. Brichler, I understand that you
23    are going to testify to the facts in the matter.
24              MR. BRICHLER:  Yes, Your Honor.  I'll give a
25    statement of facts.
```

1           THE COURT:  All right.

2           MR. BRICHLER:  Beginning in the spring of 2002,

3    Steven Rennick, Sr., some of the previous co-defendants in

4    this case, Kareem Cole and David Jones, Mr. Elliot,

5    conspired to distribute marijuana in the Southern District

6    of Ohio.

7           Just prior to October 15, 2002, Mr. Rennick

8    traveled to Phoenix Arizona along with Kareem Cole in order

9    to obtain a quantity of marijuana.  On the morning -- early

10   morning hours of October 15, 2002, Mr. Rennick and

11   Mr. Kareem Cole returned from Phoenix, Arizona to

12   Cincinnati, Ohio with approximately 500 pounds of marijuana

13   in a truck that was operated by Mr. Rennick.  The marijuana

14   was unloaded at a warehouse in College Hill that is

15   operated by Mr. Rennick and his family.  They have a

16   trucking business there.

17          Later that day, on October the 15th of 2002,

18   Mr. Elliot responded to that garage where he and Eddie

19   Moore, another co-defendant in this case, obtained

20   approximately 50 pounds of marijuana, transported that

21   marijuana to be broken down and distributed, some of it

22   distributed almost immediately to customers, and the rest

23   of the marijuana was stored at Mr. Moore's residence where

24   it was later seized by the police.

25          During the course of the conspiracy, in July,

1    specifically July 19 of 2002, Wayne Benjamin, during that

2    period of time, was working part time there for Mr. Rennick

3    doing some painting on race cars and work around the

4    warehouse.  Mr. Benjamin received a pound of marijuana from

5    Mr. Rennick, which he later distributed.

6            This all occurred in the Southern District of

7    Ohio.

8            THE COURT:  Thank you, Mr. Brichler.

9            Gentlemen, did you hear what Mr. Brichler just

10   said?

11           DEFENDANT RENNICK:  Yes, ma'am.

12           DEFENDANT ELLIOT:  Yes, ma'am.

13           DEFENDANT BENJAMIN:  Yes, ma'am.

14           THE COURT:  Is what he said correct?

15           DEFENDANT RENNICK:  Yes, ma'am.

16           DEFENDANT ELLIOT:  Yes, ma'am.

17           DEFENDANT BENJAMIN:  Yes, ma'am.

18           THE COURT:  Is it in any way incorrect?

19           DEFENDANT ELLIOT:  No, ma'am.

20           DEFENDANT BENJAMIN:  No, ma'am.

21           THE COURT:  Mr. Rennick, we need something

22   verbal.  The court reporter has to take it down.

23           DEFENDANT RENNICK:  No, ma'am.

24           THE COURT:  Are you offering to plead guilty here

25   today because you are in fact guilty of the offense charged

1    in count one of the indictment for Mr. Rennick, count seven

2    of the indictment for Mr. Elliot, and count one of the

3    superseding information for Mr. Benjamin?

4              DEFENDANT RENNICK:  Yes, ma'am.

5              DEFENDANT ELLIOT:  Yes, ma'am.

6              DEFENDANT BENJAMIN:  Yes, ma'am.

7              THE COURT:  Mr. Rennick, let me just make sure

8    with regard to the maximum possible sentence in your case.

9    I think I omitted saying that there is a mandatory minimum

10   and that you understand that the sentence is five to 40

11   years.

12             DEFENDANT RENNICK:  Yes, ma'am.

13             THE COURT:  All right.  Gentlemen, in light of

14   everything I have told you about your rights and in light

15   of all my questions, I'll ask you again for the last time:

16   How do you plead to the charge in count one of the

17   information for Mr. Rennick -- l'm sorry -- of the

18   indictment for Mr. Rennick, count seven of the indictment

19   for Mr. Elliot, and count one of the information for

20   Mr. Benjamin, guilty or not guilty?  And let me have

21   individual answers here.

22             DEFENDANT RENNICK:  Guilty.

23             DEFENDANT ELLIOT:  Guilty.

24             DEFENDANT BENJAMIN:  Guilty.

25             THE COURT:  The Court has observed the appearance

1  and responsiveness of the defendants in giving the answers

2  to the questions asked.  Based on these observations and

3  the answers given, the Court is satisfied the defendants

4  are in full possession of their faculties, they are not

5  suffering from any apparent physical or mental illness, are

6  not under the influence of narcotics or alcohol, understand

7  the proceeding in which they are engaged, understand the

8  nature and meaning of the charges and the consequences of

9  their plea of guilty and are aware of all plea negotiations

10  undertaken on their behalf.

11       The Court finds that the defendants are fully

12  competent and capable of entering an informed plea, and the

13  Court further finds that their plea of guilty is a knowing

14  and voluntary plea supported by an independent basis in

15  fact containing each of the essential elements of the

16  offense charged.

17       Let me speak with you briefly about the

18  presentence report.  In accordance with Southern District

19  of Ohio Rule 102, a written presentence report will be

20  prepared by the probation office to assist the Court in

21  sentencing.  Rule 102 is a standing order of this Court

22  which serves as the schedule for how the presentence

23  investigation and report disclosure process will occur.

24  The Court charges the probation officer with the duty to

25  administer Rule 102, and the parties will cooperate with

1  the probation officer in that regard.  The probation

2  officer will provide all parties with the specific dates

3  applicable in this case and can answer any questions there

4  are about the rule.

5          The defendants will be asked to give information

6  for the reports, and you may have your attorneys present if

7  you wish.  The defendants and their attorneys may make

8  objections to the findings and conclusions of the probation

9  officer in accordance with the rule, and at the sentencing

10 hearing defendants and defendant's counsel may present

11 evidence and arguments in support of the defendant's

12 position with respect to any unresolved objections to the

13 presentence report.

14          Mr. Brichler, what's the custodial status of the

15 defendants?

16          MR. BRICHLER:  Your Honor, all three defendants

17 are free on bonds that were previously posted.

18          THE COURT:  Okay.  And what is the recommendation

19 of the United States attorney concerning the custodial

20 status?

21          MR. BRICHLER:  We would have no objection to the

22 continued bond being in effect pending the presentence

23 report.

24          THE COURT:  All right.  Anything counsel wish to

25 say in that regard?  It's the Court's intention to follow

1    the recommendation of the United States attorney and the

2    Pretrial Services.

3              MR. LAWSON:  No, Your Honor.

4              THE COURT:  All right.  Then the Court will

5    continue the bonds that were previously set subject to all

6    the conditions previously imposed in those bonds.

7              Gentlemen, I want to remind you that failure to

8    appear may constitute a separate distinct federal offense.

9    If you don't appear in this court when summoned, you may be

10   committing a separate federal offense, and in that event

11   the Court will direct the United States attorney to submit

12   the matter to the grand jury, and, if you're indicted and

13   convicted on that offense, the Court will impose the

14   maximum consecutive penalty provided by law.

15             I also want to remind you of all the conditions

16   on which you were originally released.  Those continue to

17   apply, and the penalties for violating those conditions can

18   be severe.

19             And, finally, it will be necessary for you to

20   keep in close communication with your attorneys, because

21   they will be notifying you of the time and date when you

22   need to meet with the presentence investigation officer

23   assigned to your case.  Your attorney will also need to

24   consult with you when he receives the presentence report

25   concerning any errors or discrepancies that may occur in

1   the report.  And, finally, your attorneys will notify you

2   of the dates and times for your sentencing hearing.

3            Counsel, is there anything further that you

4   desire to place upon the record before we close the hearing

5   in this matter?

6            MR. BRICHLER:  Nothing from the United States,

7   Your Honor.

8            MR. GALLAGHER:  Nothing, Your Honor.

9            MR. LAWSON:  No, Your Honor.

10           MR. COHEN:  Nothing, Your Honor.

11           THE COURT:  Thank you, everyone.

12               PROCEEDINGS CONCLUDED AT 12:25 P.M.

13

14

15                  C E R T I F I C A T E

16           I, Betty J. Schwab, the undersigned, do

17   hereby certify that the foregoing is a correct

18   transcript from the record of the proceedings in

19   the above-entitled matter.

20

21                  _____

22                  BETTY J. SCHWAB, RPR
                    Official Reporter

23

24

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : CASE NO. 1:02-CR-157 |
| Plaintiff, | : (Judge Susan Dlott) |
| | : |
| vs. | : |
| | : |
| STEVE RENNICK, SR., | : <u>MOTION FOR DOWNWARD</u> |
| Defendant. | : <u>DEPARTURE</u> |

NOW COMES the Defendant, by and through counsel, and hereby moves this Honorable Court for a downward departure. Mr. Rennick respectfully requests this Court to review the background of Mr. Rennick in combination with his actions in cooperation with law enforcement, post plea, and the combined effect of this cooperation on his life and mental health status. In considering this information, it is clear the Sentencing Commission did not contemplate the facts and circumstances surrounding Mr. Rennick's case and require a departure downward from the proposed guideline application in this case.

In *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035 (1996) the Supreme Court held that an appellate court owes substantial deference to the district court's decision to depart from the sentencing guidelines ranges and may not reverse unless the district court abuses its discretion. In reaffirming the judicial independence to grant departures, the Supreme Court explained that there is room under the guidelines for federal judges to exercise traditional sentencing discretion "to consider every convicted person as an individual and every case as

1

a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id* at 2053.

Koon explains that a departure potentially may be based upon any ground that the Sentencing Commission has not proscribed. Federal courts may not categorically rule out departure factors because that would usurp the Commission's policy-making authority. *Id* at 2050. Departure is fact based. "The relevant question, however, is not, as the Government says, "whether a particular factor is within the 'heartland' as a general proposition, but whether the particular factor is within the heartland given all the facts of the case." *Id* at 2047.

**Additional Authority for Departure**

18 U.S.C. §3553-Imposition of a sentence

> (a)  Factors to be considered in imposing a sentence. The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing;
> (2) (A)  ....just punishment for the offense
> (B)...adequate deterrence
> (C)...protect the public...; and
> (D)...provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment.
>
> (b)  The Court shall impose a sentence f the kind, and within the range ...unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

In addition, there is no limit placed upon the use of information available to the court for sentencing. 18 U.S.C. §3661 states: No limitation shall be placed upon the information concerning the background, character, and conduct of a person convicted of an offense which

2

a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

U.S.S.G. §5K1.1 permits departures from the Guideline's range only upon motion of the Government certifying the substantial assistance of the defendant. Counsel for the Government has informed defense counsel such a motion will not be filed in this case. The cooperation given by Rennick did not lead to the arrest and prosecution of anyone. These are normally the circumstances surrounding a §5K1.1 motion. Rennick suggests had he not been shot while cooperating, a drug transaction would have been completed. With that event, Rennick believes the Government would be taking the initiative and filing a departure request. A §5K1.1 motion is not the only authority under which departure is permitted.

U.S.S.G. §5K2.0 recognizes and encourages certain departures. In its policy statement it notes, there will be "Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance." The Sentencing Commission also recognized the effect of a combination of factors might have. "The Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case..." Comments to U.S.S.G. §5K2.0.

3

Counsel submits the combination of factors warrant a departure in this case despite the Government's refusal to file a motion for departure pursuant to §5K1.1

Mr. Rennick's encouragement to his co-defendants to enter pleas as he did facilitated the Administration of Justice in this case. *United States v. Dethlefs*, 123 F.3d 39 (1ˢᵗ Cir. 1997). "…a defendant's timely entry of plea might facilitate the administration of justice in such an unusual way…" *See also United States v. Garcia*, 926 F.2d 125 (2ⁿᵈ Cir. 1991). (Where a guilty plea led others to plead guilty which "broke the log jam" in a multi-defendant case thus facilitating the administration of justice.)

Normally, military records must be extraordinary to warrant departure. Absent such circumstances, the Sentencing Commission discourages departure based upon military records. However, the service experiences of Mr. Rennick combined with recent events to remove this case from the "heartland" of case considered by the Guidelines.

First, it must be noted that immediately after entering a plea in this case, Mr. Rennick began cooperating with local law enforcement in the investigation of other people involved in narcotics trafficking. He was debriefed, signed to a contract as a confidential informant and provided information and intelligence to law enforcement.

At the time Mr. Rennick began cooperating, it was well known he suffered from Post Traumatic Stress Disorder (PTSD). He had been diagnosed by the United States Veterans Hospital staff as suffering from the traumatic events suffered in Vietnam during his service to his country. His experiences in war are outlined in the PSR at paragraphs 85, 92-94.

4

While these experiences alone may not warrant departure, the events that occurred while cooperating with law enforcement provide the combination of factors not contemplated by the Commission when devising the guidelines.

On the weekend of October 31, 2003 Mr. Rennick informed RENU that he believed he was being targeting for a shooting. He spoke to a supervisor with RENU and informed them that recent events surrounding his cooperation with RENU were discovered and Rennick was told he would be killed.

Mr. Rennick was not provided with additional protection. No visible signs were taken to ensure Mr. Rennick's safety. Mr. Rennick's pleas for assistance were not treated as posing a serious threat to his health and safety.

On Friday, November 7, 2003 Mr. Rennick was shot while at his place of employment on North Bend Road. He was approached from behind by a man who pointed a gun at Rennick and said, "You are a dead man." A short struggle ensued, and Rennick was shot in the chest and leg. Mr. Rennick was able to gain the notice of a neighboring business owner, who then called police.

Mr. Rennick was hospitalized, had surgery and has undergone physical therapy. Mr. Rennick's mental health has been affected by the additional trauma suffered November 7, 2003. His suffering from PTSD has been adversely affected by the shooting and medical treatment for the gunshots. (Letters from the V.A. are being obtained by Rennick and will be available at the sentencing hearing.)

5

It is true that a defendant is attempting to better his situation at sentencing by cooperating with police. There are certain inherent risks while cooperating with the police. However, it is clear that being shot in a murder attempt is not a situation contemplated by the Commission when designing Guideline assistance to the court.

The trauma suffered while working with the Government in this instance, in combination with earlier trauma suffered while serving this Government and the assistance provided in the administration of justice warrants a downward departure.

It is disturbing the prosecution refuses to file a request for departure in this matter. It could send a chilling message to other defendants contemplating cooperation. Unless there is a successful arrest and prosecution, a request for departure will not be filed. Defendants considering the option of cooperation may wonder what the response might be if they are injured or threatened while attempting to assist in the investigation of crimes committed by others. It makes good policy sense to recognize that no one deserves to be injured while attempting to assist the Government, and if such an extraordinary event occurs, there is recognition by the court when fashioning a sentence.

This Court has already conducted sentencing hearings for Kareem Cole and David Jones a/k/a Philip Davidson. Both men ran and directed this marijuana operation. One was a fugitive from justice at the time of his arrest. Both men were subject to deportation. Both received departure due to cooperation with the Government. Both received substantial departures in their sentences.

6

WHEREFORE, for the reasons set forth above, Steven Rennick respectfully requests

this Court depart downward from the suggested guideline range to a range that satisfies all

of the concerns and factors contemplated by statute.

Respectfully submitted,

**S/William R. Gallagher**
WILLIAM R. GALLAGHER (0064683)
Attorney for Defendant
Arenstein & Gallagher
The Citadel
114 East Eighth Street
Cincinnati, Ohio 45202
(513) 651-5666
Fax: (513) 651-5688
Email: WRG35@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2004 I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to

Robert C. Brichler, Assistant U.S. Attorney.

**S/William R. Gallagher**
WILLIAM R. GALLAGHER (0064683)
Attorney for Defendant

7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | :    **Case No. CR-1-02-157** |
| **Plaintiff,** | :    **(Judge Dlott)** |
| | : |
| **vs.** | : |
| **STEVE RENICK** | : **NOTICE OF** |
| | : **APPEARANCEOFCOUNSEL** |
| **Defendant.** | |

     Now comes Kenneth L. Lawson and notifies this Court that he has been retained to represent

Steve Renick in the above-referenced case. William Gallagher is no longer the attorney of record for

Mr. Renick.

                     Respectfully submitted,

                     /s/**Kenneth L. Lawson (0042468)**
                     **Kenneth L. Lawson & Associates**
                     **The Dominion Building**
                     **808 Elm Street, Suite 100**
                     **Cincinnati, Ohio 45202**
                     **(513) 345-5000**
                     **(513) 345-5005 Fax**

### CERTIFICATE OF SERVICE

     I certify that a copy of the foregoing document was electronically filed with the Clerk of Courts
using the CM/ECF system on this 29th of January, 2004 which will notify the following via electronic
email notification.

| | |
|---|---|
| Robert Brichler, Esq. | William Gallagher, Esq. |
| Assistant U.S. Attorney | The Citadel |
| 221 E. Fourth Street, Suite 400 | 114 E. Eight Street |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45202 |

                     /s/Kenneth L. Lawson

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.  CR-1-02-157** |
| **Plaintiff,** | : | **(Judge Dlott)** |
| | : | |
| **vs.** | : | |
| | : | |
| **STEVE RENICK, SR.** | : | |
| | | **:MOTION TO RECONSIDER** |
| **Defendant.** | : | **(Hearing Requested)** |

Now comes the Defendant, Steven Renick, by and through Counsel and hereby moves this Court to reconsider the sentence  and allow the Defendant to present evidence that he is entitled to a downward departure based on substantial assistance given the Government.

This Motion is supported by the following Memorandum.

### MEMORANDUM

As this Court is well aware, at the time of sentencing, it was apparent that the Defendant and his then Attorney did not agree on what was being said to the Court.  In fact, when the Attorney asked the Defendant to be quiet, the Defendant refused and tried to explain to the Court the work that he had done for the Government and why he believed he was entitled to a downward departure based on substantial assistance.

The Defendant referred to audio tapes of conversations he had with Agent Mercado who told Defendant he could get probation.

Further, the Defendant was told prior to entering his plea by the agent and then confirmed by his then Attorney that if he gave substantial assistance he could receive probation.  However, the Defendant plead to an offense where probation was not an option. There was no way he could legally receive probation under his plea agreement no matter how much cooperation he provided.



Because of the constraints on time, Counsel is filing this Motion and Memorandum with the understanding that it will be supplemented with evidence including, if possible, transcripts of the taped conversations along with affidavits from the Defendant's witnesses and the Defendant himself.

Counsel is also respectfully requesting that the court not file the Notice of Appeal on behalf of Mr. Renick in that Counsel will address the Notice of Appeal once this Court rules on Mr. Renick's motion.

Respectfully submitted,

**/s/Kenneth L. Lawson**
**Kenneth L. Lawson (0042468)**
**Kenneth L. Lawson & Associates**
**The Dominion Building**
**808 Elm Street, Suite 100**
**Cincinnati, Ohio 45202**
**(513) 345-5000**
**(513) 345-5005 Fax**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically field with the Clerk of Courts using the CM/EMF system on this 29th day of January, 2004 which will notify Bob Brichler, Assistant U.S. Attorney, via electronic email notification.

/s/Kenneth L. Lawson

AO 245B (Rev. 3/01) Sheet 1 - Judgment in a Criminal Case

# United States District Court
## Southern District of Ohio at Cincinnati

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>**STEVE RENNICK, SR.** | **JUDGMENT IN A CRIMINAL CASE**<br>(For Offenses Committed On or After November 1, 1987)<br>Case Number: <u>1:02cr157(3)-SJD</u> |

<u>William Gallagher</u>
Defendant's Attorney

## THE DEFENDANT:

[✔] pleaded guilty to count(s): <u>1</u>.
[ ] pleaded nolo contendere to counts(s) ___ which was accepted by the court.
[ ] was found guilty on count(s) ___ after a plea of not guilty.

Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 USC 846 | Conspiracy to Distribute Marijuana | 10/16/2002 | 1 |

The defendant is sentenced as provided in pages 2 through <u>5</u> of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on counts(s) ___ and is discharged as to such count(s).

[ ] Count(s) ___ (is)(are) dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and the United States Attorney of any material change in the defendant's economic circumstances.

| | |
|---|---|
| Defendant's Soc. Sec. No.: <u>3291</u> | <u>January 28, 2004</u><br>Date of Imposition of Judgment |
| Defendant's Date of Birth: <u>1949</u> | |
| Defendant's USM No.: <u>04050-032</u> | Signature of Judicial Officer |
| Defendant's Residence Address:<br>2 Peachtree Court<br>Fairfield, Ohio 45014 | **SUSAN J. DLOTT, United States District Judge**<br>Name & Title of Judicial Officer |
| Defendant's Mailing Address:<br>2 Peachtree Court<br>Fairfield, Ohio 45014 | Date |

[DE-157 P1 JA-82] /57

AO 245B (Rev. 3/01) Sheet 2 - Imprisonment

| | | |
|---|---|---|
| CASE NUMBER: | 1:02cr157(3)-SJD | Judgment - Page 2 of 5 |
| DEFENDANT: | STEVE RENNICK, SR. | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 63 MONTHS.

The defendant shall participate in the Bureau of Prison's Inmate Financial Responsibility Program. The defendant shall participate in a mental health evaluation and/or mental health counseling at the direction of the Bureau of Prisons.

[✔]    The court makes the following recommendations to the Bureau of Prisons:
That the defendant be placed in the closest appropriate facility to Cincinnati, Ohio that can give care for Post Traumatic Stress Disorder and physical therapy.

[ ]    The defendant is remanded to the custody of the United States Marshal.

[ ]    The defendant shall surrender to the United States Marshal for this district.
[ ] at ___ on ___.
[ ] as notified by the United States Marshal.

[✔]    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
[ ] before _ on _.
[✔] as notified by the United States Marshal but no sooner than February 23, 2004
[ ] as notified by the Probation or Pretrial Services Officer.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on_____ to _____

at _____ , with a certified copy of this judgment.

UNITED STATES MARSHAL

By  _____
Deputy U.S. Marshal

L[DE-157 P2 JA-83]

AO 245B (Rev. 3/01) Sheet 3 - Supervised Release

CASE NUMBER:     1:02cr157(3)-SJD                                    Judgment - Page 3 of 5
DEFENDANT:       STEVE RENNICK, SR.

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 4 YEARS .

The defendant shall participate in a mental health treatment program at the direction of the probation officer. The defendant shall be prohibited from incurring any new credit or establishing any additional lines of credit without approval of the probation officer. The defendant shall provide the probation officer access to all requested financial information.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

[ ]     The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.

[✔]    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated below).

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

[DE-157 P3 JA-84]

AO 245B (Rev. 3/01) Sheet 5 - Criminal Monetary Penalties

| CASE NUMBER: | 1:02cr157(3)-SJD | Judgment - Page 4 of 5 |
|---|---|---|
| DEFENDANT: | STEVE RENNICK, SR. | |

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the Schedule of Payments set forth on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $ 100.00 | $ 10,000.00 | $ |

[] The determination of restitution is deferred until _. An amended Judgment in a Criminal Case (AO 245C) will be entered after such determination.

[] The defendant shall make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment unless specified otherwise in the priority order of percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid in full prior to the United States receiving payment.

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or % of Pymnt |
|---|---|---|---|
| TOTALS: | $ ___ | $ ___ | |

[] If applicable, restitution amount ordered pursuant to plea agreement .......... $____

[✓] The defendant shall pay interest on any fine or restitution of more than $2500, unless the fine or restitution is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default pursuant to 18 U.S.C. §3612(g).

[] The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    [] The interest requirement is waived for the   [] fine and/or   [] restitution.

    [] The interest requirement for the   [] fine and/or   [] restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 3/01) Sheet 6 - Criminal Monetary Penalties

**CASE NUMBER:**    1:02cr157(3)-SJD
**DEFENDANT:**    STEVE RENNICK, SR.

Judgment - Page 5 of 5

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A    [ ]    Lump sum payment of $ due immediately, balance due

    [ ] not later than  or
    [ ] in accordance with    [ ] C,    [ ] D, or    [ ] E below; or

B    [✔]    Payment to begin immediately (may be combined with    [ ] C    [ ] D,    [ ] E below); or

C    [ ]    Payment in installments of $ over a period of , to commence days after the date of this judgment; or

D    [ ]    Payment in installments of $ over a period of , to commence days after release from imprisonment to a term of supervision; or

E    [ ]    Special instructions regarding the payment of criminal monetary penalties (may need multiple instructions if both fine and restitution imposed):

    [ ] Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties (e.g. fines, restitution) shall be due during the period of imprisonment. All criminal penalties, except those payments made through the Federal Bureau of Prison's Inmate Financial Responsibility Program, are made to the Clerk of the Court, unless otherwise directed by the court, the probation officer, of the United States Attorney.

    [ ]While incarcerated, the defendant shall make restitution payments in installments of $ , to commence after the date of this judgment.

    [ ] If the defendant, while incarcerated, is working in a non-UNICOR or grade 5 UNICOR job, the defendant shall pay $25.00 per quarter toward defendant's restitution obligation. If working in a grade 1-4 UNICOR job, defendant shall pay 50% of defendant's monthly pay toward defendant's restitution obligation. Any change in this schedule shall be made only by order of this Court.

    [ ] After the defendant is release from imprisonment, and within 30 days of the commencement of the term of supervised release, the probation officer shall recommend a revised payment schedule to the Court to satisfy any unpaid balance of the restitution. The Court will enter an order establishing a schedule of payments.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[ ]    Joint and Several (Defendant name, Case Number, and Joint and Several Amount):

[ ]    The defendant shall pay the cost of prosecution.
[ ]    The defendant shall pay the following court cost(s):

[ ]    The defendant shall forfeit the defendant's interest in the following property to the United States:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA　　　:　　CR-1-02-157-3
　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　:　　**GOVERNMENT'S RESPONSE**
　　　　　v.　　　　　　　　　:　　**TO DEFENDANT'S MOTION**
　　　　　　　　　　　　　　　:　　**TO RECONSIDER**
　　　　　　　　　　　　　　　:
STEVEN RENNICK, SR.　　　　　:　　J. Dlott

- - - - - - - - - - - - - - - - - - - -

Now comes the United States and moves this Court for an
order denying the defendant's motion to reconsider his sentence.
Rule 35 of the Federal Rules of Criminal Procedure does not
permit the Court to revisit a sentence for the reasons proposed.

### Memorandum

Rule 35(a) of the Federal Rules of Criminal Procedure
provides that a sentence that resulted from arithmetical,
technical, or other clear error may be corrected within seven
days.  Rule 35(a), as amended in 2002, was formerly Rule 35(c).
The Advisory Committee Notes to former Rule 35(c), 1991
Amendment, state in part:

> The authority to correct a sentence under this
> subdivision is intended to be very narrow and to extend
> only to those cases in which an obvious error or
> mistake has occurred in the sentence, that is, errors
> which would almost certainly result in a remand of the
> case to the trial court for further action under Rule
> 35(a).  The subdivision is not intended to afford the
> court the opportunity to reconsider the application or
> interpretation of the sentencing guidelines or for the
> court simply to change its mind about the
> appropriateness of the sentence.  Nor should it be used
> to reopen issues previously resolved at the sentencing
> hearing through the exercise of the court's discretion
> with regard to the application of the sentencing

guidelines. Furthermore, the Committee did not intend that the rule relax any requirement that the parties state all objections to a sentence at or before the sentencing hearing. *See, e.g., United States v. Jones,* 899 F.2d 1097 (11th Cir. 1990).

Rule 35(c) provides an efficient and prompt method for correcting obvious technical errors that are called to the court's attention immediately after sentencing. But the addition of this subdivision is not intended to preclude a defendant from obtaining statutory relief from a plainly illegal sentence. The Committee's assumption is that a defendant detained pursuant to such a sentence could seek relief under 28 U.S.C. § 2255 if the seven day period provided in Rule 35(c) has elapsed. Rule 35(c) and § 2255 should thus provide sufficient authority for a district court to correct obvious sentencing errors.

In this case, the Court heard from the parties, made rulings concerning the guidelines, and issued a sentence. The rule does not permit the defendant a second bite at the apple.

As the Committee notes indicate, the Rule "is not intended to afford the court an opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court to simply change its mind . . ." The defendant has other adequate remedies available.

2

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202
(513) 684-3711
Fax:  (513) 684-2047
Robert.Brichler @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's

Response To Defendant's Motion To Reconsider was served this 2nd

day of February, 2004, electronically on Kenneth L. Lawson,

Attorney for Defendant Steven Rennick, Sr.

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney

3

[DE-160 P3 JA-89]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Case No. CR-1-02-00157** |
| | : | **(Judge Dlott)** |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| STEVE RENNICK, SR. | : | |
| | : | **MOTION TO WITHDRAW PLEA** |
| Defendant. | : | **(AFFIDAVIT OF STEVEN RENNICK, SR** |
| | : | **ATTACHED)** |

    Now comes Defendant, Steve Rennick Sr., hereby moves this Court to allow him to withdraw his plea in the above-referenced case. This motion is supported by the attached Memorandum of Law and affidavit of Steve Rennick, Sr.

## MEMORANDUM

    From the time the Defendant has been charged and indicted on this case, the Defendant has maintained his innocence. The matter has been set for trial several times, and the Defendant repeatedly, through his attorney, informed the Government that he is not interested in a plea of guilty. It was not until the final trial setting and on the morning of trail when the Defendant, approached by his attorney and a Co-Defendant decided that it may be in the best interest of his family and friends to enter the plea. However, very soon after entering the plea, the Defendant wrote the trial Court a rather lengthy letter maintaining his innocence. This was done prior to sentencing. The Defendant, at sentencing, disagreed with the Government's assessment regarding substantial assistance and stated so on the record. The Defendant incorporates his motion to have a hearing on the issue of his 5K1 downward departure as if fully rewritten herein.

It is Counsel's understanding, that the Court and the Government already have a copy of the correspondence sent to the Court by the Defendant maintaining his innocence shortly after his plea of guilty.

Defendant is respectfully requesting that this Court grant this motion and allow him to withdraw his plea.

## BREACH OF THE PLEA AGREEMENT

The Government, advises the Court that the Defendant was not entitled to a 5K1 Motion has breached the agreement and Defendant further request that this Court grants his motion allowing him to withdraw his plea. Although Federal Criminal Rule 11 does not address breach of the plea agreement, pursuant to Criminal Rule 32, the Court may allow Defendant to withdraw his plea after sentencing if the Government breaches the plea agreement.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant must prove that but for Counsel's ineffectiveness under Strickland standard, Defendant would not have pled guilty and would have insisted on trial. Hill v Lockhart 474 U.S. 52,106 S. Ct. 366, 88 L. Ed. 2nd 203 (1985). In this case, the performance of Counsel fell below the objective standard of reasonableness and resulted in prejudice against the Defendant. Counsel would not allow the Defendant to present evidence to demonstrate that the Government had in fact breached it's plea agreement and had promised the Defendant probation if he cooperated. Since the Defendant, in cooperation with the Government, was shot and almost killed, and since the Defendant also stated on the record at the time of sentencing that he did in fact perform several other deals for the Government that were successful, Counsel for the Defendant should have requested a hearing on this issue.

2



The Defendant received no downward departure and in essence, was shot and provided information for nothing. The Defendant now has a permanent physical disability as a result of his efforts.

## CONCLUSION

For the forgoing reasons, Counsel respectfully request that this Court grant his motion to Withdraw Plea.

Respectfully submitted,

/s/Kenneth L. Lawson (0042468)
Kenneth L. Lawson & Associates
The Dominion Building
808 Elm Street
Cincinnati, Ohio 45202

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was electronically filed with the Clerk of Courts using the CM/ECF system on this 10th day of February, 2004 which will notify the Robert Brichler, Assistant U.S. Attorney, via electronic email notification.

/s/Kenneth L. Lawson (0042468)
Kenneth L. Lawson

3

[DE-162 P3 JA-92]