Received at: 2:22PM, 2/12/2004

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 02-00157 |
| | : | (Judge Dlott) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| STEVE RENNICK, SR. | : | |
| vs. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | **AFFIDAVIT OF STEVE RENNICK, SR.** |
| | : | |

STATE OF OHIO          )
                       ) ss:
COUNTY OF HAMILTON )

Now comes Steve Rennick, the affiant under oath and based on his own personal knowledge and states as follows:

1. I am the Defendant in the above-referenced case.

2. When I was first arrested and charged with this case, my son and some of my very close friends were also charged as Co-Defendants on the same Indictment.

3. From the time of my arrest till the present, I've always maintained my innocence. Not only in Court, but in every single conversation I had with my attorney William Gallagher Sr.

4. It was told to me, after my son's case got dismissed, that if he testified truthfully and indicated that I was not involved in any illegal activity, that he would be indicted on possible perjury charges and maybe re-indicted on the original offense.

5. On the morning of the trial, I was asked by my attorney several times to enter a plea of guilty. I insisted that I was innocent and wanted a trial.

6. At some point during that morning, I was approached by one of my closes friends, Matthew Elliott, and we had a private conversation.

[DE-162 P4 JA-93]

Received at: 2:22PM, 2/12/2004

7.    Matthew conveyed to me that my taking this case to trial was jeopardizing his freedom, my son's freedom, and our friend Wayne's freedom.

8.    Agent Mercardo told me that I would receive probation.

9.    My attorney told me that agent Mercardo could get me probation if I cooperated.

10.    I cooperated with him.

11.    In the course of trying to help agent Mercardo rid this area of narcotics, I was shot and almost killed.

12.    Prior to that, but after my plea, I wrote to my Judge, and told her that I was innocent and did not do the things I am accused of in the Indictment.

13.    The night prior to my sentencing, I met with my attorney along with a friend of mine.

14.    My attorney, William Gallagher, told me that since I was shot in this manner, I would probably receive probation plus because of my physical and mental disabilities, the Court would in all probability give me a downward departure.

15.    However, his attitude at the sentencing was contrary to the attitude he displayed the night before at his office.

16.    He kept telling me to be quiet during the Court proceeding when I wanted to adamantly state to the Court not only my innocence, but that agent Mercardo was not being honest in the things I had done for him in order to receive probation.

17.    It was my understanding from listening to this Court at that Sentencing Hearing that I could not receive probation because of the mandatory nature of the charge in which I plead guilty to.

18.    This is not what I was advised of by my attorney me and I've given no proffer nor any confession stating anything other than the fact that I am innocent.

19.    For these reasons, I am asking that this Court allow me to withdraw my plea of guilt and have my case set for trial.

[DE-162 P5 JA-94]

Received at: 2:22PM, 2/12/2004

FURTHER AFFIANT SAYETH NAUGHT.

*Steve Rennick Sr*

Steve Rennick Sr.

Sworn to before me and subscribed in my presence this 9th day of February, 2004.

Notary Public ROSALIND D. PORTER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 01-13-08

My commission expires: _____

3

[DE-162 P6 JA-95]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| UNITED STATES OF AMERICA | : | CR-1-02-157-3 |
|---|---|---|
| | : | |
| | : | **GOVERNMENT'S RESPONSE** |
| v. | : | **TO DEFENDANT'S MOTION** |
| | : | **TO WITHDRAW PLEA** |
| | : | |
| STEVEN RENNICK, SR. | : | J. Dlott |

- - - - - - - - - - - - - - - - - - - - -

The defendant has filed a motion to withdraw his plea after sentence. Since the Court is without jurisdiction to entertain this motion, it should be denied.

### Memorandum

Rule 11 of the Federal Rules of Criminal Procedure (F.R.Cr.P.) governs guilty pleas and the withdrawal of guilty pleas. Rule 11(d) allows a defendant to seek to set aside his plea of guilty, before sentencing, under certain circumstances outlined in the Rule. Rule 11(e) prohibits the withdrawal of a guilty plea after sentence is imposed. The Rule states:

> After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.

The defendant appeared for sentencing in this case on January 28, 2004. The Judgment and Conviction Order was entered on January 30, 2004. Accordingly, this Court is without authority to entertain a motion to withdraw a guilty plea filed after sentencing.

[DE-163 P1 JA-961]    #/63

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202
(513) 684-3711
Fax:  (513) 684-2047
Robert.Brichler @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's
Response To Defendant's Motion To Withdraw Plea was served this
12th day of February, 2004, electronically on Kenneth L. Lawson,
Attorney for Defendant Steven Rennick, Sr.

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney

2

[DE-163 P2 JA-97]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| UNITED STATES OF AMERICA | : | Case No. 02-00157 |
| Plaintiff, | : | (Judge Dlott) |
| | : | |
| vs. | : | |
| | : | |
| STEVE RENICK, SR | : | |
| | : | MOTION TO STAY |
| | : | EXECUTION OF SENTENCE |
| Defendant. | : | (DELAY SURRENDER DATE) |
| | : | AND A STAY AWAY ORDER |

Now comes the Defendant, by and through Counsel, and hereby moves this Court to

extend his surrender date, and issue a Stay Away Order to the arresting agent who is a witness in

several of the pending motions brought by the Defendant and to the rumored agency that witness

works for and with.

This motion is supported by the following memorandum.

## MEMORANDUM

### A.    MOTION TO EXTEND SURRENDER DATE

As this Court is aware, Counsel was recently retained and has recently filed several

motions that require Evidentiary Hearings. It is imperative that the Defendant be able to assist

Defense Counsel while these motions are pending. If the Defendant has to surrender to Federal

authorities prior to the hearing of these motions, Counsel will be at a severe disadvantage in

preparing for Trial. Counsel will be limited to speaking to the Defendant on an unsecured

telephone line at whatever Federal institution the Defendant is incarcerated in. These Motions

essentially revolve around conversations that the Defendant and others have had with the agent

involved in this case along with others. The case is two years old and there are many things that





have happened over the last two years making it imperative that frequent meetings between the Defendant and Counsel take place.

## B.    STAY AWAY ORDER

Every since the Defendant filed these motions (which essentially attacks the credibility and character of agent John Mercado) Agent Mercado and others, who the Defendant believes are RENU agents, have been harassing, stalking, and even arresting the Defendant on a charge that dates back to 2002 and involves the forfeiture of the tractor-trailer at issue in this case. On Sunday, February 15, 2004, the Defendant was arrested by RENU Agents on a direct Indictment involving a charge of Theft By Deception. The charge is based on the tractor-trailer that was seized and alleged to have been used in the transportation of the marijuana, which is the basis of the criminal charges before this Court. The State alleges that the Defendant did not tell the bank that the truck was in the possession of the Government when the bank extended his loan in 2002. The Defendant and others deny this. In fact, Counsel spoke with Counsel who represented the Defendant in the Civil Forfeiture, and Counsel represented to the State Court Judge at the Bond Hearing for the Charge of Theft by Deception that Counsel and the Defendant notified the State of Ohio and the Magistrate Judge handling the Forfeiture that the bank had to be notified because the bank had a lien hold interest in the seized truck.

Since 2002 to the present date, the bank has not sent any correspondence nor have they threatened the Defendant with any type of criminal prosecution. In fact, the Defendant has done business on a frequent basis with the bank where he personally talks to individuals in the bank and has a very good relationship with his bank.

The bank did not threaten to sue the Defendant for the balance nor did the bank in the last two years ever threaten to prosecute the Defendant.

2

Counsel for the Defendant believes this charge was brought at this time not because the Defendant committed Theft By Deception but as a way of retribution for the Defendant filing motions. Motions that allege the agent in charge of this case was not being honest with the Federal Court when the agent stated that the Defendant had done nothing to warrant a 5K1 reduction in his sentence.

As this Court is aware, pre-trail services meets weekly with the Defendant and has reported that the Defendant has abided by all conditions of his bond. Secondly, at his sentencing, and even at his plea, the rumored agents never brought to the Court or to the Defendant's attention that there was an outstanding matter of a possible Theft by Deception charge that could be filed against Defendant.

Considering the nature of the allegations that are contained in the Defendant's motions which again are directed towards leading Agent Mercado and considering the facts as stated above, Counsel is respectfully requesting that this Court issue an order requiring leading Agent Mercado and his fellow officers to stay away from the Defendant's place of business, and the Defendant's residence, and the Defendant himself until these motions are resolved. If RENU or any agent believes that the Defendant has committed and offense and would like to charge him, Counsel is respectfully requesting that this Court order the agent to contact Defense Counsel who will turn Mr. Rennick in to the proper authorities so that he may be processed for any new charges that RENU intends to bring. This will allow law enforcement to continue to perform their work, and it also recognizes the Defendant's right under the Sixth Amendment to Counsel and requires the agents to honor that right by contacting Counsel and not having any direct contact with the Defendant.

3

For the foregoing reasons, the Defendant respectfully request that this Court issue an order extending the Defendant's surrender date and issue an order requiring Agent Mercado and other RENU agents to stay away from the Defendant.

Respectfully submitted,

/s/Kenneth L. Lawson (0042468)
Kenneth L. Lawson (0042468
Ayanna E. Love (0074473)
Kenneth L. Lawson & Associates
The Dominion Building
808 Elm Street
Cincinnati, Ohio 45202
(513) 345-5000
(513) 345-5005 Fax

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was electronically filed with the Clerk of Courts using the CM/ECF system on this 19th day of February 2004, which will notify Robert Brichler, Assistant U.S. Attorney, via electronic email notification.

/s/ Kenneth L. Lawson

4

[DE-166 P4 JA-101]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR-1-02-157-3 |
| | : | |
| | : | |
| | : | **GOVERNMENT'S RESPONSE TO** |
| v. | : | **DEFENDANT'S MOTION TO STAY** |
| | : | **SURRENDER DATE AND STAY** |
| | : | **AWAY ORDER** |
| | : | |
| STEVEN RENNICK, SR. | : | J. Dlott |

- - - - - - - - - - - - - - - - - - - -

The defendant has filed a motion to extend his surrender
date and for a "Stay Away Order" to the arresting agent in this
case. The motions should be denied.

### Memorandum

### A. Extension of Surrender Date

The defendant has filed two post-sentencing motions with
this Court. The government has previously responded to both. It
continues to be the government's position, supported by the case
law cited, that the Court is without jurisdiction to entertain
either motion, and they should be denied. The defendant has
already requested one delay in his date to report for his
sentence. The stated reason was that he needed time to get his
business and health affairs in order. The Court extended the
date over the objection of the government to March 26, 2004. He
now requests an additional unspecified delay to assist his
attorney in the motions that the law dictates may not be
entertained after sentence. Accordingly, the government

strenuously objects to any further delay of the execution of the
defendant's sentence.

**B. Stay Away Order**

After the defendant was sentenced in this case, he was
indicted by a grand jury in Hamilton County, Ohio for theft by
deception.  The defendant was arrested on that indictment and the
case is proceeding through the State of Ohio court system.  The
defendant will have the opportunity to defend himself on that
charge in the Common Pleas Court.  The defendant does not cite
(nor does there exist) any authority for this Court to issue
orders prohibiting police officers for the State of Ohio from
performing their duties.  If, indeed, the defendant has committed
or does commit additional offenses to further add to his
felonious record, the State of Ohio has every right to prosecute
him.  It is absurd to even ask this Court to require State law
enforcement officers to first notify defense counsel and request
that his client surrender if any additional charges are brought.

2

## Conclusion

For the foregoing reasons and based upon the authority cited in the government's previous responses, this Motion should be denied.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Fax: (513) 684-2047
Robert.Brichler @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Response To Defendant's Motion To Stay Surrender Date And Stay Away Order was served this 23rd day of February, 2004, electronically on Kenneth L. Lawson, Attorney for Defendant Steven Rennick, Sr.

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney

3

[DE-167 P3 JA-104]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States | : | |
| | : | Case No. CR-1-02-157-3 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER |
| Steven Rennick, Sr. | : | |
| | : | |
| Defendant | : | |

This matter comes before the Court on Defendant Steven Rennick, Sr.'s Motion to
Reconsider (doc. #149), Motion to Withdraw Plea (doc. #162), and Motion to Stay Execution of
Sentence (Delay Surrender Date) and [for] a Stay Away Order (doc. #166).

First, Mr. Rennick has asked the Court to reconsider his sentence. In particular, he asks
the Court to permit him to present evidence that he is entitled to a downward departure because
he has given substantial assistance to the government. 18 U.S.C. § 3582(c) provides that once a
term of imprisonment has been imposed, the district court may modify the term of imprisonment
only (1) upon motion by the Director of the Bureau of Prisons, (2) where the defendant has been
sentenced to a term of imprisonment based on a sentencing range that has subsequently been
lowered by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(o), or (3) as
otherwise expressly permitted by statute or Federal Rule of Criminal Procedure 35. Rule 35
provides only that, within seven days after sentencing, "the court may correct a sentence that
resulted from arithmetical, technical or other clear error" and that the court may reduce a

sentence in certain circumstances upon the government's motion. The Court has already imposed sentence, including a term of imprisonment, on Mr. Rennick. Since none of the circumstances in which the district court may modify a term of imprisonment once it has been imposed applies here, the Court is without jurisdiction to entertain Mr. Rennick's request. Therefore, his Motion to Reconsider (doc. #149) is **DENIED**.

Next, Mr. Rennick has moved to withdraw his guilty plea on the grounds that the United States breached its plea agreement by failing to move for a downward departure under United States Sentencing Guidelines § 5K1.1 and that his previous counsel was ineffective in failing to request a hearing on the issue of whether Mr. Rennick has provided substantial assistance to the government. Rule 11(e) of the Federal Rules of Criminal Procedure provides that after the court has imposed sentence, a defendant may not withdraw his or her plea of guilty; "the plea may be set aside only on direct appeal or collateral attack." As this Court has already imposed sentence, Mr. Rennick may have his plea set aside only on direct appeal or collateral attack. Mr. Rennick's Motion to Withdraw Plea (doc. #162) is therefore **DENIED**.

Finally, Mr. Rennick moves for an extension of his voluntary surrender date, as well as an order mandating that certain federal agents "stay away" from Mr. Rennick, his residence and his place of business until Defendant's other motions are resolved. Mr. Rennick's Motion to Stay Execution of Sentence (Delay Surrender Date) and [for] a Stay Away Order (doc. #166) is **GRANTED IN PART** and **DENIED IN PART**. It is denied to the extent that it requests a "Stay Away Order," as Mr. Rennick has provided no authority that such an order would be appropriate or permissible and because to the extent that the motion requests an order prohibiting agents to "stay away" from Mr. Rennick, his residence and his place of business until his other

2



motions are resolved, it is moot. However, the Court will grant a brief extension of Mr.

Rennick's surrender date so that he may work with counsel in seeking to persuade the United

States to move for a reduction in sentence under Rule 35(b) and in resolving charges pending

against Mr. Rennick in state court. Accordingly, Mr. Steven Rennick, Sr. shall surrender for

service at the institution designated by the Bureau of Prisons as notified by the United States

Marshal but no sooner than April 15, 2004.

    IT IS SO ORDERED.


                  ___s/Susan J. Dlott_____
                  Susan J. Dlott
                  United States District Judge

1

```
 1                 UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF OHIO

 3                      WESTERN DIVISION
                          -  -  -
 4
    UNITED STATES OF AMERICA,    :  CRIMINAL ACTION 1:02cr157
 5                               :
             Plaintiff,          :  Cincinnati, Ohio
 6                               :  Wednesday, January 28, 2004
         -vs-                    :
 7                               :
    STEVEN RENNICK, SR.,         :  Sentencing Hearing
 8                               :
             Defendant.          :  10:00 a.m.
 9
                          -  -  -
10

11                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE
12
                          -  -  -
13

14  For the Plaintiff:    Robert C. Brichler, Esq.
                          Asst. U.S. Attorney
15                        Atrium II, Suite 400
                          221 East Fourth Street
16                        Cincinnati, Ohio   45202

17  For the Defendants:   William R. Gallagher, Esq.
                          Arenstein & Gallagher
18                        The Citadel
                          114 East 8th Street
19                        Cincinnati, Ohio   45202

20

21

22

23
    Courtroom Deputy:  Vicki Penley
24  Court Reporter:  Betty Schwab

25
```

2

```
 1                        PROCEEDINGS
 2            THE COURTROOM DEPUTY:  Your Honor, the first case
 3   this morning is CR-1-02-157, defendant three, United States
 4   of America versus Steven Rennick, Sr.
 5            Would Defendant and counsel please step to the
 6   podium?
 7            THE COURT:  Good morning to everyone.
 8            MR. GALLAGHER:  Judge, if I may, sort of a
 9   related or unrelated matter?
10            THE COURT:  Certainly.
11            MR. GALLAGHER:  I share office space with Herbert
12   Haas, an attorney in Cincinnati who unfortunately took
13   rather ill.
14            (Off the record.)
15            THE COURT:  Okay.  Will counsel please enter
16   their appearances for the record?
17            MR. BRICHLER:  Robert Brichler for the United
18   States.
19            MR. GALLAGHER:  William Gallagher on behalf of
20   Mr. Steven Rennick.
21            THE COURT:  And are you Steven Rennick, Sr., sir?
22            THE DEFENDANT:  Yes, ma'am.
23            THE COURT:  And are you represented in this
24   proceeding by William Gallagher, an attorney who is present
25   here in court with you today?
```

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Would you be more comfortable

3   sitting, Mr. Rennick?

4          THE DEFENDANT:  No, Your Honor.  I'm fine.  Thank

5   you very much.

6          THE COURT:  On a former day, the defendant

7   pleaded guilty to conspiracy to distribute in excess of 100

8   kilograms of marijuana.  At that time, the matter was

9   referred to the United States Probation Department for a

10  presentence investigation and report.  The Court has

11  received the presentence report which was prepared October

12  24, 2003.  The Court has also received and reviewed the

13  following documents relevant to sentencing:  One, a letter

14  from the defendant dated December 2, 2003, and, secondly,

15  the defendant's motion for downward departure which was

16  filed January 26 of this year.

17          Let me ask counsel, Mr. Brichler, have you

18  received a copy of these documents.

19          MR. BRICHLER:  Yes, I have, Your Honor.

20          THE COURT:  And, Mr. Gallagher, have you received

21  a copy of the documents?

22          MR. GALLAGHER:  Yes, Your Honor.

23          THE COURT:  And, Mr. Rennick, have you received a

24  copy of the documents?

25          THE DEFENDANT:  Yes, Your Honor.

4

1          THE COURT:  Have you had an opportunity to
2     discuss them with Mr. Gallagher?
3          THE DEFENDANT:  Yes, Your Honor.
4          THE COURT:  All right.  Then I would now like to
5     address the factual findings for sentencing.  The Court
6     will accept the presentence report as part of the
7     sentencing facts in this case and will proceed to address
8     any additional sentencing facts the parties wish to
9     present.
10          Let me ask counsel, are any of the facts reported
11     in the presentence report disputed by the defendant or by
12     the government?  Mr. Gallagher?
13          MR. GALLAGHER:  No, Your Honor.
14          THE COURT:  Mr. Brichler?
15          MR. BRICHLER:  No, Your Honor.
16          THE COURT:  Mr. Brichler, any additional
17     sentencing facts?
18          MR. BRICHLER:  No, Your Honor.
19          THE COURT:  Mr. Gallagher, any additional
20     sentencing facts?
21          MR. GALLAGHER:  No, ma'am.
22          THE COURT:  Then, there being no objections to
23     the factual statements contained in the presentence report,
24     the Court adopts those statements as its findings of fact.
25          The defendant has entered a valid plea to count

1   one of the indictment.  Accordingly, the defendant is

2   adjudged guilty of case number 1:02cr157(3)SJD, conspiracy

3   to distribute in excess of 100 kilograms of marijuana.

4          Pursuant to 18 United States Code Section 3553,

5   the Court makes the following findings of relevant fact

6   significant to the imposition of sentence.  The defendant

7   is guilty of violating 21 United States Code Section 846

8   and 841(a)(1) and (b)(1)(B), which is a class B felony, and

9   it subjects the defendant to a maximum of 40 years with a

10  mandatory minimum of five years imprisonment, a two million

11  dollar fine, a period of supervised release of at least

12  four years and a $100 special assessment.  However, the

13  Sentence Guidelines Manual controls the determination of

14  the sentence in this case.

15         Next I'm going to deal with the issue of

16  objections.  Are there any objections to the presentence

17  report that have not been previously raised, Mr. Gallagher?

18         MR. GALLAGHER:  No, Your Honor.

19         THE COURT:  Mr. Brichler?

20         MR. BRICHLER:  No, Your Honor.

21         THE COURT:  All right.  Then the Court notes that

22  there are no objections from either the defendant or the

23  government as to the application of the Guidelines or facts

24  contained in the presentence report.

25         Let me go over with you what the applicable

1  Guidelines are.  The defendant pled guilty to count one of

2  an indictment charging him with conspiracy to distribute in

3  excess of 100 kilograms of marijuana in violation of Title

4  21 United States Code Sections 846 and 841(a)(1) and

5  (b)(1)(B).

6        In accordance with the provisions of 18 United

7  States Code Section 3553, the Court places on the record

8  the following statement of reasons.  The Guideline for the

9  offense of conspiracy to distribute in excess of 100

10  kilograms of marijuana is found at United States Sentencing

11  Guideline Section 2F1.1(a).  According to that section, the

12  defendant's base offense level is 26.  Because the

13  defendant distributed at least 100 kilograms but less than

14  400 kilograms of marijuana, the offense level is decreased

15  by three levels pursuant to Section 3E1.1(a) and (b)

16  because the defendant accepted responsibility for his

17  criminal conduct and entered a timely plea of guilty.  The

18  total offense level is therefore 23.

19        The Court finds the defendant's criminal history

20  places him in category II.  Based on a total offense level

21  of 23 and a criminal history category of II, the Guideline

22  imprisonment range is 60 to 63 months, and, even though

23  that's not what appears in the Guideline table, I figured

24  out last night that it's 60 because of the five-year

25  mandatory minimum.

1           The Guideline term for a period of supervised

2    release is at least four years pursuant to Sentencing

3    Guideline Section 5D1.2(b).  Pursuant to Sentencing

4    Guideline Section 5B1.1 and 5C1.1, the Guidelines do not

5    authorize a sentence of probation.

6           The Guideline range for a fine is from $10,000 to

7    two million dollars, and there is a $100 special assessment

8    which is mandatory.

9           Let me ask counsel:  Do you have any questions

10   about the statutory or Guideline provisions applicable to

11   the imposition of punishment in this case?  Mr. Gallagher?

12           MR. GALLAGHER:  No, Your Honor.

13           THE COURT:  Mr. Brichler?

14           MR. BRICHLER:  No, Your Honor.

15           THE COURT:  All right.  Then we will now proceed

16   to the sentencing, and at this time the Court will

17   entertain anything the parties wish to say in mitigation or

18   aggravation of sentence.  Mr. Gallagher?

19           MR. GALLAGHER:  If I could have just one thing

20   marked as an exhibit, I would appreciate it.

21           THE COURT:  Certainly.  You want to call it

22   Defendant's Exhibit 1?

23           MR. GALLAGHER:  That would be fine, thank you.

24           I spoke to Mr. Brichler about it.  What that is,

25   it is a copy of Mr. Rennick's Veteran's Administration

1   Hospital records as of Monday.  They printed those out for

2   me, because he was last seen, in fact, Monday morning by

3   them.  I am not giving you everything.  There is medication

4   records there and everything else like that, but obviously

5   I don't have to include in that, but I would ask you to at

6   least consider that in conjunction with my motion for

7   downward departure.  The records are at least referenced in

8   my motion for downward departure.

9        The six-page motion that I filed, I think pretty

10  well establishes what our argument is, is that the person

11  who is before you, Mr. Rennick, presents you with a factual

12  scenario post plea that is outside, I think, what was

13  contemplated by the Sentencing Guidelines, specifically

14  somebody who agrees to cooperate with law enforcement in

15  the apprehension or prosecution or investigation of other

16  people involved in illegal narcotics trafficking who finds

17  himself, as a result we contend, shot and permanently

18  injured as a result of his cooperation.

19       And I'm not assessing blame nor laying any blame.

20  It's a risky proposition that people undertake, and there

21  is some assumption of the risk above.  But, as you see in

22  the medical records, besides the fact he has a rod placed

23  in his thigh and the surgery was performed afterwards, his

24  post traumatic stress disorder, which was a pre-existing

25  condition has been somewhat aggravated by those events.

1    And I think that is a factual scenario that has never been

2    contemplated in the Guidelines, because they did talk about

3    military service in the Guidelines, and those are pretty

4    well talked about.  But, unless you have an extraordinary

5    act while in the military, the fact that you bravely served

6    your country doesn't warrant a departure.

7            Cooperation can lead to departure, but normally

8    it's when there has been successful arrests or prosecutions

9    of other people, not just investigations that are

10   undergone.  And people who suffer from mental illness

11   normally don't receive departures, because that is also

12   contemplated in the Guidelines as well.  But I think the

13   fact that, where there is cooperation and a pre-existing

14   condition, and it's all exacerbated afterwards and takes

15   him into an area where he never thought he would be, which

16   is with a rod in his leg and now having some real

17   difficulty in dealing with his mental health condition.  It

18   seems to be a lot better in the last week or two weeks,

19   according to the medical records, but, for the month, month

20   and a half after November 7th when he was shot, he was

21   having some real, real difficulties with memory, with

22   sleeping, with anxiety, with a lot of the conditions that

23   we seem to see symptomaticwise in post traumatic stress

24   disorder.

25            And it's for all those reasons stated in the

1    motion, I think the Guidelines allow for you to take all

2    those things into consideration and to depart, even though

3    we don't have a motion from the government.

4            Like I said, I don't apportion any blame.  As I

5    mentioned in my motion, I understand that the government

6    will come in and almost always file a motion when they

7    believe there has been substantial assistance.  And this

8    cooperation didn't lead, I think, to what would be

9    characterized as substantial assistance, and I understand

10   that, but it was also cut short in terms of Mr. Rennick's

11   continued activity, obviously, with his being shot at his

12   place of work.

13           I'd ask you to take those into consideration and

14   depart downward to where the Court feels it is an

15   appropriate sentence, taking into account his

16   co-defendants' activities, his background and his condition

17   and depart appropriately.

18           THE COURT:  Thank you, Mr. Gallagher.

19           Mr. Rennick, anything you would like to say, sir?

20           THE DEFENDANT:  Not really, Your Honor.

21           THE COURT:  All right.  Mr. Brichler, anything

22   you would like to say?

23           MR. BRICHLER:  Your Honor, I would just like the

24   record to be clear that, as the Court is well aware, our

25   office is generally fairly liberal when it comes to filing

1  motions for downward departure based upon cooperation, and,

2  having spoken to the case agent in this matter, I became

3  convinced that whatever happened to Mr. Rennick was

4  basically caused by his inability to follow the requests

5  and the guidance of the agents who were attempting to work

6  with him.

7          I do have Agent Mercado in the courtroom, and

8  he's prepared if the Court wishes to hear him explain what

9  happened here in the course of Mr. Rennick's attempted

10 cooperation and the fact that there was really limited, if

11 any, cooperation because Mr. Rennick would not follow the

12 requests and advice of the agents.

13         So that's the reason we haven't filed it.  We

14 don't believe that he has provided substantial assistance,

15 and we don't intend to ask the Court for a downward

16 departure.

17         THE COURT:  Mr. Gallagher, you have a quizzical

18 look on your face.

19         MR. GALLAGHER:  Not really quizzical.  And I

20 accept that, and that is why I have not even filed any sort

21 of motion demanding that the government uphold what might

22 be it's end of the bargain.  I understand where these

23 motions normally come from is when they get what they

24 consider a substantial amount of information and

25 identification of other people, and that's why I don't

1  blame anybody, nor do I say that you should be somewhat at

2  a loss for why the government didn't file its motion.

3      Mr. Rennick had some choices to make after

4  November 7th.  One was to continue on his path to see if he

5  could continue to find somebody or people that might

6  satisfy the government or to just cease those activities.

7      It's no one's fault.  By way of the government,

8  I'm not blaming Agent Mercado, RENU or Mr. Brichler, but it

9  was well known, while this case was pending, and I know the

10  agent knew that Mr. Rennick served in Vietnam.  He suffers

11  from PTSD, and it has some psychological components to it.

12  That's Mr. Rennick's cross to bear, and maybe the

13  investigation should have been cut off earlier if he wasn't

14  following orders.  That's no one's fault.  They were

15  allowing Mr. Rennick the opportunity to attempt to avail

16  himself of a potential 5K1.1 motion.

17      I don't think at all he blames the government or

18  says the government has any obligation whatsoever to file a

19  motion.  I accept Mr. Brichler's representation that they

20  don't think he provided that, and I don't think that that's

21  a reason for me to sit here and jump up and down and say he

22  should have gotten that 5K1.1.  But I do think there is

23  another avenue under the Guidelines for Mr. Rennick to

24  avail himself because of other circumstances, not the

25  substantial assistance, but other circumstances that are

1  extremely unique, I would submit to the Court, with

2  somebody who suffered from PTSD whose action and

3  involvement and attempt to involve himself with the

4  government investigations has led to an exacerbation of

5  that condition by I think extraordinary means.  So it would

6  be something that the stress of being involved in this did,

7  that would be one thing.  But to be shot and ambushed at

8  your place of work and to the point where you had surgery

9  and had a rod placed in your leg and may be walking with a

10  cane for the rest of your life I think is something the

11  sentencing commission never ever thought about at all when

12  they thought about how to deal with mental illness issues,

13  veteran's issues and things of that nature.

14         So I guess what I'm saying, I don't think I need

15  Agent Mercado to explain why they didn't do what I accept

16  they don't have to do.

17         THE COURT:  I understand your position, I believe

18  completely, Mr. Gallagher.  And I think I understand

19  Mr. Brichler's.

20         Mr. Brichler, do you think that having Agent

21  Mercado testify would enlighten the Court at all?

22         MR. BRICHLER:  I don't know that the details

23  would really enlighten the Court.  In view of what

24  Mr. Gallagher is saying here, I really don't think it's

25  necessary.  I think the Court is in possession of

1  sufficient information to fashion a sentence.

2          THE COURT:  All right.  Okay.  Then anything

3  further to come before the Court before the Court announces

4  the sentence?

5          MR. GALLAGHER:  No, ma'am.

6          THE COURT:  Thanks everyone.

7          Then it's the duty of the Court to sentence the

8  defendant at this time.  However, counsel will have a final

9  chance to make legal objections before the sentence is

10  actually imposed.

11          Pursuant to the Sentencing Reform Act of 1984,

12  it's the judgment of the Court that the defendant be hereby

13  committed to the custody of the Bureau of Prisons for a

14  term of 63 months on count one.

15          THE DEFENDANT:  Oh, shit.  Your Honor --

16          THE COURT:  And let me explain to you, I have

17  reviewed your case very carefully, Mr. Rennick.  This was a

18  complicated drug deal, and, from all that I have read, all

19  that I can determine from the documents, I think you played

20  a major part in it, if not the major part.

21          THE DEFENDANT:  But, Your Honor, I was promised

22  by Mercado probation.

23          MR. GALLAGHER:  Shhhhh.

24          THE DEFENDANT:  No.  I can't shhhhh.  I've got

25  witnesses that Mr. Mercado told me I would get probation

1   from working with him.  I have tapes of him.  These deals

2   went through.  He left me hanging.  I called his house on a

3   Sunday when this drug dealer was calling me, and his wife

4   answered the phone, said he wasn't there, and the next time

5   the answering machine.  The guy told me he was going to

6   kill me.  Mercado knew that.

7           I had another deal, and they had all their cars

8   parked out in the back.  They guy drove around the parking

9   lot, and he called and said "You're a cop."  I mean these

10  guys are unbelievable.  I did everything I could for them

11  people.  He promised me probation.  I'm working to get

12  killed.

13          And he can get on the stand.  I have tape

14  recordings of him.

15          THE COURT:  Let me finish the sentence, and then,

16  Mr. Brichler, if you want to again put on testimony, you're

17  welcome to.

18          Or, Mr. Gallagher, if you would like to question

19  Agent Mercado, I'll let you put that on the record.

20          The defendant shall participate in the Bureau of

21  Prisons Inmate Financial Responsibility Program.  The

22  defendant shall participate in the mental health evaluation

23  and/or mental health counseling at the direction of the

24  Bureau of Prisons.

25          Following the sentence of imprisonment, the

1  defendant is ordered to be placed on supervised release for

2  a period of four years.  Upon release from incarceration,

3  the defendant is ordered to report in person to the

4  probation office in the district to which he is released

5  within 72 hours.

6          As a condition of supervised release, the

7  defendant shall pay any unpaid balance of his fine.  The

8  defendant shall not commit another federal, state or local

9  crime and is prohibited from possessing a firearm or other

10  dangerous device.  The defendant shall not possess any

11  illegal controlled substances.  And, in addition, the

12  defendant shall comply with the standard conditions of

13  supervised release as adopted by the Court for the Southern

14  District of Ohio.

15          As a special condition of supervised release, the

16  defendant is ordered to refrain from any unlawful use of a

17  controlled substance and to submit to one drug test within

18  15 days of release and at least two periodic drug tests

19  thereafter.

20          The Court finds that the defendant is capable of

21  paying a fine.  Accordingly, the Court orders that a fine

22  in the amount of $10,000 be imposed.  The fine is due

23  immediately.  Interest shall accrue on any unpaid balance.

24          The defendant shall participate in the mental

25  health treatment deemed appropriate by the probation

1    officer.  The defendant shall provide the probation officer
2    access to all requested financial information.
3    Furthermore, the defendant is not permitted to open any new
4    lines of credit until his fine and special assessment are
5    paid in full, and a special assessment of $100 is owed and
6    due immediately.
7            Mr. Rennick, Mr. Gallagher, do you want me to
8    make a recommendation as to which facility you be sent to?
9            I don't know, in light of Mr. Rennick's physical
10   condition, if he's going to need something unusual.  And,
11   with your permission, what I would like to do is pass on,
12   if you want me to, pass on the records from the veteran's,
13   Departments of Veterans Affairs Medical Center to the
14   marshals, who can give it to the Bureau of Prisons to make
15   sure that he is assigned to a facility that can take care
16   of any physical problems he might have as a result of his
17   injuries.
18           MR. GALLAGHER:  And my real hope is obviously a
19   facility that has the capacity to deal with post traumatic
20   stress disorder and continue treatment for that.
21           THE COURT:  Okay.
22           MR. GALLAGHER:  I did some research last week,
23   and I could not find, unfortunately, whether or not there
24   is anywhere closer than Missouri that has a unit.  Missouri
25   is the only unit that I'm aware of right now in the midwest

```
 1   that has specifically psychiatrists or psychologists on
 2   staff who deal with posttraumatic stress disorder.  That's
 3   not to say that psychologists at either Ashland or down in
 4   Kentucky don't have it.  It just doesn't list that as one
 5   of it.  Missouri is the only one that lists the capacity to
 6   deal with post traumatic stress disorder unit.
 7              THE COURT:  All right.  Let me determine what the
 8   priorities are.  Is the first priority a facility that can
 9   deal with the PTSD, rather than a facility that is
10   geographically the closest to Cincinnati?
11              MR. GALLAGHER:  That would be my hope for
12   treatment for PTSD.  If these proceedings were not here,
13   the VA was prepared to have him try and go into an
14   inpatient program.  So I think that's the priority.
15              THE COURT:  And then I assume the second priority
16   would be as close to Cincinnati as possible?
17              MR. GALLAGHER:  Geographically, yes, ma'am.
18              THE COURT:  I read in the report that Mr. Rennick
19   was still getting some physical therapy as well.  Do you
20   want me to make a recommendation that that continue?
21              Are you still getting the physical therapy,
22   Mr. Rennick?
23              THE DEFENDANT:  Yes, ma'am.
24              THE COURT:  All right.  I assume most places can
25   do that.
```

```
 1              Mr. Gallagher, do you have any objections as to
 2    why the sentence should not be imposed as stated?
 3              MR. GALLAGHER:  I have already lodged one about
 4    the downward departure.  Other than that, no, ma'am.
 5              THE COURT:  And, Mr. Brichler, do you have any
 6    objections?
 7              MR. BRICHLER:  No, Your Honor.
 8              THE COURT:  The sentence is thus imposed as
 9    stated.
10              Let me tell you about your rights on appeal.
11    Both parties are notified by the Court that you have a
12    right to appeal this sentence.  If you're indigent and
13    cannot retain a lawyer, one will be appointed to represent
14    you on appeal.  You are further advised that, in accordance
15    with the provisions of Rule 4(b) of the Rules of Appellate
16    Procedure, you must file your notice of appeal with the
17    clerk of the United States District Court, within ten days
18    of the filing of the judgment.  The Court does advise you
19    that, if you request, the clerk of the Court will prepare
20    and file immediately the notice of appeal on your behalf.
21              It is further ordered that the defendant shall
22    notify the United States Attorney for the Southern District
23    of Ohio within 30 days of any change in resident or mailing
24    address until all fines and special assessments imposed by
25    this judgment are fully paid.
```

1    If you request, Mr. Rennick, I'll order the clerk
2    of courts to file your notice of appeal immediately after
3    the judgment is filed, and, if not, Mr. Gallagher, will you
4    protect the rights of the defendant?
5            MR. GALLAGHER:  Judge, I will.  I have already
6    spoken to Mr. Rennick about the potential outcomes of the
7    sentencing hearing.  He would like to appeal.
8            THE COURT:  And are you going to be responsible
9    for filing it, or do you want the clerk?
10           MR. GALLAGHER:  Judge, if the clerk would.  I
11   don't know what the financial situation is going to be from
12   this point forward because of forfeiture proceedings that
13   are engaged in state court.  But either new counsel is
14   either going to be appointed or retained to pursue it.
15           THE COURT:  All right.  That's fine.
16           Mr. Brichler, what's the custodial status of the
17   defendant?
18           MR. BRICHLER:  Your Honor, Mr. Rennick is free on
19   bond that was posted when this case was initially brought.
20   I spoke with Pretrial Services, and he's complied with all
21   the requested Pretrial Services, and we would request the
22   Court consider allowing Mr. Rennick to self report.
23           THE COURT:  All right.  Who have we got from the
24   marshals here?  Did I see Joel somewhere?
25           Nobody here from the marshals.  Okay.  I'm not

```
 1   quite sure.
 2              Mr. Brichler, do you recall how long it's taking
 3   to get a designation for an institution these days?
 4              MR. BRICHLER:  About three weeks.
 5              THE COURT:  Mr. Rennick, I am going to allow you
 6   to self surrender to the Bureau of Prisons.  During the
 7   interim period, until you're required to surrender to the
 8   Bureau of Prisons, I'm going to order you to abide by all
 9   the conditions and requirements of your current bond, and
10   in particular I want to remind you that, under the
11   conditions of your current bond, you are prohibited from
12   committing another federal, state or local crime.
13              It's the judgment of the Court that you will be
14   permitted to self surrender to the institution assigned by
15   the Bureau of Prisons at a date designated by the Bureau of
16   Prisons but no sooner than -- what you want, about three
17   weeks?  Might as well make it no sooner than three weeks.
18              MR. GALLAGHER:  The 20th is Friday.
19              THE COURT:  Of February?
20              MR. GALLAGHER:  I was just -- that would be
21   the -- three weeks from today would be the 18th of February
22   if I'm calculating correctly.
23              THE COURT:  Want to make it on a Monday?
24              MR. GALLAGHER:  Okay.
25              THE COURT:  Why don't we make it Monday, February
```

1    23?

2              Is there anything further to come before the

3    Court at this time?

4              MR. BRICHLER:  No, Your Honor.

5              MR. GALLAGHER:  No, ma'am.

6              THE COURT:  Thank you, everyone.

7              Good luck to you, Mr. Rennick.

8              PROCEEDINGS CONCLUDED AT 10:30 A.M.

9

10

11

12

13              C E R T I F I C A T E

14              I, Betty J. Schwab, the undersigned, do

15    hereby certify that the foregoing is a correct

16    transcript from the record of the proceedings in

17    the above-entitled matter.

18

19                        Betty J. Schwab

20                        BETTY J. SCHWAB, RPR
                          Official Reporter

21

22

23

24

25

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF OHIO

 3                  WESTERN DIVISION
                      -  -  -
 4
     UNITED STATES OF AMERICA,    :   CRIMINAL ACTION 1:02cr157
 5                                :
              Plaintiff,          :   Cincinnati, Ohio
 6                                :   Wednesday, January 28, 2004
         -vs-                     :
 7                                :
     WAYNE BABJAMIN,              :   Sentencing Hearing
 8                                :
              Defendant.          :   10:30 a.m.
 9
                      -  -  -
10

11              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE
12
                      -  -  -
13

14   For the Plaintiff:    Robert C. Brichler, Esq.
                           Asst. U.S. Attorney
15                         Atrium II, Suite 400
                           221 East Fourth Street
16                         Cincinnati, Ohio  45202

17   For the Defendant:    Gregory A. Cohen, Esq.
                           The Citadel
18                         114 East 8th Street
                           Cincinnati, Ohio  45202
19

20

21

22

23   Courtroom Deputy:  Vicki Penley
     Court Reporter:  Betty Schwab
24

25
```

```
 1                        PROCEEDINGS
 2            THE COURT:  Mr. Cohen, good morning.  I
 3   appreciate -- I understand from Mr. Gallagher that you were
 4   covering for Mr Haas, and I think that's very nice of you
 5   to have done that.
 6            (Off the record.)
 7            THE COURT:  Okay.  We are doing Mr. Elliot?
 8            MR. BRICHLER:  Benjamin.
 9            THE COURT:  All right.  Will counsel please enter
10   their appearances for the record?
11            MR. BRICHLER:  Robert Brichler for the United
12   States.
13            MR. COHEN:  Gregory Cohen on behalf of
14   Mr. Benjamin.
15            THE COURT:  And are you Wayne Benjamin?
16            THE DEFENDANT:  Yes, ma'am.
17            THE COURT:  Are you represented in this
18   proceeding by Gregory Cohen, an attorney who is present
19   here in court with you today?
20            THE DEFENDANT:  Yes, ma'am.
21            THE COURT:  On a former day, the defendant
22   pleaded guilty to possession with intent to distribute
23   marijuana.  At that time, the matter was referred to the
24   United States Probation Department for presentence
25   investigation and report.  The Court has received the
```

1  presentence report prepared October 30, 2003.

2          Let me ask counsel, Mr. Brichler, have you

3  received a copy of the presentence report?

4          MR. BRICHLER:  Yes, Your Honor.

5          THE COURT:  And, Mr. Cohen, have you received a

6  copy of the presentence report?

7          MR. COHEN:  I have, Your Honor.

8          THE COURT:  Mr. Benjamin, have you received a

9  copy of the presentence report?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Have you had an opportunity to

12  discuss it with Mr. Cohen?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Then I would now like to address the

15  factual findings for sentencing.  The Court will accept the

16  presentence report as part of the sentencing facts in this

17  case and will proceed to address any additional sentencing

18  facts the parties wish to present.

19         Let me ask counsel, are any of the facts reported

20  in the presentence report disputed by the defendant or the

21  government, Mr. Brichler?

22         MR. BRICHLER:  No, Your Honor, no disputes.

23         THE COURT:  Mr. Cohen?

24         MR. COHEN:  Your Honor, based on the nature of

25  the plea, there will be no disputes.

1          THE COURT:  Mr. Cohen, any additional sentencing

2     facts you wish to present?

3          MR. COHEN:  Judge, just to make the Court aware,

4     obviously the Court has reviewed the presentence

5     investigation report.  Mr. Benjamin was not given two

6     points acceptance of responsibility because of the

7     confusing nature of how this process took place, and the

8     day of trial we entered into a plea on an information,

9     established, as all sides acknowledge, a fictitious date as

10    we do in the law sometimes to facilitate a plea.  So my

11    client could not very well give information regarding a

12    date certain, which is what the plea indicated.

13         But, in any event, he understands that he was in

14    a position, close relationship with Mr. Rennick, exposed to

15    what was going on and certainly ready today to go forward

16    with the plea as originally agreed to, Judge.

17         I just wanted to make the Court aware it was not

18    certainly a sense of defiance on Mr. Benjamin's part.  His,

19    unlike some other individuals involved in a conspiracy,

20    contact with the system is fairly limited.

21         THE COURT:  I appreciate that, Mr. Cohen.

22         And, Mr. Benjamin, I want you to know that I

23    certainly never hold against anyone their right to exercise

24    their constitutional rights.  If you want to go to trial,

25    that's fine with the Court.  That's your right under the

5

1    Constitution, and I'm here to enforce it.

2              Mr. Brichler, anything you want to say in that

3    regard?

4              MR. BRICHLER:  No.  No sentencing facts, Your

5    Honor.

6              THE COURT:  All right.  Then there being no

7    objections to the factual statements contained in the

8    presentence report, the Court adopts those statements as

9    its finding of fact.  The defendant has entered a valid

10   plea to count one of the superseding information.

11   Accordingly, the defendant is adjudged guilty of case

12   number 1:02cr157(7)SJD, which is distribution of marijuana.

13             Pursuant to 18 United States Code Section 3553,

14   the Court makes the following findings of relevant fact

15   significant to the imposition of sentence.  The defendant

16   is guilty of violating 21 United States Code Section

17   841(a)(1) and (b)(1)(D), which is a Class D felony and

18   subjects the defendant to a maximum of five years

19   imprisonment, a $250,000 fine, a period of supervised

20   release of at least two years, and a $100 special

21   assessment.  However, the Sentencing Guidelines Manual

22   controls the determination of sentence in this case.

23             Next, I'll deal briefly with the issue of

24   objections.  Because the final presentence report indicates

25   there are no remaining objections to the presentence

1    report, let me ask counsel:  Are there any objections to

2    the presentence report that have not been previously

3    raised?

4              MR. BRICHLER:  No, Your Honor.

5              MR. COHEN:  No Your Honor.

6              THE COURT:  Then the Court notes there are no

7    objections from either the defendant or the government as

8    to the application of the Guidelines or the facts contained

9    in the presentence report.

10             Let me go over with you then what the applicable

11   Guidelines are.  The defendant plead guilty to count one of

12   a superseding information charging him with distribution of

13   marijuana in violation of Title 21 United States Code

14   Section 841(a)(1) and (b)(1)(D).  In accordance with the

15   provision of 28 USC Section 3553, the Court places on the

16   record the following statement of reasons.

17             The guideline for the offense of distribution of

18   marijuana is found at Sentencing Guideline Section

19   2D1.1(c)(16).  According to that section, the defendant's

20   base offense level is 8.  As the defendant has not accepted

21   responsibility for his offense conduct, he is not eligible

22   for a reduction of his offense level pursuant to 3E1.1.

23   The total offense level is therefore 8.

24             The Court finds the defendant's criminal history

25   category places him in category I.  Based on a total

1    offense level of 8 and a criminal history category of I,

2    the Guideline imprisonment range is 0 to 6 months.  The

3    Guideline term for a period of supervised release is two to

4    three years.

5            Pursuant to the Sentencing Guidelines, the

6    sentence of probation is authorized because the applicable

7    Guideline range is in Zone A of the sentencing table.

8            The Guideline range for a fine is from $1,000 to

9    $10,000, and there is a $100 special assessment which is

10   mandatory.

11           Let me ask counsel:  Do you have any questions

12   about the statutory or Guideline provisions applicable to

13   the imposition of punishment in this case?

14           MR. COHEN:  Your Honor, it appears appropriate

15   based on the Guidelines.

16           MR. BRICHLER:  No, Your Honor.

17           THE COURT:  Then we will now proceed to the

18   sentencing.  And at this time the Court will entertain

19   anything the parties wish to say in mitigation or

20   aggravation of sentence.

21           Mr. Benjamin, or -- I'm sorry -- let me start

22   with Mr. Cohen.  I apologize, Mr. Cohen.

23           MR. COHEN:  Judge, Mr. Benjamin essentially ended

24   up in this situation out of a love for automobiles.

25   Mr. Rennick and his son were trying very hard to get into

1   the racing business.  Mr. Benjamin is a very skilled
2   bodyman in terms of trying to put these automobiles
3   together and actually wanting to get into racing, and that
4   kind of led him into the gray area which places him before
5   this Court today.

6           He currently resides with his grandmother.  The
7   family, by agreement, has placed him in the position of
8   responsibility for his grandmother.  He is the caregiver
9   and receives a check for $1,000 a month, which covers his
10  outside expenses.  And then he does have full-time
11  obligations there.

12          He would, at some point, like to get back into
13  the field of auto racing, because I think that is his one
14  true passion.

15          His record prior to this is fairly old.  When he
16  was very young, he got into some trouble but managed to
17  stay out of the purview of the criminal justice system
18  since then.

19          I have met with him on a number of occasions.  I
20  know this is a very difficult situation for him, as most
21  appearances in federal court are when you stand at this
22  position.  But he struggles, not just with this case, but
23  with the constant chronic back problems resulting from
24  injury which, you could say, reduced his quality of life,
25  and he needs to find a way to deal with that, cope with

1    that, and get on with his life.

2          I ask the Court to adopt the recommendations of

3    the United States Probation Department and impose minimum

4    sanctions in this instance and allow him to perform and

5    commit whatever responsibilities go along with this Court's

6    order and show that he has redeeming qualities.  He is in a

7    position where he can return to a normal life without

8    having to come back before this Court for sanctions.

9          THE COURT:  Thank you, Mr. Cohen.

10          Mr. Benjamin, anything you wish to say, sir?

11          THE DEFENDANT:  Not really, ma'am.

12          THE COURT:  Mr. Brichler, anything you wish to

13    say?

14          MR. BRICHLER:  No, Your Honor.

15          THE COURT:  All right.  Then it's the duty of the

16    Court to sentence the defendant at this time.  However,

17    counsel will have a final chance to make legal objections

18    before the sentence is actually imposed.

19          Pursuant to the Sentencing Reform Act of 1984,

20    it's the judgment of the Court that the defendant be placed

21    on probation for a period of three years.  As a condition

22    of probation, the defendant shall pay any unpaid monetary

23    penalties.  The defendant shall not commit another federal,

24    state or local crime and is prohibited from possessing a

25    firearm or other dangerous device.

1           The defendant shall not possess any illegal

2   controlled substances.  In addition, the defendant shall

3   comply with the standard conditions of probation as adopted

4   by the Court for the Southern District of Ohio.

5           As a special condition of probation, the

6   defendant is ordered to refrain from any unlawful use of a

7   controlled substance and to submit to one drug test within

8   15 days of release and at least two periodic drug tests

9   thereafter.  The Court orders a fine in the amount of

10  $1,000 be imposed.  The fine is due immediately.  No

11  interest shall accrue on any unpaid balance.

12          The defendant shall not obtain prescription

13  medication without the approval of a licensed physician

14  with whom he has had personal contact and by whom he has

15  been physically examined.

16          A special assessment of $100 is owed and due

17  immediately.

18          Mr. Cohen, do you have any objections as to why

19  the sentence should not be imposed as stated?

20          MR. COHEN:  Judge, only the fact of my client's

21  financial status.  I don't believe he can pay a $1,000 fine

22  immediately.

23          THE COURT:  And he doesn't have to pay it

24  immediately.  He can work out a payment plan with the

25  probation department.  I know that language, as we say it,

1    is sort of misleading.  It would be during the term of
2    probation.

3         MR. COHEN:  Judge, I don't know if the Court has
4    any authority to reduce that fine, just again based on his
5    financial status.  He has requested that I petition the
6    Court.

7         It seems, I know, it's a fairly low fine from
8    where I stand, but he's in a much different financial
9    position.

10        THE COURT:  In order for the Court to reduce the
11   fine -- because what I have done is given him the lowest
12   fine under the Sentencing Guidelines.

13        MR. COHEN:  I understand that.

14        THE COURT:  In order to reduce that, the Court
15   would have to make a finding that Mr. Benjamin was not
16   capable of paying a fine within that range.  And from all
17   that I read regarding his employment abilities and
18   everything, I simply can't make that finding.

19        MR. COHEN:  I understand, Judge.  I'll explain it
20   to him.

21        THE COURT:  Mr. Brichler, do you have any
22   objections as to why the sentence should not be imposed as
23   stated?

24        MR. BRICHLER:  No, Your Honor.

25        THE COURT:  All right.  Then the sentence is thus

1    imposed as stated.

2              Let me tell you about your rights on appeal.

3    Both parties are notified by this Court that you have a

4    right to appeal this sentence.  If you're indigent and

5    cannot afford to retain a lawyer, one will be appointed to

6    represent you on your appeal.

7              You're further advised that, in accordance with

8    the provisions of Rule 4(b) of the Rules of Appellate

9    Procedure, you must file your notice of appeal with the

10   clerk of the United States District Court within ten days

11   of the filing of this judgment.

12             The Court does hereby advise you, if you so

13   request, the clerk of the court will prepare and file

14   immediately a notice of appeal on your behalf.

15             It is further ordered that the defendant shall

16   notify the United States Attorney for the Southern District

17   of Ohio within 30 days of any change in resident or mailing

18   address until any fines and special assessments imposed by

19   this judgment are fully paid.

20             If you request, Mr. Benjamin, I will order the

21   clerk of courts to file your notice of appeal immediately

22   after the judgment is filed.

23             And if not, Mr. Cohen, will you protect the

24   rights of the defendant?

25             MR. COHEN:  Judge, I will protect his rights.

1          THE COURT:  All right.  Is there anything further

2     to come before the Court at this time?

3          MR. COHEN:  Nothing from the defense, Your Honor.

4          MR. BRICHLER:  No, Your Honor.

5          THE COURT:  Okay.  Good luck to you,

6     Mr. Benjamin.  I hope to never see you back in here for

7     this reason again.

8                    PROCEEDINGS CONCLUDED

9

10                    C E R T I F I C A T E

11          I, Betty J. Schwab, the undersigned, do

12     hereby certify that the foregoing is a correct

13     transcript from the record of the proceedings in

14     the above-entitled matter.

15

16                    _Betty J. Schwab_
                      BETTY J. SCHWAB, RPR
17                    Official Reporter

18

19

20

21

22

23

24

25

I

1              UNITED STATES DISTRICT COURT

2               SOUTHERN DISTRICT OF OHIO

3                   WESTERN DIVISION
                      - - -

4

UNITED STATES OF AMERICA,    :   CRIMINAL ACTION 1:02cr157

5                            :
            Plaintiff,       :   Cincinnati, Ohio

6                            :   Wednesday, January 28, 2004
       -vs-                  :

7                            :
MATTHEW ELLIOT,              :   Sentencing Hearing

8                            :
            Defendant.       :   10:50 a.m.

9
                      - - -

10

11              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE

12
                      - - -

13

14   For the Plaintiff:    Robert C. Brichler, Esq.
                           Asst. U.S. Attorney
15                         Atrium II, Suite 400
                           221 East Fourth Street
16                         Cincinnati, Ohio  45202

17   For the Defendants:   Kenneth L. Lawson, Esq.
                           Kenneth L. Lawson & Associates
18                         The Dominion Building
                           808 Elm Street, Suite 100
19                         Cincinnati, Ohio  45202

20

21

22

23
     Courtroom Deputy:  Vicki Penley
24   Court Reporter:  Betty Schwab

25

```
 1                         PROCEEDINGS
 2              THE COURTROOM DEPUTY:  The next case is United
 3     States of America versus Matthew Elliot, 1:02cr157,
 4     defendant number five.
 5              Will the defendant and counsel please step to the
 6     podium.
 7              MR. LAWSON:  Good morning, Judge Dlott.
 8              THE COURT:  Good morning, Mr. Lawson.  I didn't
 9     know if we were going to see you today or Ms. Love or both
10     of you.
11              MR. LAWSON:  You have the pleasure of seeing both
12     of us.
13              THE COURT:  Is Ms. Love here?
14              MR. LAWSON:  She's hiding in the back.
15              THE COURT:  Would she like to come up?
16              MR. LAWSON:  Not for this one, Judge.
17              (Off the record.)
18              THE COURT:  All right.  Will counsel please enter
19     their appearances for the record?
20              MR. BRICHLER:  Robert Brichler for the United
21     States.
22              MR. LAWSON:  Kenneth Lawson on behalf of
23     Mr. Elliot.
24              THE COURT:  And are you Matthew Alton Elliot?
25              THE DEFENDANT:  Yes, ma'am.
```

3

1    THE COURT:  And are you represented in this
2  proceeding by Kenneth Lawson, an attorney who is present
3  here in court with you today?
4          THE DEFENDANT:  Yes, ma'am.
5          THE COURT:  On a former day, the defendant
6  pleaded guilty to possession with intent to distribute
7  marijuana.  At that time, the matter was referred to the
8  United States Probation Department for a presentence
9  investigation and report.  The Court has received the
10  presentence report prepared November 7, 2003.
11          Let me ask you, Mr. Brichler, have you received a
12  copy of the presentence report?
13          MR. BRICHLER:  Yes, Your Honor.
14          THE COURT:  And, Mr. Lawson, have you received a
15  copy of the presentence report?
16          MR. LAWSON:  I have, Your Honor.
17          THE COURT:  And finally, Mr. Elliot, have you
18  received a copy of the presentence report?
19          THE DEFENDANT:  Yes, ma'am.
20          THE COURT:  Have you had an opportunity to
21  discuss it with Mr. Lawson?
22          THE DEFENDANT:  Yes, ma'am.
23          THE COURT:  Then I would now like to address the
24  factual findings for sentencing.  The Court will accept the
25  presentence report as part of the sentencing facts in this

1   case and will proceed to address any additional sentencing

2   facts the parties wish to present.

3           Let me ask counsel:  Are any of the facts

4   reported in the presentence report disputed by the

5   government or the defendant?  Mr. Brichler?

6           MR. BRICHLER:  Not by the government, Your Honor.

7           THE COURT:  Mr. Lawson?

8           MR. LAWSON:  There are a couple of issues, Judge,

9   that came to light this morning that may, with respect to

10  the plea agreement, may be in dispute.

11          THE COURT:  Okay.  Are they facts that are in the

12  presentence report?

13          MR. LAWSON:  No.  I don't think they're contained

14  in the presentence report, Judge.

15          THE COURT:  All right.  I don't want to foreclose

16  your opportunity to raise it at the appropriate time.

17          MR. LAWSON:  Okay.

18          THE COURT:  You want to give me some idea what it

19  is?

20          MR. LAWSON:  Judge, this was a -- if you recall

21  when he entered the pleas, it was a date the morning of the

22  trial on a case that had been ongoing for sometime and

23  where my client and especially Mr. Gallagher's client were

24  adamant about going to trial.  In order to end up into

25  these plea bargains, it was presented to my client, since

1   he was closest to Mr. Rennick, that if he was able to get

2   Mr. Rennick to enter a plea, voluntarily enter a plea and

3   also provide sub -- and get Mr. Rennick to provide

4   substantial assistance, he would receive, he being

5   Mr. Elliot, would receive a 5K1.  So Mr. Elliot's plea

6   bargain and 5K1 is based on what Mr. Rennick was to do.

7           Mr. Elliot did that.  When Mr. Elliot was shot --

8   not Mr. Elliot.  When Mr. Rennick was shot, I sent

9   Mr. Brichler a letter on November 10th -- because my client

10   had been concerned that he was next and, in fact, had also

11   expressed concerns a week before that people were

12   threatening his life -- reminding him of what this was

13   about and asking if there was anything that they knew or

14   could do to help protect him along with Mr. Rennick.

15           That was sent down November 10th.  But it

16   reiterates what our understanding of his responsibility was

17   to do, which was to get in discussions with his friend to

18   enter the plea and to also provide substantial assistance.

19           When I spoke to Mr. Brichler earlier this

20   morning, I believe his understanding is that we were given

21   the opportunity to enter a plea to the count that we plead

22   to if we were able to get Mr. Rennick to plead.  But I

23   don't believe that either one are disputing that the issue

24   also came up that, if he was able to get Mr. Rennick to

25   provide substantial assistance, I believe the government's

```
1   position is that Mr. Rennick has not provided substantial
2   assistance.
3           Now, when I came in this morning, I hear that
4   there are tapes, et cetera.  I know that Mr. Gallagher
5   denied to have a hearing on whether or not this
6   constitutes -- Rennick's actions constitute substantial
7   assistance, but, on behalf of my client, I would like to
8   have that hearing, because my understanding of cooperation,
9   the ultimate goal is to see if we can get an individual
10  who's out committing crimes charged with a good crime and
11  also to see if that individual, after he's charged, can
12  lead to higher-ups.  I don't know of any charge more
13  serious, other than murder and attempted murder.  And if
14  Mr. Rennick was shot at the by the target who attempted to
15  kill him, then, although the crime wasn't a drug-related
16  crime, it's a lot more serious than a drug-related crime
17  and because he was doing it at the direction of the
18  government.  And they now know who did this.  And this guy
19  was a target, and he shoots Mr. Rennick.
20          I would think that, sooner or later when he's
21  arrested and charged with attempted murder, especially if
22  he knew or believed Mr. Rennick was somehow, formally or
23  informally, a government agent, even more charges can be
24  brought against him that would lead to the same type of
25  cooperation that they normally get if the person had sold
```

1   the drugs, got charged and then was given the opportunity

2   to cooperate to lead to a higher up.

3          I dispute the fact that -- not only that, but I

4   also heard Mr. Rennick saying some things about promises

5   that was made to, him, et cetera.  I don't represent

6   Mr. Rennick, but I do represent Mr. Elliot.  I sense his

7   plea bargain was so closely related to what Mr. Rennick

8   did, I cannot pass on the opportunity to -- at least

9   Mr. Gallagher has offered me the ability to come down and

10  listen to the tapes at his office.

11         But my understanding, Judge, is that Mr. Rennick

12  was out there doing what he said he was doing, at least

13  that's what he said this morning.  And he said also that he

14  had taped these conversations.  But, more importantly,

15  Judge, I know that, if an officer got shot in the line of

16  duty, not only would they receive a commendation for the

17  work that they were doing at the time, they would receive

18  high accolades.  This man gets shot and can't get a 5K1.  I

19  did not know that he was not going to receive a 5K1 until I

20  walked in here this morning, nor did I know there were any

21  tapes that would lead to the justification for it.

22         So I don't mean to cause the Court any problems,

23  but I have to represent Mr. Elliot to the best of my

24  ability, Your Honor, and I would like it to run smoothly.

25  But I just can't, as his counsel, sit here and say that I

8

1   have to explore that area, but I don't know what's on the
2   tapes, and I don't know exactly -- if Mr. Gallagher would
3   give me permission to talk to his client to see -- I would
4   like to have a hearing on that in the very near future to
5   determine if there was substantial assistance given that my
6   client should get credit for.  Because, but for his
7   efforts, none of this would have went on, and I think the
8   government knows this.  And that was the basis of his
9   entering the plea.

10          THE COURT:  All right.  I'll hear from
11  Mr. Brichler, but let me tell you first, Mr. Lawson, that,
12  as I think I mentioned to prior counsel, you know,
13  whenever, you're certainly not troubling the Court when you
14  bring up an issue like this.  In fact, you have an ethical
15  duty to raise every defense possible.

16          As you know, after I was an assistant United
17  States attorney, I was a criminal defense attorney.  So I
18  appreciate, you know, the obligations that you have, and
19  the Court is never inconvenienced by that.

20          MR. LAWSON:  Thank you, Judge.

21          THE COURT:  Mr. Brichler, you want to respond?

22          MR. BRICHLER:  Your Honor, I really -- I'm at a
23  loss to understand how Mr. Rennick's activities have
24  anything to do with this defendant.

25          MR. LAWSON:  I just wanted to make sure

```
 1   Mr. Gallagher is still present, Your Honor.
 2            THE COURT:  Do you want -- do you need to listen
 3   to the tapes first before you have Mr. Mercado's testimony?
 4            MR. LAWSON:  I would like, if he would give me
 5   permission, to talk to his client, because apparently there
 6   is --
 7            THE COURT:  Mr. Gallagher's client?
 8            MR. LAWSON:  Yes.  Because apparently there is
 9   some conversations that are not on tape, but there was a
10   lot of conversations on ongoing things that were going on.
11            I would submit to the Court this correspondence
12   that I sent to Mr. Brichler on November 10th in response to
13   his saying he's at a loss as to what I'm saying.
14            THE COURT:  Mr. Lawson, that stationery is
15   remarkable.  You've got to let me know where you get this
16   done so I can put Cavaliers on mine.
17            Mr. Brichler, have you had an opportunity --
18            MR. BRICHLER:  I have read the letter.  I have
19   read it previously.  And, first of all, I'm not privy to
20   whether or not Mr. Elliot was the one that convinced
21   Mr. Rennick to enter a plea.  I'm not privy to the fact
22   that it's alleged that Mr. Elliot talked Mr. Rennick into
23   cooperating.  I have no way of knowing that.
24            As far as the concern about Mr. Elliot's safety,
25   when I received the letter, I had spoken to Mr. Mercado,
```

1   and it was my understanding that Mr. Elliot had nothing to

2   do with any of the things that were going on and wasn't

3   involved and wasn't in any danger.  So I was a little

4   bit -- when I received the letter, I kind of -- I wondered

5   where it was coming from, because of the fact that

6   Mr. Elliot didn't have anything to do with this, and I

7   didn't know why Mr. Lawson felt that he was in danger.

8           MR. LAWSON:  Judge, if I may, every defense

9   attorney that was present for trial that morning, everybody

10  was here ready to go to trial.  And Mr. Gallagher knows,

11  and I don't know if Mr. Cohen remembers it or not, that

12  that was the offer that was made to my client, because we

13  had to come back out and let my client speak to

14  Mr. Gallagher's client.

15          THE COURT:  All right.  Here's what --

16          MR. BRICHLER:  May I have a moment, Your Honor,

17  with Mr. Lawson?

18          THE COURT:  Sure.

19          (Off-the-record discussion between Mr. Brichler

20  and Mr. Lawson.)

21          MR. LAWSON:  Judge --

22          MR. BRICHLER:  Your Honor, I just had a

23  discussion with Mr. Lawson, and he related to me that, on

24  the morning of the pleas, that I had a conversation with

25  him concerning his client's ability to basically make the

11

1  case go away.

2          THE COURT:  You mean make the trial go away?

3          MR. BRICHLER:  Make the trial go away.  If he was

4  cooperative and if he was able to convince the other

5  defendants that this is what they should do.

6          MR. LAWSON:  Actually, it was Mr. Rennick, not

7  the other defendants.

8          MR. BRICHLER:  Okay.  And Mr. Lawson indicated

9  that I told him that, if that happened, that I would

10  consider Mr. Elliot's conduct to be substantial assistance.

11          Now, I don't have any recollection of that.  On

12  the other hand, I have practiced law for many years with

13  Mr. Lawson, and I know that Mr. Lawson would not say

14  something about me if it hadn't occurred.  So I'm prepared

15  at this time, based upon Mr. Lawson's representations, to

16  request the Court to consider a downward departure on the

17  basis of his assistance in that case.

18          I know it's obviously out of time --

19          THE COURT:  No, no.  That's all right.

20          MR. BRICHLER:  And his range was 21 to 27 months.

21          THE COURT:  Right.  He's a category II.

22          MR. BRICHLER:  Category II, level 15.

23          THE COURT:  Right.

24          MR. BRICHLER:  A one-third reduction would be 14

25  months; 7 from 21 would be 14 months.  I would request the

1  Court consider a sentence, therefore, within the range of

2  offense level 12, which would be 12 to 18 months where 14

3  months would be.

4          MR. LAWSON:  I have discussed that with my

5  client, Your Honor, and there is no objection.  I discussed

6  that with him already.  And I appreciate what Mr. Brichler

7  just stated, but Mr. Gallagher is also in the room.  We

8  talked briefly before we came up here, and I just want

9  Mr. Brichler to know that that is our recollection about

10 what happened that day.

11         MR. BRICHLER:  And I want to make it clear that

12 this motion for reduction is based upon what happened that

13 day and it's not based upon any conduct that Mr. Rennick

14 subsequently engaged in.

15         THE COURT:  All right.

16         MR. LAWSON:  It still gets us to where we were

17 at, Judge.  There is no objection to that either.

18         THE COURT:  So you don't want a hearing.

19         THE DEFENDANT:  We're ready to go forward with

20 sentencing, Your Honor.

21         THE COURT:  All right.  I guess we were talking

22 about -- I'm not sure if the last question was were any of

23 the facts reported in the presentence report disputed by

24 the defendant or the government, or do you have any

25 additional sentencing facts?  And I guess those were some

1  additional sentencing facts.

2          MR. LAWSON:  Other than that, Judge, no.

3          THE COURT:  All right.  Mr. Brichler?

4          MR. BRICHLER:  No, Your Honor.

5          THE COURT:  There being no objections to the

6  factual statements contained in the presentence report,

7  other than the discussion that was just had here in the

8  courtroom, the Court adopts those statements as its finding

9  of fact.  The defendant has entered a valid plea to count

10 one of the indictment.  Accordingly, the defendant is

11 adjudged guilty of case number 1:02cr157(5)SJD, possession

12 with intent to distribute marijuana.

13         Pursuant to 18 United States Code Section 3553,

14 the Court makes the following findings of relevant fact

15 significant to the imposition of sentence.  The defendant

16 is guilty of violating 21 United States Code Section

17 841(a)(1) and (b)(1)(D), which is a Class D felony and

18 subjects the defendant to a maximum of five years

19 imprisonment, a $250,000 fine, a period of supervised

20 release of at least two years and a $100 special

21 assessment.  However, the Sentencing Guideline Manual

22 controls the determination of the sentence in this case.

23         The final presentence report indicates there are

24 no remaining objections to the presentence report.  Are

25 there any objections to the presentence report that have

1  | not been previously raised, other than what we have already
2  | discussed?
3  |         MR. LAWSON:  No, Your Honor.
4  |         THE COURT:  Okay.  Mr. Brichler?
5  |         MR. BRICHLER:  No, Your Honor.
6  |         THE COURT:  The Court notes then that there are
7  | no objections from either the defendant or the government
8  | as to the application of the Guidelines or the facts
9  | contained in the presentence report other than our previous
10 | discussion.
11 |         The Court will now go over the applicable
12 | Guidelines.  The defendant pled guilty to count one of an
13 | indictment charging him with possession with intent to
14 | distribute marijuana in violation of Title 21 United States
15 | Code Section 841(a)(1) and (b)(1)(D).
16 |         In accordance with the provisions of 18 USC
17 | Section 3553, the Court places on the record the following
18 | statement of reasons.  The Guideline for the offense of
19 | possession with intent to distribute marijuana is found at
20 | Sentencing Guideline Section 2F1.1(a).  According to that
21 | section, the defendant's base offense level is 18.   In
22 | accordance with 3E1.1(a) and (b), the offense level is
23 | reduced by three points based upon the defendant's
24 | acceptance of responsibility.
25 |         Pursuant to the Antiterrorism and Effective Death

1   Penalty Act, restitution is mandatory; however, there was
2   no documented loss in this case.  In a case where there is
3   no identifiable victim and the defendant has been convicted
4   under 21 United States Code Section 841, the Court taking
5   into consideration the amount of public harm caused by the
6   offense and any other relevant factors, shall order an
7   amount of community restitution not to exceed the fine
8   imposed under section 5E1.2 and 5E1.1(d).

9           Since this is the defendant's second conviction
10  for an offense involving the distribution of a controlled
11  substance, the denial of federal benefits is up to ten
12  years in accordance with 21 USC Section 862(a)(1)(B),
13  although let me make clear that I'm not denying federal
14  benefits in this case.

15          The total offense level is therefore 15.  And the
16  Court find the defendant's criminal history category is
17  category II.  Based on a total offense level of 15 and a
18  criminal history category of II, the Guideline imprisonment
19  range is 15 to 21 months.  The Guideline term for a period
20  of supervised release is two to three years.  The
21  Guidelines do not authorize a sentence of probation where
22  the minimum term of imprisonment specified is 8 months or
23  more.  The Guideline range for a fine is from $4,000 to
24  $40,000, and there is a $100 special assessment which is
25  mandatory.

1            Now I need to find my trusty Sentencing

2    Guideline.  What I'm looking for, counsel, is if the Court

3    grants the 5K1.1, that just changes the fine amount.  I'm

4    just trying to figure out what that is.  I don't think I

5    have it.

6            MR. BRICHLER:  It's $3,000 to $30,000 if you

7    departed to level 12.

8            THE COURT:  Great.  Thank you.

9            MR. BRICHLER:  Thank the probation officer for

10   that.

11           THE COURT:  Thank you, Mr. Barbeau.

12           Okay.  There has been a motion for departure

13   based on substantial assistance under 5K1.1.  There has

14   already been some discussion on the record about that.

15           Do counsel want to discuss anything further, and,

16   if so, do you want to do it at sidebar?

17           MR. LAWSON:  No, Your Honor.

18           MR. BRICHLER:  No, Your Honor.

19           THE COURT:  All right.  Then the Court will grant

20   the government's motion for substantial assistance based on

21   5.1, and we can now proceed to sentencing.

22           At this time, the Court will entertain anything

23   the parties wish to say in mitigation or aggravation of

24   sentence.  Mr. Lawson?

25           MR. LAWSON:  Judge, I would just ask the Court to

17

1   follow the tone of the probation department's

2   recommendation when -- when I say that, it appears they

3   were willing to give him the low level of the offense level

4   with 21 months when the range was 21 to 27.  I'm asking the

5   Court to understand that, based on some of the confusion

6   however, Mr. Elliot always thought he would at least get

7   the 5K1.  I would ask the Court to continue to follow the

8   logic of the probation department and follow that to the

9   extent where the Court would impose the 14 months as

10  opposed to anything higher.  And I just -- I believe that's

11  fair.  I believe that is still consistent with the report.

12  Because the report went as low as it could under those

13  Guidelines without considering substantial assistance.  Now

14  we have the substantial assistance, and I think that going

15  to 14, which is the low level underneath the new area based

16  upon the 5K1, is still consistent with the report.

17              THE COURT:  I have to check something here.

18              Mr. Elliot, anything you wish to say, sir?

19              THE DEFENDANT:  No, ma'am.

20              THE COURT:  Mr. Brichler, anything you wish to

21  say?

22              MR. BRICHLER:  No, Your Honor.

23              THE COURT:  All right.  Then it's the duty of the

24  Court to sentence the defendant at this time; however,

25  counsel will have a final chance to make legal objections

1    before the sentence is actually imposed.

2            Pursuant to the Sentencing Reform Act of 1984,

3    it's the judgment of the Court that the defendant be hereby

4    committed to the custody of the Bureau of Prisons for a

5    term of 14 months on count one.  The defendant shall

6    participate in the Bureau of Prisons Inmate Financial

7    Responsibility Program.

8            Following the sentence of imprisonment, the

9    defendant is ordered to be placed on supervised release for

10   a period of two years.  Upon release from incarceration,

11   the defendant is ordered to report in person to the

12   probation office to the district in which he is released

13   within 72 hours.  As a condition of supervised release, the

14   defendant shall pay any unpaid balance of his fine.  The

15   defendant shall not commit another federal, state or local

16   crime and is prohibited from possessing a firearm or other

17   dangerous device.  The defendant shall not possess any

18   illegal controlled substances.

19           In addition, the defendant shall comply with the

20   standard conditions of supervised release as adopted by the

21   Court for the Southern District of Ohio.

22           As a special condition of supervised release, the

23   defendant is ordered to refrain from any unlawful use of a

24   controlled substance and to submit to one drug test within

25   15 days of release and at least two periodic drug tests

1   thereafter.

2          The Court finds the defendant is capable of

3   paying a fine in an amount below the minimum specified by

4   the Guidelines.  Accordingly, the Court orders that a fine

5   in the amount of $1,000 be imposed.  The fine is due

6   immediately, and, again, as I mentioned at the previous

7   sentence, that a payment schedule can be worked out with

8   the probation department for that.  No interest shall

9   accrue on any unpaid balance.

10          The defendant shall participate in a program

11   approved by the United States Probation Office for

12   substance abuse, which program may include testing to

13   determine whether the defendant has reverted to the use of

14   drugs or alcohol.

15          The defendant shall remain eligible for all

16   federal benefits.

17          A special assessment of $100 is owed and due

18   immediately.

19          Mr. Elliot, do you want me to make a

20   recommendation as to which facility you be sent to?

21   Usually it's geographical, like the closest to Cincinnati.

22          MR. LAWSON:  The closest, Your Honor.

23          THE COURT:  Okay.  Mr. Lawson, do you have any

24   objections as to why the sentence should not be imposed as

25   stated?

```
 1              MR. LAWSON:  No, Your Honor.

 2              THE COURT:  Mr. Brichler, do you have any

 3    objections?

 4              MR. BRICHLER:  No, Your Honor.

 5              THE COURT:  The sentence is thus imposed as

 6    stated.

 7              Let me tell you about your rights on appeal.

 8    Both parties are notified by the Court that you have a

 9    right to appeal the sentence.  If you're indigent and

10    cannot retain a lawyer, you may apply and one will be

11    appointed to represent you on your appeal.  You're further

12    advised that, in accordance with the provisions of Rule

13    4(b) of the Rules of Appellate Procedure, you must file

14    your notice of appeal with the clerk of the United States

15    District Court within 10 days of the filing of this

16    judgment.

17              The Court does hereby advise you that, if you so

18    request, the clerk will prepare and file immediately a

19    notice of appeal on your behalf.

20              And it is further ordered that the defendant

21    shall notify the United States Attorney for the Southern

22    District of Ohio within 30 days of any change in resident

23    or mailing address until all fines and special assessments

24    imposed by this judgment are fully paid.

25              If you request, Mr. Elliot, I'll order the clerk
```

```
 1    of courts to file your notice of appeal immediately after
 2    the judgment is filed.  And if not, Mr. Lawson, will you
 3    protect the rights of the defendant?
 4              MR. LAWSON:  I will do so, Your Honor.
 5              THE COURT:  All right.  Mr. Brichler, what's the
 6    custodial status of the defendant?
 7              MR. BRICHLER:  Mr. Elliot is free on bond, Your
 8    Honor, and we have no objection to self surrender.
 9              THE COURT:  Okay.  How long do you need to get
10    your affairs in order, Mr. Elliot?
11              Have you arranged for child care for your
12    daughter?
13              MR. LAWSON:  Judge, they're talking with his
14    wife.  They're doing that now.  He's asking for, like, 60
15    to 90 days, which I think that's what -- I don't know how
16    long it normally takes.
17              THE COURT:  I think they told me it's going to
18    take about three weeks for designations.
19              I'll give you 60 days.
20              MR. LAWSON:  Okay.  He's indicated to me, too,
21    that within the last couple of weeks he just got custody of
22    his daughter, so he's going to have to deal with that also.
23              THE COURT:  I know he has custody of his
24    daughter.  That was my concern.  I'm trying to think back
25    in the old days when I practiced domestic relations, if
```

  **22**

```
 1   you're going to need a hearing on a custody issue.

 2             MR. LAWSON:  He's indicating he believes from his

 3   domestic relations attorney he can give somebody power of

 4   attorney.

 5             THE COURT:  All right.  Good.  Great.

 6             All right.  Then, Mr. Elliot, I am going to allow

 7   you to self surrender to the Bureau of Prisons.  During the

 8   interim period until you're required to surrender to the

 9   Bureau of Prisons, I'm going to order you to abide by all

10   the conditions and requirements of your current bond.  In

11   particular, I want to remind you that, under the conditions

12   of your current bond, you're prohibited from committing

13   another federal, state or local crime.

14             It's the judgment of the Court that you will be

15   permitted to self surrender to the institution assigned by

16   the Bureau of Prisons at a date designated by the Bureau of

17   prisons, but no sooner than -- since it's almost the end of

18   January, why don't we go to the beginning of April.  How

19   about April the 1st?

20             MR. LAWSON:  Thank you, Judge.

21             THE COURT:  And crimes include, Mr. Elliot, no

22   DUI's.

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Because, if you're back in front of

25   me before then, you're going off right away.
```

1        Is there anything further to come before the

2    Court at this time?

3              MR. BRICHLER:  No, Your Honor.

4              MR. LAWSON:  No, Judge.

5              THE COURT:  All right.  Good luck to you,

6    Mr. Elliot.

7              Thank you everyone.

8              MR. LAWSON:  Thank you, Judge.

9               PROCEEDINGS CONCLUDED AT 11:20 A.M.

10

11                 C E R T I F I C A T E

12              I, Betty J. Schwab, the undersigned, do

13    hereby certify that the foregoing is a correct

14    transcript from the record of the proceedings in

15    the above-entitled matter.

16

17                          _____
                            BETTY J. SCHWAB, RPR
18                          Official Reporter

19

20

21

22

23

24

25