# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEVE RENNICK, SR.,   : C-1-05-0050
         : CR-1-02-157-3
  Petitioner,    :

         : **UNITED STATES' RESPONSE TO**
         : **PETITIONER'S MOTION TO**
  v.      : **VACATE, SET ASIDE, OR**
         : **CORRECT SENTENCE PURSUANT**
         : **TO 28 U.S.C. § 2255**
UNITED STATES OF AMERICA, :
         :
  Respondent.    : J. Dlott

- - - - - - - - - - - - - - - - - - - -

   Petitioner has filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.  This Court has ordered the United States to respond.  The United States responds by stating that petitioner's stated grounds I through IV are without merit and should be denied.  However, petitioner's ground V should be granted for the sole purpose of reimposing his sentence so that he may take a direct appeal.  Our arguments and legal authority follow.

### Cause For Petitioner's Detention

   The petitioner was indicted by a federal grand jury on November 6, 2002 and charged in Count 1 with conspiracy to possess with intent to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. § 846 and § 841(a)(1) & (b)(1)(B).  The indictment was superseded on March 5, 2003, however, Count 1 contained the same charge.

On August 18, 2003, the petitioner entered a plea of guilty to that charge. A presentence report was prepared, and the petitioner was sentenced on January 28, 2004 to 63 months in prison. Although petitioner requested the Clerk to file a notice of appeal, it was never filed. Therefore, no direct appeal was taken. This petition was timely filed on January 26, 2005 within the one year limitation by law.

### Petitioner's Grounds For Relief

The petitioner has alleged five separate grounds for relief.

    I.   His plea was not voluntary.

    II.  He received ineffective assistance of counsel.

    III. The United States breached its plea agreement.

    IV.  The Court erred by failing to grant petitioner's motion for a downward departure.

    V.   His right to a direct appeal was denied.

### I. Voluntariness

The petitioner argues that his plea was not voluntary due to threat and coercion. In his argument he asserts that in varying ways he was coerced by his co-defendants, his lawyer, and the prosecutor.

Whether a guilty plea is entered knowingly and voluntarily is determined by a comprehensive examination of the totality of circumstances. A defendant who is advised on the record of his constitutional rights is not entitled to habeas relief. A defendant is presumed to have been adequately informed by his

2

attorney of the direct consequences of his plea. <u>Berry v.
Mintzes</u>, 726 F.2d 1142, 1146-49 (6th Cir.), <u>cert. denied</u>, 467
U.S. 1245 (1984). In this case, the Court conducted a Rule 11
hearing and explained all of the petitioner's rights.
(Transcript of Change of Plea, pp. 21-23). The petitioner stated
under oath that he understood all of his rights. Therefore, he
was fully informed of the nature and consequences of his plea.

Next the Court inquired whether the petitioner's plea was
voluntary. The petitioner replied under oath that it was.
(Transcript of Change of Plea, p. 30). The Court also asked if
there were any other promises made or if he was threatened or
forced in any way to enter the plea. Again the petitioner
replied, "No ma'am." (Transcript of Change of Plea, p. 30). A
petitioner who expressly represents in open court that his guilty
plea is voluntary may not ordinarily repudiate his statements to
the sentencing judge. <u>United States v. Todaro</u>, 982 F.2d 1025
(6th Cir.), <u>cert. denied</u>, 508 U.S. 943 (1993). Indeed, the Sixth
Circuit has agreed with the holding of the Fifth Circuit that
"where the court has scrupulously followed the required
procedure, 'the defendant is bound by his statements in response
to that court's inquiry.'" <u>Baker v. United States</u>, 781 F.2d 85,
90 (6th Cir. 1986); quoting <u>Moore v. Estelle</u>, 526 F.2d 690, 696-
697 (5th Cir. 1976).

3

It is interesting to note that the petitioner was not a stranger to the criminal justice system. He has twice been convicted of federal felonies and been sentenced by a federal judge. He also has two prior state felony convictions. (Presentence Report pp. 9-11). He is an adult in his fifties who owned and operated his own excavation business with numerous employees. He is not the uninformed, malleable person that he now presents to the Court.

This Court found that the plea was voluntary and subsequent misgivings of the petitioner did not affect the voluntariness of his plea at the time it was made.

## II. Ineffective Assistance Of Counsel

Petitioner next argues that his attorney was ineffective in advising him to enter a guilty plea.

In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth the two-pronged standard which a defendant must meet in order to prove that his counsel's assistance was so defective as to require reversal of the conviction because the defendant was denied effective assistance of counsel in violation of the Sixth Amendment.

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance

4

prejudiced the defense.  This requires showing that
counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is
reliable.  Unless a defendant makes both showings, it
cannot be said that the conviction . . . resulted from
a breakdown in the adversary process that renders the
result unreliable.

Id. 466 U.S. at 687, 104 S.Ct. at 264.  The Supreme Court went on

to say that the proper standard to apply is one of reasonably

effective assistance, that is, in order to prevail, a petitioner

must show that "counsel's representation fell below an objective

standard of reasonableness."  Id.  Strickland requires that

reviewing courts consider whether counsel's assistance was

reasonable "considering all the circumstances" for the purpose of

the Sixth Amendment "is simply to insure that criminal defendants

receive a fair trial."  Id. 466 U.S. at 688-689, 104 S.Ct. at

265.

In the context of the plea process, to establish ineffective

assistance of counsel, the petitioner must show that his

attorney's performance was not "within the range of competence

demanded of attorneys in criminal cases" and "there is a

reasonable probability that, but for counsel's errors,

[defendant] would not have pleaded guilty and would have insisted

on going to trial."  Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366

(1985).  The petitioner seems to argue that his attorney was

ineffective because all three defendants and their attorneys

participated in plea discussions.  This somehow made petitioner's

5

counsel the pawn of the government. Petitioner's paranoid
ramblings are not supported by the record in this case. The
change of plea hearing reveals a lucid petitioner who was aware
of the charges, aware of the potential penalties, and aware of
the plea agreement. When questioned under oath about his
attorney, the petitioner acknowledged that he was satisfied with
his representation. (Transcript of Change of Plea, p. 14).

The petitioner was represented by one of the best criminal
defense attorneys in Cincinnati. Nothing in the record reflects
that the attorney labored under a conflict of interest. Once
again the petitioner is unhappy with the consequences of a
decision he made. There was no error in the process.

### III. The Plea Agreement

The petitioner now argues that the United States breached
the plea agreement by failing to ask for a downward departure for
substantial assistance. The plea agreement is clear that any
motion for a reduction of sentence would be in the sole
discretion of the United States Attorney. The petitioner's
position at sentencing was that although he did not qualify for a
government motion for a downward departure, the facts warranted a
departure because they were never contemplated by the guidelines.
The United States was clear in its position that the petitioner
did not qualify for the substantial assistance motion.
(Transcript of Sentencing, pp. 10-11). The petitioner's attorney

6

strategically acknowledged that the government was not required to file the motion and competently attempted to have the Court use the same information and depart for a different reason (out of the heartland, Koon). (Transcript of Sentencing, pp. 8-10 & 11-13). The petitioner's attempt to now present information outside the record is suspect to say the least. None of the wild allegations he now makes have anything to do with the voluntariness of his initial plea, nor were they presented at time of his sentencing to challenge any aspect of the plea agreement.

### IV.    The Court Erred By Failing To Grant His Motion For A Downward Departure.

In this argument, petitioner again argues that the United States failed to file a motion for a substantial assistance departure. Contrary to petitioner's assertions, the United States never promised that it would file a substantial assistance motion. The requirement to file would only occur "upon his substantial assistance." Petitioner's torturous dissection of the plea agreement language fails to admit that he was first required to provide substantial assistance and failed to do so. As noted in the record, the United States did not believe that he provided substantial assistance and so stated on the record. (Transcript of Sentencing hearing, pp. 10-11). Petitioner's alleged cooperation resulted in no arrests and no prosecutions. Petitioner does not and can not claim otherwise. Where a plea

7

agreement states that the decision to move for a departure is at the government's discretion, review is limited to unconstitutional motives only such as race or religion.  <u>Wade v. United States</u>, 504 U.S. 181 (1992); <u>United States v. Rashid</u>, 274 F.3d 407 (6th Cir. 2001).  Since no allegation of any such constitutional motive exists, no hearing on this issue is required.  <u>Rashid</u>, <u>supra</u>.  Petitioner's attempts to disparage the name of an excellent police officer by making outrageous assertions are totally unbelievable.

**V.  Petitioner's Right To Direct Appeal Was Denied.**

The United States agrees that under the circumstances of this case, the petitioner lost his ability to file a direct appeal in this case.  Accordingly, the United States requests that this Court deny the petitioner's motion to vacate on grounds I through IV, and vacate his sentence on this ground (V) and reimpose the same sentence for the sole purpose of giving him the opportunity to file a direct appeal.  By doing this, this Court would correct any injustice the petitioner may have suffered by the inadvertence of Court personnel in not filing the notice of appeal as requested.

### <u>Conclusion</u>

The petitioner's complaints result not from a failing of his attorney, pressure from his co-defendant, the prosecutor, or errors of the Court, but from his unhappiness with the result of

8

his earlier decision.  He clearly knew what he was doing and clearly received excellent legal representation.  He should, however, be given the opportunity to directly appeal his sentence.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202
(513) 684-3711
Fax:  (513) 684-2047
Robert.Brichler @usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 25th day of April, 2005, by regular U.S. Mail on Steve Rennick, Sr., #04050-032, Federal Medical Center, P.O. Box 14500, Lexington, Kentucky 40512.

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney

9

[DE-202 P9 JA-283]



**FILED**

**MAY 2 3** 2005

**JAMES BONINI, Clerk**
**CINCINNATI, OHIO**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| STEVE RENNICK, SR., | ) |
| Movant/Defendant, | ) CV-1-05-0050 |
| vs | ) CR-1-02-157-3 |
| UNITED STATES OF AMERICA, | ) Hon. Susan J. Dlott |
| Respondent, | ) U.S. District Judge |

## MOTION FOR DISCLOSURE OF

### GRAND JURY MINUTES

Comes the defendant, Steve Rennick, Sr., pro se, and moves
this court for an order requiring disclosure of certain grand jury
testimony and in support    thereof the defendant does state as
follows:

The defendant is before the court seeking disclosure of grand
jury testimony given against the defendant in the above captioned
matter by Case Agent John Mercado, pursuant to Rule 6(e)(3)(C)(i)
of the Fed. R. Crim. Proc. which rule authorizes disclosure "when
so directed by a court preliminarily to, or in connect with, a
judicial proceeding."

When making such a request under Rule 6(E)(3)(C)(i), the dis-
closure is permitted only where; (1) the disclosure is sought
either "preliminary to" or "in connection with" a judicial

-1-

proceeding, and (2) the party requesting such disclosure has de-
monstrated a particularized need for the requested Grand Jury
materials.   See e.g., <u>United States v. Sells Engineering, Inc.,</u>
463 U.S. 418, 103 S.Ct. 3133 (1983); <u>United States v. Baggot</u>, 463
U.S. 476 (1983) <u>In Re Grand Jury 89-4-72</u>, 932 F.2d 481, 488 (6th
Cir.) (stressing the need for the materials must be "compelling,")
cert denied, 502 U.S. 958 (1991).

     This disclosure is sought preliminary to a direct appeal and/
or continued collateral attack, a significant basis of which is
the allegation by the defendant of actual innocence.  (At the time
of this writing the government has conceded the defendant was un-
justly denied his direct appeal and the defendant is awaiting this
court's vacating of defendant's sentence and resentencing to allow
for the timely notice of direct appeal).

     The material is being sought for the specific purpose of es-
tablishing fraud on the court and perjury on the part of the gov-
ernment's lead case agent, Cincinnati Detective John Mercado.  On
February 25 2005, the defendant appeared in The Court of Common
Pleas, Hamilton County, Ohio, before the Honorable Richard a Bernat
in a matter styled, <u>In Re 2001 Freight-Liner/Classic KL-Limited</u>
<u>VIN: 1FUPUXZB11PF88771, seized from Steven M. Rennick, Sr.</u>

     This matter was a seizure by the State of Ohio of the semi-
tractor alleged to have been used by the defendant in the commis-
sion of the instant offense.  At this forfeiture hearing, Agent
John Mercado was present and testified under subpoena and under

-2-

oath.

Agent Mercado testified, inter alia, that he had never seen
any marijuana or any trace evidence of marijuana in said vehicle.
He further stated he had never seen the  vehicle on the road and
had no knowledge connecting the vehicle to any drugs except for
his belief it might have been purchased with proceeds of illegal
drug activity.  Predicated partially on Agent Mercado's testimony,
the State ruled there was no evidence of the subject semi-tractor
being involved in the commission of the instant offense.  The
State Court, however, also held that, because of the defendant's
plea, and suggestions the truck may have been purchased with drug
money, the State was entitled to forfeiture.  (The forfeiture
matter is under objection pending appeal).

The defendant's indictment in the instant case specifically
charges that the defendant used said truck to haul large amounts
of marijuana from Arizona to Ohio.  There is even an allegation
that the truck was acquired specifically for the purpose of haul-
ing marijuana.  As the indictment is the result of the grand
jury's findings, thre must be sepcific testimony in the grand
jury findings to authorize the allegation.

On information and belief, the defendant alleges that Agent
John Mercado was the major, and perhaps only, grand jury witness.
The defendant further alleges that Mercado would, therefore, be
the logical source of grand jury testimony upon which the truck
involvement came into being.

-3-

[DE-205 P3 JA-286]

The defendant has a right to show, if possible, that an agent of the government lied regarding specific allegations leading to defendant's indictment. Assuming the defendant is correct, and Mercado did testify to events involving this truck in the offense, then the court is faced with choosing: Was Mercado perjuring himself then, or is he doing so now. It should be readily obvious that such discovery is relevant to defendant's continued attack on his plea and conviction.

In <u>United States v. Proctor and Gamble Co.</u>, 356 U.S. 677, 78 (1958) the Supreme Court explained the general policies upon which the rule of secrecy is based: (1) To prevent escape of those who are the subject of the inquiry; (2) to insure the utmost freedom to the grand jury and insure others will not importune the jurors; and (3) to prevent subornation of perjury or witness tampering; (4) to encourage free and untrammeled disclosure by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is subject of inquiry, but is ultimately not indicted. <u>Id.</u>, at 681 n.6. See also <u>FDIC v. Ernst and Whinney</u>, 921 F.2d 83, 86 (6th Cir. 1990); <u>In re Grand Jury Proceedings</u>, 851 F.2d 860 (6th Cir. 1988). These general policies, while most important, also are subject to exceptions. In this case the disclosure of this testimony would not breach any of these policies, and can shed valuable insight into what may be a fundamental miscarraige of justice.

In the event that the court does not feel inclined to

-4-

disclose the specific testimony, then the defendant requests that
the court review said testimony in camera to determine if said
testimony confirms the allegations set forth by the defendant.
Further, if the court feels that the defendant is entitled to
some, but not all, of said material, then the defendant prays the
court to disclose the portion the defendant may receive that is
segregable from the portion he cannot receive.  Defendant requests
that such a finding on segregability be made to the standards set
forth in <u>Church of Scientology of Col. v. United States, Depart-
ment of the Army</u>, 611 F.2d 738, 744 (9th Cir. 1979).

In conclusion, the defendant is before the court seeking in-
formation that will confirm or deny whether or not the lead agent
in this matter was, or is, truthful.  The defendant has a right
to exculpatory evidence and fair due process of law.  This request
compromises none of the Supreme Court's stated policies on secrecy,
nor does it place anyone at undue risk of harm.

The defendant prays this court to enter an order requiring
the disclosure of Agent Mercado's grand jury testimony, or in the
alternative, that the court review the testimony in camera to de-
termine if such testimony is indeed inconsistent with Mercado's
recent testimony.  (The transcript of Mercado's recent testimony
is attached as Exhibit A).  The defendant has set forth the pre-
cise scope of testimony asked for and the particular reason or
need defendant has for such request and further the defendant
saith naught.

-5-

Respectfully submitted,

Steve Rennick, Sr.
Movant/Defendant pro se
#04050-032   HCU
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

[DE-205 P6 JA-289]

## CERTIFICATE OF SERVICE

I, Steve Rennick, Sr., to hereby certify that the original of this document was filed with the Court Clerk identified below and a true and correct copy was further sent to the other party or parties identified below by depositing same into the prison legal mail box, postage prepaid, on the _18_ day of May 2005.

_Steve Rennick Sr._
Steve Rennick, Sr.

Clerk of the Court
U.S. District Court
Southern District of Ohio
100 East Fifth Street
Cincinnati, OH 45202

Robert C. Brichler, AUSA
221 E. 4th Street
Suite 400
Cincinnati, OH 45202

1    Mercado.

2    (Witness sworn.)

3    OFFICER JOHN MERCADO

4    Having been first duly sworn, was examined and

5    testified as follows:

6    DIRECT EXAMINATION

7    BY MR. ARNOLD:

8    Q.    Good morning, sir.  Would you state

9    your name and spell your last name for the record?

10    A.    John Mercado, last name spelled

11    M-e-r-c-a-d-o.

12    Q.    And you're a Cincinnati Police

13    officer?

14    A.    Yes.

15    Q.    How were you assigned on the 16th of

16    October, 2002?

17    A.    I was assigned to the Regional

18    Narcotics Unit.

19    Q.    Did you have occasion to be involved

20    in the search, execution of a search warrant at

21    1975 West North Bend Road?

22    A.    Yes.

23    Q.    And tell the Court what your role was

24    in obtaining this search warrant.

25    A.    I was assigned as a case agent on an

1    investigation.  I was conducting that, led to

2    several arrests, and subsequently those arrests on

3    the -- October the 15th, I gained enough

4    information to fill out an affidavit requesting

5    the search of the location in question, and served

6    signed affidavit and search warrant on the 15th

7    from Judge Winkler.

8         Q.    Okay.  On that execution did you get

9    the warrant on the 15th or 16th, if you recall?

10        A.    On the 16th.

11        Q.    Okay.  Was that warrant subsequently

12   executed on North Bend Road?

13        A.    Yes, sir.

14        Q.    Did you participate in the search

15   that followed?

16        A.    I was present during most of the

17   search.

18        Q.    Can you describe the facility on

19   North Bend Road for us?

20        A.    It's a kind of large warehouse, has

21   several divided sections in it with garage bays.

22   Got a large entrance that faces north which has an

23   extra-large size door that would allow access for

24   a tractor-trailer.

25        Q.    I want to direct your attention to

1    the vehicle involved here; is that the vehicle

2    that you're referring to?

3         A.    Yes.

4         Q.    Okay, and what else was recovered

5    during the search execution of that warrant?

6         A.    Numerous boxes containing marijuana

7    that were within a small storage room within the

8    bay.

9              There was a also documentation and

10   other items that were taken of evidence.

11        Q.    Okay, and approximately how much

12   marijuana was recovered from the premises?

13        A.    Close to 500 pounds.

14        Q.    You testified that this was an

15   ongoing investigation, that you had interviewed

16   subjects the day before; is that correct?

17        A.    Yes.

18        Q.    Was one of those individuals Eddie

19   Moore?

20        A.    Yes.

21        Q.    Did Mr. Moore have any -- provide you

22   with any information concerning activities on

23   North Bend Road on the 15th?

24        A.    Yes.

25        Q.    And when did you interview him?

1    A.    15th.

2    Q.    Okay.  When did he report to you that

3 he saw certain things occur on the  --

4         MR. SIRKEN:  Objection.  It's

5         hearsay.

6         THE COURT:  Why isn't it hearsay, Mr.

7         Arnold?

8         MR. ARNOLD:  Your Honor, I haven't --

9         I haven't asked him anything.  I'm just

10        asking if he made statements to him.

11        That's not hearsay yet.  We'll get to that.

12        THE COURT:  All right.

13    Q.    Did Mr. Moore make statements to you

14 concerning events which occurred on the 15th?

15    A.    Yes.

16    Q.    All right, and how relatively long

17 after he perceived them was this?

18        MR. SIRKEN:  Objection.

19        THE COURT:  I'll let him answer.

20    A.    Repeat, please.

21    Q.    How long after -- how long did you

22 wait from the time you interviewed him until the

23 time he actually saw the activity he reported to

24 you?

25    A.    It all happened within a day.

1    Q.    Okay.  What information did Mr. Moore

2    provide as to the activities on the 15th at 1975

3    --

4            MS. FARLEY:  Objection.

5            MR. SIRKEN:  Objection.

6    Q.    -- North Bend --

7            MR. ARNOLD:  Let me rephrase that.

8    Q.    What did Mr. Moore tell you that he

9    saw on the 15th --

10           MR. SIRKEN:  Objection.

11    Q.    -- on North Bend Road?

12           MS. FARLEY:  Objection.  The same

13           objection.

14           MR. ARNOLD:  I understand, Your

15           Honor, that under Rule 801 -- I'm sorry,

16           803017, Judge, it relates to conspiracy,

17           establishment of a conspiracy, precise

18           impression.

19           MR. SIRKEN:  We have no ability to

20           cross-examine Crawford.  We have no ability

21           to cross-examine this Mr. Moore.

22           MR. ARNOLD:  This is not a criminal

23           case, Your Honor.

24           MR. SIRKEN:  It doesn't make any

25           difference.  Rules of evidence apply in

1        both civil and criminal matters.

2              THE COURT:  I know.  Objection

3        sustained.

4              MR. ARNOLD:  No further questions.

5              THE COURT:  Cross-examine.

6                  CROSS-EXAMINATION

7    BY MR. SIRKEN:

8        Q.    Officer Mercado, how many trucks were

9    on the premises that day that you got there on

10   October 16?

11       A.    Of this type?  There were many

12   vehicles.

13       Q.    How many trucks were there on that

14   day?

15       A.    I did not count how many trucks there

16   were.

17       Q.    There obviously was more than one?

18       A.    Well, on the property, yes.  Within

19   the building, no.

20       Q.    Within the property that you entered

21   on that date, not in the warehouse, but in that

22   location, how many vehicles were there?

23       A.    Once again, I don't know.  I did not

24   count all of them.

25       Q.    There was more than one?

1        A.    Yes, sir.

2        Q.    Did you ever observe that

3    Freight-liner that we're talking about, did you

4    ever observe that in transit?

5        A.    No, I did not.

6        Q.    Did you see it come onto the

7    premises?

8        A.    Again, I did not see it in transit,

9    so I did not see it come onto the premises.

10        Q.    So you have no personal knowledge,

11    you never saw anything that was on that or in that

12    -- in that particular Freight-liner; is that

13    correct?  What was inside that Freight-liner, did

14    you observe any marijuana inside that

15    Freight-liner?

16        A.    No, I did not.

17        MR. SIRKEN:  I have no further

18        questions.

19        THE COURT:  Anything else?

20        MR. ARNOLD:  Nothing further, sir.

21        MR. COHEN:  I do have some questions.

22            CROSS-EXAMINATION

23    BY MR. COHEN:

24        Q.    Officer Mercado, during the course of

25    .this investigation and search are you aware

1    narcotics dogs were placed inside that

2    Freight-liner to search for contraband?

3              A.    I don't recall that specifically.

4              THE COURT: I need to get a

5         clarification.  We're talking about a

6         Freight-liner, which is actually the cab

7         portion of a tractor trailer?

8              MR. ARNOLD:  That's correct.

9              THE WITNESS:  That's correct.

10             THE COURT:  We're not talking about

11        the trailer part, talking about the cab

12        part?

13             MR. COHEN:  It's the part the trailer

14        is attached to.

15             THE COURT:  Okay.  I just wanted to

16        find out.  I didn't know.  Okay, go ahead.

17        Q.    So, best of your knowledge, no

18   contraband was found within that trailer -- I

19   mean, within that Freight-liner; is that correct?

20        A.    That's correct.

21        Q.    And that trailer -- or that

22   Freight-liner is still out at the impound lot out

23   on Hamilton Avenue?

24        A.    My last knowledge of it, I mean, it's

25   still there.  I do believe that's correct.

1    Q.    Was there any evidence that a trailer

2    had been hooked up on that tractor?

3    A.    Our investigation had nothing to do

4    with the trailer, nor did -- not that I know of,

5    no, not -- not as it involved our investigation.

6    Q.    Your investigation and the indictment

7    and further discovery provided in that case, the

8    allegation was that Mr. Rennick, in the company of

9    others, transported a little over 500 pounds of

10   marijuana in that truck; correct?

11   A.    In the truck, correct, having nothing

12   to do with the trailer.

13   Q.    All right.  And you've never been

14   able to discover, been able to provide any

15   evidence that indeed any type of contraband which

16   would relate to narcotic transportation was ever

17   discovered within that vehicle; correct?

18   A.    We did not recover the marijuana from

19   the vehicle.

20   Q.    Because there never was any marijuana

21   in that vehicle?

22              MR. ARNOLD:  Objection.

23              THE COURT:  Well --

24              MR. COHEN:  Strike that.

25              THE COURT:  Well, actually, you may

1          answer.

2          A.    According to what the -- the defense

3    attorney said right now, it's incorrect.

4          Our investigation shows that there

5    was marijuana within that vehicle.

6          MR. SIRKEN:  I object to that, unless

7          that officer was the one that conducted

8          that particular investigation.

9          THE COURT:  Just ask the officer if

10         he has any knowledge that it was or wasn't

11         there, personal knowledge.

12         MR. ARNOLD:  Your Honor, he's opened

13         the door at this point by his own

14         questions.

15         THE COURT:  Well, I want this officer

16         to testify from his personal knowledge.  Do

17         you have any personal knowledge that there

18         was contraband in this tractor?

19         THE WITNESS:  If I may, Judge, I did

20         not personally see marijuana within the

21         vehicle, if that's the answer to Your

22         Honor's question.

23         And to answer the defense attorney's

24         question, as to whether there was ever

25         marijuana within that vehicle, my interview

1          of numerous subjects of the investigation

2          --

3                  MR. SIRKEN:  Objection to anything

4          about interviews of other people.

5                  THE WITNESS:  I'm merely answering

6          the defense attorney's question.

7                  MR. SIRKEN:  I object to interviews

8          of separate parties.

9                  THE COURT:  Right, yes.  I want this

10         witness to testify from his own personal

11         knowledge and he's already answered the

12         question.

13                 THE WITNESS:  Thank you, Your Honor.

14         Q.    Officer Mercado, did you ever search

15    that vehicle?

16         A.    I didn't conduct the initial search

17    of the vehicle.  I have been in it.

18         Q.    Inside of the vehicle?

19         A.    Yes.

20         Q.    Was there a strong smell of marijuana

21    within that vehicle when you searched it?

22         A.    At the time that I searched the

23    vehicle I did not smell marijuana.  But it was

24    later to the date that we seized it.

25                 MR. COHEN:  Thank you.  I have no

1    further questions.

2         THE COURT:  Any questions, counselor?

3         MS. FARLEY:  Very briefly, Your

4    Honor.

5                   CROSS-EXAMINATION

6    BY MS. FARLEY:

7         Q.    You stated that the marijuana was

8    discovered in a storage room in the facility?

9         A.    Yes.

10        Q.    Okay.  Was that in Section A or

11   Section B of 1975?

12        A.    I -- I don't know how the sections

13   are categorized.

14        Q.    So you don't know whether it was in

15   the section of the building occupied and used by

16   Mr. Rennick or by the tenants?

17        A.    My personal experience with Mr.

18   Rennick, Mr. Rennick occupies and uses the entire

19   building.

20             Keys to the storage facility where

21   the marijuana was recovered where obtained from

22   Mr. Rennick.

23        Q.    He's the landlord?

24        A.    As far as I'm concerned, my

25   investigation showed him as the owner of the

1    building and the property within the building.

2                    MS. FARLEY:  Okay.  Nothing further.

3                    THE COURT:  Anything else, Mr.

4        Arnold?

5                    MR. ARNOLD:  Not at this time.

6                    THE COURT:  All right.  You may step

7        down.

8                    MR. ARNOLD:  Call Officer Conners.

9                    (Witness sworn.)

10                    OFFICER CHRIS CONNERS

11    Having been first duly sworn, was examined and

12    testified as follows:

13                    DIRECT EXAMINATION

14    BY MR. ARNOLD:

15        Q.    Sir, would you please state your name

16    and spell your last name, give us your duty

17    assignment for the record?

18        A.    Chris Conners, C-o-n-n-e-r-s,

19    Cincinnati Police Sergeant, assigned to District

20    One.

21        Q.    Okay.  And directing your attention

22    to on or about 16 October 2002, how were you

23    assigned?

24        A.    I was assigned as an investigator

25    with the Regional Narcotics Unit.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Steven Rennick, Sr.,                              :
                                                  :    Case No. CR-1-02-157
                    Petitioner                    :
                                                  :    District Judge Susan J. Dlott
        v.                                        :
                                                  :
United States of America,                         :    OPINION AND ORDER
                                                  :
                    Respondent                    :

        This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence (docs. ## 194, 200), Motion to Expedite Ruling on Movant's

Motion Pursuant to 28 U.S.C. § 2255 Specifically as to Vacating and Reimposing Sentence to

Allow Direct Appeal to Proceed (doc. #206), and Motion for Disclosure of Grand Jury Minutes

(doc. #205). For the reasons set forth below, the Court **GRANTS IN PART AND DISMISSES**

**IN PART** Petitioner's Motion Under 28 U.S.C. § 2255 (docs. ## 194, 200), **DENIES AS**

**MOOT** Petitioner's Motion to Expedite (doc #206), and **DENIES** Petitioner's Motion for

Disclosure of Grand Jury Minutes (doc #205).

I.    **BACKGROUND**

        On August 18, 2003, Petitioner pleaded guilty to conspiracy to distribute in excess of 100

kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. (Doc.

#103.) On January 28, 2004, this Court sentenced Petitioner to a term of imprisonment of 63

months followed by four years of supervised release. (Doc. #188 at 14, 16.) At his sentencing

hearing, Petitioner was represented by private counsel William R. Gallagher. During the

hearing, the following conversation concerning Petitioner's right to appeal his sentence took

[DE-210 P1 JA-304]

place:

> THE COURT: Let me tell you about your rights on appeal. Both parties are notified by the Court that you have a right to appeal this sentence. . . . You are further advised that, in accordance with Rule 4(b) of the Rules of Appellate Procedure, you must file your notice of appeal with the clerk of the United States District Court, within ten days of the filing of the judgment. The Court does advise you that, if you request, the clerk of the Court will prepare and file immediately the notice of appeal on your behalf. . . . If you request, Mr. Rennick, I'll order the clerk of courts to file your notice of appeal immediately after the judgment is filed, and, if not, Mr. Gallagher, will you protect the rights of the defendant?

> MR. GALLAGHER: Judge, I will. I have already spoken to Mr. Rennick about the potential outcomes of the sentencing hearing. He would like to appeal.

> THE COURT: And are you going to be responsible for filing it, or do you want the clerk?

> MR. GALLAGHER: Judge, if the clerk would. I don't know what the financial situation is going to be from this point forward because of the forfeiture proceedings that are engaged in the state court. But either new counsel is going to be appointed or retained to pursue it.

> THE COURT: All right. That's fine.

(Doc. #188 at 19-20). The clerk of courts, however, did not file the notice of appeal on

Petitioner's behalf. The statutory deadline for filing a notice of appeal passed on or about

February 11, 2004. See Fed. R. App. P. §§ 4(b)(1)(A), 26(a).

Petitioner retained Kenneth L. Lawson, II, Esq. to represent him just after the sentencing

hearing, and Mr. Lawson entered his appearance on January 29, 2004. (Doc. #148.) In the late

winter and spring of 2004, Mr. Lawson filed multiple motions on Petitioner's behalf, including

motions for reconsideration of Petitioner's sentence, to withdraw Petitioner's plea of guilty, and

2

[DE-210 P2 JA-305]

to stay execution of Petitioner's sentence. (Docs. ## 149, 159, 162, 166, 169, 178.[1]) However, Mr. Lawson never filed a notice of appeal on Petitioner's behalf.

Petitioner has asserted, in prior briefing before this Court, that he "was under the impression an appeal was being aggressively pursued" during the months following his sentencing, and that Mr. Lawson did not inform him that no notice had been filed until sometime after Petitioner entered federal custody in late May 2004. (Doc #191-1 at 4.) Petitioner states that Mr. Lawson promised to file a 28 U.S.C. § 2255 petition "to challenge the plea and sentence," but postponed doing so due to health problems. Id. at 4-5. In November 2004, Petitioner retained new counsel who apparently confirmed that a direct appeal was time-barred and that a section 2255 petition "would be the last resort." Id. at 5; see also docs. ## 186, 187. The transcript from Petitioner's sentencing hearing was not docketed until December 3, 2004, and Petitioner states that he did not receive a copy until December 8, 2004. (Docs. #188, 191-1 at 5.) On December 15, 2004, after reviewing the transcript, Petitioner filed a *pro se* motion seeking reinstatement of his appeal rights pursuant to Federal Rule of Appellate Procedure 4(b). (Doc. #191.) On January 1, 2005, the Court denied Petitioner's 4(b) motion, but invited Petitioner to file a motion pursuant to 28 U.S.C. § 2255 to pursue his claim that his rights were violated by the clerk of court's error in not filing an appeal. (Doc. #192.[2])

On January 26, 2005, apparently just before receiving a copy of the Court's January 1,

_____

[1] The Court granted Petitioner's stay motions and denied all other motions. (Docs. ## 168, 171, 179.)

[2] The Court also instructed Petitioner on how to request a proceeding *in forma pauperis* so that an attorney could be appointed on his behalf, if appropriate, for the § 2255 proceedings. Id. Nevertheless, Petitioner has filed his section 2255 papers *pro se*.

3

2005 Order, Petitioner filed the instant § 2255 motion. Petitioner's original memorandum set forth five grounds for relief: (1) his guilty plea was not voluntary; (2) he received ineffective assistance of counsel; (3) the United States breached its plea agreement; (4) the Court erred by not granting Petitioner's motion for a downward departure; and (5) his right to a direct appeal was denied by the clerk of court's and his counsel's error in not timely filing his notice of appeal. (Doc. #194.) In a supplemental memorandum filed April 4, 2005, Petitioner reasserted his fifth claim to relief. (Doc. #200.) He also argued that, had his direct appeal been timely filed, he would have been entitled to automatic reconsideration of the sentencing issues raised by United States v. Booker, 125 S.Ct. 738 (2005) and Blakely v. Washington, 124 S.Ct. 2531 (2004). Id.

The United States filed a responsive memorandum arguing that Petitioner's first four claims for relief should be denied on the merits, but agreeing that the Court should vacate Petitioner's sentence pursuant to Petitioner's fifth (or notice of appeal) claim and reimpose the same sentence for the sole purpose of permitting Petitioner to file a direct appeal. (Doc. #202.) In his reply, Petitioner declined to respond to the Government's substantive arguments on his first four claims in anticipation that this Court would vacate and reimpose Petitioner's sentence solely on the basis of his fifth claim. (Doc. #204.) Petitioner conceded that "all other issues contained in [the] § 2255 motion would in fact be moot (at least for now)" if the Court vacated and reimposed his sentence on the notice of appeal issue, and urged the Court to adopt this approach and dismiss "all other issues without prejudice." Id.[3] Petitioner further requested that

_____

[3] Petitioner emphasized that in the event the Court decided not to vacate and reimpose his sentence and permit a direct appeal, he wished to "retain his right" to pursue his first four claims before the district court. Id.

4

in the event of resentencing, the Court order the clerk of court to file a notice of appeal and

notify Petitioner of this filing. Id.

On May 23, 2005, Petitioner filed a separate Motion for Disclosure of Grand Jury

Minutes pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure. (Doc. #205.) As

detailed below, Petitioner asserted that his indictment was predicated on false grand jury

testimony by a government agent and that evidence of this perjury is relevant to any forthcoming

appeals of his conviction.

On July 8, 2005, Petitioner moved for the Court to expedite its consideration of his

section 2255 motion. (Doc. #206.)

**II.    ANALYSIS**

**A.    Section 2255 Motion**

As discussed below, the failure of the clerk of court and Petitioner's counsel to file a

timely notice of appeal on Petitioner's behalf is grounds for relief under 28 U.S.C. § 2255. The

Sixth Circuit has held that the appropriate remedy for this denial is to vacate and reimpose

Petitioner's original sentence in order to reinstate Petitioner's right to a direct appeal. Because

pursuit of a direct appeal will cut short Petitioner's pending habeas action and render Petitioner's

remaining section 2255 claims unripe, the Court declines to reach the merits of Petitioner's

remaining claims and instead dismisses those claims without prejudice.

**1.    Failure to Notice Direct Appeal (Fifth Claim for Relief)**

The Court's January 1, 2005 Order inviting Petitioner to file his Section 2255 motion was

predicated on the persuasive authority of United States v. Hirsch, 207 F.3d 928 (7th Cir. 2000).

Since then, the Sixth Circuit has explicitly adopted the approach endorsed by the Seventh Circuit

in Hirsch and the Eleventh Circuit in United States v. Phillips, 225 F.3d 1198 (11th Cir. 2000).
See Johnson v. United States, No. 03-3750, 2005 WL 1506050, at *2 (6th Cir. June 27, 2005)
(citing Phillips at 1201); see also Hirsch at 931. In doing so, the Sixth Circuit recognized that
both district and appellate courts lack the authority to extend the jurisdictional time limits for
filing a notice of appeal under Rule 4(b). See Johnson, 2005 WL 1506050, at *1. Therefore, the
only relief available to a federal criminal defendant who feels he has been prejudiced by the
failure to file a timely notice of appeal is a habeas petition to "vacate, set aside, or correct" his
criminal sentence under 28 U.S.C. § 2255. See Johnson, 2005 WL 1506050, at *2; 28 U.S.C. §
2255 (2005).

Federal defendants who receive constitutionally ineffective assistance of counsel in
connection with the filing of a notice of appeal are entitled to habeas relief. See Roe v. Flores-
Ortega, 528 U.S. 470, 476-77 (2000). Not every failure to notice an appeal rises to the level of
unconstitutionally ineffective assistance; to state a claim to relief, a habeas petitioner must show
that "but for counsel's deficient conduct, he would have appealed" his criminal sentence. Id. at
484-485. The Sixth Circuit has indicated that this deficient conduct standard is satisfied when a
defendant explicitly and timely requests counsel to notice an appeal and counsel fails to comply
with that request. Johnson, 2005 WL 1506050, at *1-2; see also Hirsch at 931 and United States
v. Davis, 929 F.2d 554, 557 (10th Cir. 1991) (internal citations omitted).

The question of what remedy is appropriate when a *clerk of court* fails to file a requested
notice appears to be one of first impression in this Circuit. The Seventh Circuit, however, in the
Hirsch opinion recently endorsed by this Circuit, has indicated that whenever a criminal
defendant timely requests that his appeal be filed, either in open court or before his counsel, and

no appeal is filed, the defendant has received constitutionally ineffective assistance of counsel
entitling him to relief under Section 2255. See Hirsch, 207 F.3d at 931. The transcript of
Petitioner's January 28, 2004 sentencing indicates that Petitioner made a timely request, in open
court, for the clerk of court to file his notice of appeal. (Doc #188 at 19-20.) The transcript also
reveals that the request was made by Petitioner's then-defense counsel, William Gallagher. Id.

The Court recognizes that Mr. Gallagher was replaced by new defense counsel, Kenneth
Lawson, shortly after the hearing and that Mr. Lawson represented Petitioner during the ten-day
post-sentencing notice period. See supra at 3. Despite his dismissal as Petitioner's counsel, Mr.
Gallagher's representation of Petitioner at the hearing–and his obvious awareness of Petitioner's
intent to pursue an appeal–vested Mr. Gallagher, along with Mr. Lawson, with some measure of
responsibility for ensuring that Petitioner's appeal was in fact timely filed. See, e.g., United
States v. Davis, 929 F.2d 554, 556-57 (10th Cir. 1991) (finding ineffective assistance where,
during a recess at defendant's sentencing hearing, defendant informed counsel of defendant's
intent to dismiss counsel and pursue an appeal in forma pauperis, and counsel notified the court
of this decision but then "failed to investigate" when defendant left the courthouse without ever
seeking leave to appeal). The record thus indicates that Petitioner lost his opportunity to appeal
despite the fact that at least one, and arguably as many as three, responsible individuals were
informed of Petitioner's intent to appeal within the notice period. This collective oversight "led
not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding
itself," and thus clearly constituted an unconstitutional deprivation of Petitioner's rights under
the Sixth Amendment. Roe, 528 U.S. at 483; see also Hirsch, 207 F.3d at 931.

In light of the facts and authorities reviewed above, the Court concludes Petitioner is

[DE-210 P7 JA-310]

entitled to immediate relief on his fifth claim, and therefore GRANTS Petitioner's motion as to that claim. Therefore, in accordance with the procedure laid out by the Sixth Circuit in Johnson, the Court will (1) vacate Petitioner's January 28, 2004 sentence; (2) reimpose Petitioner's sentence; (3) upon reimposition, advise Petitioner of "all the rights associated with an appeal from any criminal sentence," including the right to have a notice of appeal filed by the clerk of court; and (4) advise Petitioner that he will have ten days from the day his sentence is re-imposed to file a timely notice of appeal in accordance with Federal Rule of Appellate Procedure 4(b)(1)(A)(I). Johnson, 2005 WL 1506050, at *2 (citing Phillips at 1201). This procedure will also permit the Court to reconsider Petitioner's sentence in light of Booker and Blakely. See, e.g., United States v. Cash, 131 Fed. Appx. 200, 202 (11th Cir. 2005) (unpublished op.) (vacating and remanding district court order re-imposing sentencing according to procedure outlined above because district court failed to consider Booker in resentencing).

**2.    Other Section 2255 Issues (First Through Fourth Claims for Relief)**

Because this Court has decided to vacate and reimpose Petitioner's sentence on the grounds discussed above, the Court need not reach the other four claims set forth in Petitioner's section 2255 motion and opposed on the merits by the government. The Court agrees with Petitioner that, in light of the Court's decision to reinstate Petitioner's direct appeal rights on the basis of Petitioner's fifth claim for relief, claims one through four are likely unripe. See, e.g., Shepeck v. United States, 150 F.3d 800, 801 (7th Cir. 1998) (declaring additional claims in 2255 petitioner unripe prior to resentencing where petition included ineffective assistance of counsel claim triggering re-imposition of sentence). The Court is sensitive, however, to the need to dispense of such claims in the manner that best preserves Petitioner's ability to raise them in any

8

future habeas proceedings, should Petitioner's direct appeal prove unsuccessful. In particular, the Court does not wish Petitioner's other claims to be subject to the additional restrictions imposed on second or successive section 2255 motions. See 28 U.S.C. 2255; see also In re Goddard, 170 F.3d 435, 436 (4th Cir. 1999) (summarizing restrictions).

None of the authorities cited above resolve the issue of how to preserve such additional claims in this procedural context, and the Court is not aware of any controlling authority directly on point. However, the Supreme Court has held that when a "habeas petitioner does not receive an adjudication of his claim" because a first petition was dismissed for "technical procedural reasons," the petitioner should be able to raise this claim in a later habeas petition without having that petition classified as "second or successive." Stewart v. Martinez-Villareal, 523 U.S. 637, 644-45 (1998); see also Covington v. Mills, No. 98-5879, 1999 WL 96646, at *3-4 (6th Cir. February 4, 1999) (relying on Stewart to hold that petitioner "did not receive an adjudication of habeas claims in his prior petition," subsequent habeas petition was not "second or successive"). Several Circuits, including the Seventh, have applied this precedent to hold that an order granting a first Section 2255 motion for the exclusive purpose of reinstating a direct appeal "resets to zero the number of collateral attacks pursued," and that a subsequent Section 2255 motion should therefore not be construed as second or successive. Shepeck v. United States, 150 F.3d 800, 801 (7th Cir. 1998) (per curiam); see also United States v. Scott, 124 F.3d 1328, 1330 (10th Cir. 1997) (per curiam), and In re Goddard, 170 F.3d 435, 435, 437-38 (4th Cir. 1999).

The Court finds this authority persuasive, and therefore DISMISSES WITHOUT PREJUDICE claims one through four of Petitioner's Section 2255 petition. The Court does so with the expectation that Petitioner will remain able to bring a first section 2255 petition

9

[DE-210 P9 JA-312]

presenting these or additional claims, without regard to any special limitations applicable only to "second or successive" section 2255 motions, in the event that his direct appeal fails.

### B.    Motion to Expedite

Now that the Court has ruled on Petitioner's section 2255 petition, Petitioner's Motion to Expedite the Court's review is moot. The Court thus DISMISSES AS MOOT Petitioner's Motion to Expedite.

### C.    Motion for Disclosure of Grand Jury Transcripts

In a separate motion brought after his 2255 petition, Petitioner seeks disclosure of any testimony by federal Agent John Mercado before the grand jury that issued Petitioner's indictment. (See Doc #205-1 at 1). In the alternative, Petitioner requests that the Court conduct an in-camera review of the grand jury transcripts "to determine if said testimony conforms to the allegations" in Petitioner's motion, and to segregate and disclose any relevant portions. Id at 5.

Petitioner's motion is ostensibly brought under Federal Rule of Criminal Procedure 6(e)(3)(C)(i), which once authorized disclosure "when so directed by a court preliminarily to, or in connect [sic] with, a judicial proceeding." See id. at 1. Rule 6 was amended in 2002, and Petitioner's cited text now appears at subsection 6(e)(3)(E)(i).[4] The Court will therefore construe the motion as if it were brought under the latter section, which provides that:

> (E) The court may authorize disclosure–at a time, in a manner and subject to any other conditions that it directs–of a grand jury matter:
> (i) preliminarily to or in connection with a judicial proceeding;

---

[4]  Cf. id. and Fed. R. Crim. Proc. 6(e)(3)(E)(i); see also United States v. Loc Tien Nguyen, 314 F. Supp. 2d 612, 615 n. 5 (E.D. Va. 2004) (noting that the text at former subsection 6(e)(3)(C)(i) was moved to current subsection 6(e)(3)(E)(i) as part of a 2002 rule renumbering). Because the change is relatively recent, much of the case law discussed below cites to the old subsection number, 6(e)(3)(C)(i).

10

[...]

Fed. R. Crim. Proc. 6(e)(3)(E)(i) (2005).

Rule 6(e)(3)(E)(i) is a narrow exception to the general rule that records of grand jury proceedings be kept secret. See Fed. R. Crim. Proc. 6(e)(2); see also Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 218 n.9 (1979). To satisfy the exception, parties must demonstrate both that their proposed use of the records is "related fairly directly to some identifiable litigation, pending or anticipated," and that they have some "particularized need" for disclosure. United States v. Baggot, 463 U.S. 476, 480-81 (1983). The Sixth Circuit has emphasized that "general claim[s] such as that . . . disclosure of grand jury transcripts would reveal exculpatory evidence" do establish particularized need. United States v. Short, 671 F.2d 178, 187 (6th Cir. 1982). Rather, claimants must demonstrate that disclosure is necessary to "avoid a possible injustice in another judicial proceeding," that the "need for disclosure is greater than the need for continued secrecy," and that the disclosure request is "structured to cover only material so needed." Douglas Oil, 441 U.S. at 222. Courts enjoy considerable discretion in evaluating disclosure claims. Id. at 223; see also Short at 184. In exercising this discretion, courts are expected to balance claimants' disclsoure needs against the important policy interests underlying grand jury secrecy, which include the promotion of free, frank, and full testimony by preindictment witnesses. Douglas at 219; United States v. Thomas, 597 F.2d 656, 657 (1979).

Petitioner seeks disclosure of the grand jury testimony "preliminary to" his prospective direct appeal and any potential "continued collateral attack" of his criminal conviction. (Doc #205-1 at 2). He expects Agent Mercado's testimony to bolster his claim of "actual innocence," which he predicts will constitute a "significant basis" of any direct or habeas appeal. Id. In

11

essence, Petitioner asserts that the transcripts will expose fundamental inconsistencies in Mercado's testimony before the grand jury and at a February 2005 civil forfeiture proceeding and establish that the government – through Mercado – committed "fraud on the court and perjury" in connection with Petitioner's criminal prosecution. Id at 2-3. The contested testimony involves a truck allegedly used by Petitioner in certain of the drug transactions for which Petitioner was indicted. The truck was ultimately seized by the State of Ohio on the basis of its apparent involvement with drug transactions and proceeds, triggering the forfeiture proceeding. Petitioner reasons that because his criminal indictment "specifically charges" that he used the truck to transport marijuana from Arizona to Ohio, there must be grand jury testimony to substantiate that allegation. Id. at 3. He speculates that Agent Mercado was the government's "major, and perhaps only, grand jury witness," and is therefore the most likely source of any substantiating testimony. Id. Petitioner also notes that Mercado testified at the *forfeiture* proceeding that he had never seen any evidence of marijuana in the truck and had never seen the truck on the road. Id. Petitioner concludes that Mercado's grand jury and civil forfeiture testimony must be inconsistent, and that Mercado must therefore have lied to the grand jury. Id. at 3-4.

　　　To the extent that Petitioner contemplates a specific use for the grand jury testimony in the context of his prospective appeals, he has satisfied his initial burden of demonstrating that the disclosure request is "fairly related" to "pending or anticipated litigation." See, e.g., Baggot at 480 (emphasizing the "actual use to be made of the material" in "some identifiable litigation"). Nevertheless, the Court finds that Petitioner is not entitled to disclosure because he has not shown any "particularized need" for the transcripts in light of the procedural posture of his case.

12

The essence of Petitioner's disclosure argument is that he is in fact innocent and would not have been indicted were it not for due process violations (e.g., government perjury) in the grand jury proceedings. However, Petitioner cannot dispute that on August 18, 2003, he pled guilty to criminal conspiracy to distribute marijuana, as alleged in count one of his indictment. (See Doc #145 at 33; Doc #157 at 1). In general, once a criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea." Tollett v. Henderson, 411 U.S. 258, 257 (1973). Because a voluntary, intelligent, and counseled guilty plea is treated as reliable evidence of factual guilt, a valid plea-taking "renders irrelevant those constitutional violations" "which do not stand in the way of conviction if factual guilt is validly established." Menna v. New York, 423 U.S. 61, 62 n.2 (1975). To circumvent this rule, a defendant must typically "allege and prove serious defects on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act."[5] McMann v. Richardson, 397 U.S. 759, 774 (1970). Petitioner has made no such allegation in his disclosure motion.[6]

In short, even assuming that Petitioner's criminal indictment was in fact tainted by false

---

[5] Courts have suggested a few other constitutional defenses not deemed forfeited by guilty pleas, but none appear relevant here. See, e.g., Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, Criminal Procedure § 2.16(a) (4th ed. 2004), at 1029 (listing speedy trial rights, the right not to be convicted of conduct that cannot constitutionally be criminalized, and the right to be free from selective prosecution in violation of the Equal Protection clause).

[6] Petitioner's Section 2255 habeas motion does include a claim that Petitioner's plea was involuntary. However, as discussed at Part II.A.2 above, the Court declines to reach the merits of this claim because it is unripe.

13

testimony,[7] Petitioner's plea likely precludes him from raising this issue "in connection with" any direct appeal of his conviction. The prospect of a subsequent habeas appeal does not bolster Petitioner's claim for disclosure of the transcripts, in part "because ordinary defects in grand jury proceedings cannot be attacked by habeas corpus." Thomas v. United States, 579 F.2d 656, 658 (8th Cir. 1979). Petitioner has therefore failed to demonstrate that disclosure would help "avoid a possible injustice in another judicial proceeding," Douglas Oil, 441 U.S. at 222, let alone that this avoidance outweighs the important public policy interests behind the presumption of grand jury secrecy. Because Petitioner cannot establish any "particularized need" for the grand jury transcripts, the Court concludes that there is no tenable basis for either ordering their disclosure or undertaking an in-camera review. The Court thus DENIES Petitioner's Motion for Disclosure of Grand Jury Minutes (doc #205).

## III. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Petitioner's Motion Under 28 U.S.C. § 2255 (docs ## 194, 200) for the limited purpose of vacating and reimposing Petitioner's sentence as requested in Petitioner's fifth claim for relief and DISMISSES WITHOUT PREJUDICE Petitioner's first, second, third and fourth claims under 28 U.S.C. § 2255; DENIES AS MOOT Petitioner's Motion to Expedite Ruling (doc #206); and DENIES

---

[7] As a threshold matter, the Court disagrees that Mercado's civil testimony is necessarily inconsistent with the evidence underlying the grand jury indictment. The fact that Mercado did not personally observe marijuana in the truck, or the truck on the road, does not eliminate the possibility that the government had other credible evidence – possibly, but not necessarily, presented through testimony by Mercado – that Petitioner was using (or conspiring to use) the truck to transport marijuana. Even if Petitioner could show that the civil testimony was factually irreconcilable with his criminal indictment, and that perjury therefore occurred, he would presumably still have to establish that the alleged perjury occurred during the grand jury proceeding rather than during the civil proceeding.

14

Petitioner's Motion for Disclosure of Grand Jury Minutes.

    The Court hereby **ORDERS**:

1.    Petitioner Steven Rennick, Sr. to appear before this Court on October 28, 2005 at 2:00

    p.m. so that the Court may vacate the criminal sentence imposed on January 28, 2004 and

    impose a new sentence in accordance with Part II.A of this opinion; and

2.    The Clerk of Court to issue a Writ of Habeas Ad Prosequendum securing Petitioner's

    appearance at the resentencing hearing.

    IT IS SO ORDERED.


                                    _s/Susan J. Dlott_
                                    Susan J. Dlott
                                    United States District Judge

[DE-210 P15 JA-318]

FILED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO    OCT 2 7 2005

WESTERN DIVISION    JAMES N. HILL, Clerk

STEVEN RENNICK, SR.,                    )
                                        )
          Defendant,                    )    Case No.: CR-1-02-157
                                        )
    vs                                  )    Hon. Susan J. Dlott
                                        )
UNITED STATES OF AMERICA,               )    U.S. District Judge
                                        )
          Respondent,                   )
                                        )

## FORMAL OBJECTIONS TO PRE-SENTENCE REPORT

Comes the defendant, Steven M. Rennick, Sr., pro se, and does hereby file his objections to the Pre-Sentence Report and does further state that he requested former counsel William Gallagher to raise these objections prior to his initial sentencing, but counsel failed to raise said objections, therefore the defendant does object as follows:

As a preliminary matter, the defendant avers that he is not an attorney; has no legal or professional training pertaining to the preparation and filing of legal motions or memorandums. The defendant seeks notice of such limitations and prays this court to construe his pleadings liberally in light of the Supreme Court holding in Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652 (1972); Cruz v. Beto, 405 U.S. 319 (1972); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Hill v. U.S., 368 U.S. 424, 430 (1962). The

-1-

[DE-213 P1 JA 319]

allegations and averments in a pro se pleading must be taken as true and construed in favor of the defendant. See Malone v. Colyer, 710 F.2d 258, 260 (6th Cir. 1983).

Further to understand defendant's objections, it is necessary to fully understand the defendant was coerced and manipulated into entering what he was told was a "fictional plea." The defendant now fully understands that under the law there is no such thing as a "fictional plea", but, nevertheless, that is what both of his attorneys, William Gallagher and later Kenneth Lawson, advised the defendant he was entering. For those reasons the defendant entered a false plea to matters he did not commit, with this understanding the defendant formally objects as follows:

1.    The defendant formally objects to each and every reference in the PSR to any drug quantity. As the sentence and such matters as mandatory minimums are driven by quantity, it is the government's burden to prove the actual amount of drugs relevant to this defendant, and to prove such beyond a reasonable doubt. It should be noted that drug quantity was never mentioned during the plea colloquy and, therefore, drug quantity was never admitted to. This objections includes reference to quantity in paragraphs 2, 3, 5, 9, 14, 16, 34, 35, 38, 40, 45, 46 47, and 53.

2.    The defendant objects to all references to his hauling or moving or handling or selling or transporting marijuana as stated in paragraphs 2, 3, 5, 9, 14, 16, 34, 35, 39, 40, 45, 46, 47 and 56.

-2-

[DE-213 P2 JA-320]

3.    The defendant, while objecting to the term of distribution set forth in paragraph 3, does further state that the reference to 50 pounds of marijuana was the only quantity he thought was involved in the entire crime and never knew he could be held accountable for any other amount.

4.    Defendant objects to any references alleging he has ever possessed any funds or assets of any kind having any association with drug trafficking. Further, the defendant can show the source of any and all funds and deposits made to any account, and further can prove by a certified public accountant that all money is appropriately sourced and has no connection with any illegal activity of any kind. The defendant specifically objects to all such references in paragraphs 10, 11, 12, 13, 40, 41, 42, 43, 46, 47, and 56.

5.    Defendant objects to paragraph 18 to the extent that defendant was coerced and manipulated into entering what he believed was a "fictional plea."

6.    Defendant objects to paragraph 19 to the extent he had no knowledge of the statutory maximum or minimum associated with the alleged crime.

7.    Defendant objects to references in paragraph 32 to the extent that neither the defendant nor his wife had any knowledge about anyone storing marijuana on said property.

8.    Defendant object to paragraph 34 in that he never admitted hauling boxes from Arizona to Cincinnati.

-3-

9.    Defendant objects to paragraph 35 to the extent he never hauled drugs from anywhere to anywhere, the Rennick family motor-home was never used to haul drugs of any kind and, finally, Rennick's corporation, S and S Racing, LLC, purchased the semi-tractor to haul race cars, not drugs.

10.    Defendant objects to paragraph 36 in that the semi-tractor was always bought, owned, and controlled by S and S Racing, LLC.  On information and belief, Steve Rennick, Jr., did not make the statements alleged in this paragraph and the government bears the burden to prove such.

11.    Defendant objects to the contents of paragraph 39 in total.

12.    The defendant wishes to direct the court to paragraph 51 in which the defendant admits to driving three trips to Arizona and he admits that two bank deposits were cash (legal and verifi-able cash).  The defendant never mentions drugs or drug traffick-ing because he had no involvement in either.  The defendant's statement was designed to accept responsibility, but not to admit guilt to something he never did, which was buy, sell, transport, or deal in any controlled substance.

13.    Defendant objects to the use of U.S.S.G. 2D1.1(a) (3) (c)(7) in paragraph 53 as such is based upon a quantity exceeding 100 kilograms of marijuana which amount has neither been proven before this court beyond a reasonable doubt nor admitted to by the defendant.  The defendant claims this objection subject to the

-4-

holdings of <u>Blakely v. Washington,</u> 124 S.Ct. 2531 (2004) and
<u>United States v. Booker</u>, 125 S.Ct 738 (2005). Defendant contends
in the absence of proof of any quantity the correct advisory guide-
line would be level 6 pursuant to U.S.S.G. 2D1.1(a)(3)(C)(17).

14. Defendant objects to paragraph 56 to the extent that
since he is actually and factually innocent he would be entitled
to a minimal or mitigating role in that he never hauled drugs and
never handled drug money.

15. Defendant suggests that while the statements presented
in paragraphs 92-94 concerning his mental and emotional health are
essentially true, they do not accurately convey the defendant's
mental condition or abilities. A full understanding of the defen-
dant's mental health should play a major role in the court's un-
derstanding of the defendant and how he is manipulated by those
around him. There should be a thorough examination to determine
if this defendant has the requisite mental capacity to deal with
these allegations and understand the charges against him.

16. The defendant objects to the contents of paragraph 115
to the extent that he was never involved in the theft of his fami-
ly's motor home. The motor home is not located on a farm in
Kentucky, and the defendant has not been charged in any such mat-
ter.

17. The defendant objects to paragraph 116 to the extent
that absent a finding of sufficient quantity the defendant faces
a maximum of five years and a minimum of zero months. The

-5-

defendant further objects to paragraph 117 on similar grounds.

   18.   The defendant objects to paragraph 123 to the extent that absent a finding of sufficient quantity the defendant is eligible for probation.

   The defendant hereby certifies that the above objections represent all of defendant's objections to the Pre-Sentence Report as prepared by the United States Probation Office by order of the District Court.  The defendant understands that any of these objections not resolved prior to defendant's sentencing shall be resolved at the sentencing hearing and further understands the government bears the full burden of proof of all matters stated in the PSR and objected to herein.

   These objections respectfully submitted on this, the _23_ day of October 2005.

                              Respectfully submitted,

                              _Steven Rennick Jr_
                              Steven Rennick, Sr.
                              #04050-032   HCU
                              Federal Medical Center
                              P.O. Box 14500
                              Lexington, KY 40512

-6-

<u>CERTIFICATE OF SERVICE</u>

I, Steven Rennick, Sr., do hereby certify that the original of this document, Formal Objections to Pre-Sentence Report, was filed with the Court Clerk identified below and a true and correct copy was further sent to the other party or parties identified below by depositing same into the prison legal mail box, postage prepaid, on the $\underline{15}$ day of October 2005.
ORiGiNAL HANd Filed.

Respectfully submitted

Steven Rennick, Sr.
#04050-032   HCU
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

Clerk of the Court
U.S. District Court
100 E. 5th Street
Cincinnati, OH 45202

Robert C. Brichler, AUSA
221 E. 4th Street
Suite 400
Cincinnati, OH 45202

FILED
JAMES BONINI
CLERK

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

05 OCT 31  AM 10:46

WEST DIV CINCINNATI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1-02-CR-157 |
| | : | |
| Plaintiff, | : | Judge Dlott |
| | : | |
| v. | : | |
| | : | |
| STEVE RENNICK, SR., | : | **MOTION TO WITHDRAW** |
| | : | **GUILTY PLEA** |
| Defendant. | : | |

Defendant Steve Rennick, Sr. respectfully moves this court to allow him to withdraw his guilty pleas previously enter on August 18, 2003. Defendant Rennick renews his previously filed Motion to Withdraw Plea, filed on February 10, 2004, and incorporates by reference his Motion to Withdraw Plea and attached affidavit from Defendant Rennick. Defendant Rennick also incorporates by reference any previously filed motions, pleading, affidavits or other documents filed in support of his February 10, 2004 motion or in support of his action to challenge his conviction pursuant to 28 U.S.C. 2255.

Specifically, Defendant Rennick submits that he should be permitted to withdraw his Guilty plea due to the fact that the United States breached the terms of its plea Agreement, and because he was denied the effective assistance of counsel when he entered into the plea agreement.

Respectfully Submitted,

_Steve Rennick Sr._

Steve Rennick Sr.
Grant County Detention Center
212 Barnes Road
Williamstown, Kentucky 41097

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Robert C. Brichler, Assistant United States Attorney, fax on this 28th day of October, 2005.

s/W. Kelly Johnson
W. Kelly Johnson

[DE-216 P2 JA 327]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR-1-02-157-3 |
| | : | |
| | : | |
| v. | : | **MOTION TO STRIKE** |
| | : | |
| | : | |
| STEVEN RENNICK, SR. | : | Judge Dlott |

- - - - - - - - - - - - - - - - - - - - -

Now comes the United States Attorney for the Southern
District of Ohio and moves this Court for an Order striking the
"Formal Objections To Pre-Sentence Report" filed pro se on
October 27, 2005.

### Memorandum

The defendant filed a motion to vacate his sentence
alleging, among other things, that his right to a direct appeal
was violated when the Clerk of Court failed to file a notice of
appeal on his behalf when he requested it be done following his
sentencing.

Because of the pervasive authority supporting the
defendant's motion to vacate on this ground, the United States
agreed that his sentence should be vacated so that it could be
reimposed allowing him to take a direct appeal to challenge any
claimed errors in the record at the time of his sentencing.  The
Court granted the defendant's motion to vacate his sentence and
set out in its order the procedure laid out by the Sixth Circuit
in Johnson v. United States, No. 03-3750, 2005WL1606050, at *2
(6th Cir. June 27, 2005).  The vacation of the defendant's

[DE-220 P1 JA-328]

sentence is limited for purpose of reimposing the same sentence so that he may take a direct appeal.[1] See Johnson id. (citing United States v. Phillips, 225 F.3d 1198 (11th Cir. 2000)).

Since the time of the Court's granting the defendant's motion to vacate, numerous pro se filings have been made seeking to reopen and relitigate the sentencing procedures. In addition, a motion to withdraw his plea of guilty has been made. The United States requests this Court order stricken from the record or deny all such filings which attempt to alter the record from which the defendant sought to appeal. The Court's authority according to Johnson, supra, on remand is to resentence the defendant.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Fax: (513) 684-2047
Robert.Brichler @usdoj.gov

---

[1]The United States would agree that the reimposition of the defendant's sentence must take into account the holding in Booker. Thus, because of Booker, the defendant's sentence must be a reasonable sentence within the statutory minimum of 60 months and maximum 40 years.

2

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 14th day of December, 2005, electronically on W. Kelly Johnson, Attorney for Defendant Rennick.

s/Robert C. Brichler
ROBERT C. BRICHLER (0017745)
Assistant United States Attorney

[DE-220 P3 JA-330]

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Steven Rennick, Sr., | : | |
| | : | Case No. CR-1-02-157 |
| Petitioner | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | |
| United States of America, | : | OPINION AND ORDER |
| | : | |
| Respondent | : | |

    This matter is before the Court on Petitioner Steven Rennick, Sr.'s ("Rennick's")

Objection(s) to the Presentence Report (doc. # 213) and Motion to Withdraw Plea of Guilty (doc.

#216), the United States' Motion to Strike both documents (doc. #220), and Rennick's

Opposition to the United States' Motion to Strike (doc. #222). Rennick has also filed a Motion

for Clarification of Status (doc. #219). For the reasons below, the Court **STRIKES** Rennick's

Motion to Withdraw Plea of Guilty (doc. #216) in its entirety and also **STRIKES** all but

paragraph 13 of Rennick's Objection(s) (doc. #213).

## I.    BACKGROUND

### A.    Sentencing Proceedings[1]

    Rennick pleaded guilty to conspiracy to distribute in excess of 100 kilograms of

marijuana on August 18, 2003. (Doc. #103.) In late October 2003, the United States probation

office completed its presentence report on Rennick. (Doc. #129.) On January 28, 2004, this

---

    [1] Most of these facts are already detailed in prior orders. Unfortunately, in light of the above-referenced and largely repetitive motions, the Court is obliged to repeat them here.

1

Court sentenced Rennick to 63 months' imprisonment and four years' supervised release. (Doc. #188 at 14, 16.) In the three months between entry of the presentence report and his sentencing date, Rennick filed motions for both a downward departure and continuance, but not objections to his presentence report. (See generally docs. ##s 143, 144, 147.)

At Rennick's January 28, 2004 sentencing hearing, his counsel asked the clerk of Court to file a notice of appeal on Rennick's behalf. (Doc. #210 at 1-2.) However, neither the Court nor Rennick's counsel filed a notice before the lapse of the statutory notice deadline in early February 2004. (Id. at 2-3.) In late January and February 2004, Rennick filed motions for reconsideration of his sentence (doc. #149) and withdrawal of his guilty plea (doc. #162), both of which the Court denied. (Doc. #168). On May 28, 2004, following three stays of his surrender date, Rennick began serving his 63-month sentence at the Federal Medical Center in Lexington, Kentucky. (Docs. ##s 165, 171, 179, 183.) On October 13, 2005, pursuant to the Sixth Circuit's decision in Johnson v. United States, No. 03-3750, 2005 WL 1506050 (6th Cir. June 27, 2005), and related authorities, the Court granted Rennick's *pro se* Motion Pursuant to 28 U.S.C. § 2255 Specifically as to Vacating and Reimposing Sentence to Allow Direct Appeal to Proceed[2] (doc. #206) and issued a Writ of Habeas Ad Prosequendum securing Rennick's appearance for resentencing on October 28, 2005. (See generally doc. #210.) When Rennick filed the above-referenced Objections on October 27, 2005, one day before the hearing date and shortly before the Court's planned medical leave, the Court was forced to postpone Rennick's sentencing until

---

[2] In December 2004, before filing his § 2255 motion, Rennick filed a motion to reinstate his direct appeal pursuant to Federal Rule of Appellate Procedure 4(b). The Court determined that this motion was untimely, but entered an order inviting Rennick to petition the Court under § 2255, and attaching the requisite forms. (See docs. ##s 192 and 210 at 3).

2

Case 1:02-cr-00157-SJD    Document 227    Filed 01/11/2006    Page 3 of 6

January 23, 2006.  (Docs ##s 213, 215, 226.)

### B.    Current Pleadings

Rennick's Objections challenge, in part, the application of United States Sentencing Guidelines ("U.S.S.G.") Section 2D1.1(c)(7) at paragraph 53 of his presentence report, which establishes his base offense level.  (Doc. #213 at 4-5 ¶ 13)  Rennick argues that the relevant calculation is "based upon a quantity exceeding 100 kilograms of marijuana which amount has neither been proven before this court beyond a reasonable doubt nor admitted to by the defendant," and thus violates United States v. Booker, 125 S. Ct. 738 (2005) and Blakely v. Washington, 124 S. Ct. 2531 (2004).  (Id.)[3]  Rennick further objects to virtually all references to drug quantities, drug distribution, and possession of drug-tainted assets, as well as to certain characterizations of his mental state and involvement in this and prior crimes.  (See generally doc. #213.)  He also contends that he is factually innocent and that he did not understand the terms or implications of his guilty plea, including the drug quantities for which he could be held liable or the associated maximum and minimum sentences.  (Id.)

Rennick's Motion to Withdraw Guilty Plea (doc. #216) states in substance that Rennick "should be permitted to withdraw his Guilty plea due to the fact that the United States breached the terms of its plea agreement, and because he was denied the effective assistance of counsel when he entered into the plea agreement."  (Doc. #216 at 1.)  It incorporates by reference his previously-filed Motion to Withdraw (doc. #162) and all other filings associated with that Motion or his § 2255 Motion.  (Id.)  Rennick's Motion for Clarification (doc. #219) essentially

---

[3] Rennick contends that the appropriate guideline, absent any proof of drug quantity, is U.S.S.G. § 2D 1.1(a)(3)(c)(17).  (Id.)

3

restates—in greater factual depth—the assertions in his pending Objection and Motion to Withdraw

that his guilty plea was involuntary and/or coerced and that the government breached the terms

of its plea agreement. (See doc. #219 at 5-9.)

The United States contends that Rennick's pleadings constitute impermissible attempts to

"reopen and relitigate" settled issues and "alter the record from which [Rennick] sought to

appeal" after his original sentencing, and urges the Court to strike or deny them. (Doc. #220 at

2.)[4]

## II.    ANALYSIS

As the Court's October 2005 Order partially granting Rennick's § 2255 petition makes

clear, the Court vacated Rennick's original sentence and scheduled a resentencing for the express

and narrow purpose of granting Rennick another opportunity to file a timely notice of appeal.

(See doc. #210 at 4-8.) Because Rennick was originally sentenced before the Supreme Court

decided United States v. Booker, 125 S. Ct. 738 (2005) and Blakely v. Washington, 124 S. Ct.

2531 (2004), the Court determined that it must consider any specific issues raised by those

rulings upon resentencing. (See doc. #210 at 4.) However, the Court expressly declined to

reach, and instead dismissed without prejudice, the other substantive claims presented in

Rennick's §2255 petition.[5] The Court reasoned that under the current posture of Rennick's case,

_____

[4] The United States, citing the Sixth Circuit's Johnson decision, contends that the Court's
resentencing authority is limited to "reimposing the same sentence so that [Rennick] may take a
direct appeal." (Id. at 2 n. 2) However, the United States also acknowledges that "the
reimposition of [Rennick's] sentence must take into account the holding in Booker." (Id.)

[5] Rennick had contended that (1) his guilty plea was involuntary; (2) he received
ineffective assistance of counsel in matters other than filing of the notice of appeal; (3) the
United States breached its plea agreement, and (4) the Court erred by not granting Petitioner's
motion for a downward departure. (Id. at 4.)

4

these substantive objections could be properly considered–if at all–only on direct appeal or any habeas proceedings following that direct appeal. (Id. at 8-9).

In light of the above, Rennick's Motion to Withdraw Guilty Plea (doc. #216) is untimely. As a threshold matter, Rennick has already filed, and the Court denied, a Motion to Withdraw Plea arguing–as here–that the United States has breached its plea agreement. (See doc. #168 at 2.) As the Court explained in its prior denial, issued in March 2004, a district court may not set aside a criminal plea once it has imposed a sentence. (Id.) The Court's October 2005 vacation of Rennick's original sentence cannot alter this conclusion, because–as discussed above–the Court's resentencing authority is so circumscribed.

Most of Rennick's Objections (doc. #213) are also untimely. Because paragraph 13 appears to state a Booker claim that Rennick could not have raised (at least not in Booker terms) at his original January 28, 2004 sentencing, the Court must consider it at Rennick's January 23, 2006 resentencing.[6] (See doc. #213 at 4-5 ¶ 13.) But Rennick's remaining Objections appear to concern arguments that could have been raised on or before Rennick's original sentencing date, and that are–in any event–beyond the substantive scope of the resentencing.

## III.  CONCLUSION

---

[6] The Court notes in passing that the factual assertion underlying this Booker claim is unsupported by the present record. Rennick contends that no "quantity exceeding 100 kilograms of marijuana" was "never proven . . . beyond a reasonable doubt nor admitted to by the defendant." (Doc. #213 at 4 ¶ 13.) At Rennick's August 18, 2003 plea hearing, counsel for the United States stated that Rennick had entered a guilty plea to "count one of the indictment charging him with conspiracy to distribute in excess of 100 kilograms of marijuana," and that "[b]y signing the plea agreement, [Rennick] agrees and *admits to* said involvement." (Sentencing transcript, doc. #145, at 24 (emphasis added).) When asked whether the United States' characterization was consistent with his own understanding of the plea agreement, Rennick responded "Yes, Your Honor." (Id. at 27-28.) The 100-plus kilogram quantity also appears in the text of the agreement, signed by Rennick on August 18, 2003. (See Doc. #104.)

5

For the reasons above, the Court hereby **STRIKES** all but paragraph 13 of Petitioner's

Objection(s) (doc. #213) and also **STRIKES** Petitioner's Motion to Withdraw Plea of Guilty

(doc. #216) in its entirety.

    IT IS SO ORDERED.

                         _s/Susan J. Dlott_
                         Susan J. Dlott
                         United States District Judge

6

[DE-227 P6 JA-336]

Case 1:02-cr-00157-SJD   Document 229   Filed 01/23/2006   Page 1 of 5

AO 245B (Rev. 06/05) Sheet 1 - Judgment in a Criminal Case

# United States District Court
## Southern District of Ohio at Cincinnati

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** | |
|---|---|---|
| v. | | |
| **STEVE RENNICK, SR.** | Case Number: | **1:02cr157(3)-SJD** |
| | USM Number: | 04050-032 |
| | Kelly Johnson | |
| | Defendant's Attorney | |

## THE DEFENDANT:

[✓]  pleaded guilty to count(s): 1 of the Indictment .
[ ]  pleaded nolo contendere to counts(s) ___ which was accepted by the court.
[ ]  was found guilty on count(s) ___ after a plea of not guilty.

The defendant is adjudicated guilty of these offense(s):

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. 846 | Conspiracy to distribute in excess of 100 kilograms of Marijuana | 10/2002 | 1 |

The defendant is sentenced as provided in pages 2 through  5  of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]  The defendant has been found not guilty on counts(s)  ___.

[✓]  Count(s) 2-8 of the Indictment  (is)(are) dismissed on the motion of the United States.

IT IS ORDERED that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and the United States Attorney of material changes in the defendant's economic circumstances.

1/23/06
Date of Imposition of Judgment

_Signature of Judicial Officer_

**SUSAN J. DLOTT**, United States District Judge
Name & Title of Judicial Officer

January 23, 2006
Date

Case 1:02-cr-00~~~-SJD     Document 229     Filed 01/23/2006     Page 2 of 5

AO 245B (Rev. 08/05) Sheet 2 - Imprisonment

| CASE NUMBER: | 1:02cr157(3)-SJD | Judgment - Page 2 of 5 |
|---|---|---|
| DEFENDANT: | STEVE RENNICK, SR. | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **63 months** .

The defendant shall participate in the Bureau of Prison's Inmate Financial Responsibility Program. The defendant shall participate in a mental health evaluation and/or mental health counseling at the direction of the Bureau of Prisons.

[ ]    The court makes the following recommendations to the Bureau of Prisons:


[✔]    The defendant is remanded to the custody of the United States Marshal.


[ ]    The defendant shall surrender to the United States Marshal for this district.
       [ ] at ____ on ____.
       [ ] as notified by the United States Marshal.


[ ]    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
       [ ] before 2:00 p.m. on _____.
       [ ] as notified by the United States Marshal but no sooner than
       [ ] as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

    Defendant delivered on_____ to _____

at _____ , with a certified copy of this judgment.


                        _____
                                  UNITED STATES MARSHAL

                 By  _____
                                    Deputy U.S. Marshal

Case 1:02-cr-00___-SJD    Document 229    Filed 01/2__2006    Page 3 of 5

AO 245B (Rev. 06/05) Sheet 3 - Supervised Release

**CASE NUMBER:**    1:02cr157(3)-SJD                                         Judgment - Page 3 of 5
**DEFENDANT:**    STEVE RENNICK, SR.

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  4 years .

The defendant shall participate in a mental health treatment program at the direction of the probation officer. The defendant shall be prohibited from incurring any new credit or establishing any additional lines of credit without approval of the probation officer. The defendant shall provide the probation officer access to all requested financial information.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the Court.

[ ]     The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

[✔]     The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[ ]     The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

[ ]     The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

[ ]     The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)   the defendant shall support his or her dependants and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

[DE-229 P3 JA-339]

AO 245B (Rev. 08/05) Sheet 5 - Criminal Monetary Penalties

| CASE NUMBER: | 1:02cr157(3)-SJD | Judgment - Page 4 of 5 |
|---|---|---|
| DEFENDANT: | STEVE RENNICK, SR. | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $ 100 | $ 10,000 | 0 |

[ ] The determination of restitution is deferred until __. An amended Judgment in a Criminal Case (AO 245C) will be entered after such determination.

[ ] The defendant must make restitution (including community restitution) to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment unless specified otherwise in the priority order of percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | *Total Loss | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TOTALS: | $ ____ | $ ____ | |

[ ] Restitution amount ordered pursuant to plea agreement  $ ____

[✔] The defendant must pay interest on restitution and a fine of more than $2500, unless the restitution or fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. §3612(g).

[ ] The court determined that the defendant does not have the ability to pay interest and it is ordered that:

[ ] The interest requirement is waived for the    [] fine    [] restitution.

[ ] The interest requirement for the    [] fine    [] restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

Case 1:02-cr-00___-SJD    Document 229    Filed 01/2__/2006    Page 5 of 5

AO 245B (Rev. 06/05) Sheet 6 - Criminal Monetary Penalties

**CASE NUMBER:**    1:02cr157(3)-SJD    Judgment - Page 5 of 5
**DEFENDANT:**    STEVE RENNICK, SR.

## *SCHEDULE OF PAYMENTS*

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    [ ]    Lump sum payment of $ due immediately, balance due

    [ ] not later than   or
    [ ] in accordance with    [ ] C,    [ ] D,    [ ] E, or    [ ] F below; or

B    [✔]    Payment to begin immediately (may be combined with    [ ] C    [ ] D, or    [✔] F below); or

C    [ ]    Payment in equal installments of $ over a period of , to commence  days after the date of this judgment; or

D    [ ]    Payment in equal installments of $ over a period of , to commence  days after release from imprisonment to a term of supervision; or

E    [ ]    Payment during the term of supervised release will commence within   (e.g., 30 or 60 days) after release from imprisonment. The Court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    [✔]    Special instructions regarding the payment of criminal monetary penalties:

    [ ]    If the defendant, while incarcerated, is working in a non-UNICOR or grade 5 UNICOR job, the defendant shall pay $25.00 per quarter toward defendant's monetary obligation. If working in a grade 1-4 UNICOR job, defendant shall pay 50% of defendant's monthly pay toward defendant's monetary obligation. Any change in this schedule shall be made only by order of this Court.

    [✔]    After the defendant is release from imprisonment, and within 30 days of the commencement of the term of supervised release, the probation officer shall recommend a revised payment schedule to the Court to satisfy any unpaid balance of the monetary. The Court will enter an order establishing a schedule of payments.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[ ]    Joint and Several (Defendant and Co-Defendant names and Case Numbers, Total Amount, Joint and Several Amount and corresponding payee, if appropriate.);

[ ]    The defendant shall pay the cost of prosecution.
[ ]    The defendant shall pay the following court cost(s):

[ ]    The defendant shall forfeit the defendant's interest in the following property to the United States:
    without the permission of the court; and

Payments shall be applied in the following order: (1) assessment; (2) restitution principal; (3) restitution interest; (4) fine principal; (5) fine interest; (6) community restitution; (7) penalties; and (8) costs, including cost of prosecution and court costs.

[DE-229 P5 JA-341]

FILED
JAMES BONINI
CLERK

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

06 JAN 23 AM 11: 22

STEVE RENNICK, SR.,

      Movant/Defendant,

    vs

UNITED STATES OF AMERICA,

          Respondent,

)
)
)
)
)
)
)
)
)
)

Case No. 1:02-CR-157SJD

      1:05-CV-0050

Hon. Susan J. Dlott

U.S. District Judge

## NOTICE OF APPEAL

Notice is hereby given that the Movant, Steve Rennick, Sr., pro se, hereby appeals to the United States Court of Appeals for the Sixth Circuit from the final judgment and commitment order entered in the re-sentencing of the defendant by the Honorable Susan J. Dlott, United States District Judge on the *23rd* day of *JANUARY* 2006. This will be a direct appeal of the conviction and sentence.

Dated this *23rd* day of *JANUARY* 2006.

Respectfully submitted,

Steve Rennick, Sr.
#04050-032   HCU
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

## CERTIFICATE OF SERVICE

I, Steve Rennick, Sr., do hereby certify that the original of this document, Notice of Appeal, was filed with the Court Clerk identified below by hand delivery on the *13th* day of *January* 2006

Clerk of the Court
U.S. District Court
100 East 5th Street
Cincinnati, OH 45202

Steve Rennick, Sr.

1

1                 UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF OHIO

3                   WESTERN DIVISION
                       - - -

4

   UNITED STATES OF AMERICA,   :   CRIMINAL ACTION 1:02cr157

5                     :

           Plaintiff,     :   Cincinnati, Ohio

6                     :   Monday, January 23, 2006

7      -vs-             :

8   STEVEN RENNICK, SR.,      :   Sentencing Hearing
                     :

          Defendant.     :   10:25 a.m.

9

                      - - -

10

11              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE

12                     - - -

13

14   For the Plaintiff:   Robert C. Brichler, Esq.
                  Asst. U.S. Attorney

15                  Atrium II, Suite 400
                  221 East Fourth Street

16                  Cincinnati, Ohio  45202

17   For the Defendant:   W. Kelly Johnson, Esq.
                  Assistant Federal Public Defender

18                  CBLD Building
                  Seventh Street

19                  Cincinnati, Ohio  45202

20

21

22

23
   Courtroom Deputy:  Bill Miller

24   Court Reporter:  Betty Schwab

25

2

```
 1                     PROCEEDINGS
 2             THE COURTROOM DEPUTY:  Your Honor, the next case
 3    before you is United States of America versus Steven
 4    Rennick, Sr., case number 1:02-CR-157-3.
 5             Would Defendant and counsel please step to the
 6    podium?
 7             THE COURT:  Good morning to everyone.
 8    Mr. Brichler, why don't we start with you?  Would you
 9    please enter your appearance for the record?
10             MR. BRICHLER:  Yes, Your Honor.  Robert Brichler
11    for the United States.
12             MR. JOHNSON:  Kelly Johnson, Assistant Federal
13    Public Defender on behalf of Mr. Rennick.
14             THE COURT:  And are you Steven Rennick, Sr.?
15             THE DEFENDANT:  Yes, ma'am.
16             THE COURT:  And are you represented in this
17    proceeding by Kelly Johnson, an attorney who is present
18    here in court with you today?
19             THE DEFENDANT:  No, ma'am.
20             THE COURT:  Are you represented in this
21    proceeding, at this hearing?
22             THE DEFENDANT:  No, ma'am.  I talked to
23    Mr. Johnson the other day and told him I really didn't want
24    him to represent me.
25             THE COURT:  All right.  Let me ask you a few
```

PZ JA-345

1   questions then, Mr. Rennick.  Are you having difficulty

2   hearing me?

3                  THE DEFENDANT:  No, ma'am.

4                  THE COURT:  Okay.  Have you ever studied law?

5                  THE DEFENDANT:  No, ma'am.

6                  THE COURT:  Are you familiar with the Federal

7   Rules of Evidence?

8                  THE DEFENDANT:  No, ma'am.

9                  THE COURT:  Are you familiar with the Federal

10  Rules of Criminal Procedure?

11                 THE DEFENDANT:  No, ma'am.

12                 THE COURT:  Do you understand that, if you

13  represent yourself, you're on your own, that I cannot tell

14  you or even advise you how you should represent yourself in

15  this sentencing?

16                 THE DEFENDANT:  Yes, ma'am.  I thought this was

17  just a resentencing where --

18                 THE COURT:  It's a resentencing, Mr. Rennick,

19  where, because of a decision by the United States Supreme

20  Court, the Guidelines, instead of being mandatory for

21  federal judges to follow, becomes advisory.  I'm not bound

22  by those Guidelines, and there are six other factors under

23  the law that I need to consider that I didn't last time.

24  That's the difference.  There is a difference.  That's the

25  difference between the last sentencing and this sentencing.

4

1    So there is a purpose for the resentencing.  It's as a

2    result of the Supreme Court decision.

3         I want to advise you that, in my opinion, a

4    trained lawyer like Mr. Johnson would represent you far

5    better than you can represent yourself.  I think it's

6    unwise of you to try to represent yourself.  You're not

7    familiar enough with the law, with court procedure or with

8    the rules of evidence.  I strongly urge you not to try to

9    represent yourself.

10        Now, in light of all the difficulties of

11   representing yourself, do you still want to represent

12   yourself and to give up your right to be represented by a

13   lawyer?

14        THE DEFENDANT:  You talked me into letting him

15   represent me.

16        THE COURT:  All right.  Mr. Johnson -- then you

17   do wish Mr. Johnson to represent you at this hearing?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  All right.  Mr. Johnson, have you had

20   adequate time to confer with your client?

21        MR. JOHNSON:  Your Honor, I've tried to meet with

22   Mr. Rennick twice since he was transferred here from Grant

23   County, Kentucky.  Both times we had a very short

24   conversation which ended with him indicating he didn't want

25   me to represent him, that he never wanted me to represent

P4 JA 347

5

1    him.  So I have had some time to prepare for this hearing,

2    but, based upon my last two contacts with him, I did not

3    have full opportunity to develop all of the issues that I

4    might develop for a sentencing hearing.

5            THE COURT:  Well, what do you want?  Do you want

6    to discuss this with Mr. Rennick?  You want to take a

7    five-minute break and discuss it with him and see what you

8    want to do?

9            MR. JOHNSON:  That's fine.  I just wanted to make

10   the record clear that that places me at a considerable

11   disadvantage.

12           THE COURT:  I understand that, and, if you need a

13   continuance, the Court will grant one.

14           MR. JOHNSON:  Thank you, Your Honor.

15           (Recess at 10:30 a.m.)

16                    AFTER RECESS

17           THE COURT:  Mr. Johnson, what do you want to do?

18           MR. JOHNSON:  Your Honor, I have discussed this

19   matter with Mr. Rennick in the time that you have provided.

20   I have indicated to Mr. Rennick that, if we had had more

21   communication earlier, we might have had more information

22   to present to the Court at this time.  Mr. Rennick has

23   indicated to me that, although he understands that a

24   continuance is very likely available to him, he wishes to

25   proceed today with the sentencing hearing and resolution of

PS JA 348

6

1    this matter so that he can pursue the appeal that he has

2    sought in this matter.

3          And, Judge, I just want to place it on the record

4    that the options were explained to Mr. Rennick.  He

5    understands that he has the option of a continuance and

6    more time to prepare, and he chose not to pursue that

7    option.

8          THE COURT:  All right.  Thank you, Mr. Johnson.

9          Is that correct as stated by Mr. Johnson,

10   Mr. Rennick?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  All right.  On August 13, 2003, the

13   defendant pleaded guilty to conspiracy to distribute in

14   excess of 100 kilograms of marijuana.  At that time, the

15   matter was referred to the United States Probation

16   Department for a presentence report that was prepared on

17   October 24, 2003.

18         The Court has reviewed the presentence report and

19   has also received and reviewed the following documents:

20   Letters from the defendant dated December 2, 2003; the

21   defendant's motion for downward departure; the defendant's

22   objections to the original presentence report received

23   October 27, 2005; the defendant's motion to withdraw his

24   plea of guilty received October 13, 2005; the government's

25   motion to strike the defendant's objections; and motion to

PG JA 349

7

```
 1   withdraw the plea of guilty; letter from the defendant's
 2   sister Joanne Childress, an attached transcript excerpt
 3   that was received January 17, 2006; letter from Wesley Haun
 4   of CND Drive-Through dated October 26, 2005; letter from
 5   the defendant's daughter-in-law, Nancy Rennick, dated
 6   October 26, 2005; letter from Sam Manelly dated October 26,
 7   2005; and letter from Bret Manelly dated October 26, 2005.
 8            The Court previously sentenced this defendant on
 9   January 28, 2004.  On October 13, 2005, this Court granted
10   in part and denied in part the defendant's motion under 28
11   United States Code Section 2255.  The Court's October 13,
12   2005 order provided for the defendant to return to this
13   Court for resentencing pursuant to the Sixth Circuit's
14   Guidelines in the case of Johnson versus United States, a
15   Sixth Circuit case decided June 27, 2005.  This order also
16   provided for the consideration on resentencing of any new
17   issues raised by the Supreme Court's decision in United
18   States versus Booker.
19            On January 13, 2006, this Court issued an order
20   striking all but paragraph 13 of the defendant's objections
21   and the defendant's motion to withdraw his guilty plea as
22   beyond the scope of this Court's resentencing authority.
23            Let me ask counsel:  Have you received a copy of
24   all of the aforementioned documents, Mr. Brichler?
25            MR. BRICHLER:  Yes, Your Honor, we have.
```

P7 JA 350

8

1              THE COURT:  Mr. Johnson?

2              MR. JOHNSON:  Yes, Your Honor.

3              THE COURT:  And, Mr. Rennick?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  All right.  And have you had an

6  opportunity to discuss them with Mr. Johnson?

7              THE DEFENDANT:  No.  He went over them a little

8  bit with me the other day, yes, ma'am.

9              THE COURT:  All right.  Are you satisfied that

10  you discussed them as much as you need to?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  All right.  Then let me go into the

13  factual findings for sentencing.  The defendant has put

14  forth an objection to the presentence report in this case

15  concerning paragraph 53.  The defendant has also raised

16  other objections, but this Court in it's January 13, 2006

17  order struck those other objections as beyond the scope of

18  this resentencing proceeding.

19             I'm going to ask counsel to address the

20  defendant's objection momentarily.  First, however, I want

21  to address the other factual findings for sentencing.

22  Before the Court accepts the presentence report as part of

23  the sentencing facts in this case and proceeds to address

24  any additional sentencing facts the parties wish to

25  present, I want to advise you about a relatively recent

P8 JA 351

1   change in the law regarding sentencing, and this is what I

2   spoke with you about before, Mr. Rennick.

3          Under the Sentencing Reform Act of 1984, the

4   United States Sentencing Commission had issued Guidelines

5   that federal judges were required to follow in determining

6   a criminal case, but last year on January 12, 2005, in a

7   case called United States versus Booker the United States

8   Supreme Court ruled that it was unconstitutional for

9   federal judges to be required to follow the Guidelines in

10  sentencing.  The Supreme Court held, however, that it was

11  constitutional for federal judges to be required to

12  consider the Guidelines as one factor in sentencing.

13         Thus, this Court will still consider the factors

14  discussed in the Guidelines, along with other factors such

15  as those contained in 18 United States Code Section 3553(a)

16  in arriving at a sentence.  Now, however, the Court has the

17  authority to impose a sentence that is more severe or less

18  severe than the sentence suggested by the Guidelines.  The

19  actual sentence imposed will be entirely at the discretion

20  of Court, limited by the minimum and maximum penalties

21  provided by the United States Code for the offense of

22  conviction and the standard of reasonableness.

23         The Court is not bound by any stipulation of

24  facts between the defendant and the government, and the

25  Court may, with the aid of the presentence report,

10

1    determine the facts relevant to sentencing.

2            Let me ask counsel:  Are any of the facts

3    reported in the presentence report disputed by the

4    defendant or the government?  Mr. Johnson?

5            MR. JOHNSON:  Your Honor, Mr. Rennick has some

6    facts which he, I believe, disputes in the presentence

7    investigation report.  It's my understanding that you

8    struck most of his or almost all of his objections in this

9    matter.

10           THE COURT:  That's correct, except for the

11   objection to paragraph 53, which 53 deals with the base

12   offense level.  And Mr. Rennick's objection to that, which

13   the Court will consider in a few minutes, is on the amount.

14           Let me find the specific objection here.

15           Here we have it.  The defendant's objection to

16   paragraph 53 is that the defendant objects to being held

17   accountable for conspiracy to distribute in excess of 100

18   kilograms of marijuana on the ground that this amount has

19   neither been proven before this Court beyond a reasonable

20   doubt nor admitted to by the defendant, and thus violates

21   United States v. Booker.

22           The other objections the Court has already ruled

23   on in the written order, and the Court stands by its

24   written order as to that one.

25           Are there any -- back to I guess my original

P\0  JA 353]

11

1    question:  Are there any other facts reported in the

2    presentence report that are disputed by the defendant?

3              MR. JOHNSON:  Your Honor, other than the amount,

4    no.

5              THE COURT:  All right.  Mr. Brichler, any of the

6    facts reported in the presentence report disputed by the

7    government?

8              MR. BRICHLER:  No, Your Honor.

9              MR. JOHNSON:  Your Honor --

10             THE DEFENDANT:  I had never seen my PSI until I

11   got to Lexington.  I never had a look at it or anything.

12   That's why the objection's in there about the camper.  And

13   there is a plea agreement in there that I have never even

14   signed on the motor home.  The motor home, there is 20

15   witnesses that that motor home was there when I left for

16   Jamaica.

17             THE COURT:  Okay.  I don't know anything about

18   the motor home, other than I recall it's alleged that I

19   think one or two trips were made to Arizona in the motor

20   home, if that's what you're referring to.

21             With regard to the PSI, I'm certain I would have

22   asked you at the first sentencing whether you'd had an

23   opportunity to review it.  That's the first question I

24   always ask.

25             THE DEFENDANT:  Mr. Gallagher told me I had to

1    say that I had seen it.  I had never seen it, Your Honor.

2    I would have never let it go with the camper stuff in

3    there.  There was no way.

4          THE COURT:  What is in the presentence report

5    about the camper that you're disputing?

6          MR. JOHNSON:  Your Honor, if we can have a

7    moment?

8          THE COURT:  Sure.

9          (Discussion between Mr. Johnson and the

10   defendant.)

11         MR. JOHNSON:  Your Honor, Mr. Rennick has

12   identified paragraph 35 as a factual dispute that he

13   asserts about the case.  He's indicated, I believe in some

14   of his prior filings and pleadings, that he was not

15   involved with the camper.  I don't believe it's going to

16   actually be case dispositive on this matter, because,

17   unfortunately, the advisory guidelines are going to give us

18   a range of 60 to 63 months.  And I think that there is

19   enough other marijuana alleged in the presentence

20   investigation report or discussion in the presentence

21   report that will get us over the weight that they need to

22   get to the statutory mandatory minimum of five years.

23         THE COURT:  Okay.  Mr. Brichler, anything you

24   wish to say in that regard?

25         MR. BRICHLER:  Well, Your Honor, I -- again, this

1   is an area that the Court has already indicated is not

2   subject to this rehearing.  I happen to have a copy of the

3   transcript of the sentencing, Your Honor, and you asked

4   Mr. Rennick:  Have you received a copy of the documents?

5   Yes, Your Honor.  Have you had an opportunity to review

6   them with Mr. Gallagher?  Yes, Your Honor.

7           Mr. Gallagher is too good of a lawyer, Your

8   Honor, to have not discussed this.  And I would object to

9   any changes being made in any of the factual findings that

10  the Court has already made that are the subject of the

11  appeal to be coming.

12          THE COURT:  Anything you wish to say further,

13  Mr. Johnson?

14          MR. JOHNSON:  Your Honor, you have already ruled

15  that, other than paragraph 53, you're not going to deal

16  with any objections.  So at this point in time, I believe

17  Mr. Brichler is probably correct in and consistent with

18  your prior rulings.

19          THE COURT:  Thank you.  I agree with all of you.

20  I think so, too.

21          There being then no -- let me ask you if you have

22  any additional sentencing facts with regard to Booker.

23          MR. JOHNSON:  No, Your Honor.

24          THE COURT:  Okay.  Then there being no objections

25  to the factual statements contained in the presentence

1   report, the Court adopts those statements as its finding of

2   fact, other than the objection to paragraph 53.

3           The defendant has entered a valid plea to count

4   one of the indictment.  Accordingly, the defendant is

5   adjudged guilty in case number 1:02-CR-157-(3)-SJD of

6   conspiracy to distribute in excess of 100 kilograms of

7   marijuana.

8           Pursuant to 18 United States Code Section 3553(a)

9   and (c), the Court makes the following findings of relevant

10  fact significant to the imposition of sentence.  The

11  defendant is guilty of violating 21 USC Section 846(a) and

12  841(a)(1) and (b)(1)(B) which is a Class D felony which

13  subjects the defendant to a maximum of 40 years

14  imprisonment with a mandatory minimum of five years

15  imprisonment, a two million dollar fine, a period of

16  supervised release of at least four years, and a $100

17  special assessment.

18          Now let me deal with the objection.  The

19  defendant has raised one objection to the presentence

20  report that the Court has determined it may consider in

21  this resentencing proceeding.  The defendant objects to

22  being held accountable for conspiracy to distribute in

23  excess of 100 kilograms of marijuana on the grounds that

24  that amount has neither been proven before this Court

25  beyond a reasonable doubt nor admitted to by the defendant

```
 1   and thus violates the Supreme Court's ruling in the United
 2   States versus Booker.
 3           Are there any -- I think we have established
 4   there are no other objections; is that correct?
 5           MR. JOHNSON:  There are no objections outside the
 6   scope of your order, Your Honor.
 7           THE COURT:  All right.  Anything you wish to say
 8   with regard to the objection to paragraph 53?
 9           MR. JOHNSON:  Your Honor, I think that the Booker
10   case has pretty much resolved that issue.  If the Court
11   were going to operate under a mandatory type of guideline
12   system, the government would have to prove the amount
13   beyond a reasonable doubt.  But, because the Court is now
14   operating under an advisory issue which has been
15   established by the Booker and Fan-Fan decisions, that
16   standard of proof beyond a reasonable doubt as to the
17   weight is not required.
18           THE COURT:  Okay.  Mr. Brichler, anything you
19   wish to add to that?
20           MR. BRICHLER:  I would agree with counsel's
21   assertions with the additional comment that, even with the
22   Booker case, I believe the status of the record complies
23   with Booker inasmuch as the defendant admitted the weight
24   in the written plea agreement.  It was read into the
25   record.  The statement of facts was read, and he admitted
```

1    in open court under oath.  That was a judicial admission

2    which complies with Booker.

3            So, in either event, I believe that Booker has

4    been complied with, and the Court can proceed to sentencing

5    at this time.

6            THE COURT:  Once again, I think counsel are

7    correct in all their observations.

8            The Court will just point out that, at the

9    defendant's August 18, 2003 plea hearing, counsel for the

10   United States stated that the defendant had entered a

11   guilty plea to count one of the indictment charging him

12   with conspiracy to distribute in excess of 100 kilograms of

13   marijuana and that, by signing the plea agreement, the

14   defendant agrees and admits to said involvement.

15           The transcript of the sentencing hearing

16   indicates that the Court asked the defendant whether the

17   United States' description was consistent with the

18   defendant's own understanding of the plea agreement, and

19   the defendant responded, "Yes, Your Honor."

20           The challenged quantity of in excess of 100

21   kilograms of marijuana also appears in the text of the

22   defendant's plea agreement, which the defendant signed

23   August 18, 2003.  Because the record clearly indicates that

24   the defendant previously admitted to the quantity he now

25   challenges, the defendant's objection to paragraph 53 of

1    the presentence report is overruled.

2         Let me go over with you what the suggested

3    Federal Sentencing Guidelines are.  The defendant pled

4    guilty to count one of an indictment charging him with

5    conspiracy to distribute in excess of 100 kilograms of

6    marijuana in violation of Title 21 United States Code

7    Sections 846 and 841(a)(1) and (b)(1)(B).

8         In accordance with the provisions of 18 USC

9    Section 3553, the Court places on the record the following

10   statement of reasons.  The Guideline for the offense of

11   conspiracy to distribute in excess of 100 kilograms of

12   marijuana is found at Sentencing Guideline Section 2F1.1A.

13   According to that section, the defendant's base offense

14   level is 26 because the defendant distributed at least 100

15   kilograms but less than 400 kilograms of marijuana.

16        The offense level is decreased by three levels

17   pursuant to 3E1.1A and B because the defendant accepted

18   responsibility for his criminal conduct and entered a

19   timely plea of guilty.

20        The total offense level is therefore 23.

21        The Court finds the defendant's criminal history

22   category places him in category II.  Based on a total

23   offense level of 23 and a criminal history category of II,

24   the Guideline imprisonment range is 60 to 63 months.  The

25   Guideline term for a period of supervised release is at

1    least four years pursuant to Sentencing Guidelines Section

2    5D1.2B.  Pursuant to Sentencing Guideline Section 5B1.1 and

3    5C1.1, the Guidelines do not authorize the sentence of

4    probation.  The Guideline range for a fine is from $10,000

5    to two million dollars.  There is a $100 special assessment

6    which is mandatory.

7              In addition to the Sentencing Guidelines, the

8    Court has considered each of the factors listed in 18

9    United States Code Section 3553(a), and let me go over some

10   of those.  Under 18 USC Section 3553(a)(1), which says that

11   the Court should consider the nature and circumstances of

12   the offense and the history and characteristics of the

13   defendant, with regard to the history and characteristics

14   of the defendant, this defendant had three previous charges

15   for receiving stolen property and another charge for

16   interstate transportation of a stolen motor vehicle.

17             With regard to the nature and circumstances of

18   the offense, the defendant made at least three trips to

19   Arizona to transport marijuana, and this was stored at his

20   wife's warehouse.

21             With regard to 18 USC Section 3553(a)(2), the

22   need for the sentence imposed to reflect the seriousness of

23   the offense, to promote respect for the law and to provide

24   just punishment for the offense and to afford adequate

25   deterrence to criminal conduct, the trips to Arizona, along

1    with a previous history of felony charges for receiving

2    stolen property and interstate transportation of a stolen

3    motor vehicle make the Court feel that it needs to promote

4    respect for the law and to provide just punishment for the

5    offense and also to protect the public from further crimes.

6            In addition to that, from June 24, 2002, until

7    October 2, 2002, Mr. Rennick, Sr. either personally

8    deposited or caused to be deposited $154,000 in drug

9    proceeds into the accounts of Earth Management Trucking

10   Inc. and S and S Racing LLC.  Additionally, he used these

11   funds to purchase additional marijuana, a residence and a

12   tractor.  He made three trips to Arizona, during which he

13   picked up 800 pounds of marijuana and brought it back to

14   the Southern District of Ohio where he distributed it.

15           For Sentencing Guideline purposes, 800 pounds of

16   marijuana equals 362 kilograms of marijuana.  That's at the

17   high end of the drug quantity table that was used to

18   calculate Mr. Rennick's base offense level.

19           Furthermore, the instant offense represents

20   Mr. Rennick's fifth felony conviction and his third federal

21   felony conviction.

22           Those are the considerations that the Court has

23   made under 3553(a) in addition to the Sentencing

24   Guidelines.

25           Do the parties have any question about the

1   statutory provisions applicable to the imposition of

2   punishment in this case or the suggested Sentencing

3   Guidelines?  Mr. Johnson?

4           MR. JOHNSON:  No, Your Honor.

5           THE COURT:  Mr. Brichler?

6           MR. BRICHLER:  No, Your Honor.

7           THE COURT:  All right.  Then we will now proceed

8   to the sentencing, and at this time the Court will

9   entertain anything the parties wish to say in mitigation or

10   aggravation of sentence.

11           Mr. Johnson.

12           MR. JOHNSON:  Yes, Your Honor.  And I just want

13   to make it clear that Mr. Rennick does have something that

14   he wants to read on his own behalf.

15           THE COURT:  That's fine.

16           MR. JOHNSON:  And I'm sure he has some comments

17   he would like to make to the Court.

18           Your Honor, this is a rather unusual case because

19   we're really here, for lack of a better term, because of a

20   clerical error.  As the Court remembers, Mr. Rennick

21   requested that a notice of appeal be filed on his behalf.

22   For whatever reason, it wasn't filed in his right to appeal

23   and to challenge some collateral issues was not preserved.

24           As the Court knows, the mandatory minimum

25   sentence is 60 months.  The sentence that the Court imposed

```
 1   on him the last time would be 63 months and therefore a
 2   range of 60 to 63.  I think it would be inappropriate to
 3   sentence him to anything other than between that 60 and 63
 4   month range, because of the fact that we are back here
 5   because of error not caused by him.
 6            Your Honor, I would ask the Court to consider the
 7   bottom end of the Guideline range, which is 60 months.  And
 8   there is a number of reasons for that.  One is because of
 9   the problems that Mr. Rennick has experienced and the delay
10   it will have on him actually getting to appeal his case,
11   which I know he very strongly wants to do.
12            And, secondly, I wanted to indicate he has a very
13   strong family unit.  His sister and other family members
14   are in the back of the courtroom.  They were here at the
15   last hearing.  They're here to show their support for him.
16   And I would ask the Court to consider returning him to his
17   family as quickly as possible.  Therefore, the 60-month
18   range is what we would ask the Court to consider.
19            THE COURT:  Thank you, Mr. Johnson.
20            Mr. Rennick, anything you wish to say, sir?
21            THE DEFENDANT:  Yes, ma'am.  Could I have a drink
22   of water, please?
23            THE COURT:  Oh, sure.  Can you get it with the
24   handcuffs?
25            THE DEFENDANT:  Thank you.  Excuse me, Your
```

1   Honor.

2           THE COURT:  Take your time.

3           THE DEFENDANT:  I have a letter I would like to

4   read to you.

5           THE COURT:  All right.

6           THE DEFENDANT:  I may get out of -- because with

7   my PDSD I have a tendency to roam a little bit.

8           THE COURT:  Okay.  Take you're time.

9           THE DEFENDANT:  Your Honor, I need to say a few

10  things.  I apologize for all of the pro se filings while

11  having an attorney, but the truth is I have gotten this

12  far, and that there is more than three other prominent

13  attorneys have ever done.  I filed objections to the PSI.

14  Mr. Johnson told me to make a list of objections.  And I

15  filed it.  And when I came back I -- we didn't get to go in

16  front of you, so I went ahead and filed them on my own.

17          I had no thought of filing the motion to withdraw

18  my plea.  Again, Mr. Johnson had brought that to the jail

19  and, you know, discussed that with me.

20          I asked Mr. Johnson to file my bond motion after

21  we were able to file the motion, the notice of appeal, but

22  he filed it before the hearing.  I don't have any qualms

23  with Mr. Johnson, but I told him at beginning I had to be a

24  part of this or it wouldn't work.

25          I want you to know that I am innocent, and I have

1    found evidence to support it.  The original complaint in

2    this case, before the federal government became involved in

3    it, was with the state, that the state narcotics unit

4    recovered 20,000 grams or 20 kilos, and I was charged with

5    over 100 kilograms.  This is but one of the many things

6    that will show I am not guilty.

7            I know I will be laughed at, but I have witnesses

8    that my attorney told me that this was a fictional plea,

9    but I'll obviously I am serving real time.  There are

10   matters in the plea hearing that are easy to prove are not

11   true.  The government said at the plea hearing that Wayne

12   Benjamin came to my shop and picked up one pound of

13   marijuana on July 19, 2002.  That would seem to be -- oh,

14   that no one seems to know that Wayne and I were in Arizona

15   on that date picking up a road tractor.  This is completely

16   verifiable.

17           Your Honor finally, I do indeed have a witness

18   who can identify John Mercado as one of the men who fled

19   from the rear of my business while I laid on the front

20   parking lot after being shot twice.  When I included this

21   in my 2255, Mr. Brichler gave it to the local police to

22   investigate.  The police talked to my sister, who is here

23   in the courtroom.  He told them -- he told her that Mr.

24   Brichler told him to tell me that, if Steve doesn't stop

25   fighting this case, I'll have him indicted with all of his

1    family.

2              Your Honor, my sister has a copy of the tapes of

3    conversation with her today.  You must understand they're

4    far-fetched claims, but they're absolutely true.

5              That's all.

6              THE COURT:  Thank you, Mr. Rennick.  Do you wish

7    to present any evidence?

8              THE DEFENDANT:  I have the tapes, Your Honor.  My

9    sister has all the tapes.  She tape recorded the Cincinnati

10   police officer when he talked to my sister, and the officer

11   said that Mr. Brichler told her that, if I didn't drop

12   this, that he would indict my whole family.

13             Like I say, we have a paper that shows that Kevin

14   Koo -- not Kevin Koo, but one of the officers of the RENU

15   squad has a paper that's notarized that says there was only

16   20,000 grams of marijuana.

17             I never made -- we never -- I've never brought

18   marijuana from Arizona, Your Honor.  I've never had drug

19   money.  I've never had -- I mean the tractor I bought was

20   with a Workers' Comp settlement, and I have heard John

21   Mercado's voice in my shop the night that I got shot,

22   "Yeah, we'll get him twice."  I mean, Your Honor, there's

23   something wrong here that these people are trying to keep

24   me down, and I have never dealt with drugs.  I have four

25   beautiful children, four grandkids.  I hate drugs.  I would

1   never even --

2          THE COURT:  All right.  Let me give Mr. Brichler

3   a chance to respond, and then we'll consider the issue of

4   the tapes.  Mr. Brichler?

5          MR. BRICHLER:  Again, Your Honor, these are all

6   matters that, if there is any substance to them, this is a

7   subject of a 2255.  If there is something wrong with the

8   original proceeding or events that occurred subsequent to

9   it, it has nothing to did with this hearing today.

10         I might add that one thing I have learned during

11  the course of this litigation is that Mr. Rennick is a

12  master of manipulation and prevarication, and that's our

13  position, and it will continue to be our position

14  throughout this hearing and any subsequent litigation that

15  may occur.

16         THE DEFENDANT:  How can I be a master of

17  manipulation when he has the Cincinnati officer threaten my

18  family and it's on tape recording?  I wasn't there.  Does

19  he blame everything on me, or is it just most of

20  everything?

21         THE COURT:  Well, let me start out, I don't know

22  what the tape recording has in it.  But it's really

23  irrelevant at this point in time.  You have pursued your

24  appeal.  Your have a chance and the Court granted your

25  habeas in part so that you can file a notice of appeal.

1  The Court is considering the other factors that it didn't

2  consider last year before the Booker decision.

3           THE DEFENDANT:  Can I have another drink?

4           (Drinking water.)

5           THE COURT:  So I think you have gotten everything

6  you've tried to achieve.

7           Let me say for the record I have known

8  Mr. Brichler for 25 years.  I have worked with

9  Mr. Brichler, both as an assistant United States attorney

10  and as a defenses attorney against him.  And I have found

11  him to be probably the most ethical person of anyone in the

12  U.S. Attorney's Office and, as he said about Mr. Gallagher,

13  you know, it's inconceivable that Mr. Gallagher would have

14  done something like that.  I find it inconceivable that

15  Mr. Brichler would have said that to anyone.

16           Now, I don't know what some police officer said

17  to your sister, but I know Mr. Brichler never said anything

18  like that.  And regardless of what the police officer said

19  to your sister, it really has no bearing on your

20  sentencing.  We're here today to sentence you and give you

21  an opportunity to appeal.

22           THE DEFENDANT:  And is this -- I'm being

23  sentenced on a fictional plea which Brichler never does a

24  fictional plea, or does he do fictional pleas?

25           THE COURT:  You're being sentenced on the plea

1     that you entered back in 2003.

2          THE DEFENDANT:  Which Mr. Gallagher told me it

3     was a fictional plea.

4          THE COURT:  Right.  I mean, you have alleged that

5     Mr. Gallagher said that.  And that's an issue for you to

6     bring up with the court of appeals.  All I can do is listen

7     to what the parties say in the courtroom.

8          I know what I asked you, Mr. Rennick.

9     Mr. Brichler even read it.  I asked you if you understood

10    it, if you had discussed it with your attorney, if that in

11    fact was your plea, and you said yes.

12         THE DEFENDANT:  You also asked me, ma'am, if I

13    was on any medication.

14         THE COURT:  Yes.

15         THE DEFENDANT:  And I said no.  I just came out

16    of the VA hospital that morning, and I was on medication,

17    but Mr. Gallagher told me I had to say no or they wouldn't

18    accept the plea.

19         THE COURTROOM DEPUTY:  You can bring all that up

20    with the court of appeals.

21         THE DEFENDANT:  All right.

22         THE COURT:  Anything further anyone wants to say.

23         Mr. Brichler?

24         MR. BRICHLER:  No, Your Honor.

25         MR. JOHNSON:  No, Your Honor.

1          THE COURT:  All right.  It's the duty of the

2     Court to sentence the defendant at this time.  However,

3     counsel will have a final chance to make legal objections

4     before the sentence is actually imposed.

5          Pursuant to the Sentencing Reform Act of 1984,

6     it's the judgment of the Court that the defendant Steve

7     Rennick, Sr. be hereby committed to the custody of the

8     Bureau of Prisons for a term of 63 months on count one.

9     The defendant should receive credit for the time he has

10     already served on his original January 28, 2004 sentence.

11          The defendant shall participate in the Bureau of

12     Prisons Inmate Financial Responsibility Program.  The

13     defendant shall participate in a mental health evaluation

14     and/or mental health counseling at the direction of the

15     Bureau of Prisons.

16          Following his sentence of imprisonment, the

17     defendant is ordered to be placed on supervised release for

18     a period of four years.  Upon release from incarceration,

19     the defendant is ordered to report in person to the

20     probation office in the district to which he is released

21     within 72 hours.

22          As a condition of supervised release, the

23     defendant shall pay any unpaid balance of his fine.  The

24     defendant shall not commit another federal, state or local

25     crime and is prohibited from possessing a firearm or other

1    dangerous device.   The defendant shall not possess any

2    illegal controlled substances and, in addition, the

3    defendant shall comply with the standard conditions of

4    supervised release as adopted by the Court for the Southern

5    District of Ohio.

6            As a special condition of supervised release, the

7    defendant is ordered to refrain from any unlawful use of a

8    controlled substance and to submit to one drug test within

9    15 days of release and at least to periodic drug tests

10   thereafter.

11           The Court finds the defendant is capable of

12   paying a fine.  Accordingly, the Court orders a fine in the

13   amount of $10,000 be imposed.  The fine is due immediately.

14   Interest shall accrue on any unpaid balance.

15           The defendant shall participate in mental health

16   treatment deemed appropriate by the probation officer.  The

17   defendant shall provide the probation officer access to all

18   requested financial information.  Furthermore, the

19   defendant is not permitted to open any new lines of credit

20   until his fine and special assessment are paid in full.

21           After the defendant is released from imprisonment

22   and window 30 days of the commencement of supervised

23   release, the probation officer shall recommend a revised

24   payment schedule to the Court to satisfy any unpaid

25   balances.  The Court will enter an order establishing a

1  scheduled of payments.  A special assessment of $100 is

2  owed and due immediately.

3       The Court considers the sentence to be just and

4  reasonable in light of the defendant's conduct and the

5  applicable sentencing factors.

6       Do the parties have any objections as to why the

7  sentence should not be imposed as stated?

8       MR. JOHNSON:  No, Your Honor.

9       MR. BRICHLER:  No, Your Honor.

10      THE COURT:  All right.  The sentence is thus

11  imposed as stated.

12      Let me tell you about your rights on appeal.  You

13  are advised you have a right to appeal this sentence.  If

14  you cannot afford a lawyer, you may apply and one will be

15  appointed to represent you on your appeal.  You must file

16  your notice of appeal with the clerk of the United States

17  District Court within ten days of the filing.

18      Mr. Rennick, if you request, I will order the

19  clerk of courts to file your notice of appeal immediately

20  after the judgment is filed.  Do you wish --

21      THE DEFENDANT:  No, ma'am.  We've got it written.

22  We'll take it right down after -- we've got the notice of

23  appeal ready.

24      MR. JOHNSON:  Do I have a notice of appeal ready,

25  no.  A notice of appeal can be filed on your behalf by my

P30  JA 373

1    office if we are ordered to do that.

2              Your Honor, I will coordinate with Mr. Miller and

3    make sure that a notice of appeal is timely filed in this

4    matter, that it does not fall within the cracks, and, if

5    not, I will file a notice of appeal on Mr. Rennick's

6    behalf.

7              THE COURT:  Mr. Rennick?

8              THE DEFENDANT:  Can we file a notice?  My sister

9    has a notice of appeal with her and a check and everything.

10             THE COURT:  You can go -- sure, she can go ahead

11   and file it.  That's fine.

12             So you don't wish the clerk to.  Your sister is

13   going to do it --

14             THE DEFENDANT:  No.

15             THE COURT:  -- this morning.  All right.

16             The Court also orders that you shall notify the

17   United States Attorney for the Southern District of Ohio

18   within 30 days of any change in resident or mailing address

19   until all fines and special assessments imposed by the

20   judgment are fully paid.

21             Is there anything further to come before the

22   Court at this time on this matter?

23             MR. JOHNSON:  Your Honor, I think we should make

24   a determination or ask the Court to make a determination

25   whether Mr. Rennick would like for me to continue and

1    handle his appeal or if he would like other counsel

2    appointed to represent him on appeal.

3            THE COURT:  Good point, Mr. Johnson.

4            Do you want Mr. Johnson to continue as your

5    counsel on the appeal, or do you want the Court to

6    appointment someone new to represent you on your appeal?

7            THE DEFENDANT:  I would rather have somebody new,

8    Your Honor.

9            THE COURT:  All right.  The Court will appoint

10   new counsel.

11           Anything further?

12           MR. JOHNSON:  Nothing from me, Your Honor, but

13   Mr. Rennick may have something.  In fact, may I have a

14   moment?

15           THE COURT:  Certainly.

16           MR. JOHNSON:  Your Honor, Mr. Rennick has asked

17   if he could be transported back to Lexington Federal

18   Medical Center as quickly as possible.  He is missing some

19   programing down there, and he would ask if the Court could

20   request that he be returned to Lexington as soon as

21   possible.

22           THE COURT:  I'll request the marshals do that.

23   I'm certain that they will.  Lexington is close by, and

24   it's easy to transport you there.  And we have too few beds

25   in the local jails anyway.  So I'm certain that the

1    marshals office will get you out of the local facility and

2    back to Lexington as soon as they possibly can.

3              THE DEFENDANT:  Thank you, Your Honor.

4              THE COURT:  All right.  I'm going to remand you

5    to the custody of the United States Marshal.

6              Good luck to you, Mr. Rennick.

7              THE DEFENDANT:  Thank you.

8              PROCEEDINGS CONCLUDED AT 11:20 A.M.

9

10                 C E R T I F I C A T E

11              I, Betty J. Schwab, the undersigned, do

12    hereby certify that the foregoing is a correct

13    transcript from the record of the proceedings in

14    the above-entitled matter.

15

16              _____
                 BETTY J. SCHWAB, RPR
17                 Official Reporter

18

19

20

21

22

23

24

25

P33  JA 376

```
 1                          I N V O I C E

 2

 3                        Betty J. Schwab
                       Official Court Reporter
 4                          Room 227
                  Potter Stewart U.S. Courthouse
 5                      100 East 5th Street
                     Cincinnati, Ohio  45202
 6

 7                       (513) 564-7636

 8

 9        March 8, 2006

10

11   TO:  JoAnn Childress
          8260 Stahley Drive
12        Cincinnati, OH

13

14   RE:  USA  v.  Rennick

15        CASE No. 1:02cr157
          Transcript of sentencing
16        Heard on 1/23/06
          Before the Honorable Susan J. Dlott, Judge
17
          33 original pages at $3.30
18
          BALANCE DUE:  $108.90
19

20                                    Thank you,

21                                    Betty J. Schwab

22                                    Betty J. Schwab

23

24   THIS TRANSCRIPT HAS BEEN FILED WITH THE COURT

25
```

**DRUG POSSESSION**
**2925.11 Ohio Revised Code**

CASE NO. _CRCRA 35415_

## COMPLAINT
### Hamilton County Municipal Court

STATE OF OHIO vs. _STEVEN RENNICK SR._

_2 PEACHTREE CT._
_Address_

_FAIRFIELD, OHIO 45014_

SD

_AGENT - C. P. CONNERS_ , being first duly cautioned and

sworn, deposes and says that _STEVEN RENNICK SR._

on or about _OCT 16, 2002_ in Hamilton County and State of Ohio,

did knowingly possess a schedule _1 I_ controlled substance to wit :

_MARIJUANA_

in an amount weighing more than _20000_ grams, but less than _____ grams

as defined in 2925.01 of the Revised Code of Ohio, contrary to and in violation of Section 2925.11

of the Revised Code of Ohio, a Felony of the _F-2_ degree.

The complainant states that this complaint is based on _RENU INVESTIGATION, SEARCH_

_WARRANTS AND RECOVERY OF OVER 20000 GRAMS_

_OF MARIJUANA_

Sworn to and subscribed before me this _10-16-02_

_[signature]_
Notary Public / Deputy Clerk / Judge

_C. P. Conners #194_
(Complainant)

**TAMMY J. FORTUNE**
Notary Public, State of Ohio
My Commission Expires Nov. 7, 2006

Filed: _10_

Regional Narcotics Unit

Clerk of the Hamilton County Municipal Court

By _[signature]_ _554_
Deputy Clerk

1000 Sycamore Street Room 110

Cincinnati, Ohio 45202
( Address of Complainant )

Inserts for the above

1      T ; T

D52166320 CA



D63502509

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

IN RE: 2001 FREIGHT-LINER/     :     Case No. M0201039
CLASSIC XL-LIMITED,
VIN 1FUPUXZB11PF88771,     :
seized from Steven M. Rennick, Sr.     Judge Martin

                             :

                             :     **MAGISTRATE'S DECISION**

---

## RENDERED THIS 29ᵗʰ DAY OF APRIL, 2005.

This case is before the court on the petition for forfeiture filed by the Hamilton

County Prosecutor. This matter was heard before the Common Pleas Magistrate on

February 25, 2005. The case was taken under submission by the court on April 25, 2005

following the submission of written closing arguments.

### BACKGROUND

On October 16, 2004, agents of the Regional Narcotics Unit ("R.E.N.U.") seized a

2001 Freight-Liner Classic XL-Limited tractor, VIN 1FUPUXZB11PF88771

("Freightliner") owned by S & S Racing, LLC pursuant to a search warrant executed at

the company's place of business, 1975 West North Bend Road, Building B, Cincinnati,

Ohio. The Freightliner was seized pursuant to R.C. § 2925.43 and R.C. § 2901.01.

Steven M. Rennick, Sr. ("Rennick"), owner and sole officer of S & S Racing, LLC was

convicted in the United States Court for the Southern District of Ohio of conspiracy to

distribute marijuana in case number CR-1-02-157. S & S Racing, LLC has claimed it is

an innocent owner.

### DISCUSSION

When a hearing is conducted under this section, property shall be forfeited
upon a showing, by a preponderance of the evidence, by the petitioner that

the person from which the property was seized was in violation of division (A) of section 2933.42 of the Revised Code. If that showing is made, the court shall issue an order of forfeiture.[1]

The first issue before the court is whether the state has proven, by a preponderance of the evidence, that the vehicle at issue was seized in violation of R.C. § 2933.42(A). The state asserts that the Freightliner was subject to forfeiture because it was used to commit a felony drug offense under R.C. § 2925.43(A)(2), to wit transporting marijuana, and concurrently asserts the Freightliner is property "that constitutes, or is derived directly or indirectly from, any proceeds that a person obtained directly or indirectly from the commission of an act that, upon the filing of an indictment, complaint, or information, could be prosecuted as a felony drug abuse offense" pursuant to R.C. § 2925.43(A)(1).

As an introductory matter, the court recognizes that Rennick pleaded guilty to Count One of the federal indictment charging him with conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).[2] The plea foreclosed Rennick's opportunity to contest the underlying facts to which he allocuted.[3] Additional evidence to sustain this finding is unnecessary.[4] Rennick's asserts that his plea was somehow involuntary, made under duress, or without knowledge of the consequences of his action. T.p. at 15-19. Such assertions are beyond the scope of this proceeding. The court finds that Rennick's plea constitutes a conviction of a felony drug abuse offense as defined in R.C. § 2925.01(I).

---

[1] Ohio Rev. Code § 2933.43(C)(West 2005).
[2] State Ex. 5
[3] Shie v. Leonard (1998), 84 Ohio St.3d 160, 161, State v. Hill (Ohio App. 9 Dist.), 1995WL422752 at *2.
[4] United States v. Real Property Known and Numbered as 415 East Mitchell Ave., Cincinnati, Ohio, 149 F.3d 472, 476 (6th Cir. 1998), State v. Bounds (1995, 1st App. Dist.), 107 Ohio App.3d 700, 706.

P2   3A - 380

The state advances Rennick's guilty plea to a federal conspiracy indictment to transport marijuana as conclusive evidence that he used the Freightliner in violation of R.C. § 2925.43(A)(2). Count One of Rennick's federal indictment stated that "[a]s part of the conspiracy, Steven M. Rennick, Sr., Wayne Benjamin, and others would transport marijuana by motor vehicle from Arizona to the Southern District of Ohio."[5] However, no other portion of Count One specifically alleges, nor do any of the listed overt acts associated with Count One state, that the Freightliner itself was used to transport marijuana. The court finds that the one bare reference to motor vehicles used to transport marijuana in Count One is too ambiguous to support the state's position. No testimonial evidence was adduced at the hearing indicating that marijuana had been present in the Freightliner at any time prior to its seizure. Therefore, under the terms of the plea to the facts contained in Count One of the indictment and the testimony given at the hearing, the court cannot find that Rennick used the Freightliner to commit a felony drug abuse offense in violation of R.C. § 2933.42(A)(2).

As to the state's latter assertion, the court finds that Rennick purchased the Freightliner with proceeds derived, either directly or indirectly, from proceeds of a felony drug abuse offense. Count One of Rennick's indictment states, in part:

> that STEVEN RENNICK, SR. . . . would cause large amounts of U.S. currency generated by marijuana sales to be deposited into two business accounts controlled by STEVEN RENNICK, SR.; S&S Racing LLC and Earth Management Trucking, Inc.
> It was further a part of the conspiracy that checks would be drawn on these business accounts to purchase a Freightliner tractor . . . .[6]

Overt Act number five of Count One states: "[o]n or about July 23, 2002, Steven

---

[5] State Ex. 4.
[6] *Id.* at 2.

P 3   3A-381

Rennick, Sr. purchased a Freightliner tractor in Arizona for $88,000.00 to be used for the transportation of marijuana."[7]    Upon consideration of Rennick's plea and all other evidence presented, the court finds that the Freightliner is subject to forfeiture to the state pursuant to R.C. § 2925.43(A)(1).

With the state having met its burden, the second issue before this court is whether S & S Racing, LLC has demonstrated, by a preponderance of the evidence, that it is the innocent owner of the Freightliner as required under R.C. § 2933.43 to prevent the forfeiture of the vehicle.[8]    Section 2933.43(C) goes on to state:

> No property shall be forfeited pursuant to this division if the owner of the property establishes, by a preponderance of the evidence, that the owner neither knew, nor should have known after a reasonable inquiry, that the property was used, or was likely to be used, in a crime or administrative violation.[9]

S & S Racing, LLC is an Ohio limited liability company.[10]  S & S Racing, LLC holds legal title to the Freightliner.[11]  Rennick is S & S Racing, LLC's statutory agent and "sole and only member".[12]  The court finds that, for the purposes of this forfeiture matter, Rennick and S & S Racing, LLC are the same legal person. The court again notes that Rennick pleaded guilty to Count One of his federal indictment. The court finds that S & S Racing, LLC has not demonstrated by a preponderance of the credible evidence that it is the innocent owner of the Freightliner. Based upon a preponderance of the credible evidence, the prosecutor has met his burden of proof as to the Freightliner. It is ordered forfeited.

---

[7]/ *Id.* at 3.
[8]/ S&S Racing asserts it is an innocent owner of the Freightliner. Ans. To Am. Pet. for Forfeiture at ¶19.
[9]/ Ohio Rev. Code § 2933.43 (West 2005).
[10]/ State's Ex. 3.
[11]/ State's Ex. 2.
[12]/ State's Ex. 3, T.p. at 7.

P4   JA-382

## DECISION

The 2001 Freightliner / Classic XL-Limited, VIN 1FUPUXZB11PF88771, is

ordered FORFEITED.

**RICHARD A. BERNAT**
**MAGISTRATE**
**COURT OF COMMON PLEAS**

Copies sent by Clerk of Courts to:

Mark G. Waters, Esq.
Assistant Prosecuting Attorney
230 East Ninth Street, Suite 4000
Cincinnati, Ohio 45202

H. Louis Sirkin, Esq.
Jennifer M. Kinsley, Esq.
920 4th and Race Tower,
105 West 4th Street
Cincinnati, Ohio 45202

John Wirthlin, Esq.
The Provident Bank
400 Provident Tower
1 East 4th Street
Cincinnati, Ohio 45202

John Rion, Esq.
One 1st National Plaza, Suite 1630
Dayton, Ohio 45402

## NOTICE

Objections to the magistrate's decision must be filed within fourteen days of the

filing date of the Magistrate's Decision. If this decision contains findings of fact and

conclusions of law, a party shall not assign as error on appeal the court's adoption of any

finding of fact or conclusion of law in this decision unless the party timely and

specifically objects to that finding or conclusion as required by Civ. R. 53(E)(3).

PS   JA-383

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT COPIES OF THE FOREGOING DECISION HAVE
BEEN SENT BY ORDINARY MAIL TO ALL PARTIES OR THEIR ATTORNEYS AS
PROVIDED ABOVE.

Date: 4-29-05    Deputy Clerk: _____

6

PG 3A-384