UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

| | |
|---|---|
| STEVEN M. RENNICK, SR., ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| vs. ) | Case No.: 1:02-CR-0157 |
| ) | 07-CV-594 |
| ) | |
| ) | Hon. Susan J. Dlott |
| ) | U.S. District Judge |
| UNITED STATES OF AMERICA, ) | Hon. Michael R. Merz |
| ) | Chief Magistrate Judge |
| Respondent. ) | |

### MOVANT'S REPLY TO RESPONDENT'S ANSWER
### TO MOVANTS MOTION PURSUANT TO 28 USC § 2255

Comes the movant, Steven M. Rennick, Sr., pro se and having previously filed his Motion To Vacate, Set Aside or Correct A Sentence and/or Conviction pursuant to 28 USC §2255 and the defendant having received the Answer and Reply of the Respondent, United States of America; and being permitted to Reply in traverse the defendant respectfully states as follows:

Before responding to the governments reasons to continue to deny Mr. Rennick a fair bite at the apple of justice there are a few things in the vein of case history that should be reviewed. This court should remember that despite the government's confidence in defense counsel William Gallagher, this court has already found him ineffective for failing to file a notice of appeal in this matter.

In fact if Mr. Gallagher had not been ineffective there would not have been a re-sentencing, a direct appeal, and indeed this procedure would have long ago been resolved.

This means we now come to a place where again Mr. Gallagher is being judged for his ineffectiveness or lack thereof again he doesn't start from a spotless position but rather a stained and blemished record which must give any triers of fact pause to consider whether Mr. Gallagher's ineffectiveness was a single discretion or something permeating the entire procedure.

Second this court must consider that Mr. Rennick's most important claim is the fact he was manipulated into entering this plea and without such coercive manipulation this case would have gone to trial and Rennick's total innocence would have been found by a jury of his peers.

It is true that some issues in defendant's §2255 were raised in his appeal and clearly this issue was a major portion of the direct, but this issue was not resolved on appeal. The Six Circuit declined to reach this claim on direct review: "An adequate investigation of Rennick's claim that he was coerced into pleading guilty by the prosecution's offer of a 'package deal' cannot be resolved without further factual developement. Accordingly, that claim is most appropriately raised in a petition filed pursuant to 28 USC §2255." Rennick, 219 Fed.Apx at 489 n.3

Clearly the circuit court has indicated that the further developement of this issue is not meritless and as such this court is somewhat obligated to accord consideration and developement by

an evidentiary hearing. To do any less is only creating more fuel for the defendant's claims that he has not been dealt with justly. At a very minimum, to not grant the opportunity to develope the record by an evidentary hearing is to further give at least the appearance of impropriety.

The government's response is somewhat deceptive or possibly confused as to defendant's claims. While one of the many statement's made by co-defendant Elliot the morning of trial was that all three defendant's had to plea or there would be no plea at all; does describe some form of "packaging" that is not the fundamental claim of the defendant. A mere package plea claim, standing alone, may or may not be coercive but what happened here went much further.

While the defendant has made this issue several times it appears necessary to re-state the key issues:

First, there had been no serious considerations by the defendant, and as he thought; no serious consideration made by the co-defendant Elliot and Benjamin toward entering a plea. Each meeting with the three defendants and their lawyers always ended by counsel advising that the government's case was weak and that the prospects of winning at trial were excellent. There was no real consideration of a plea until the morning trial was to commence.

Second, the facts are that the prosecutor, Robert Brichler met with Matt Elliot's attorney Kenneth Lawson (the defendants has presumed that Elliot was part of the discussion but such is

unimportant since Elliot performed his part of the plan). At this meeting with Brichler, Lawson, and presumedly Elliot, Brichler agreed he would give Elliot a 5K1.1 sentence reduction if he convinced Rennick to enter a guilty plea. This was quid pro quo.

In this sense it was not so much a "package deal" as it was paid coercive manipulation of defendant Rennick.

As discussed throughout the defendant's filings, he suffers from chronic PTSD from his service in Vietnam. One of the more frequent symptoms of this condition is that it leaves the victim highly susceptible to manipulation. In Rennick's case the VA doctors noted it is hard for Rennick to say no. This is very true with those he regards as friends or close associates.

This was especially true concerning his friendship with Matt Elliot and Wayne Benjamin. These young men worked with the defendant race car business. They were a valuable part of defendant's business and he treated these young men as just more children in his large family. Matt Elliot knew he could talk Rennick into whatever he wanted. Lawson sensed this and Brichler saw an opportunity to turn a weak case into a conviction with no effort at all.

Matt Elliot was in effect hired by Brichler to manipulate Rennick into pleading guilty. This is much different from merely a "package deal" this was not just a matter of two defendants trying to get a third to join in a packaged plea. This was devious and sneaky. This was one co-defendant using manipulation and lies to motivate the defendant into pleading guilty.

This is very clearly set forth in the transcript of Matt

Elliot's sentencing. The deal was for Matt Elliot to do whatever he felt he had to do in order to influence Rennick to plead. Elliot first ask to see Rennick alone; in fact months later at sentencing Elliot's attorney stated on the record that the deal was known to Rennick's lawyer Gallagher because we had to ask Gallagher to allow us to talk with Rennick. (To the extent that this proves awareness of the plan, Gallagher was also aware of the plans, goals and intentions, inasmuch, Gallagher did not attempt to thwart the efforts but rather lent his assistance to the plan; establishes his intent, knowledge, and active role to use Elliot's manipulation in order to extract Rennick's plea even though he knew his client to be innocent of the crime he was charged with).

With Gallagher's cooperation and blessing, Elliot met with Rennick. Elliot explained that if everyone pleaded Wayne Benjamin would get straight probation time, Elliot would get either probation or less than a year and Rennick would get no more than 36 months. Elliot further said he would be able to give Rennick information where he could "work off' his sentence to be no more than probation.

Elliot further told Rennick that if they went to trial everyone would get no less than five years and maybe a lot more. Elliot kept saying that this could ruin his entire life and Wayne's as well. These statements and more in the same vein finally wore the defendant down to where he could not withstand further emotional pressure. These two young men were felt about more as sons than business associates or employees.

The government had already arrested defendant's real son Steven Rennick, Jr., and had dropped his charges so they could pressure the defendant more by noticing their intent to force Rennick Jr. into testifying against his father, the defendant. Now Elliot and to a lesser intent Benjamin were pleading with him to help spare them a longer sentence.

This was a coercive punch the defendant could not withstand. Finally the defendant caved in an agreed to enter his plea to something he had not done nor did he have any knowledge of. By the time the decision was finally made it was time for lunch. During the lunch break the plea agreements were drafted and fully prepared for execution.

The court after lunch went right into the Rule 11 plea colloquy in order to get the pleas finalized. Throughout the entire process Rennick was confused and basically relied on Gallagher to tell him what to do; Rennick was completely unprepared for the entire process.

During the plea hearing there came a time when the government was asked to give factual basis for the plea. The record provides a verbatim transcript but in brief the government stated Rennick had imported over 500 pounds of marijuana to the Cincinnati area; he had given 50 pounds to Elliot and a couple of pounds to Benjamin. The presentation under most circumstances was routine and unremarkable in all aspects.

The defendant became very upset because even though he had been talked into pleading guilty, no one advised him he would be

agreeing to specific events like giving marijuana to Matt and Wayne. Rennick did not want those lies to remain on record. Rennick never gave any marijuana to anyone. When it came time for Rennick to say he acknowledged the factual basis he stood silent shaking his head side to side indicating a denial. Finally the court ordered Rennick to give an answer. Gallagher told him to agree with the plea or the court could not accept the plea. Rennick finally said yes.

When the plea hearing was over Rennick, Elliot and Benjamin were all upset over the contents of the factual basis. Gallagher told the group now gathered in the hallway outside the court that they shouldn't be upset because it was simply a "fictional plea." The defendant understands how ridiculous this term must sound and on the surface it sounds more incredible to say that attorney's Kenneth Lawson and Greg Cohen also used the same term. But it is nonetheless true and at an evidentiary hearing several witnesses will testify that this is exactly what was said.

Apparently the attorneys were trying to convey that when pleas are constructed especially to accomadate more minimal crimes for some defendants but not others then the "factual basis" must comport with the underlying "facts". It is certain that the term "fictional plea" might describe this reality it is certainly not the best terms. To the defendant however it meant something entirely different and suggested that the court would know or believe such factual basis was not true and therefore he should not be upset with it's meaning and implication.

This is just another way in which the defendant was being deceived.

The government is making an effort to evade an evidentiary hearing even though the Six Circuit has specifically reserved this one issue for expansion of the record. The defendant should be given this opportunity to at least present the facts and establish a factual basis. There is a very substantial amount of evidence to support the defendant's claim.

This is a case with many "implausible" happenings. The record of the case and other related cases has indicated something may be terribly wrong. In a seperate lawsuit this defendant has filed a lawsuit against certain police detectives involved in this case. In this complaint the defendant has alleged the lead case agent John Mercado was involved in the shooting of the defendant. Court filings indicate the existence of a witness who saw someone fitting Mercado's description leaving the sight of the shooting. This witness saw this person throw something into the woods behind the crime scene where a gun was found, possibly the weapon used to shoot the defendant.

There are also several taped conversations of another officer stating that AUSA Robert Brichler threatened to lock-up Rennicks family members if Rennick would not dismiss said lawsuit. In as much as an active Cincinnati police detective is on tape stating this case's prosectutor is threatening the defendant's family; something very strange and very serious may be going on.

It should be noted that six prominent attorneys including city and county prosecutors are representing these police officers;

Rennick is pro se and yet recently the federal court over-ruled the defendant's motion to dimiss and is allowing the civil suit to continue. While on the surface the civil suit has no direct bearing on this criminal case it does suggest the defendant's claims are not as implausible as attorney Glassman would have this court believe.

The defendant further suggests that since AUSA Robert Brichler actually prosecuted this case and prepared the governments response to defendant's first §2255 motion; and to the extent that it is customary for the prosecuting AUSA to respond to this type of motion; the defendant speculates that perhaps Mr. Brichler is attempting to distant himself in light of the threats using his name that were made by Cincinnati detective Robert Randolph to defendant's sister JoAnn Childress.

The items already in the court record in this matter include transcripts of the various recorded phone call between law enforcement officers and members of the defendant's family. The record also features several affidavits verifying the fictional plea statements, as well as other claims. These items give a strong endorsement to the validty of defendant's claims and should be considered with an open mind desiring the truth.

Throughout the government's response AUSA frequently opines that certain claims are "implausible" and others "highly implausible" and in doing so he invites this court to simply cast the matter aside as the ramblings of a fool. The Sixth Circuit however refused to cast these issues aside but clearly suggested this court

should consider them a little more and while this court is not obligated to do so, it clearly seems that to not entertain an evidentiary hearing is to encourage the appearance of impropriety which all courts are to strive to avoid.

The government has elected to not consider any post sentencing effectiveness of counsel the defendant received from attorney Lawson, but it was Lawson that was hired to appeal, to seek to withdraw the plea and to litigate matters against various members of law enforcement. Lawson's ineffectiveness cost the defendant financial resources he could have used for a proper appeal. The actions of Mr. Lawson forced the defendant to argue his own appeal and to take on matters for which he had no qualifications.

Given the public disclosures surrounding Mr. Lawson this court would be hard pressed to call his services effective and such should be considered in the overall picture of counsel's effectiveness.

The government invites the court to conclude the defendant's claims are implausible and while this doesn't seem a normal standard of review it may have it's merit; such as:

During the proceeding Judge Dlott stated she has known attorney Lawson and knows he is a man of his word. At the same time Mr. Brichler stated, "I've known Mr. Lawson twenty-five years and he doesn't lie. With such glowing endorsements it was implausible to think Mr. Lawson would tell a newspaper reporter, "I have a degree in lying and stealing." Implausible but true!

It is implausible that the defendant could survive a motion

to dimiss in a federal pro se lawsuit against case agent John Mercado and other Cincinnati officers accused of covering-up the attempted murder of the defendant but it happened and a judge of this court so ruled. Implausible but true!

Plausibility is not a legal standard nor should it be. The defendant is the first to be injured and fustrated by all this case's implausible events, and even though his sentence is nearly over he will never stop his pursuit of the real truth, no matter what happens the truth is Mr. Rennick was not ever in the marijuana business and was never guilty, he was coerced into entering a plea and as such deserves the chance to receive a just trial at which he will pursue his innocence.

A plea of guilty is not supposed to be the product of manipulation or coercion. The law never provided for co-defendant's to be rewarded for emotional manipulation. This was not a plea bargain because Rennick got the maximum he could get under the guidelines, that was no bargain. Mr. Rennick was emotionally manipulated into his plea and this is not what our justice system should ever condone.

This is a very unusual case. There are more errors and questionable events than anyone would imagine. On the day of his arrest, initially on State of Ohio charges one of the arresting officers completed the evidence form on the complaint and stated this case involved more than 20,000 grams; however when the federal authorities entered the scene the quantity increased to more than 100 kilograms over five times the amount listed by the

State of Ohio.

This matter was never dealt with by this court. There was never any marijuana brought before this court nor was there ever any lab report disclosing the substance was marijuna nor any official weight of the substance. It is highly implausible to believe a drug case could proceed with no proof as to the substance and no proof of quantity.

In determining the drug type and quantity this court could only rely on the conclusions of a lone probation officer who concocked a PSI and who himself never saw, tested or weighed any marijuana. This is very sort of careless attention to the most important elements of a case that have led to the Supreme Court's recent efforts at reform that found mandatory guidelines unconstitutional.

This issue should also be dealt with during an evidentiary hearing. Defense counsel had the report indicating 20,000 grams and yet failed to raise any challenge to the governments theory of more than 100 kilograms. In as much as the fact that the 100 kilogram amount triggered the five year mandatory minimum it becomes very difficult to understand why such ommission by counsel sould ever be determined as effective assistance.

While the defendant readily acknowledges that attorney Gallagher has a very good standing in the local legal community, this is one case where the ball was dropped several times. Clearly the failure to challenge the governments assumption of quantity in light of conflicting evidence is without question ineffectiveness

of counsel.

## CONCLUSION

Despite the government conclusions to the contrary the defendant has raised issues reference herein which are indeed worthy of an evidentiary hearing to make a proper record for consideration of these issues. The defendant therefore prays this court to grant an evidentiary hearing for the expansion of the record as to the preserved issues not reached by the appellate court.

Respectfully Submitted,

*Steven M Rennick Sr*

Steven M. Rennick, Sr.
Reg# 04050-032   Younity
Federal Medical Center
P.O. Box 14500 HCU
Lexington, KY 40512-4500

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Reply to the Governments Answer to §2255 Motion was filed with the court clerk shown below and sent to all other parties below by depositing same, first class postage prepaid into the prison legal mail service on this the 19th day of September, 2007.

*Steven M. Rennick, Sr.*
Steven M. Rennick, Sr.

Clerk of the Court
U.S. District Court
100 East 5th St.
Cincinnati, OH 45202

AUSA Benjamin C. Glassman
221 East Fourth Street, Suite 400
Cincinnati, OH 45202