UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, : | Case Nos. | 1:02-CR-157(3) |
| Plaintiff-Respondent, : | | 1:07-CV-594 |
| : | | |
| v. : | | |
| : | | |
| Steven Rennick, Sr., : | District Judge Dlott | |
| Defendant-Movant. : | Chief Magistrate Judge Merz | |

---

Plaintiff-Respondent's Memorandum in Response to
Defendant-Movant's Post-Hearing Memorandum

---

Pursuant to the schedule established by the Court, the United States respectfully submits this memorandum in response to Defendant Rennick's Post-Hearing Memorandum (doc. #290). Rennick has not brought forward evidence sufficient to satisfy his burden of proving that his conviction was the result of an error of constitutional magnitude or a fundamental error of fact or law. *E.g., Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (stating standard). His post-hearing brief pursues the claims that his guilty plea resulted from ineffective assistance of counsel or from an unduly coercive package plea. Other than some of his own testimony, the evidence from the hearing on this motion does not support Rennick's claims. It refutes them. In light of the irreconcilable contradictions between Rennick's testimony and that of other witnesses, moreover, the Court

should find Rennick's testimony incredible. Finally, Rennick's claims are flawed as a matter of law, separately from their failings factually. The Court should therefore deny Rennick's § 2255 motion.

I.  Rennick's ineffective-assistance claim lacks merit.

Rennick argues that he received ineffective assistance of counsel from his trial lawyer, William Gallagher. According to Rennick, prior to the entry of his guilty plea, Gallagher never discussed with him the statutory minimum (Tr. 196, Rennick), the guidelines (*id.* 136), the possibility of cooperating with the government to seek a § 5K1.1 motion for reduction in sentence (*id.* 196, 198), or even the possibility of pleading guilty at all (*id.* 135). Rennick further testified that when he hesitated to respond during the Rule 11 colloquy, Gallagher told him "don't worry, it's a fictional plea." (*Id.* 139, 150-52, 197.) In his post-hearing memorandum, Rennick also argues that Gallagher was ineffective for permitting Rennick to speak to his co-defendants without Gallagher's supervision when they were considering whether to plead guilty, and he suggests that a document purporting to be a plea agreement to a different charge supports his general assertion of ineffective assistance. These claims fail factually and legally.

A.  Rennick is not credible.

Factually, the Court should find Rennick not credible. His testimony was not only highly improbable, but was also contradicted by the testimony of other witnesses. First, in direct contradiction to Rennick's assertion, Gallagher testified that he did not tell Rennick during the Rule 11 colloquy that he was entering a

2

"fictional plea." (Tr. 279, Gallagher.) In fact, he has never used the term in reference to this case. (*Id.* 249.) Gallagher further testified, again in direct contradiction to Rennick, that he had advised Rennick prior to the day on which Rennick pled guilty of the mandatory minimum (*id.* 278), the guidelines (*id.* 220), and possibilities for pleading guilty (*id.*), including cooperation with the government (*id* & 282).

Rennick's and Gallagher's testimony also contradicted irreconcilably on other historical facts. According to Rennick, he paid Gallagher $100,000, including in cash per Gallagher's request, so that Gallagher could use the money to go on a skiing trip. (Tr. 133, Rennick.) Gallagher testified that he was paid $25,000, none in cash, and that he never solicited Rennick to pay him in cash for a trip to Colorado or for any other reason. (Tr. 209, 286, Gallagher.)

Rennick also claimed that he had not reviewed the plea agreement prior to signing it. (Tr. 147-48, Rennick.) Gallagher contradicted that. (Tr. 231, Gallagher.) Rennick said that he and Gallagher never discussed the presentence report before the sentencing hearing. (Tr. 181, Rennick.) Gallagher testified to the opposite. (Tr. 231, 236, 254, Gallagher.) On this latter point, Rennick also testified at the evidentiary hearing that he had told the district judge at sentencing that he had reviewed the presentence report with his attorney when, he now claims, that was not true. (Tr. 181, Rennick.)

In assessing whether to believe Gallagher or Rennick, the Court should also consider that Rennick's testimony directly contradicted that of his co-defendant

Matthew Elliott on other facts. Rennick claimed that he had never conspired with anyone to distribute marijuana, that Elliott had pressured him to plead guilty, and that Elliott had cried in attempting to persuade Rennick to plead guilty. (Tr. 165, 169, 170, Rennick.)

Elliott testified that he had agreed with Rennick to distribute marijuana (Tr. 85, Elliott) and that he had neither pressured nor attempted to pressure Rennick to plead guilty (*id.* 94, 120). Neither Elliott nor Gallagher recall Elliott crying during plea negotiations. (*Id.* 73; Tr. 228, Gallagher.) Gallagher also did not "remember anybody having to sell anything." (Tr. 253, Gallagher.)

The Court should further consider that Rennick now claims that he lied under oath during the Rule 11 colloquy in response to virtually every question posed to him by the Court. (Tr. 139, 204, Rennick.) Moreover, the testimony of Elliott and Gallagher is consistent with their responses during the Rule 11 colloquy. Rennick's is inconsistent.

Given these discrepancies, Rennick's testimony at the evidentiary hearing is not credible, and the Court should so find. It simply is not true that Gallagher told Rennick to continue with the plea colloquy because it was a "fictional plea." Nor is it true that Gallagher unprofessionally failed to discuss the statutory minimum, guidelines, plea possibilities, or cooperation with Rennick prior to his guilty plea. Factually, therefore, Gallagher did not render ineffective assistance to Rennick by telling him that his was a "fictional plea." His assistance was effective.

B.   Permitting co-defendants to speak with each other is not deficient performance.

There is some support in Gallagher's testimony that he permitted Rennick to speak with his co-defendants during plea negotiations without his supervision. (Tr. 224, 234, Gallagher.) Rennick argues in his brief that this constituted ineffective assistance. This particular argument does not appear to have been raised in his § 2255 motion. In any event, Rennick cites no authority for the proposition that a lawyer acts below a minimum standard of professionalism by permitting his client to speak with his co-defendants during plea negotiations, and the government is aware of none. To the extent that this is a separate, cognizable argument, then, the law does not support it.

C.   Rennick has not shown prejudice.

There is an additional legal failing with Rennick's ineffectiveness argument: he cannot show prejudice. First, Rennick suggested in his testimony that the alleged "fictional plea" comment—which, as argued above, never happened—prompted him to go through with his guilty plea. Because he did not testify that any other alleged error by Gallagher caused his plea, this is the only basis upon which he could possibly show prejudice. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (in context of guilty plea, "prejudice" prong of ineffective-assistance claim requires defendant to show that, but for counsel's unprofessional errors, defendant would not have pled guilty and would have insisted on trial). But the district court's Rule 11 colloquy was thorough and proper; by its terms, the colloquy

5

excluded the possibility that Rennick pled guilty because he thought the plea fictional. Accordingly, even if Gallagher rendered ineffective assistance, Rennick could not show the prejudice that is required to grant relief. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) (assuming deficient performance because of wrong advice about consequences of plea, petitioner who pled guilty could not show prejudice where change-of-plea colloquy corrected allegedly inaccurate advice).

  D. <u>New arguments premised on Defense Exhibit 14 are factually baseless and legally irrelevant.</u>

One final matter that, according to Rennick's argument, bears on his ineffective-assistance claim is the document that was admitted as Exhibit 14 during the evidentiary hearing. This exhibit purports to be a draft agreement, signed only by Gallagher in October 2003, according to which Rennick would plead guilty to a fraud charge. Rennick asserts in his post-hearing memorandum that "the government sought to have a fallback position; if the drug activities were successfully attacked and the defendant sought to vacate his plea and the court permitted same, they had waiting, a plea agreement for mail fraud that defense counsel had already accepted, with an alleged 'loss' of $770,000.00 thereby placing the Defendant in a potential sentencing range that approximated the thirty-six months that was discussed at the time his 'drug' plea was obtained. The government knew exactly what it was doing and the one-two punch was effective." (R. 290, Defendant's Memorandum 20-21.) This assertion is baseless. The evidence does not support it. And its legal relevance is lacking. Again, Rennick does not

appear to have raised this argument in his § 2255 motion.

    1.    <u>Factual baselessness</u>

First, the evidence does not support Rennick's claim. No witness testified as to what the purported document was, where it came from, or what it meant. Gallagher had no recollection of it. (Tr. 264-66, 268-69, Gallagher.) There is no basis in evidence for even thinking that the U.S. Attorney's Office had anything to do with the creation of the document.

Indeed, there is reason to think that the document did not originate with the U.S. Attorney's Office. Plea agreements from the U.S. Attorney's Office do not typically have final pages with only signature blocks; there is an integration clause at the top of the page. (Tr. 286, Gallagher.) Rennick's, Elliott's, and Benjamin's plea agreements all have integration clauses on the signature page. Exhibit 14 has a signature page without an integration clause (which appears on the preceding page). Rennick's, Elliott's, and Benjamin's plea agreements share a common type font. Exhibit 14 has a different font. The caption on Rennick's, Elliott's, and Benjamin's plea agreements uses "v." rather than "vs." Exhibit 14 is the opposite.

Accordingly, what evidence exists regarding this document suggests that it was not prepared by the U.S. Attorney's Office, and there is absolutely no evidence to the contrary. What Rennick has denominated as "Branch III" of his memorandum is therefore completely baseless.

    2.    <u>Legal irrelevance</u>

Its legal relevance is also lacking. Rennick's argument fails to explain how

he could have been motivated to plead guilty in August 2003 by a document that was allegedly created several months later. Even on Rennick's own theory of what the document is, Exhibit 14 does not establish that Rennick's plea was the result of ineffective assistance of counsel.

II.     Rennick's claim that a "package plea" unduly coerced him lacks merit.

Rennick's other post-hearing argument for relief is that his guilty plea resulted from an unduly coercive "package plea." In a "package plea," part of the consideration for the defendant's guilty plea is favorable treatment by the government of a third party. *E.g., United States v. Spilmon*, 454 F.3d 657, 657 (7th Cir. 2006); *United States v. Usher*, 703 F.2d 956, 958 (6th Cir. 1983). Such an agreement is not improper—unless the government is leveraging authority against a defendant whom it knows to be innocent or where the government believes the third party to be innocent—though of course its terms should be disclosed during the Rule 11 colloquy. *Spilmon*, 454 F.3d at 658-59; *Usher*, 703 F.2d 958-59. Rennick has not established even that his was a package plea, much less that he was unduly coerced into pleading guilty by its existence.

A.      Rennick's plea agreement is not a package plea.

Rennick's plea agreement, on its face, does not condition lenient treatment to third parties on Rennick's guilty plea. Though Gallagher thought that seeking to withdraw Rennick's plea if one of the other co-defendants had withdrawn his plea would have been "an interesting argument" that he would be willing to attempt, he agreed that the written plea agreement was accurate. (Tr. 280-81, Gallagher.) All

parties, including Rennick personally, agreed with the accuracy and completeness of his plea agreement during the Rule 11 colloquy. Therefore, Rennick's plea agreement was not a "package plea."

The evidence at the hearing did indicate that, on the morning of trial, the government was not willing to enter into plea negotiations with any of the three remaining defendants unless all did. Rennick cites no authority and mounts no argument as to why that fact would be relevant to show that his will was overborne by an unduly coercive package plea, particularly given that the agreement that he ultimately reached with the government was not a package plea. Moreover, Gallagher testified that, from his perspective, he thought "Mr. Rennick would have always been able to plea to the conspiracy count." (Tr. 279, Gallagher.) Rennick did plead to the conspiracy count. There was no evidence that Rennick forewent a more favorable offer at all.

    B.    <u>Elliott did not pressure Rennick to plead guilty, unduly or otherwise.</u>

Rennick argues that the government enlisted Elliott, perhaps in cahoots with some combination of the defense lawyers, to convince Rennick to plead guilty. Evidence from the hearing, other than Rennick's own testimony, refutes this claim factually. It is also legally unsupported.

    1.    <u>Elliott did not pressure Rennick to plead guilty.</u>

Rennick bases his claim on the representation of Kenneth Lawson, Elliott's counsel, at Elliott's sentencing hearing, that the government had agreed to seek a downward reduction for Elliott's cooperation if Elliott succeeded in getting Rennick

to plead guilty and cooperate. The prosecutor at that hearing, while not recalling that agreement, accepted Lawson's representation and moved for a downward departure for Elliott on the ground that Elliott had gotten his co-defendant to plead guilty.

Elliott testified at the evidentiary hearing, however, that Lawson had never told him that he would receive a substantial-assistance motion in exchange for getting Rennick to plead guilty. (Tr. 91, Elliott.) He had no knowledge that he was (allegedly) supposed to encourage Rennick to plead guilty as part of his own plea agreement. (*Id.* 93-94.) Elliott testified unequivocally that he did not force Rennick to plead guilty, that he did not try to force Rennick to plead guilty, and certainly that he never cajoled Rennick to plead guilty for sake the of Elliott's children. (*Id.* 94, 120.) Indeed, he further testified that both he and Rennick had been involved in marijuana trafficking and that they had conspired to traffic marijuana (also admitting guilt to the money laundering with which he had been charged). (*Id.* 85, 115, 120.)

Elliott's testimony that he was unaware of any benefit to himself if Rennick pled guilty, as well as his testimony that he did not try to force Rennick to plead guilty, is undisputed. To the extent that there is a credibility determination to be made here, moreover, the Court should disbelieve Rennick. He is not credible. *See* Part I.A, above.

### 2. There was no plot or plan to make Rennick plead guilty.

Similarly unequivocal was the testimony of Gallagher that he never participated in any plan or plot to convince Rennick to plead guilty, nor was any such plan or plot ever presented to him by the prosecutor. (Tr. 281, Gallagher.) Gregory Cohen, the attorney for co-defendant Wayne Benjamin, likewise testified that he had no knowledge of any plan or plot to force Rennick to plead guilty against his will. (Tr. 51, Cohen.) The evidence thus contradicts Rennick's claim that Elliott pressured him to plead guilty and his suggestion that there was some plan among everyone but him to achieve his guilty plea.

### 3. Even on Rennick's own (untrue) version of the facts, Elliott did not unduly or improperly pressure Rennick to plead guilty.

His "package plea" claim regarding Elliott's alleged influence also fails on the law. On Rennick's own version of the facts, Elliott pled with him to consider Elliott's best interests; Elliott did not threaten Rennick. (Tr. 205-06, Rennick.) There is nothing unduly coercive about that. *Spilmon*, 454 F.3d at 658; *United States v. Carpenter*, 25 Fed. Appx. 337, 344 (6th Cir. 2001). Nor has Rennick established—again, even on his own version of the facts—that the government believed that either he or his co-defendants was actually innocent (though the hearing certainly included testimony that both Rennick and his co-defendants had prepared evidence and argument for use in their defense at trial).[1] Rennick's

---

[1] A word in the margin is in order regarding the guilty plea and factual basis of co-defendant Wayne Benjamin because Rennick elicited unsavory-sounding testimony at the evidentiary hearing from attorney Cohen to the effect that he had

"package plea" claim should therefore fail as a matter of law, even were his factual allegations accepted—and they should be rejected.

---

no evidence of Benjamin's guilt before the plea, and he described the plea itself as a "legal fiction." (Tr. 17, Cohen.) First, what Cohen meant by the term "legal fiction" was that "in the absence of any hard evidence Mr. Benjamin was agreeing to a set of facts that would allow him to plead to essentially the lowest charge." (*Id.*) Benjamin's admission of the facts under oath is, of course, very direct evidence of his guilt. That attorney Cohen's pretrial investigation had not uncovered corroborative evidence might say something about the thoroughness of that investigation; it might say something about Benjamin's truthfulness with his lawyer before pleading guilty; but it does not mean that Benjamin was pleading guilty to facts that were untrue. Cohen was clear that he would not permit a plea to go forward if it involved him committing fraud on the court. (*Id.* 31.)

Second, evidence adduced by Rennick during the hearing to challenge the factual accuracy of the statement of facts or the superseding indictment vis-a-vis Benjamin should be unconvincing. That Elliott did not know that Benjamin was a conspirator (Tr. 86, Elliott) does not undermine the grand jury's probable-cause determination otherwise; not every conspirator must or does know every other. *E.g., United States v. Ruggiero*, 20 F.3d 1387, 1391 (6th Cir. 1994). But that sort of evidence does support the government's decision to agree to Benjamin's plea to a lesser charge. That Rennick claims that Benjamin was not in the Southern District of Ohio on July 18, 2002 (Tr. 185, 193-94, Rennick) is beside the point. The superseding information charges Benjamin with a crime "on or about" a date, and the statement of facts in support of his plea did not specify the day that he received or distributed a pound of marijuana. That particular date could not be determined with specificity, though witnesses saw Benjamin in possession, and all parties agree that July 18 is a reasonable estimate of the precise day. (PSR ¶ 46.)

Finally, all of this is beside the point legally with respect to Rennick's claim. Rennick was explicit that Elliott alone pressured him to plead guilty. (Tr. 205-06, Rennick.) Benjamin thus had no involvement, according to Rennick.

III.  Conclusion

Rennick's testimony is not credible. He has failed to establish either that his lawyer's performance was deficient or that the performance prejudiced him. Nor has he proven either that his plea agreement was a package plea, or that he was unduly coerced thereby. The Court should therefore deny Rennick's § 2255 motion.

                    Respectfully submitted,

                    GREGORY G. LOCKHART
                    United States Attorney

                    s/ Benjamin C. Glassman
                    BENJAMIN C. GLASSMAN
                    Assistant United States Attorney
                    221 East Fourth Street, Suite 400
                    Cincinnati, Ohio 45202
                    (513) 684-3711; Fax: (513) 684-6385
                    Benjamin.Glassman@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Plaintiff-Respondent's Memorandum in Response to Defendant-Movant's Post-Hearing Memorandum was filed with the Court's CM/ECF System this 30th day of July, 2008, which provides service to Lawrence Joseph Greger, Esq., counsel to Rennick.

s/ Benjamin C. Glassman
BENJAMIN C. GLASSMAN