# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

       Plaintiff,       :       Case No. 1:02-cr-157 (3)
                                    Also 1:07-cv-594

                                District Judge Susan J. Dlott
      -vs-                           Magistrate Judge Michael R. Merz
                              :

STEVEN M. RENNICK, SR.,

       Defendant.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant Steven M. Rennick, Sr.'s, Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 261). The Motion is ripe for decision after evidentiary hearing and briefing (Transcript, Doc. No. 289; briefs (Doc. Nos. 290, 291, 293).

Defendant, who filed *pro se,* pleads the following grounds for relief:

**Ground One:** Sentence did not fully comply with 18 U.S.C. § 3553(a).

**Ground Two:** Ineffective Assistance of Counsel

**Ground Three:** Defendant's plea of guilty was neither voluntary nor knowingly entered.

**Ground Four:** Breach of plea agreement and ineffectiveness of counsel by refusing to take advantage of evidentiary hearing on substantial assistance.

(Motion, Doc. No. 261, at 5, 6, 8, 9.)[1]

---

[1] In his Post-Hearing Memorandum, Defendant says the grounds raised in his Motion were
    1) His guilty plea was not knowingly or voluntarily entered;
    2) Defendant received ineffective assistance of counsel in advising
    him he was entering a fictional plea;

1

**Procedural History**

In November 2002 a federal grand jury at Cincinnati returned an indictment which charged Defendant Steven M. Rennick, Sr., in three counts (Doc. No. 8). A superseding indictment in March 2003 charged him in seven counts (Doc. No. 59). On the trial date, August 18, 2003, Defendant agreed to plead guilty to Count 1 (Plea Agreement, Doc. No. 104). On January 28, 2004, Judge Dlott sentenced Mr. Rennick to sixty-three months imprisonment (Doc. No,. 156). The next day attorney Kenneth Lawson, who represented co-defendant Matthew Elliott, replaced William Gallagher as Mr. Rennick's trial counsel and filed a motion for reconsideration and, shortly thereafter, a motion to withdraw the guilty plea (Doc. Nos. 149, 162.) Judge Dlott denied both of those motions (Doc. No. 168). Mr. Rennick subsequently learned that no appeal had been filed on his behalf and sought, by way of an original § 2255 motion, to vacate his sentence so that he could pursue a direct appeal (Doc. No. 194). While denying the other claims for relief, Judge Dlott granted the request for resentencing to allow a direct appeal (Doc. No. 210). Mr. Rennick was then resentenced on to the same sentence previously imposed (Doc. Nos. 228, 229). He then appealed *pro se* to the Sixth Circuit (Doc. No. 231) which affirmed the conviction and sentence. *United States v. Rennick*, 219 Fed. Appx. 486 (6th Cir. 2007)(copy at Doc. No. 251). The instant Motion followed on July 30, 2007 (Doc. No. 261). Because an evidentiary hearing was required, the Court appointed counsel.

---

3) Defendant's 5th and 6th Amendment rights were violated in calculating his sentence;
4) The Government breached the plea agreement by failing to file a substantial assistance motion.

(Post-Hearing Memorandum, Doc. No. 290, at 1-2. However, he gives no record citation for this formulation of his claims. The claims as quoted in the text are taken verbatim from the § 2255 Motion.

## Grounds One, Three, and Four

Defendant states Ground One as a failure by the District Court to comply fully with 18 U.S.C. § 3553(a). In his Memorandum in Support, he clarifies his claim to be that the 100 kilogram quantity of marijuana which made him eligible for a mandatory minimum sentence of sixty months was never proven to a jury beyond a reasonable doubt as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). In Ground Three he claims his plea was not voluntarily and knowingly entered. In Ground Four he claims the Government breached its plea agreement with him.

The United States argues and Defendant concedes that these issues were raised on direct appeal and decided against Defendant by the Sixth Circuit (See Answer, Doc. No. 257; Post Hearing Memorandum, Doc. No. 290). Therefore they should not be considered anew by this Court. Absent manifest injustice or special circumstances such as a change in the law, claims made in §2255 motions will be dismissed summarily if they were or might have been asserted on direct review.[2]

## Ground Two

When filing his Motion *pro se*, Defendant asserted in Ground Two that he received ineffective assistance of counsel in that his attorney failed to advise him of the consequences of pleading guilty and particularly of the fact that the offense to which he was pleading guilty carried

---

[2]Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 5th ed., §41.7(e)(2005), *citing, Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

3

a mandatory minimum sentence of five years confinement. (Memorandum in Support of Motion to Vacate, Doc. No. 261, filed *pro se* July 30, 2007, at 40-41.) He also claimed he received ineffective assistance in that his attorney had a conflict of interest, manifested by the attorney's support of the "package deal" under which all three Defendants had to plead guilty in order for any of them to avoid trial and the possibly higher sentences which could have resulted. *Id*. at 36-40.

In the Post Hearing Memorandum (Doc. No. 290), now represented by counsel, Defendant reconfigures his ineffective assistance of counsel claim as follows:

> [1] there was a package deal and the benefits to Defendant Elliot from that package deal, remained undisclosed to this Defendant by his counsel and as a result, Defendant received the ineffective assistance of his counsel. [2] Likewise Defendant Rennick received the ineffective assistance of counsel because Defendant Rennick was advised by counsel that he was entering a "fictional plea" which would result in a lesser sentence. [3] Finally Defendant received the ineffective assistance of counsel when his counsel permitted conferences between co-defendants and their counsel when defendant was in a fragile mental state and susceptible to the pressure to plead.

*Id*. at 3.

## The Standard for Effective Assistance of Counsel

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence

> resulted from a breakdown in the adversary process that renders the
> result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002).

in reweighing it against the evidence in aggravation." *18

The same standards apply in evaluating ineffective assistance claims in cases which resulted in a negotiated plea. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). In order to satisfy the "prejudice" prong of *Strickland* in a negotiated plea case, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty.

### Claim One: Gallagher Was Ineffective Because He Did Not Tell Rennick Elliott Was Promised a Sentence Reduction Motion for Persuading Rennick to Plead Guilty

The evidence presented at the evidentiary hearing establishes that, as of the morning of trial, the Government was not willing to negotiate a plea agreement with any of the remaining three Defendants – Benjamin, Elliott, and Rennick – alone. That is, there would be a trial of all three or some guilty plea agreement with each of the three. In that sense, there was certainly a "package" deal.

Defendant asserts that there was more. He claims his co-defendant Elliott was promised a sentence reduction if he persuaded Mr. Rennick to plead guilty, that his lawyer knew of this, and did not reveal it to him. However, Rennick's proof of this promise to Elliott is weak. It does not appear in Elliott's plea agreement and Elliott testified at the evidentiary hearing that his lawyer, Ken Lawson, never told him the Government had promised a substantial assistance motion in return for his persuading Rennick to plead. More importantly – because only an ineffective assistance of counsel claim is before the Court – there was no testimony at the evidentiary hearing that Mr. Gallagher knew of any such promise to Elliott.

Mr. Rennick's best evidence that Elliott was promised a reduction for persuading Rennick to plead is the sentencing colloquy. All three defendants were sentenced together. Apparently

because the Government had made no substantial assistance reduction motion prior to that time, Mr. Lawson persuaded Mr. Brichler to do it on the spot. At a break in the proceedings, Mr. Lawson apparently reminded Mr. Brichler of what Mr. Brichler had supposedly forgotten: the promise of a substantial assistance motion for persuading Mr. Rennick to plead. Mr. Brichler then made the motion orally and it was granted. (The full colloquy is reproduced in the Appendix.) Mr. Lawson asserted that Messrs. Cohen and Gallagher would "remember" the deal, but neither of them testified to that effect at the evidentiary hearing. Mr. Lawson, on the other hand, was not called to testify and therefore not subjected to cross-examination about his statements at sentencing. For reasons which are familiar to the Court, the Magistrate Judge does not believe Mr. Lawson's uncross-examined assertion at that time in his career[3] can outweigh the lack of other evidence about whether there was an agreement, known by Gallagher, but undisclosed to Rennick, that Elliott would get a 5.K motion for persuading Rennick to plead..

The Magistrate Judge concludes Mr. Rennick has not proved his attorney, Mr. Gallagher, knew Elliott was promised a substantial reduction motion if he persuaded Rennick to plead guilty.

**Claim Two: Gallagher Persuaded Rennick to Enter a "Fictional Plea"**

Mr. Rennick also claims his attorney was ineffective in persuading him to enter into a "fictional plea." Rennick testified Gallagher told him in a whisper during the plea colloquy that the plea was fictional and after the plea that he should not mention that phrase to the Probation Department during the presentence investigation. Gallagher testified he never used that term, "fictional plea."

---

[3] *See Cincinnati Bar Ass'n. v. Lawson*, 119 Ohio St. 3d 58 at ¶¶ 68-69 (2008), quoting Mr. Lawson's admission of his persistent state of intoxication at the time of trial and sentencing in this case..

7

At the evidentiary hearing, Mr. Benjamin's attorney, Mr. Cohen, took responsibility for devising the "legal fiction" under which Defendant Benjamin would admit facts constituting a criminal offense which would place him at the lower end of the then-mandatory Sentencing Guidelines and allow him to receive probation (Transcript, Doc. No. 288, at 17). The "facts" admitted to by Benjamin included that he had received a pound of marijuana from Rennick during their joint trip to Arizona to purchase a Freightliner tractor. Had he been convicted after trial, he would have faced a mandatory minimum sentence of five years imprisonment. While his attorney believed he had a strong defense case, he came close to admitting it would have been legal malpractice to risk trial under those circumstances when probation was virtually certain under the Guidelines.

Rennick does not now advise the Court what if any portion of his own plea he claims was "fictional." As for the factual basis of the conviction, the Sixth Circuit wrote:

> At the plea colloquy, Rennick agreed that the government's statement of facts implicating him in the conspiracy was correct and said he wished to plead guilty. Rennick now argues that he wanted to object to the government's factual statement and assert his innocence, that he made nonverbal gestures to this effect, and that his attorney instructed him to proceed with the guilty plea. To the extent that Rennick suggests that his hesitation during the plea colloquy undermines the factual basis for the plea, Rule 11 (f) does not require "strong evidence of actual guilt." *United States v. Tunning,* 69 F.3d 107, 112 (6th Cir. 1995). Rather, the court must "satisfy it[self] that there is a factual basis for the plea." Id. The government's factual statement, which Rennick confirmed was correct, gave the district court a sufficient factual basis for entering the plea. Moreover, Rennick's statements to the court carry a strong presumption of truthfulness, *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977), and his plea "serves as an admission that he is not innocent of the crimes charged." *Luster v. United States*, 168 F.3d 913, 916 (6th Cir. 1999).

*United States v. Rennick*, 219 Fed. Appx. 486, 489 (6th Cir. Ohio 2007). Mr. Rennick does not tell the Court what part of the facts he admitted he now claims is fictional or how he was harmed by the

fiction. In the absence of prejudice, there was no ineffective assistance of counsel.

**Claim Three: Gallagher Allowed Elliott to Coerce a Mentally-Fragile Rennick into Pleading Guilty**

Petitioner's third claim is that Mr. Gallagher provided ineffective assistance by permitting Elliott to meet with Rennick without being personally present and this coerced Rennick into pleading guilty.

Of course, a judge, jury, and witnesses waiting, there is often a good deal of pressure on the morning of trial to reach a plea agreement. It is not uncommon for the "moment of truth" symbolized by trial readiness to spark plea negotiations from both sides in a criminal case. Criminal defendants in that situation inevitably feel a great deal of pressure weighing the risks of trial against the greater certainty of a plea agreement.

The particular circumstances of these plea negotiations of which Mr. Rennick complains are that Elliott was like a son to him, was facing prison time with substantial impact on his young family unless all three pleaded, and actually cried in his presence. Rennick does not claim that Elliott lied to him or threatened him in any way. Instead, Elliott presented in an emotionally compelling way what was apparently the truth: unless all three pleaded, the case would go to trial and Elliott would face serious prison time, although he was apparently a minor player.[4] That simply does not amount to coercion, either by the Government or by Elliott.

More to the point, allowing Elliott and Rennick to meet privately is not deficient performance by Gallagher. Rennick in fact cites to no case authority holding that an attorney performs deficiently by allowing such a meeting, and none is known to the Court. Finally, the Court

---

[4]His lawyer testified the case against him was mainly that he had been in many wrong places at wrong times; the defense would have consisted of offering innocent explanations for his being there.

9

sees no prejudice: there is no evidence from either Elliott or Rennick that anything was said in the private meeting that somehow would not have been said in front of Rennick's attorney.

Rennick also accuses his attorney of allowing him to have the meeting knowing that he was in a fragile state because of his long-term treatment for post-traumatic stress disorder with psychotropic medication. No medical evidence was introduced to show that either the PTSD or the medication for treating it made Mr. Rennick more susceptible to Mr. Elliott's pleas than he otherwise would have been, either on the morning of trial or at any other time. Again, even if Mr. Rennick was more susceptible because of these factors than the "average" criminal defendant would be to the pleas of a person he treated like a son, how would his lawyer's presence have made a difference? Whatever mental state he was in, he was competent to stand trial and to enter a plea as both Judge Dlott and the Sixth Circuit found. *United States v. Rennick, supra*, at 488-489. If he could handle the psychological pressure of going to trial or pleading guilty, he should have been able to handled any psychological pressure from Elliott, who he knew so well.

The Court is not minimizing Defendant's combat-related illness or the emotional impact of the pleas of one treated as a son. Defendant undoubtedly faced a tough choice. But, on the facts he has presented, he was not coerced into that choice and his attorney's absence from the meeting did not make the choice happen.

**Defendant's Branch III: The October Plea Agreement**

Defendant spends five pages at the end of his Post-Hearing Memorandum discussing the inferences to be drawn from a draft plea agreement for Mr. Rennick to plead guilty one count of mail fraud which was apparently drafted in October 2003, after the guilty plea but before sentencing. It was marked as Exhibit 14 at the evidentiary hearing.

Defendant asserts "[k]nowing that the 'fictional plea' was as fragile as the Defendant's mental condition, the government tendered to defense counsel another plea agreement. . . ." In other words, the existence of this plea agreement proves, by inference, that the United States Attorney and Mr. Gallagher were trying to create a new deal to replace the old deal and would not have done so unless they believed the old deal was fatally flawed.

The difficulty with the argument is that there is no proof of the provenance of Exhibit 14. Although Mr. Gallagher's signature is on it and he thought it came from Mr. Brichler, he could not remember any of the relevant circumstances about why it was created. Mr. Brichler did not testify at all and Mr. Rennick did not testify about the document. Without more explanation of the document, it will not support the tower of inferences Defendant attempts to build on it.

**Conclusion**

Defendant has not established that his conviction is infected by ineffective assistance of counsel. His § 2255 Motion should therefore be denied.

December 13, 2008.

s/ **Michael R. Merz**
United States Magistrate Judge

**Appendix**

Defendant Elliott was sentenced third. At his sentencing the following occurred:

MR. LAWSON: Judge, this was a –if you recall when he entered
the pleas, it was a date the morning of the trial on a case that had been
ongoing for sometime and where my client and especially Mr. Gallagher's
client were adamant about going to trial. In order to end up into these plea

bargains, it was presented to my client, since he was closest to Mr. Rennick, that if he was able to get Mr. Rennick to enter a plea, voluntarily enter a plea and also provide sub—and get Mr. Rennick to provide substantial assistance, he would receive, he being Mr. Elliot, would receive a 5K1. So Mr. Elliot's plea bargain and 5K1 is based on what Mr. Rennick was to do…

MR. LAWSON: Judge, if I may, every defense attorney that was present for trial that morning, everybody was here ready to go to trial. And **Mr. Gallagher knows, and I don't know if Mr. Cohen remembers it or not, that that was the offer that was made to my client, because we had to come back out and let my client speak to Mr. Gallagher's client.**

THE COURT: All right. Here's what—

MR. BRICHLER: May I have a moment, Your Honor, with Mr. Lawson?...

MR. BRICHLER: Your Honor, I just had a discussion with Mr. Lawson, and he related to me that, on the morning of the pleas, that I had a conversation with him concerning his client's ability to basically make the case go away.

THE COURT: You mean make the trial go away?

MR. BRICHLER: Make the trial go away. If he was cooperative and if he was able to convince the other defendants that this is what they should do.

MR. LAWSON: Actually, it was Mr. Rennick, not the other defendants.

MR. BRICHLER: Okay. And Mr. Lawson indicated that I told him that, if that happened, that I would consider Mr. Elliot's conduct to be substantial assistance…

MR. BRICHLER: A one-third reduction would be 14 months, 7 from 21 would be 14 months. I would request the Court consider a sentence, therefore, within the range of offense level 12, which would be 12 to 18 months where 14 months would be.

MR. LAWSON: I have discussed that with my client your Honor, and there is no objection. I discussed that with him already. And I appreciate what Mr. Brichler just stated, **but Mr. Gallagher is also in the room. We talked briefly before we came in here and I just want Mr. Brichler to know that that is our recollection about what happened that day.**

12

MR. BRICHLER: And I want it clear that this motion for reduction
is based upon what happened that day and it's not based upon any conduct
that Mr. Rennick subsequently engaged in.

(Appendix Vol. I at pgs. JA 146-154, quoted in Defendant's Post-Hearing Memorandum at 15-16 with emphasis added there.)

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).